**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>INVICTUS GLOBAL MANAGEMENT, LLC,<br><br>Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding | MISC. No. 22-mc-00130 |

**MEMORANDUM OF LAW IN SUPPORT OF THE EX PARTE PETITION OF INVICTUS GLOBAL MANAGEMENT, LLC FOR AN ORDER TO TAKE DISCOVERY FROM APOLLO GLOBAL MANAGEMENT INC. AND MARC ROWAN PURSUANT TO 28 U.S.C. § 1782**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 2

ARGUMENT ................................................................................................................. 11

I.  The Petition Satisfies the Statutory Requirements of Section 1782.................................... 11

    A.  Apollo and Mr. Rowan Are Each Found in This District. ............................................ 12

    B.  Petitioner Seeks Discovery for Use in a Foreign Proceeding. ...................................... 13

    C.  Petitioner Is an Interested Person. ................................................................. 144

II.  The *Intel* Discretionary Factors Favor Granting the Petition. ............................................ 144

    A.  Neither Respondent Is Not a Participant in the Appraisal Proceeding. ...................... 155

    B.  The Bermuda Supreme Court Is Receptive to U.S. Judicial Assistance. ...................... 15

    C.  The Petition Is Not an Attempt to Circumvent Bermuda Law...................................... 18

    D.  The Discovery Sought Is Not Unduly Burdensome..................................................... 20

III.  *Ex Parte* Relief Is Warranted. ........................................................................................ 22

CONCLUSION .................................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*Amphenol Corp. v. Fractus, S.A.*,
  2019 WL 2521300 (S.D.N.Y. June 19, 2019) ........................................................ 21

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) ............................................................................... 13

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995) ............................................................................. 16

*Federal Republic of Nigeria v. VR Advisory Services, Ltd.*,
  27 F.4th 136 (2d Cir. 2022) ..................................................................... 14-15, 18

*Fund for Protection of Investor Rights in Foreign States Pursuant to
28 U.S.C. § 1782 for Order Granting Leave to Obtain Discovery*,
  5 F.4th 216 (2d Cir. 2021) ............................................................................... 16

*Gushlak v. Gushlak*,
  486 Fed.Appx. 215 (2d Cir. 2012) ................................................................. 22, 23

*In re Accent Delight International Ltd.*,
  791 Fed.Appx. 247 (2d Cir. 2019) ...................................................................... 19

*In re Application of Kingstown Partners Master Ltd*,
  2022 WL 1081333 (S.D.N.Y. Apr. 8, 2022) ......................................................... 20-21

*In re Application of Patokh Chodiev*,
  2021 WL 3270042 (S.D.N.Y. July 30, 2021) ........................................................ 22

*In re Application of Polygon Global Partners LLP for an Order Pursuant
to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*,
  2021 WL 2117397 (S.D.N.Y. May 25, 2021) ..................................................... 12, 19

*In re Application of Roessner*,
   2021 WL 5042861 (S.D.N.Y. Oct. 29, 2021) ........................................................ 21

*In re Aso*,
  2019 WL 2345443 (S.D. N.Y. June 3, 2019) ......................................................... 13

*In re Atvos Agroindustrial Investimentos SA*,
  481 F. Supp.3d 166 (S.D.N.Y. 2020) ................................................................... 16

*In re Bayer AG*,
  146 F.3d 188 (3d Cir. 1998) ............................................................................. 20

*In re Ex Parte Application of Porsche Automobil Holding SE*,
  2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ....................................................... 21-22

*In re Kuwait Ports Authority*,
  2021 WL 5909999 (S.D.N.Y. Dec. 14, 2021) ........................................................ 15

*In re Meydan Group LLC*,
  2015 WL 2453757 (D.N.J. May 25, 2015) ............................................................ 12

*In re Ord. Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use
in a Foreign Proceeding*,
  No. 4:21-MC-00153-AGF, 2021 WL 1611673 (E.D. Mo. Apr. 26, 2021) ...................... 14

*In re Pidwell*,
  2022 WL 192987 (S.D.N.Y. Jan. 21, 2021) .......................................................... 12

*In re Postalis*,
   2018 WL 672540 (S.D.N.Y. Dec. 20, 2018) .......................................................................... 12

*In re Top Matrix Holdings*,
   2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) ................................................................... 12, 19

*Mees v. Buiter*,
   793 F. 3d 291 (2d Cir. 2015)..................................................................................... 13-14, 19

*U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*,
   112 F.Supp.3d 122 (S.D.N.Y. 2015)................................................................................... 22

**Statutes**

Fed. R. Civ. P. 26(b)(1)................................................................................................................ 20

Invictus Global Management, LLC ("Petitioner" or "Invictus"), hereby respectfully petitions this Court for an *ex parte* order pursuant to 28 U.S.C. § 1782 ("Section 1782") authorizing Petitioner to take documentary discovery and deposition testimony from (i) Apollo Global Management, Inc. ("Apollo"), and (ii) Marc J. Rowan, a co-founder and the current Chief Executive Officer of Apollo, ("Mr. Rowan" and together with Apollo, "Respondents"). The requested discovery, if granted, will be used in connection with an appraisal proceeding (the "Appraisal Proceeding") pending in Bermuda in which the Supreme Court of Bermuda (the "Bermuda Supreme Court") will determine the fair value of Petitioner's shares in Athene Holdings Ltd. ("Athene" or the "Company"). Athene is a Bermuda company that focuses on retirement and reinsurance services. Athene was recently delisted from the New York Stock Exchange and merged into Apollo (the "Merger") in a stock-for-stock transaction. Petitioner contends that the consideration paid by Apollo for the Merger–1.149 Apollo shares for every Athene share–severely undervalued its shares in Athene. Apollo orchestrated the Merger under Mr. Rowan's personal leadership and direction. As a result of the Merger, Apollo now owns 76% of the combined company, and former Athene shareholders own the remaining 24%. Mr. Rowan, has since publicly touted that Athene was "hugely undervalued" and that Apollo bought a "cheap asset." Petitioner has dissented under Bermuda law and is pursuing the Appraisal Proceeding to recover the full value of its Athene shares.

