# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In Re** <br><br> **Invictus Global Management, LLC** <br><br> **Petitioner, for an Order Pursuant to 28 U.S.C.§ 1782 to Conduct Discovery for Use in a Foreign Proceeding** | MISC. No. 22-mc-00130 <br><br> **DECLARATION OF MARK CHUDLEIGH IN SUPPORT OF THE APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782** |

I, Mark Chudleigh, make the following declaration:

1. I am a barrister and attorney and have been licensed to practice law in Bermuda since 1992. I have also been admitted as a barrister (1990) and solicitor (1992) of the courts of England and Wales and to the State Bar of California (1998). I am the managing partner in the Bermuda law firm, Kennedys Chudleigh Limited ("Kennedys Bermuda"). Kennedys Bermuda is a part of Kennedys Law LLP, a full-service international law firm founded in 1899 and which currently has 46 offices around the world. In the United States, Kennedys has offices in New York, New Jersey, Pennsylvania, Illinois, Texas, Florida, California, and Delaware.

2. I completed my legal education at the University of Kent at Canterbury in the United Kingdom in 1990. Thereafter I practiced law in London before moving to Bermuda in 2008. In 2006, I established a Bermuda law firm that subsequently became Kennedys Bermuda.

3. I specialize in commercial and corporate litigation and arbitration. I have performed legal work in corporate, insolvency, trusts, professional liability, contract disputes and insurance areas. I have handled various share appraisal disputes including those arising out of the compulsory purchase of shares from minority shareholders. I regularly appear as an advocate before the courts

in Bermuda. I maintain an international practice and frequently represent clients on multi-jurisdictional matters, particularly matters involving the United States. I have been recognized by *The Legal 500* and by *Chambers Global* (2018 - 2020) as a leading Dispute Resolution, Insurance and Reinsurance, and Trusts lawyer in Bermuda.

4. I have provided expert evidence as to Bermuda law issues in proceedings pending before various courts, including courts in the United States. Throughout the course of this declaration, I refer to several judgments of the Bermudian, Cayman Islands, and English courts, true and correct copies of which are appended as exhibits hereto: Originating Summons commencing the Appraisal Proceeding (Exhibit 1); *South Carolina Insurance Co. v Assurantie Maatschappij* [1987] 1 A.C. 24 (Exhibit 2); *Dreymoor Fertilisers Overseas Pte Limited v Eurochem Trading Gmbh & Ors* [2018] EWCH 2267 (Exhibit 3); *Apex Fund Services Ltd and anor. v Matthew Clingerman and anor* [2019] SC (Bda) 74 Com (Exhibit 4); *Hiscox v Yuval Abraham* [2018] Bda L.R 88 (Exhibit 5); *Lyxor Asset Management S.A. v Phoenix Meridian Equity Limited* [2009] CILR 553 (Exhibit 6); *Golar LNG Limited v World Nordic SE* [2011] Bda L.R. 9 (Exhibit 7); Evidence Act of 1905 (Exhibit 8); Bermuda Rules of the Supreme Court ("RSC") Order 24 (Exhibit 9); *Panayiotou v Sony Music Entertainment (UK) Ltd*, [1994] Ch. 142 [1993] (Exhibit 10); *NetBank v Commercial Money Centre,* [2004] Bda L.R. 46 (Exhibit 11) and *The Patriot Group, LLC v Hilco Financial, LLC and others* [2015] Bda L.R 46 (Exhibit 12).

5. I make this declaration in support of the petition (the "Petition") filed concurrently by Invictus Global Management, LLC ("Invictus" or "Petitioner") in this Court for an order pursuant to 28 U.S.C. § 1782 ("Section 1782") granting Petitioner leave to serve subpoenas for document production and for deposition testimony on Apollo Global Management, Inc. ("Apollo")

and its co-founder and current Chief Executive Officer, Marc Rowan ("Mr. Rowan" and together with Apollo, "Respondents").