This Petition is supported by the Declaration of Mark Chudleigh, (the "Chudleigh Decl."), an attorney admitted in Bermuda, England and Wales, and California, and the Declaration of Minyao Wang, (the "Wang Decl."), a New York attorney admitted to practice before this Court.

## PRELIMINARY STATEMENT

Petitioner brings this Petition to obtain discovery from Apollo and Mr. Rowan pursuant to Section 1782 for use in the Appraisal Proceeding. The discovery Petitioner seeks is directly relevant to the central issue the Bermuda Supreme Court must decide in the Appraisal Proceeding: the fair value of Petitioner's (and the other dissenting shareholders') Athene shares.

The Merger, orchestrated by Apollo and personally by Mr. Rowan, involuntarily extinguished Petitioners' minority shareholding in the Company. In return, Athene's minority shareholders obtained shares in Apollo. The Merger was coercive and fundamentally unfair to minority shareholders, with respect to both the consideration paid to the minority shareholders, which significantly undervalued the minority shareholders' ownership interest, and its approval process. Athene holders received 1.149 shares of Apollo common stock for each share of Athene stock (the "Conversion Ratio"). The Conversion Ratio was announced in March 2021 and was apparently timed to occur before Athene announced better than expected quarterly results. Moreover, the Merger did not close until January 2022, ten months later, by which time the stock price of Athene had almost doubled. But the Conversion Ratio was not changed to reflect the material increase in the market value of Athene. Apollo also ensured that the negotiation and approval process for the Merger did not include any checks to ensure fairness as to price or process. In sum, Apollo used its control over Athene to improperly rig the price of the Merger and grossly undercompensate the Company's minority shareholders.

Because the Bermuda Supreme Court does not have jurisdiction over Respondents, it cannot order them to produce discovery in the Appraisal Proceeding. However, Bermuda law permits litigants to use evidence obtained through U.S. courts by means of Section 1782. Accordingly, Petitioner brings this Petition to obtain discovery from Respondents, who are both

subject to the jurisdiction of this Court, to assist the Bermuda Supreme Court in determining the fair value of Petitioner's Athene shares.

The Petition satisfies the statutory requirements of Section 1782 in that: (i) Apollo resides in this District because it is headquartered in Manhattan and Mr. Rowan is found in this District because he works for a company that is based in Manhattan; (ii) the requested discovery is "for use" in a foreign proceeding; and (iii) Petitioner is an "interested person." 28 U.S.C. § 1782(a) (2018). This Court therefore has the discretion to grant the Petition.

In *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004), the U.S. Supreme Court identified four non-exclusive factors a district court should consider in deciding whether to grant discovery under Section 1782. *Id* at 264. Each of those factors weighs decisively in favor of granting the Petition:

*First*, neither Respondent is a party to the Appraisal Proceeding. Nor are they subject to the jurisdiction of the Bermuda Supreme Court. Consequently, Petitioner cannot use the Bermuda legal process to obtain discovery from either Respondent.

*Second*, the Bermuda Supreme Court will be receptive to the assistance afforded by American courts through Section 1782. A decision from the highest court in the United Kingdom, which is quasi-binding in Bermuda, recognizes a litigant's right to seek discovery under Section 1782. Cayman Island courts, to which the Bermuda courts look to for guidance, have emphasized that judges need access to *all* available information concerning valuation to determine the fair value of shares in an appraisal proceeding, including evidence from outside the Cayman Island. Section 1782 evidence is routinely considered in Cayman Island appraisal proceedings. The Bermuda Supreme Court would likely follow the same approach.

*Third*, the Petition is not an attempt to circumvent any restrictions imposed by Bermuda law on proof gathering. Far to the contrary, the scope of discovery is broad under Bermuda law and Bermuda courts welcome the introduction of foreign evidence through Section 1782.

*Fourth*, the discovery Petitioner is seeking is not unduly burdensome. It is designed to obtain information directly relevant to the critical issues in the Appraisal Proceeding, such as the fair value of Petitioner's Athene shares, the methods Apollo used to value Athene assets to arrive at the Conversion Ratio, the negotiation process between Respondents and the Company's purportedly independent directors that culminated in a definitive agreement for the Merger, the conflict issues that have tainted Apollo's relationship with Athene, and the approval process for the Merger.

In sum, Respondents have information in their possession, custody, or control that is directly relevant to the central issue in the Appraisal Proceeding. The Petition satisfies the requirements of Section 1782 and the *Intel* factors, is fully consistent with the policies behind Section 1782, and should be granted.

## STATEMENT OF FACTS

### A. Parties to the Foreign Proceeding and the Company.

Petitioner invested in Athene and owned Athene shares immediately before the effective date of the Merger that is the subject of the Appraisal Proceeding. *See* Chudleigh Decl. ¶ 6. Petitioner is a party to the Appraisal Proceeding, along with four other former Athene shareholders. *Id*. ¶ 8.

Athene is a Bermuda-registered insurance holding company founded in 2009 by former AIG executive James Belardi, with the active support of senior Apollo executives, including Mr. Rowan, who was one of the three co-founders of Apollo. Mr. Rowan has been dubbed the

"architect" of Athene. Wang Dec. Ex. C. at 2. Apollo's move into the insurance business, represented a strategic change of direction for Apollo, a private equity firm that had been focused on corporate buyouts.