6. Invictus was a shareholder in Athene Holding Ltd. ("Athene" or the "Company"), a company incorporated in Bermuda and previously listed on the New York Stock Exchange. In a stock for stock merger transaction completed in January 2022 (the "Merger"), Athene was delisted from that exchange and merged into Apollo. In connection with the Merger, Invictus and other public shareholders of Athene received, for each share of Athene common stock, 1.149 shares of Apollo stock.

7. For the Merger to be effective, Bermuda statute required that it be approved by a majority vote of three quarters of the shares voting at a special general meeting of shareholders. Neither Bermudian law, nor the Company governance documents, nor the Merger agreement required approval by a majority of non-Apollo shareholders for the Merger (i.e. "a majority of the minority"), a common protection in some jurisdictions for minority shareholders from majority shareholders.

8. Invictus contends that the consideration paid for the Merger significantly undervalued its shares in Athene. It has therefore dissented from the Merger under Bermudian law and instituted an appraisal proceeding (the "Appraisal Proceeding") in the Supreme Court of Bermuda (the "Bermuda Supreme Court"). A true and correct copy of the Originating Summons commencing the Appraisal Proceeding, dated December 7, 2021, is attached hereto as **Exhibit 1.** I represent Invictus in the Appraisal Proceeding. Four other former shareholders of Athene have also dissented and are parties to the Appraisal Proceeding.

9. The Appraisal Proceeding seeks a judicial determination of the fair value of the shares of Athene held by Petitioner and other dissenting shareholders before the Merger. The

Appraisal Proceeding remains at an early stage in the procedural process with the parties awaiting a case management conference at which the Bermuda Supreme Court will set directions, including for discovery, fact witness evidence and expert evidence. The first hearing in relation to this process (a scheduling hearing for the case management conference) was scheduled for May 5, 2022 and was resolved by the parties agreeing to a consent order.

10. The dissenting shareholders (including Invictus) and the Company will each retain a valuation expert for the Appraisal Proceeding. The experts will review discovery materials, including any discovery obtained through this Petition, and then submit expert reports to the Bermuda Supreme Court concerning valuation. Invictus may also introduce discovery obtained from this Section 1782 Petition during the trial in this Appraisal Proceeding.

11. I understand that Petitioner seeks leave of this Court to serve subpoenas on Apollo and Mr. Rowan for documents and deposition testimony concerning the following topics: (a) the process leading up to Apollo making the Merger offer; (b) the valuation of the Company and its various components; (c) the relationships (both professional and personal) between Respondents and members of Athene's "Special Committee" and Apollo's "Conflicts Committee; (d) the negotiation process for the Merger; (e) the timing of the announcement of the Merger and the timing of the consummation of the Merger; (f) how the "Conversion Ratio" was calculated and whether an adjustment of the Conversion Ratio was considered before the Merger was consummated; (g) whether majority of the minority protection and a go-shop provision were considered in connection with the Merger; (h) communications with the Special Committee, the Company, financial advisors, other key constituencies, and their professionals concerning the Merger and any alternative transactions; and (i) documents and communications related to October 2019 corporate governance changes at Athene.

12. In my professional opinion, the requested discovery is necessary to the resolution of the issues in the Appraisal Proceeding. Bermuda courts expect the parties to obtain the evidence they believe is necessary to prosecute their case. Thus, there is no requirement to obtain permission from a Bermuda court before seeking relevant non-party evidence abroad. Based on my understanding and experience as a Bermudian lawyer, I believe the Bermuda Supreme Court will be receptive to evidence obtained through foreign (i.e., non-Bermuda) evidence-gathering laws, including Section 1782. I am aware of no Bermudian law or court ruling prohibiting a party in a Bermudian legal proceeding from seeking evidence via Section 1782 or declaring such evidence inadmissible in Bermuda legal proceedings.

13. Therefore, the Bermuda Supreme Court is highly unlikely to view approval by this Court of the Petition as a circumvention of Bermuda discovery procedures.