Through its subsidiaries, Athene issues, reinsures, and acquires retirement savings products, including fixed annuities and funding agreements, worldwide. Athene's principal source of revenue is its "retirement services" business. That business operated through Athene's United States and Bermuda subsidiaries, which issue and reinsure retirement and institutional savings products. The business's retail operations provide annuity retirement solutions to Athene's policyholders. Athene also maintains reinsurance operations, which reinsure multi-year guaranteed annuities, fixed indexed annuities, traditional one-year guarantee fixed deferred annuities, immediate annuities, and institutional products from its reinsurance partners.

Following its founding, Athene immediately became a driver of consolidation across the U.S. life-insurance industry, acquiring tens of billions of dollars of assets. Using funding from Apollo, Athene started by buying fixed-annuity businesses at a discount in the aftermath of the Great Recession. In the twelve years since, Athene has grown into one of the largest holders of fixed annuities in the United States, a retirement-savings product favored by risk-averse and, in many cases, older Americans. Athene has also become prominent in the pension-risk transfer business, in which employers with pension plans make deals with insurers to take responsibility for retirees' monthly benefits. As of 2020, Athene had $150 billion in net invested assets.

Building upon their initial relationship, Athene hired Apollo to choose investments to back up Athene's obligations to pay consumers. Working with Apollo as its asset manager, Athene has been in the vanguard of acquiring annuity businesses at cut-rate prices as the United States' prolonged ultra-low interest rate environment has made such businesses significantly less desirable

to most traditional insurers. This is a very lucrative arrangement for Apollo. Every year Apollo received $400 million in "management fees" from Athene. Wang Dec. Ex. D at 3. According to an article in the *Financial Times*, Apollo concluded in an internal study that this fee was twice the market amount that Athene would have paid had it hired an independent asset manager. *Id*. at 8-9. But Apollo chose not to make the study public or share it with Athene. *Id*.

Apollo's disproportionate control of Athene has caused Athene to trade at a discount relative to its asset value, a point that Mr. Rowan has openly admitted. Wang Dec. Ex. E at 12. The inherent conflict of interest caused by the unusual closeness of the relationship between the two companies was also the subject of litigation brought by Athene shareholders. *See, e.g.*, Wang Dec. Ex. F (lawsuit alleging that Apollo unlawfully extracted value from Athene).

**B. The Merger.**

On March 8, 2021, Apollo and Athene announced that they had entered into an agreement to effectuate the Merger. Under the terms of the proposed transaction, each common Athene share would be exchanged for a fixed ratio of 1.149 shares of Apollo common stock. Upon the closing of the Merger, existing Apollo shareholders would own approximately 76% of the combined company, and former Athene shareholders would own the remaining 24%. According to the announcement, the Merger was expected to close ten months later in January 2022, but there was no mechanism to adjust the Conversion Ratio if market conditions changed. In other words, if the Athene stock continued its upward trajectory before the Merger was completed, it would only benefit Apollo.

Mr. Rowan was personally involved in bringing about the Merger. When the transaction was announced, Bloomberg properly described Mr. Rowan as "the force behind" the Merger. Wang Dec. Ex. G at 1. The Company's proxy statement, sent to shareholders in November 2021

to tout the merits of the Merger, details Mr. Rowan's significant personal engagement. The Merger process was initiated when Mr. Rowan had a one-on-one conversation over lunch with Marc Beilinson, Athene's nominal lead independent director. Wang Dec. Ex. H at 137. Apollo's subsequent written offer to acquire Athene was signed by Mr. Rowan and was preceded by a phone call from Mr. Rowan to Mr. Beilinson giving him advanced notice of the offer. *Id*. During that call, "Mr. Rowan also asked Mr. Beilinson certain process-related questions" regarding the proposed Merger. *Id*. Mr. Rowan also attended key internal Apollo meetings during which the Merger was discussed and delivered to Athene's special committee a "management presentation providing a detailed discussion" regarding the potential Merger. *Id*. at 142-43.

For the Merger to be implemented, approval by a majority vote of the shares voting at a special general meeting of shareholders was sufficient. Because Apollo was allowed to exercise its self-interested 35 percent voting power in the Company, approval of the Merger was highly probable from the outset. This strong likelihood of eventual approval of the Merger meant that any organized opposition to the Merger would be an uphill battle. Notably, neither Bermudian law, nor the Company's governing documents, nor the Merger agreement required approval by a majority of non-Apollo shareholders ("MoM Protection"), a common protection for minority shareholders from majority shareholders. When the Company held the vote in December 2021, the Merger was inevitably approved. The Merger was then consummated on schedule in January 2022, and Athene was delisted from the New York Stock Exchange.

C. **The Merger's Unfair Price and Process.**

Petitioner intends to prove in the Appraisal Proceeding that the Conversion Ratio was grossly unfair and drastically understated the true value of the Company. Chudleigh Decl. ¶ 8. Petitioner submits that this valuation of the Company was materially flawed in a broad multitude

of ways. We make the following illustrative points concerning the problematic valuation for the Merger.

*First*, while the Merger was supposedly reviewed by a standing "conflicts committee" of Apollo's board and Athene's special committee, it is far from clear that the two committees were able to exercise true independent judgment. For example, it has been suggested that the chair of Apollo's conflicts committee was beholden to Apollo professionally. He was on the board of a company that was controlled by Apollo from May 2006 to May 2016. Wang Dec. Ex. I. He was appointed to Apollo's board in 2011, when alleged conflict existed. Wang Dec. Ex. J. Moreover, Mr. Beilinson, a member of Athene's special committee, was slated to be appointed to the board of Apollo post-Merger if the Merger successfully closed, casting his true independence into question. Wang Dec. Ex. H at 73. Finally, while certain members of Athene's board recused themselves from considering the Merger due to their ties to Apollo, other members with obvious conflicts of interest took part in approving the Merger. For example, the *Financial Times* reported that Hope Schefler Taitz had a professional relationship with Mr. Rowan going back to the 1980's, Wang Dec. Ex. D at 9, but as a purportedly independent Athene director, Ms. Taitz was not recused from considering the Merger.