14. My above conclusions are based on my professional understanding of precedents and court practices in England, Bermuda and the Cayman Islands. For example, in 1987, the highest court in the United Kingdom, the House of Lords, expressly considered in *South Carolina Insurance Co. v Assurantie Maatschappij* [1987] A.C. 24, the issue of whether a litigant in an English legal proceeding could seek evidence located in the United States pursuant to Section 1782. In that case, two defendants to English court proceedings had submitted an application under Section 1782 in the United States District Court for the Western District of Washington, seeking discovery of documents from two non-parties to support their defense in those English proceedings. A copy of this landmark decision is attached hereto as **Exhibit 2**. Although strictly speaking not binding on the Bermuda Supreme Court as a matter of precedent, decisions of the House of Lords are generally considered to be *de facto* binding on the Bermuda Supreme Court and thus followed, given that the same judges that sit in the House of Lords (which is now known

5

as the Supreme Court of the United Kingdom) concurrently sit on the Judicial Committee of the Privy Council, which acts as the highest appellate court for Bermuda, the Cayman Islands and other British Overseas Territories.

15. Lord Brandon, delivering a unanimous judgment for the House of Lords *in South Carolina Insurance Co.*, rejected the plaintiffs' suggestion that the defendants had acted improperly or that the English court should issue an injunction prohibiting defendants from pursuing Section 1782 discovery: "I cannot see that the [defendants], by seeking to exercise a right potentially available to them under the Federal law of the United States, have in any way departed from, or interfered with, the procedure of the English court. All they have done is what any party preparing his case in the High Court here is entitled to do, namely to try to obtain in a foreign country, by means lawful in that country, documentary evidence which they believe that they need in order to prepare and present their case." The English rule, articulated in the *South Carolina Insurance Co* case, granting litigants in English legal proceedings the freedom to seek evidence from outside the country, including under Section 1782, has been consistently applied by later English decisions. For example, in 2018, the English High Court, citing the *South Carolina Insurance Co* case, reaffirmed that "[i]n general, the English court leaves it to the parties to obtain the evidence they think necessary for the advancement of their case by the means of their choosing, provided such means are lawful in the country where they are deployed." D*reymoor Fertilisers Overseas Pte Limited v. Eurochem Trading Gmbh & Ors* [2018] EWCH 2267 (Com). A copy of that decision is attached hereto as **Exhibit 3**. I believe the Bermuda Supreme Court would agree with and adopt the approach of the English Courts concerning Section 1782 discovery, as articulated in the *South Carolina Insurance Co* and D*reymoor Fertilisers* cases.

16. Further, while the Bermuda Supreme Court has never directly ruled on the issue, it has in at least two instances implicitly accepted that it was proper for a litigant to seek discovery in the United States under section 1782. First, in the case of *Apex Fund Services Ltd and anor. v Matthew Clingerman and anor* [2019] SC (Bda) 74 Com, the Bermuda Supreme Court expressly noted that "[n]o dispute turns on the powers conferred on a litigant under §1782 to obtain evidence for use in proceedings outside of the United States." A copy of the *Apex* decision is attached as **Exhibit 4**. Second, in *Hiscox v. Yuval Abraham* [2018] Bda L.R 88, the Bermuda Supreme Court accepted into evidence documents which had been obtained from a non-party based in the United States, pursuant to a section 1782 application granted by the Southern District of New York. A copy of the *Hiscox* decision is attached as **Exhibit 5**. This implicit acceptance by the Bermuda Supreme Court confirms my understanding that courts in Bermuda will follow English precedents and be receptive to evidence that Petitioner is seeking through this Section 1782 Petition.

17. Appraisal proceedings have, to date, been less common in Bermuda than in other jurisdictions, such as the Cayman Islands and Delaware. For that reason, the Bermuda case law surrounding appraisal proceedings is comparatively less developed. However, because the Cayman Islands is, like Bermuda, both a British Overseas Territory and an offshore financial center, the Bermuda Supreme Court will look to Cayman Islands law as persuasive authority in the absence of Bermudian precedents on an issue of law.

18. I understand that Cayman courts have historically accepted evidence obtained in the United States by means of Section 1782, both generally and in appraisal cases. Indeed, the Cayman Islands Court of Appeal in *Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited* [2009] CILR 553 expressly affirmed a party's right to obtain full discovery, including both pre-trial documents and deposition testimony, through Section 1782. A copy of the *Lyxor* decision

is attached as **Exhibit 6**. Importantly, the Cayman court in *Lyxor* cited to and relied on the House of Lords' decision in *South Carolina Insurance Co.*, discussed above. The *Lyxor* decision is *de facto* binding in the Cayman Islands for the same reasons (discussed above) that it is in Bermuda.