*Second*, the Merger was not subject to MoM Protection. Without MoM Protection, it was very difficult to mount effective opposition to the Merger because Apollo was able to exercise 35 percent of the Company's voting power. As a result, the ownership interests in Athene of the dissenting non-Apollo shareholders were extinguished against their will without fair consideration.

*Third,* Athene did not solicit a single additional bid, did not conduct a "market check," and did not insist on a "go-shop" provision—all standard features of an arm's-length sale process that might otherwise protect minority shareholders. Indeed, only **three weeks** elapsed between Mr.

Rowan's lunch meeting with Mr. Beilinson (February 17, 2021) where the general outline of the Merger was discussed for the first time and the announcement of the Merger (March 8, 2021). The absence of any of the usual protections for non-Apollo shareholders and this unusually short timeline for the negotiation of the Merger transaction suggest that the Merger process was a sham process designed only for the benefit of Apollo.

*Fourth*, the timing of the announcement of the Merger was designed to depress the Merger price that Apollo had to pay. Specifically, the Merger was announced in March 2021, **before** Athene released its expectations-beating earnings for the first quarter of 2021. *See* Wang Dec. Ex. K. With this timing, Apollo was able to lock in the artificially low Conversion Ratio. Indeed, given that the Conversion Ratio was a fixed ratio–*i.e.*, 1.149 Apollo shares for every Athene share–that was not subject to later adjustments, Athene shareholders were not able to benefit when Athene's share price almost doubled between the Merger announcement in March 2021 ($48.88 per share) and the Merger closing in January 2022 ($83.75 per share). In the same period of time, Apollo's stock was up only about 50%. Even after factoring in the initial deal premium – 16.5% – Athene's stock price was up 40% during that period. But this increase in the value of Athene did not accrue to minority Athene shareholders. It accrued only to Apollo.

*Fifth*, Mr. Rowan has made a series of damning admissions suggesting that Apollo knew that the Merger was implemented at the expense of and to the detriment of the non-Apollo minority shareholders. For instance, during his Apollo Investor Day discussion, Mr. Rowan explained that Apollo opportunistically "backed up the truck" to "buy the cheap asset" at an "almost unheard of" price at the expense of Athene's public holders:

> We got to buy this excess cash flow on a merged basis at a very reasonable price. You can see here, to be able to buy something that is strategic and recurring and important to us between 5 and 6x cash flow, almost unheard of. ***One thing we have not forgotten at Apollo is when the market does not understand something. We***

*are supposed to back up the truck and buy the cheap asset. We backed up the truck and bought the cheap asset.*

Wang Decl. Ex. E at 16 (emphasis added).

Mr. Rowan proceeded during the call to explain how Apollo valued Athene's retirement services annuity insurance business as a "spread creation business" comparable to an alternatives fund business, while noting favorably that Athene "owns investment grade assets versus non-investment-grade… [with a] much lower cost of funds… [and] no high watermark… [where] profitability should be much less cyclical… with no chance of liquidity flight… [and] the fee is on assets, not equity… . It is simply a better business." *Id.* at 17. Trumpeting Athene's consistent 15%+ cash-on-cash ROE without leverage while holding massive amounts of excess capital, Rowan concluded that Athene was "hugely undervalued":

> In case I didn't make the point, this is how we think about it internally. We think that the public market actually values the tail of the dog [*i.e.*, alternative investment companies that earn only a fraction of tail economics above a preferred return hurdle] at better than 30x PE. The meat [*i.e.*, Athene, which earns] 100% over 2.5%, the market values at 7x to 8x. We have already made our bet. We made our bet by issuing a massive number of [Apollo] shares to consolidate that piece of Athene that we did not own. We did it willingly and joyfully, and we can't wait till January 1 to get going.

*Id.* at 17-18. In addition, according to Apollo's October 2021 Investor Day presentation deck, "Athene is today and has always been, massively capital generative." Wang Dec. Ex. L at 164.

### D. Petitioner's Bermuda Appraisal Proceeding.

Petitioner dissented from the Merger under Bermuda law and then initiated the Appraisal Proceeding seeking a judicial determination of the value of the Athene shares it held. The shareholders and the Company will each retain a valuation expert to assist the Bermuda Supreme Court in arriving at a fair valuation of Athene shares. Chudleigh Decl. ¶ 10. Although Bermuda law permits litigants to obtain discovery from third parties located in Bermuda, the Bermuda Supreme Court does not have the power to compel discovery from third parties, which, like

Respondents here, are not subject to jurisdiction in Bermuda. Apollo is incorporated in Delaware and headquartered in New York. Mr. Rowan is an American citizen and does not live in Bermuda. The Bermuda Supreme Court therefore cannot exercise jurisdiction over either Respondent. *Id*. ¶¶ 26-28.

Accordingly, Petitioner seeks leave of this Court to serve subpoenas on Apollo and Mr. Rowan for documents and deposition testimony concerning the following topics: (a) the process leading up to Apollo making the Merger offer; (b) the valuation of the Company and its various components; (c) the relationships (both professional and personal) between Respondents and members of Athene's special committee and Apollo's conflicts committee; (d) the negotiation process for the Merger; (e) the timing of the announcement of the Merger and the timing of the consummation of the Merger; (f) how the Conversion Ratio was calculated and whether an adjustment of the Conversion Ratio was considered before the Merger was consummated; (g) whether MoM Protection and a go-shop provision were considered in connection with the Merger; (h) communications with the Special Committee, the Company, financial advisors, other key constituencies, and their professionals concerning the Merger and any alternative transaction; and (i) documents and communications related to the October 2019 corporate governance changes at Athene. The proposed discovery will significantly assist the Bermuda Supreme Court in its evaluation of the Merger and determination of the fair value of the Petitioner's shares of Athene.