19. According to the Cayman Court of Appeal in *Lyxor* (in paragraph 57 of the judgment), the right to seek discovery under Section 1782 "is a right conferred by US law-it is not a right conferred by, or to be withheld under, Cayman law." The Court ruled that because a party has a right to avail itself of a legitimate foreign evidence-gathering process, such as Section 1782, a compelling reason (for example, when a party is acting oppressively) is required to deny the party the right to pursue discovery by those means.

20. I understand that it is a fairly standard practice for dissenters in Cayman appraisal cases to seek discovery through Section 1782. Indeed, I understand that the directions orders in recent Cayman appraisal cases expressly contemplate the possibility of Section 1782 applications being filed in the United States. I expect that the Bermuda Supreme Court will take an approach that is similar to that of its Cayman Islands counterpart.

21. I have been further advised that the Cayman courts have emphasized repeatedly in appraisal cases that **all** documents and information which may have a bearing on the fair valuation question should be provided. Once again, I anticipate that the Bermuda Supreme Court will take the same approach in handling appraisal cases. This is because, similar to a Cayman Islands judge, a Bermudian judge will not consider himself or herself to be an expert in valuation. Instead, a Bermudian judge will be guided by the valuation experts appointed by the company and by the dissenting shareholders, who will provide their expert opinions and testimony on the fair value of the dissenting shareholders' shares. *See, e.g.*, *Golar LNG Limited v World Nordic SE* [2011] Bda L.R. 9 (which concerned a fair value appraisal under Section 103 of the Companies Act 1981 of

Bermuda, relating to short-form mergers). A copy of the *Golar* decision is attached as **Exhibit 7**. The *Golar* court observed that it should consider "all the relevant information that is put before it" regarding valuation. In light of this principle, firmly established in analogous Cayman Islands cases, the Bermuda Supreme Court is likely to view the evidence in the possession of Apollo and Mr. Rowan which Petitioner is seeking through this Petition as highly relevant to the central issues that it needs to resolve in the Appraisal Proceeding.

22. On the basis of the aforementioned English, Bermudian and Cayman Islands precedents, it is my professional opinion the Bermuda Supreme Court is receptive to judicial assistance afforded by this Court through Section 1782 and that any evidence obtained thereby is not inadmissible as a result of the manner in which it has been obtained. The Bermuda Supreme Court will make a final admissibility determination based upon generally applicable rules governing admissibility.

23. As regards to deposition testimony, the Bermuda Supreme Court's approach is the same as that of the Cayman Islands courts as stated in the *Lyxor* case. The Cayman court observed there that the ultimate admissibility of transcripts of depositions taken under United States law was irrelevant to determining whether to allow the deposition to proceed. Instead, the *Lyxor* court explained that admissibility would be a question for a later date:

> The use to which the transcripts of depositions taken in New York may be put in the Cayman proceedings is, of course, a matter for the Grand Court. … no transcript of depositions would be admissible as evidence at trial without an order of the Grand Court. In deciding what order to make in this respect, it will be open to the Grand Court to restrict the use which can be made of the deposition transcripts in the course of any cross-examination of Mr. Rosenberg and Mr. Phlipponneau at the trial.

Ex. 6 at paragraph 47.

24. Here, I understand the Petitioner seeks to depose a corporate representative of Apollo and Mr. Rowan himself. The resulting deposition transcripts may be admissible as hearsay

statements under Bermuda law, although notices may be required under the applicable provisions of Part IIA of the Evidence Act 1905. *See* **Exhibit 8**. In short, consistent with Bermudian law and the persuasive value of *Lyxor*, the Bermuda Supreme Court is receptive to entertaining transcripts of depositions conducted under Section 1782.