## ARGUMENT

### I.   The Petition Satisfies the Statutory Requirements of Section 1782.

A petitioner under Section 1782 must make three threshold showings: (i) the respondent "resides" or is "found" in the judicial district where the petition is brought; (ii) the requested

discovery is "for use in a proceeding in a foreign or international tribunal"; and (iii) the petitioner is an "interested person." 28 U.S.C. § 1782(a). The Petition satisfies all three requirements.

### A.  <u>Apollo and Mr. Rowan Are Each Found in This District.</u>

Section 1782's requirement that an entity "reside[s] or be found" in a judicial district is satisfied when an entity has its principal place of business in the district. *See In re Postalis*, 2018 WL 672540, at \*3 n.4 (S.D.N.Y. Dec. 20, 2018) ("A corporation is found in the district where it is incorporated or headquartered."). Apollo's website shows that it is headquartered at 9 West 57th Street, in Manhattan. Wang Decl. Ex. M at 1. This Court therefore has jurisdiction over Apollo. *See also In re Pidwell*, 2022 WL 192987, at \*3-4 (S.D.N.Y. Jan. 21, 2021) (noting that there was no dispute that Apollo is found in this District for purposes of Section 1782).

An individual is found, for purposes of Section 1782, in a district in which he or she works, at least to the extent that the discovery being sought by the petitioner is "inextricably tied" to his or her employment. *In re Application of Polygon Global Partners LLP for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 2021 WL 2117397, at \* 5-6 (S.D.N.Y. May 25, 2021) (employees who worked remotely outside the Southern District of New York for KKR were nevertheless "found" in this District because they held themselves out to be associated with KKR's New York office and petitioner sought discovery related to their work for KKR); *see also In re Top Matrix Holdings*, 2020 WL 248716, at \*6 (S.D.N.Y. Jan. 16, 2020) (it was not disputed that the former CEO of Credit Suisse, who lived in Connecticut and worked in Manhattan, was "found" in this District); *In re Meydan Group LLC*, 2015 WL 2453757, at \*3 (D.N.J. May 25, 2015) (employees who worked for a corporation headquartered in the District of New Jersey were "found" in that district).

This Court can therefore also exercise jurisdiction over Mr. Rowan regardless of where he physically resides. Mr. Rowan is employed as the CEO of Apollo, which is based in Manhattan, and this Petition seeks discovery related to his official responsibilities at Apollo.

## B.     Petitioner Seeks Discovery for Use in a Foreign Proceeding.

Petitioner will use the requested discovery in the Appraisal Proceeding to establish the fair value of its Athene shares. The Appraisal Proceeding in Bermuda is clearly a "foreign proceeding," and Petitioner seeks the documents and deposition transcripts "for use" in the Appraisal Proceeding.[1]

An applicant "satisfies the statute's 'for use' requirement by showing that the materials she seeks are to be used at some stage of a foreign proceeding." *Mees v. Buiter*, 793 F.3d 291, 295 (2d Cir. 2015). A petitioner is not required to demonstrate that the discovery sought will be ultimately admissible in the foreign proceeding. *Brandi-Dohrn v. IKB Deutsche Industriebank AG,* 673 F.3d 76, 82 (2d Cir. 2012) ("as a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider *the admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application.") (emphasis in original); *see also In re Aso*, 2019 WL 2345443, at *4 (S.D. N.Y. June 3, 2019) (engrafting an admissibility rule would impermissibly "require district courts to predict or construe the substantive law of the foreign jurisdiction"). Nor does a petitioner have to establish that the requested evidence is necessary to establish its case in the foreign proceeding. *Mees*, 793 F. 3d at 298 ("The plain meaning of the phrase 'for use in a proceeding' indicates something that will be employed with some advantage

---

[1] It makes no difference that the Appraisal Proceeding is still in its early stages. The Supreme Court has been clear that Section 1782 discovery may be granted even *before* a foreign legal proceeding is commenced. *Intel*, 542 U.S. at 247. Therefore, Section 1782 relief is certainly available *after* the foreign proceeding has started, even during an early stage of the proceeding. Indeed, courts in the Cayman Islands have, in appraisal proceedings, strongly recommended parties to seek Section 1782 discovery as soon as possible to avoid interfering with the timely progress of the appraisal cases. *See* Chudleigh Decl. ¶ 25. It is reasonable to expect the Bermuda Supreme Court to take a similar view. *Id*.

or serve some use in the proceeding—not necessarily something without which the applicant could not prevail.").

Here, Invictus will provide the documents and deposition testimony obtained from Respondents to experts to be retained by the dissenting shareholders and the Company in connection with preparing valuation reports concerning the shares of Athene. *See* Chudleigh Decl. ¶ 10. Invictus may also seek to present some discovery to the Bermuda Supreme Court during the trial in the Appraisal Proceeding. *Id*. This is more than sufficient to satisfy the second statutory requirement.

> ### C. **Petitioner Is an Interested Person.**

A dissenting shareholder who is a party to a foreign appraisal action is an "interested person." *In re Ord. Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 2021 WL 1611673, at *3 (E.D. Mo. Apr. 26, 2021) ("Petitioners are interested parties in the foreign tribunal because each is a dissenting shareholder and a party to the Cayman Islands Appraisal Proceeding."). This final statutory requirement is also satisfied.