25. In addition, the fact that the Appraisal Proceeding is still in its early stages does not alter my conclusion that the Bermuda Supreme Court is receptive to receiving discovery through a Section 1782 application. Indeed, I have been advised that courts in the Cayman Islands have strongly suggested parties in appraisal proceedings to seek Section 1782 discovery as soon as possible after the commencement of a case. The courts in the Cayman Islands are concerned that a late Section 1782 application and the resulting late availability of evidence could impede the normal progress of the Cayman appraisal litigation. In my professional opinion, it is reasonable to expect the Bermuda Supreme Court to take a similar view.

26. Pursuant to Bermudian law, parties to Bermudian proceedings are typically obligated to provide discovery of documents that are in their "possession, custody or power relating to matters in question in the action." Bermuda Rules of the Supreme Court ("RSC") Order 24, rule 1. *See* **Exhibit 9**. But parties are not obliged to produce documents from third parties that are not otherwise in their own "possession, custody or power." These rules apply in the Appraisal Proceeding. Moreover, the Bermuda Supreme Court can only order a non-party to produce discovery or to testify at trial if the non-party is within its jurisdiction. The Court does not have the authority to compel non-parties who are not subject to its jurisdiction to produce discovery.

27. Here, neither Apollo nor Mr. Rowan is a party to the Appraisal Proceeding. I understand that Apollo is incorporated in Delaware and headquartered in New York City. Mr. Rowan is an American citizen, and he does not reside in Bermuda. Therefore, neither Apollo nor

Mr. Rowan is subject to the jurisdiction of the Bermuda Supreme Court. It makes no jurisdictional difference under the law of Bermuda that Apollo is now the majority owner of Athene.

28. In the absence of jurisdiction over Respondents, the Bermuda Supreme Court will not be able to direct Apollo or Mr. Rowan to produce discovery in the Appraisal Proceeding. Therefore, absent assistance from this Court via a Section 1782 application, Petitioner will not have a practicable pathway to obtain any discovery directly from Respondents in a timely manner.

29. For the sake of completeness, I want to note that the Bermuda Supreme Court is permitted to issue a letter of request or "Letter Rogatory" under a procedure akin to that under the *Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters*. However, such applications are of limited utility in practice. The process is cumbersome, time-consuming, and unduly restrictive. For example, the party making the application is not entitled to the broad discovery permissible under Section 1782, but is instead is restricted to seeking specific and identifiable evidence for use at trial. As one English case put it, "the letter of request must be confined to particular documents, although these may be described compendiously ...." *See Panayiotou v Sony Music Entertainment (UK) Ltd*, [1994] Ch. 142 (1993). A copy of this case is attached hereto as **Exhibit 10**. Most litigants, like Petitioner here, do not have sufficient knowledge about the discovery in the possession of a target to formulate a request with the required specificity. Two cases from the Bermuda Supreme Court have also made it clear that the "Letter Rogatory" process is not consistent with pre-trial discovery, which is what Petitioner is attempting to do to provide the necessary discovery to its valuation expert. *See NetBank v Commercial Money Centre* [2004] Bda L.R. 46 and *The Patriot Group, LLC v Hilco Financial, LLC and others* [2015] Bda L.R 46, which are attached respectively hereto as **Exhibit 11** and **Exhibit 12**.

30. A similar Hague Convention like process exists in the Cayman Islands, yet I understand that Cayman Islands litigants which seek to obtain evidence in the United States do not usually follow that route. I understand that they instead generally use Section 1782. Just like in the Cayman Islands, there is no requirement under the law of Bermuda that a litigant has to resort to this process before filing a Section 1782 application with a court in the United States. In my experience, it is more common for litigants in Bermuda to use Section 1782 to obtain evidence located in the United States. This is a route that is often used by liquidators of Bermuda companies, where the promoters, managers and other service providers are located in the United States. This point is illustrated by the *Apex Fund Services* case discussed in paragraph 16 and attached hereto as **Exhibit 4**. Therefore, the Hague Convention does not bar Invictus filing this Petition.

31. To the extent the contents of this declaration are within my personal knowledge, they are true and accurate. To the extent the contents are not within my personal knowledge, they are true to the best of my current knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 5, 2022 at Hamilton, Bermuda.



MARK CHUDLEIGH