## II. **The *Intel* Discretionary Factors Favor Granting the Petition.**

Once Section 1782's statutory requirements are met, this Court should consider whether in the exercise of its discretion the Petition should be granted. *Intel,* 542 U.S. at 264. The Supreme Court has set forth four non-exhaustive factors for courts to consider: (1) whether the respondent is a participant in the foreign proceeding; (2) the nature and character of the foreign tribunal and the receptivity of the foreign tribunal to U.S. judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the request is unduly intrusive or burdensome. *Federal Republic of Nigeria v. VR Advisory Services, Ltd.*, 27 F.4th 136,

148 (2d Cir. 2022). Courts should not "'read extra-statutory barriers to discovery into section 1782' under the guise of exercising their discretion." *Id.* (internal citation omitted).

As set forth below, all four *Intel* factors strongly favor granting the Petition and there is no fact that militates against granting it.

A.    **Neither Respondent Is Not a Participant in the Appraisal Proceeding.**

When a respondent in a Section 1782 case is not a party to the foreign proceeding, "[its] evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. That is precisely the situation here. As Mr. Chudleigh explains in his Declaration, even though Apollo is the current majority owner of Athene and Mr. Rowan is the Chief Executive Officer of Apollo, neither Apollo nor Mr. Rowan is a party to the Appraisal Proceeding. Chudleigh Decl. ¶¶ 26-28. They are, therefore, beyond the jurisdictional reach of the Bermuda Supreme Court. *Id.* As a result, absent discovery via Section 1782, Petitioner has no practicable way to obtain discovery from Apollo or Mr. Rowan, even though they are key witnesses with first-hand knowledge of the central issues in the Appraisal Proceeding. *Id.* As such, the first *Intel* factor strongly supports granting the Petition against Apollo and Mr. Rowan. *In re Kuwait Ports Authority*, 2021 WL 5909999, at *9 (S.D.N.Y. Dec. 14, 2021) ("as a nonparticipant in the anticipated Cayman litigation and with no factual support suggesting otherwise, Citibank is 'outside the foreign tribunal's jurisdictional reach.'").

B.    **The Bermuda Supreme Court Is Receptive to U.S. Judicial Assistance.**

Under the second *Intel* factor, courts may "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign

government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.

Courts in the Second Circuit apply a presumption that the foreign tribunal is receptive to receiving evidence obtained under Section 1782 unless there is "authoritative proof" to the contrary. *Fund for Protection of Investor Rights in Foreign States Pursuant to 28 U.S.C. § 1782 for Order Granting Leave to Obtain Discovery*, 5 F.4th 216, 230 (2d Cir. 2021) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)); *In re Atvos Agroindustrial Investimentos SA*, 481 F. Supp.3d 166, 176-77 (S.D.N.Y. 2020) (this *Intel* factor favored discovery because petitioner submitted a foreign attorney declaration and "Respondents have failed to provide authoritative proof to the contrary.").

Here, Invictus has submitted a declaration from a Bermuda attorney confirming that courts in Bermuda should be receptive to using evidence obtained through U.S. discovery procedures. *See* Chudleigh Decl., ¶¶ 12-13. This conclusion is supported by *South Carolina Insurance Co. v. Assurantie Maatschappy*, [1987] 1 A.C. 24, a landmark case from the House of Lords, the highest court in the United Kingdom. *Id*. ¶¶ 14-15. In that case, the House of Lords held that a litigant in an English legal proceeding "is entitled to do, namely to try to obtain in a foreign country, by means lawful in that country, documentary evidence which they believe that they need in order to prepare and present their case." *Id*. ¶ (discussing case). Decisions of the House of Lords are generally *de facto* binding on the Bermuda Supreme Court, given that the same judges that sit in the House of Lords (which is now known as the Supreme Court of the United Kingdom) concurrently sit on the Judicial Committee of the Privy Council, which acts as the highest appellate court for Bermuda, the Cayman Islands, and other British Overseas Territories. *Id*.  In addition, while the Bermuda Supreme Court has never directly addressed the issue, at least two of its recent

decisions implicitly acknowledged the propriety of considering evidence obtained from the United States pursuant to Section 1782. *Id.* ¶16.

Further support for Mr. Chudleigh's conclusion is provided by the express ruling of a sister court, the Cayman Island Court of Appeal in *Phoenix Meridian Equity Limited v Lyxor Asset Management S.A. and Scotiabank & Trust (Cayman) Limited* [2009 CILR 553] that "a party who can invoke the jurisdiction of the US District Court under §1782 may choose to do so" and that the right to obtain pre-trial documents and deposition testimony by means of that provision "is a right conferred by U.S. law-it is not a right conferred by, or to be withheld under Cayman law." Chudleigh Decl., ¶¶ 17-19. As Mr. Chudleigh explains, the *Lyxor* court relied in part on *South Carolina Insurance Co.*, which is *de facto* binding in the Cayman Islands for the same reason that it is in Bermuda. *Id.*

U.S. courts have granted Section 1782 discovery for use in Bermudan proceedings, further evidencing that Bermuda courts are receptive to evidence obtained through Section 1782. *See* Wang Decl. Ex. N, *In the Matter of the Application of Winston Wen-Young for Assistance Before a Foreign Tribunal*, No. 21-cv-8627 (D. N.J. June 15, 2021), ECF No. 19 (granting modified 1782 application for discovery to be used in Bermudan proceedings); and Wang Decl Ex. O, *Am. Patriot Ins. Agency, Inc. v. Hendricks*, No. 10-CV-985 (N.D. Ill. Feb. 19, 2010), ECF No. 8 ("This matter coming to be heard upon [Petitioners'] Petition for Discovery in Aid of Foreign Litigation under 28 U.S.C. § 1782 . . . is granted."); *In re Application of Hill*, 2005 WL 1330769 (S.D.N.Y. June 3, 2005) (rejecting motion to quash 1782 subpoena for discovery to be used in Bermudan and Hong Kong liquidation proceedings).

Courts in Bermuda, like courts in the Cayman Islands, have a particularly strong basis for receiving foreign discovery in appraisal proceedings. Courts in both jurisdictions, which are

British Overseas Territories well-known as offshore financial centers, expressly disclaim any expertise in valuation and rely heavily upon the evidence and testimony presented by the parties' valuation experts. Chudleigh Decl. ¶ 21. Accordingly, Cayman courts (and by extension, Bermuda courts) will consider **any** evidence that has a bearing on fair value, including evidence located in the United States. This is demonstrated by the facts that in discovery scheduling orders entered in recent appraisal cases, the Cayman courts have expressly contemplated the possibility that dissenting shareholders would seek discovery in the United States via Section 1782. *Id*. ¶ 20. In the context of a short-form merger, the Bermuda Supreme Court held that *all* information related to fair value should be considered. *Id.* ¶ 21. Because Bermuda caselaw surrounding appraisal is comparatively less developed than Cayman caselaw, the Bermuda Supreme Court would look to Cayman Islands decisions for guidance. *Id.* ¶ 17. Given the near universal acceptance of discovery obtained pursuant to Section 1782 in Cayman appraisal proceedings, the Bermuda Supreme Court should likewise be receptive to Section 1782 discovery in an appraisal proceeding. *Id*. ¶ 20.

Thus, the second *Intel* factor weighs heavily in favor of granting the Petition.

### C. The Petition Is Not an Attempt to Circumvent Bermuda Law.

The third *Intel* factor asks, "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country." *See Intel*, 542 U.S. at 244-45. As the Second Circuit recently explained, "circumvention occurs where the applicant uses a § 1782 application to avoid measures [in the foreign jurisdiction] that are *intended* to restrict certain means of gathering or using evidence." *Republic of Nigeria*, 27 F.4th at 153 (emphasis in original). "[W]e have cautioned that courts should not give undue weight to the mere absence in foreign jurisdictions of proof-gathering *mechanisms* available in the United States." *Id*. (emphasis in original).

This *Intel* factor only counsels against discovery if the foreign jurisdiction *affirmatively prohibits* the discovery sought by a petitioner. *In re Accent Delight International Ltd.*, 791 Fed.Appx. 247, 251 (2d Cir. 2019) (upholding approval of section 1782 application because respondent "has not provided any showing that the policy or restrictions of any relevant foreign jurisdiction *prohibit* the discovery sought by Petitioners.") (emphasis added); *In re Application of Polygon Global Partners LLP for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 2021 WL 2117397, at * 10 (S.D.N.Y. May 25, 2021) (there was no circumvention because the Spanish court decision relied upon by respondent did not expressly prohibit discovery of the documents at issue).

Here, there is no Bermuda law or court decision that prohibits the discovery sought in this Petition. There is no Bermuda procedure designed to prevent the discovery of the material requested in this Petition. Chudleigh Decl. ¶¶12-13. Petitioner cannot, as a practical matter, seek this discovery through the Bermuda Supreme Court because, unlike this Court, it lacks jurisdiction over Apollo and Mr. Rowan.[2] But the Bermuda Supreme Court would welcome this Court's assistance in obtaining discovery relevant to the Appraisal Proceeding. Thus, an order from this Court granting the Petition would not be interpreted by the Bermuda Supreme Court as a circumvention of discovery procedures in Bermuda. *Id.*

---

[2] In addition, there is no requirement under Section 1782 that a petitioner must first apply to the foreign court for discovery. *Mees*, 793 F.3d 291 at 303 ("We have rejected such a 'quasi-exhaustion' requirement, reasoning that it 'finds no support in the plain language of the statute and runs counter to its express purposes.'") (internal citation omitted); *In re Top Matrix*, 2020 WL 248716, at *6 ("Applicants are not required to exhaust all available remedies in the foreign jurisdiction before filing a Section 1782 application"). Therefore, Invictus is not required to apply to the Bermuda Supreme Court for discovery prior to filing this Petition.

**D.    The Discovery Sought Is Not Unduly Burdensome.**

Under the fourth *Intel* factor, a court may consider whether the discovery requests are "unduly intrusive or burdensome" and should be "rejected or trimmed." *Intel*, 542 U.S. at 265. The standard used to evaluate burden is the same standard that applies to any federal civil litigation. *See In re Bayer AG,* 146 F.3d 188 at 195 (3d Cir. 1998) ("The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute."). Discovery must therefore be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The discovery Petitioner seeks from Apollo and Mr. Rowan fully complies with this standard.

The proposed subpoenas seek documents and testimony directly relevant to the central issues in the Appraisal Proceeding. *See supra* at 11. Most of the discovery requests are temporally limited to begin on March 1, 2020, approximately one year before the Merger announcement date of March 8, 2021, and to end on March 15, 2022, about two months after the Merger was effectuated and a few weeks after both Apollo and Athene reported their financial results for the last quarter of 2021. This covers a two-year period during which the Merger was likely being negotiated and then consummated. The burden on Respondents is therefore reasonable and proportionate, in light of the direct relevance of the proposed discovery to the valuation of a multi-billion dollar publicly traded company. *See In re Application of Kingstown Partners Master Ltd,* 2022 WL 1081333, at * 6 (S.D.N.Y. Apr. 8, 2022) (requests were reasonable because the

"substantial amount in controversy in the FGL Appraisal, Respondents' access to information relevant to that proceeding, and the parties' resources.").[3]

Much of discovery Petitioner seeks will be uniquely within Respondents' possession or control. But even if some of the requested discovery includes documents that might be obtained through parties to the Appraisal Proceeding, that does not weigh against approving this Petition. Courts have repeatedly recognized that duplicative discovery may be beneficial by providing a means to verify the completeness of another party's production. *See, e.g., Amphenol Corp. v. Fractus, S.A.*, 2019 WL 2521300, at *11 (S.D.N.Y. June 19, 2019) ("it is appropriate for [party seeking production] to 'test the accuracy and completeness of the defendants' discovery responses and their denials that additional information exists.'") (internal citation omitted). One court recently applied this principle in the Section 1782 context, holding that petitioners are "entitled to, just as someone would be in conducting discovery in a regular civil case in the United States, to test two productions against each other." Wang Decl, Ex. P, *FourworldEvent Opportunities, LP v. Houlihan Lokey, Inc.*, No. 21-mc-1019, ECF No. 40 at 26-27 (C.D. Cal. Nov. 22, 2021).

Petitioner also seeks to depose a corporate representative of Apollo and Mr. Rowan personally concerning the same topics as described in the document production requests and to authenticate documents.[4] Depositions are liberally permitted in the context of Section 1782 discovery.[5] *In re Ex Parte Application of Porsche Automobil Holding SE*, 2016 WL 702327, at

---

[3] Petitioner is also willing to meet and confer with Respondent after service of the subpoenas to address any purported scope or burden concerns. Given the *ex parte* posture of most Section 1782 discovery applications, this is the preferred method to resolve a respondent's objections based on alleged burden. *See In re Application of Roessner*, 2021 WL 5042861, at *3 (S.D.N.Y. Oct. 29, 2021) (noting "Petitioner's requests do not appear unduly intrusive or burdensome, and Petitioner avers to his willingness to negotiate with Respondent in good faith to alleviate any undue burden" and instructing that "the Court expects Petitioner and Respondent to meet and confer in good faith and discourages letter-writing campaigns").

[4] Petitioner is willing take the requested depositions via Zoom (or another appropriate videoconferencing platform) to minimize the time and burden associated with them.

[5] Moreover, the Bermuda Supreme Court has the discretion to admit U.S. deposition transcripts. Chudleigh Decl. ¶¶ 23-24.

*13 (S.D.N.Y. Feb. 18, 2016) (it was "relatively evident from precedent in this circuit generous to Section 1782 applicants that there was a reasonable chance [respondents] would have to produce documents and prepare witnesses on a short timetable"). Given the demonstrated relevance of these topics to the Appraisal Proceeding, it is appropriate to ask a corporate representative of Apollo to explain the Merger transaction under oath.

It is likewise appropriate and not unduly burdensome to require Mr. Rowan to provide deposition testimony. Mr. Rowan has had long personal involvement with Athene dating back to 2009 and he was instrumental in effectuating this Merger. *See supra* at 4-5; 6-7. In other words, Mr. Rowan has unique personal insights into the issues central to the Appraisal Proceeding. *See In re Kidd*, 2020 WL 5594122, at *9-10 (D. Conn. Sep. 18, 2020) (granting Section 1782 application for deposition testimony because senior corporate officers "would be *more* and not less likely to have knowledge of the Transaction, given its size and scope.") (emphasis in original); *U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.,* 112 F.Supp.3d 122, 149-50 (S.D.N.Y. 2015) (chief executive officer could provide "unique insight" into company's investment strategies).

### III.     *Ex Parte* Relief Is Warranted.

Petitioner submits that proceeding *ex parte* is appropriate here. Section 1782 applications for discovery are routinely granted *ex parte* in this District on the basis of petitioners' opening papers. *Gushlak v. Gushlak,* 486 Fed.Appx. 215, 217 (2d Cir. 2012) ("it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte.*"); *In re Application of Patokh Chodiev*, 2021 WL 3270042, at *1 (S.D.N.Y. July 30, 2021) ("Courts routinely grant similar petitions *ex parte.*"); *In re Hellard*, 2022 WL 656792 (S.D.N.Y. Mar. 4, 2022) (granting Section 1782 petition *ex parte*). This process would not prejudice Respondents because they would have the opportunity to move for relief prior to the deadlines to comply with

Petitioner's subpoenas. *Gushlak*, 486 Fed. App'x at 217 ("The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash.").

<u>**CONCLUSION**</u>

Respondents are key repositories of evidence that is directly relevant to the central issues in the Appraisal Proceeding. It is fair and reasonable to deploy Section 1782 to compel Respondents to produce evidence necessary to resolve the Appraisal Proceeding. While the Bermuda Supreme Court will welcome the introduction of this highly relevant evidence, it lacks the jurisdiction necessary to order the discovery itself. But this Court has the jurisdiction and the authority to order Respondents to provide the discovery that Petitioner is requesting.

For all of the foregoing reasons, the Court should grant this Petition and authorize Petitioner to serve subpoenas on Apollo and Mr. Rowan pursuant to 28 U.S.C. § 1782 on Respondents substantively in the form set forth as Exhibits A and B to the Wang Decl. for discovery, and grant such other and further relief as the Court deems just and proper.

DATED: May 6, 2022

REID COLLINS & TSAI LLP

By */s/ William T. Reid IV*

William T. Reid IV
Rachel S. Fleishman
Minyao Wang
Yonah Jaffe
REID COLLINS & TSAI LLP
330 West 58th Street, Suite 403
New York, NY 10019
Telephone: (212) 344-5200
Fax: (212) 344-5299
wreid@reidcollins.com
rfleishman@reidcollins.com
mwang@reidcollins.com
yjaffe@reidcollins.com

Jonathan M. Kass
jkass@reidcollins.com
REID COLLINS & TSAI LLP
300 Delaware Avenue
Suite 770
Wilmington, DE 19801
Telephone: (302) 467-1765

*Attorneys for Petitioner*