**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

IN RE PETITION OF

Invictus Special Situations Master I, LP for an
Order Pursuant to 28 U.S.C. § 1782 to Conduct
Discovery for Use in a Foreign Proceeding.

Case No. 22-mc-00130 (ALC)

**INVICTUS SPECIAL SITUATIONS MASTER I, LP'S MEMORANDUM OF LAW IN
OPPOSITION TO (A) MOTION TO QUASH SUBPOENAS BY RESPONDENTS
APOLLO GLOBAL CAPITAL MANAGEMENT, INC. AND MARK ROWAN, AND (B)
MOTION TO VACATE ORDER PERMITTING DISCOVERY BY
INTERVENOR ATHENE HOLDING LTD.**

William T. Reid IV
Rachel S. Fleishman
Minyao Wang
Yonah Jaffe
**REID COLLINS & TSAI LLP**
420 Lexington Avenue, Suite 2731
New York, NY 10170
Telephone: (212) 344-5200
Fax: (212) 344-5299
wreid@reidcollins.com
rfleishman@reidcollins.com
mwang@reidcollins.com
yjaffe@reidcollins.com

Dated: December 20, 2022

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................ 1

RELEVANT BACKGROUND .............................................................................. 3

      A.     The Merger ...................................................................................... 3

      B.     The Appraisal Proceeding ............................................................ 7

      C.     The Subpoenas ............................................................................. 7

ARGUMENT ........................................................................................................... 8

      I.     The TWO DISPUTED *Intel* Factors Weigh Strongly in Petitioner'S Favor. ......... 9

      A.     Petitioner Is Not Circumventing Bermuda Proof-Gathering Restrictions. .............................................................................. 9

      B.     *Intel* IV: The Subpoenas Are Not Unduly Burdensome .......................... 14

      II.    There is no basis to "defer" this section 1782 application .................................... 19

      III.   The requested depositions are warranted ............................................................. 20

      A.     Apollo Is Subject to a Rule 30(b)(6) Deposition ...................................... 20

      B.     The "Apex" Doctrine Does Not Immunize Mr. Rowan from a Deposition ................................................................................. 21

CONCLUSION ....................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Andes Petroleum Ecuadro Ltd. v. Occidental Expl. & Prod. Co.*,
    2022 WL 3227874 (S.D.N.Y. Aug. 10, 2022) ...................................................................... 22

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*,
    747 F.3d 1262 (11th Cir. 2014) ........................................................................................... 15

*Application of Malev Hungarian Airlines*,
    964 F.2d 97 (2d Cir. 1992) .................................................................................................. 14

*Azima v. Citibank, N.A.*,
    2022 WL 1287938 (S.D.N.Y. Apr. 29, 2022) ..................................................................... 14

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012) ............................................................................................... 8, 9

*Breaking Media, Inc. v. Jowers*,
    2021 WL 1299108 (S.DN.Y. April 7, 2021) ...................................................................... 16

*Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015) ................................................................................................ 20

*Concord Boat Corp. v. Brunswick Corp.*,
    169 F.R.D. 44 (S.D.N.Y. 1996) ..................................................................................... 15, 16

*Euromepa, S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995) .......................................................................................... 10, 11

*Ex parte Abdalla*,
    2021 WL 168469 (S.D.N.Y. Jan. 19, 2021) ....................................................................... 16

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*,
    27 F.4th 136 (2d Cir. 2022) ................................................................................................ 10

*Harapeti v. CBS Television Stations Inc.*,
    2021 WL 3932424 (S.D.N.Y. Sept. 2, 2021) ................................................................ 21, 22

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
    2017 WL 4676806 (S.D.N.Y. Oct. 17, 2017) ..................................................................... 16

*In re Aso*,
    2019 WL 2345443 (S.D.N.Y. June 3, 2019) ...................................................................... 19

*In re Biomet Orthopaedics Switzerland GmbH*,
    742 F. App'x 690 (3d Cir. 2018) ......................................................................................... 15

*In re Evenstar Master Fund*,
    2021 WL 3829991 (S.D.N.Y. Aug. 27, 2021) ......................................................... 15, 19, 21

*In re Ex Parte Application of Kleimar N.V.*,
    220 F. Supp. 3d 517 (S.D.N.Y. 2016) ................................................................................. 15

*In re Ex Parte Application of Porsche Automobil Holding SE*,
  2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) ........................................................... 20

*In re Ex Parte Application of Qualcomm Inc.*,
  162 Supp. F.3d 1029 (N.D. Cal. 2016) ................................................................. 10

*In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*,
  2015 WL 4040420 (S.D.N.Y. June 29, 2015) ........................................................ 11

*In re Hulley Enterprises, Ltd.*,
  358 F.Supp.3d 331 (2019) .................................................................................. 16

*In re Kidd*,
  2020 WL 5594122 (D. Conn. Sep. 18, 2020) ......................................................... 23

*In re Kingstown Partners Master Ltd.*,
  2022 WL 1081333 (S.D.N.Y. Apr. 2022) .............................................................. 18

*In re Koninklijke Philips*,
  2018 WL 620414 (S.D. Cal. Jan. 30, 2018) ........................................................... 12

*In re Kuwait Ports Auth.*,
  2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021) ................................................. *passim*

*In re Liverpool Ltd. P 'ship*,
  2021 WL 3793901 (D. Del. Aug. 26, 2021) ....................................................... 16,17

*In re Microsoft Corp.*,
  428 F. Supp. 2d 188 (S.D.N.Y. 2006) ................................................................... 10

*In re O'Keeffe*,
  646 F. App'x 263 (3d Cir. 2016) ......................................................................... 14

*In re Polygon Glob. Partners LLP*,
  2021 WL 2117397 (S.D.N.Y. May 25, 2021) ......................................................... 10

*In re Procter & Gamble Co.*,
  334 F. Supp. 2d 1112 (E.D. Wis. 2004) ................................................................ 11

*In re Top Matrix Holdings Ltd.*,
  2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) ........................................................... 19

*In re Vale S.A.*,
  2021 WL 311236 (S.D.N.Y. Jan. 29, 2021) ........................................................... 15

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ............................................................................ 7, 9, 14, 19

*Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  2020 WL 6273396 (S.D.N.Y. Aug. 28, 2020) .................................................. 21, 22

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015) ........................................................................ 10, 15

*Myun-Uk Choi v. Tower Rsch. Cap. LLC*,
  2019 WL 6271324 (S.D.N.Y. Nov. 25, 2019) ........................................................ 21

*Probulk Carriers Ltd. v. Marvel Int'l Mgmt. and Transp.*,
    180 F.Supp.3d 290 (S.D.N.Y. 2016)....................................................... 20

*Retail Brand All., Inc. v. Factory Mut. Ins. Co.*,
    2008 WL 622810 (S.D.N.Y. Mar. 7, 2008) ........................................ 16

*South Carolina Insurance Co. v. Assurantie Maatschappij*,
    [1987] 1 A.C. 24 ..................................................................... 12, 13, 14

**Statutes**

28 U.S.C. § 1782..................................................................... *passim*

28 U.S.C. § 1782(a) .......................................................................... 8

**Rules**

Fed. R. Civ. P. 30(b)(6)................................................................ 20, 21

Fed. R. Civ. P. 26 ......................................................................... 15

Petitioner Invictus Special Situations Master I, LP ("**Petitioner**" or "**Invictus**") respectfully submits this memorandum of law in opposition to (a) the Motion to Quash Subpoenas filed by Apollo Global Capital Management, Inc., ("**Apollo**") and Marc J. Rowan ("**Mr. Rowan**" and together with Apollo "**Respondents**") (ECF No. 37) ("**Apollo Mot.**") and, (b) the Motion to Vacate Order Permitting Discovery filed by intervenor Athene Holdings, Ltd. ("**Athene**" or the "**Company**") (ECF No. 35) ("**Athene Mot.**").[1] This brief is supported by (a) the Second Declaration of Mark Chudleigh, a lawyer qualified in Bermuda, England and California (the "**Second Chudleigh Decl.**"), and (b) the Second Declaration of Minyao Wang (the "**Second Wang Decl.**"), a New York qualified lawyer.

## PRELIMINARY STATEMENT

This matter arises under 28 U.S.C. § 1782 ("**Section 1782**") which permits an interested person to seek discovery for use in a foreign legal proceeding. Invictus is a former Athene shareholder. Incorporated in Bermuda, Athene is a major player in the annuity and life reinsurance market. Athene was traded on the New York Stock Exchange from 2016 until 2022, when it was delisted as a result of a $11 **billion** "take-private" stock-for-stock transaction (the "**Merger**") through which Apollo, Athene's founding and long-time controlling shareholder, became Athene's sole owner. Invictus and other former shareholders whose stakes in Athene were involuntarily extinguished are seeking to recover the fair value of their investments in an appraisal proceeding (the "**Appraisal Proceeding**") in the Supreme Court of Bermuda (the "**Bermuda Supreme Court**").

---

[1] Capitalized terms not defined herein reference definitions in Petitioner's Memorandum of Law in Support of the Ex Parte Petition for an Order to Take Discovery, Dated May 6, 2022, ECF No. 5 ("**Petition**" or "**Pet.**").

Invictus filed a Section 1782 petition against Apollo and its CEO, Mr. Rowan, who has been closely associated with Athene since its inception and who personally negotiated the Merger. The Petition seeks highly relevant documents and testimony for use in the Appraisal Proceeding. By Order entered on May 9, 2022 [ECF No. 11], this Court authorized Petitioner to serve subpoenas (the "**Subpoenas**") on Respondents.  After service of the Subpoenas, Petitioner and Respondents met and conferred.  Respondents produced a small set of documents that had been cherry-picked from their files, but declined to search any emails or custodian ESI for further production. Respondents, along with Athene, have now moved to quash the Subpoenas.  Their bases for quashing are meritless.

*First*, the discovery Invictus seeks is consistent with Bermuda law. The Chief Justice of the Bermuda Supreme Court presiding over the Appraisal Proceeding stated on the record that Invictus is entitled to seek Section 1782 discovery as a matter of Bermuda law.  Moreover, there is nothing in Bermuda law or in rulings in the Appraisal Proceeding to suggest that the discovery sought in the Petition is *prohibited*. Thus, Athene cannot establish through the requisite "authoritative proof" that the Petition is an attempt to circumvent Bermuda law.

*Second*, Bermuda law does not narrowly limit evidence in the Appraisal Proceeding to intrinsic valuations issues.  Invictus' requests for discovery concerning the process by which Apollo consummated the Merger are highly relevant to the Appraisal Proceeding and are permitted by Bermuda law. Respondents may not avoid producing relevant discovery based on their generalized and conclusory assertions that responding to the Subpoenas would be burdensome, especially in light of their direct role in executing the Merger and their resources.

*Third*, it would be inappropriate for the Court to defer a ruling on the Petition to a future stage in the Appraisal Proceeding.  Respondents' unorthodox request is premised on an incorrect

understanding of Bermuda law, is inconsistent with the letter and spirit of Section 1782, and in light of the Bermuda procedural requirements, is all but certain to deprive Petitioner of its right to obtain Section 1782 discovery for use in the Appraisal Proceeding.

*Fourth*, Respondents offer no reason to depart from the settled practice in this Circuit to liberally permit depositions under Section 1782.  Moreover, Mr. Rowan cannot invoke the "apex" doctrine to avoid appearing at a deposition because he was deeply involved in the Merger and therefore has unique and personal knowledge relevant to the Appraisal Proceeding.

Invictus seeks judicial assistance to compel Respondents to comply with their discovery obligations. Invictus specifically requests the Court to deny these Motions and order Apollo and Mr. Rowan to produce documents responsive to the Subpoenas and to appear for depositions.

## RELEVANT BACKGROUND[2]

### A.       The Merger

Athene is a Bermuda-registered annuity and life reinsurance holding company founded in 2009 with the active support of Apollo and Mr. Rowan. Mr. Rowan has at all relevant times been one of the most senior executives at Apollo. Through its subsidiaries, Athene issues, reinsures, and acquires retirement savings products, including fixed annuities and funding agreements, worldwide. Athene's principal source of revenue is its "retirement services" business. Pet. at 4-5.

Apollo has always been a controlling shareholder of Athene.  Athene's deep relationship with its controlling shareholder has long been a source of controversy.  For example, Apollo received an annual $400 million "management fee" from Athene, which was reportedly twice the market value of the work that Apollo did for Athene as an asset manager.  *Id*. at 5-6. Apollo's disproportionate control of Athene caused Athene to trade at a discount relative to its asset value

---

[2] This factual section is mainly drawn from Invictus's opening brief.  *See* Pet. at 4-11.

on the New York Stock Exchange.  *Id*. And Athene shareholders sued Apollo in Bermuda courts multiple times regarding various corporate misgovernance issues.  *Id*.

On March 8, 2021, Apollo and Athene announced the terms of the Merger.  Each Athene share would be exchanged for a fixed ratio of 1.149 shares of Apollo common stock (the "**Exchange Ratio**").  After the Merger, existing Apollo shareholders would own approximately 76% of the combined company, and former Athene shareholders would own the remaining 24%.  *Id*. at 6.  Mr. Rowan, who had become the CEO of Apollo after the departure of Leon Black, personally spearheaded the Merger.  Bloomberg correctly described Mr. Rowan as "the force behind" the Merger.  *See* ECF No. 6, Ex. G at 1.  The Company's proxy statement for the Merger detailed Mr. Rowan's significant personal involvement.  *See* ECF No. 6, Ex. H.  For example, before the Merger process was formally launched, Mr. Rowan had a one-on-one lunch with Marc Beilinson, Athene's nominal lead independent director, to discuss the parameters of the contemplated transaction.  *Id*. at 137.  Mr. Rowan gave Mr. Beilinson advance notice before Mr. Rowan signed Apollo's written offer to acquire Athene.  *Id*. During that conversation, Mr. Rowan "asked Mr. Beilinson certain process-related questions" regarding the proposed Merger.  *Id*. Mr. Rowan attended key internal Apollo meetings regarding the Merger and delivered a "management presentation providing a detailed discussion" regarding the potential Merger to Athene's special committee.  *Id*. at 142-43.

Petitioner, along with four other dissenting shareholders (collectively the "**Dissenting Shareholders**"), contend in the Appraisal Proceeding that the Exchange Ratio for the Merger was inadequate and that they did not receive "fair value" for their Athene shares.  Second Chudleigh Decl. ¶ 3.  Among other things, the Dissenting Shareholders have identified the following specific issues with the Merger that will be addressed in the Appraisal Proceeding:

*First*, the Merger required approval by a majority of the shares voting at a special general meeting of Athene shareholders.  Apollo held 35 percent of Athene's voting power, which meant Apollo's self-interested vote made approval of the Merger highly likely.  In that situation, it would have been customary for the Merger agreement to require approval by the majority of non-Apollo shareholders ("**MoM Protection**").  Yet the Merger lacked MoM Protection. Absent this protection, organized opposition to the Merger was doomed to fail.  Thus, the Merger was inevitably approved in December 2021. Pet. at 7.

*Second*, strong evidence suggests that certain members of Apollo's standing "conflicts committee" and Athene's "special committee" were tainted with conflicts of interest that prevented them from exercising independent judgment when approving the Merger.  Pet. at 8.

*Third*, Athene did not solicit a single market-tested bid to test whether the Exchange Ratio was fair.  Despite the transaction's magnitude and complexity, only three weeks separated Mr. Rowan's initial discussion with Mr. Beilinson (February 17, 2021) regarding a possible merger and the public announcement of the Merger (March 8, 2021).  This absence of market testing and the compressed timeframe suggest that the Merger process was a sham to benefit Apollo. *Id*. at 8-9.

*Fourth*, the Merger announcement was timed perfectly to exploit a low Merger price. Shortly after the Merger was announced in March 2021, Athene released its expectations-beating earnings for the first quarter of 2021.  Because the Exchange Ratio was not subject to later adjustments under the Merger agreement, Athene shareholders would not benefit from the significant increase in Athene's share price between the Merger announcement date in March 2021 ($48.88 per share) and the Merger closing date in January 2022 ($83.75 per share).  During the same period, Apollo's stock gained about 50%.  Even after factoring in the initial deal premium –

16.5% – Athene's stock price was up 40% during that interim period.  Because the Exchange Ratio did not change, Apollo reaped all of the benefits of Athene's increased share price.  *Id*. at 9.

*Fifth*, Mr. Rowan has made a series of incriminating admissions demonstrating that Apollo implemented the Merger at the expense of and to the detriment of the non-Apollo minority shareholders, including the Dissenting Shareholders.  *Id*. at 9-10.  For instance, during his Apollo Investor Day discussion in October 2021, Mr. Rowan explained that Apollo opportunistically "backed up the truck" to "buy the cheap asset" at an "almost unheard of" price at the expense of Athene's public holders:

> We got to buy this excess cash flow on a merged basis at a very reasonable price. You can see here, to be able to buy something that is strategic and recurring and important to us between 5 and 6x cash flow, almost unheard of. ***One thing we have not forgotten at Apollo is when the market does not understand something. We are supposed to back up the truck and buy the cheap asset. We backed up the truck and bought the cheap asset.***

*See* ECF No. 6, Ex. E at 16 (emphasis added).

Mr. Rowan proceeded during the call to explain that Apollo considered Athene's retirement services annuity insurance business a very valuable asset. *Id.* at 17. Trumpeting Athene's consistent 15%+ cash-on-cash ROE without leverage while holding massive amounts of excess capital, Rowan concluded that Athene was "hugely undervalued":

> In case I didn't make the point, this is how we think about it internally. We think that the public market actually values the tail of the dog [*i.e.*, alternative investment companies that earn only a fraction of tail economics above a preferred return hurdle] at better than 30x PE. The meat [*i.e.*, Athene, which earns] 100% over 2.5%, the market values at 7x to 8x. We have already made our bet. We made our bet by issuing a massive number of [Apollo] shares to consolidate that piece of Athene that we did not own. We did it willingly and joyfully, and we can't wait till January 1 to get going.

*Id*. at 17-18. In addition, according to Apollo's October 2021 Investor Day presentation deck, "Athene is today and has always been, massively capital generative." ECF No. 6 Ex. L at 164.

B.      **The Appraisal Proceeding**

The Dissenting Shareholders commenced the Appraisal Proceeding in Bermuda on December 3, 2021. In the Appraisal Proceeding, the Bermuda Supreme Court will determine the fair value of the Dissenting Shareholders' former equity interests in Athene. To the extent fair value exceeds the value of the Apollo shares the Dissenting Shareholder received, the merged entity will be ordered to pay the difference to the Dissenting Shareholders. Second Chudleigh Decl. ¶ 3. The Bermuda Supreme Court is likely to consider both accounting and valuation evidence, as well as evidence concerning the process that led to the Merger, including any conflicts of interest, self-dealing or possible irregularities. *Id.* ¶¶ 50-54.

The Bermuda Supreme Court held a Directions Hearing on November 2, 2022. During that hearing, presiding Chief Justice of Bermuda observed, and counsel to Athene acknowledged, that Invictus was entitled to seek Section 1782 discovery as a matter of Bermuda law. *Id.* ¶ 11. The Bermuda Supreme Court thereafter issued a Directions Order. *Id.* ¶ 7. The Bermuda Supreme Court did not, in its Directions Order, limit third-party discovery, including discovery through Section 1782, in any way. *Id.* ¶ 23. The parties in the Appraisal Proceeding completed initial discovery and on December 19, 2022, disclosed their respective valuation experts. *Id.* ¶ 7.

C.      **The Subpoenas**

On May 6, 2022, Invictus filed the Petition with this Court. *See* ECF Nos. 1 to 6. On May 9, 2022, Judge Preska issued an *ex parte* order granting the Petition and authorized Invictus to serve the Subpoenas on Apollo and Mr. Rowan. ECF No. 11. In her order, Judge Preska determined that the Petition satisfied both the statutory requirements of Section 1782 and the discretionary factors set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). *Id.* at 1.

Invictus served the Subpoenas on Apollo and Mr. Rowan. Invictus and Respondents then met and conferred regarding the Subpoenas. Apollo made two very limited productions, consisting almost entirely of repetitive board minutes and materials it cherry-picked from a central file. Invictus sought to negotiate custodians and search terms. Second Wang Decl. ¶¶ 3-5. But Apollo declined to further search its files using search terms. *Id*. Instead, Respondents and Athene sought the Court's leave to file these motions. *See* ECF Nos. 28 and 29.[3]

## ARGUMENT

Section 1782 permits litigants in a foreign legal proceeding to invoke the power of a federal district court to obtain discovery for use in that foreign proceeding. Section 1782(a) states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). Section 1782 "has, over the years, been given increasingly broad applicability." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (internal quotation marks omitted). The twin purposes of Section 1782 are to "provide 'equitable and efficacious' discovery procedures in United States courts for the benefit of tribunals and litigants involved in litigation with international aspects" and to encourage foreign courts to reciprocate for U.S.-based litigation and parties. *Id*. (internal quotation marks omitted).

In assessing a Section 1782 petition, a district court first determines whether the statutory requirements have been met. *Id*. A petitioner must make the following three threshold showings:

---

[3] Petitioner does not oppose Athene's motion to intervene, but opposes its motion to vacate on the merits. *See* ECF No. 30 at 1.

(i) the respondent "resides" or is "found" in the judicial district in which the Section 1782 petition is filed; (ii) the requested discovery is "for use in a proceeding in a foreign or international tribunal"; and (iii) the petitioner is an "interested person." *Id.* Here, neither Respondents nor Athene disputes that Petitioner has satisfied these three statutory requirements.

Thus, this Court's inquiry turns to four discretionary *Intel* factors to decide whether to grant a Section 1782 application: (i) whether the discovery target is a "nonparticipant in the matter arising abroad," such that discovery is better obtained through section 1782 than in the foreign proceeding; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (iv) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

Here, Respondents and Athene implicitly concede that *Intel I* (that Petitioner is not a participant in the Appraisal) and *Intel II* (that Bermuda is receptive to Section 1782 discovery assistance) favor Section 1782 Discovery. They argue only that (i) Petitioners seek to circumvent Bermuda law (*Intel III*); (ii) the Subpoenas present an undue burden (*Intel IV*); (iii) the Court should decline to adjudicate the Petition until some unspecified later stage of the Appraisal Proceeding; and (iv) Apollo and Mr. Rowan are not subject to depositions.

As explained below, each of these arguments is meritless.

# I.    THE TWO DISPUTED *INTEL* FACTORS WEIGH STRONGLY IN PETITIONER'S FAVOR.

## A.    Petitioner Is Not Circumventing Bermuda Proof-Gathering Restrictions.

Under *Intel III*, this Court considers whether the Petition is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."

542 U.S. at 265. Courts "should consider only *authoritative proof* that a foreign tribunal would reject evidence obtained with the aid of section 1782 . . . as embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (emphasis added).

The Second Circuit recently explained that "circumvention [only] occurs where the applicant uses a § 1782 application to avoid measures that are *intended* to restrict certain means of gathering or using evidence." *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd*., 27 F.4th 136, 153 (2d Cir. 2022) (emphasis in original). A respondent cannot demonstrate circumvention by pointing to "mere absence in foreign jurisdictions of proof-gathering *mechanism*s available in the United States." *Id*. (emphasis in original). In other words, the discovery methods need not be available in the foreign forum. *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015) ("§ 1782 contains no foreign-discoverability requirement"). Accordingly, this Court has observed that the absence of an "express restriction" by the foreign court regarding the discovery sought by a Section 1782 applicant is usually fatal to the circumvention argument. *In re Kuwait Ports Auth.*, 2021 WL 5909999, at *10 (S.D.N.Y. Dec. 13, 2021) (Carter, J.); *see also In re Polygon Glob. Partners LLP,* 2021 WL 2117397, at *10 (S.D.N.Y. May 25, 2021) (even though the Spanish court had declined to order production, the Section 1782 application did not constitute circumvention because the Spanish court did not *affirmatively prohibit* the discovery sought).[4]

---

[4] Indeed, cases that found circumvention illustrate how high the bar is for a respondent under this *Intel* factor. For example, in *In re Microsoft Corp*., 428 F. Supp. 2d 188, 195 (S.D.N.Y. 2006), the European Commission specifically represented that that the Section 1782 application in question was an attempt to evade relevant European discovery rules. In *In re Ex Parte Application of Qualcomm Inc.*, 162 Supp. F.3d 1029, 1041 (N.D. Cal. 2016), the Government of South Korea filed an *amicus* brief specifically stating that granting the requested discovery would jeopardize

Athene falls far short of satisfying this demanding standard through "authoritative proof" that Petitioner seeks to circumvent Bermuda law. *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 at 1100.[5]  Neither Bermuda law generally nor any decision in this Appraisal Proceeding discourages this discovery.  *See* Second Chudleigh Decl. ¶ 23.

Thus, Athene has the standard backwards to the extent it protests that the Directions Order in the Appraisal Proceeding does not *expressly* authorize Section 1782 discovery.  *See* Athene Mot. at 5. Athene must point to a provision in the Directions Order that *expressly prohibit*s the discovery sought in the Petition.  But Directions Order does not prohibit third-party discovery generally or Section 1782 discovery in particular.  Second Chudleigh Decl. ¶¶ 8, 23.

Athene's Bermuda counsel, Kevin Taylor, seeks to portray Bermuda as unwelcoming of evidence obtained via a Section 1782 petition, ***without citing any authorities***.  ECF No. 34, ¶ 23. To the contrary, the Bermuda Supreme Court ***stated on the record in this Appraisal Proceeding*** that Dissenting Shareholders were ***permitted*** Section 1782 discovery in the United States:

> "MR TAYLOR: And my lord, so -- and the other thing in this context that is important … is you will see in the material that the Plaintiffs in this case have utilised the available rules in the US to subpoena Apollo and get information directly from Apollo.  And so my lord, and look, I pass no comment on that.  I'm not a US lawyer, presumably they're entitled to do that. But in those circumstances when we've –

---

the integrity of a regulatory investigation there.  Finally, in *In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1116, n.3 (E.D. Wis. 2004), the court stated that circumvention would exist if a foreign government made a specific request to a United States court to deny a Section 1782 application.  Athene does not even come close.

[5] Tellingly, the *only* circumvention case Athene cites has an unusual and easily distinguishable fact pattern.  In *In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*, 2015 WL 4040420 (S.D.N.Y. June 29, 2015), petitioner unsuccessfully sought discovery in a domestic arbitration confirmation case.  It then repackaged its discovery requests under the guise of a Section 1782 application. The court was skeptical that petitioner intended to prosecute a foreign action.

CHIEF JUSTICE HARGUN:  There is a House of Lords' decision which says that they are entitled to do it.

MR TAYLOR:        Were entitled to do it whether or not subsequently, my lord, you decide that everything's admissible I think remains with you.  And that's something for down the road.

CHIEF JUSTICE HARGUN:  Yes."

*See* Second Chudleigh Decl. ¶ 11 (citing Directions Hearing transcript); Exhibit 1 at 26.[6]

As Mr. Chudleigh explains, Chief Justice Hargun was likely referring to the landmark *South Carolina Insurance Co. v. Assurantie Maatschappij* decision, issued in 1987 by the House of Lords, then the highest court in the United Kingdom.  *Id.* ¶ 12.  That case enshrined the right of a party to a litigation in the United Kingdom to apply for discovery through Section 1782.  The House of Lords held that this right can be denied only in exceptional circumstances where (a) the requesting party has invaded the legal or equitable rights of its adversary, or (b) the requesting party has behaved in an unconscionable manner. *Id.*  Because Bermuda is an Overseas Territory of the United Kingdom, the decisions of the House of Lords (and its successor, the Supreme Court of the United Kingdom) are considered *de facto* binding law in Bermuda.  *Id.* ¶ 13.

Thus, the judge presiding over the Appraisal Proceeding confirmed that *South Carolina Insurance Co.* provides Invictus the  right as a matter of Bermuda law to bring a Section 1782 application.  Mr. Taylor failed to object to Chief Justice Hargun's comment, and in fact indicated that he agreed with the judge.  *Id.* ¶¶11-15.  Given that the Bermuda Supreme Court openly

---

[6] The mere fact that a foreign court is aware of a pending Section 1782 (without making the kind of specific positive comment that the Chief Justice made here) is enough to favor discovery under *Intel III*.  *See In re Koninklijke Philips*, 2018 WL 620414, at *2 (S.D. Cal. Jan. 30, 2018).

approved of this discovery and Athene did not challenge that approval, Athene cannot now credibly claim Petitioner seeks to circumvent Bermuda law.[7]

Moreover, the scope of civil documentary discovery in Bermuda is broad and is similar to civil documentary discovery in the U.S. *Id.* ¶ 19. This standard is based on the "train of enquiry" test which is itself derived from an English court case decided in 1882. *Id.* ¶ 20. This standard has been confirmed in multiple Bermuda decisions and a leading treatise on Bermuda civil litigation. *Id.* ¶¶ 21-22. Bermuda appraisal cases are no exception to the generally applicable rules governing documentary discovery in Bermuda. *Id.* ¶ 24. Indeed, in a recent appraisal decision, the Bermuda Supreme Court quoted from multiple cases of the Grand Court of the Cayman Islands which held that dissenting shareholders in Cayman appraisal cases are entitled to broad discovery. Athene's narrow view of discovery in Bermuda appraisal cases is baseless. *Id.* ¶¶ 24-27.[8]

Athene also conflates *trial* depositions with *discovery* depositions under Bermuda law. Mr. Taylor only discusses only Bermuda procedural points regarding *trial* depositions. These depositions do not govern the *discovery* depositions requested herein. As Mr. Chudleigh discusses in his declaration, while Bermuda does not have its own procedures for discovery depositions, it does not object to a party to a Bermuda availing itself of third-party discovery procedures to secure discovery depositions outside of Bermuda. *Id.* ¶¶ 35-41. Mr. Chudleigh has pointed to a specific example wherein the Bermuda Supreme Court considered the transcript of a United States discovery deposition. *Id.* at ¶41 (discussing case). Therefore, an attempt to introduce deposition transcripts in the Appraisal Proceeding is not circumvention.

---

[7] As Mr. Chudleigh points out, Athene could have asked the Bermuda Supreme Court for an injunction to stop this Petition. Second Chudleigh Decl. ¶¶ 16-18. That it has not done so is telling.

[8] As Mr. Chudleigh explained in his initial declaration, Cayman case law is persuasive in Bermuda because both jurisdictions are British Overseas Territories that act as "offshore" financial centers. *See* ECF No. 7 ¶ 17.

Finally, Athene suggests that Invictus must seek discovery through a letter of request instead of a Section 1782 petition. This argument is wrong both as a matter of U.S. law and as a matter of Bermuda law. Multiple courts have held that Section 1782, by its plain text, is a statutory *alternative* to letters rogatory. *See Application of Malev Hungarian Airlines*, 964 F.2d 97, 100-101 (2d Cir. 1992) ("The legislative history, case law, and critical commentaries strongly support our conclusion that the provision indeed means what it says."); *see also In re O'Keeffe*, 646 F. App'x 263, 266 (3d Cir. 2016) ("Requiring district courts to consider whether the relief could have been achieved through a letter rogatory would not be in line with the statutory text" of Section 1782). Moreover, *South Carolina Insurance Co.* held that as a matter of English law a litigant can bypass the letters rogatory process and apply for discovery under Section 1782. Second Chudleigh Decl. ¶ 33. That holding is *de facto* binding in Bermuda. *Id.*

For all the above reasons, neither Bermuda law nor any ruling by the Bermuda Supreme Court in the Appraisal Proceeding "place[d] any express restriction on the [petitioner] obtaining the Requested Discovery sought in this Application." *Kuwait Ports Auth.*, 2021 WL 5909999, at *10. Thus, this *Intel* factor overwhelmingly "favors authorizing the discovery requests." *Id.*[9]

## B. *Intel* IV: The Subpoenas Are Not Unduly Burdensome

This *Intel IV* factor looks to whether the requested discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. Courts interpret this factor under the liberal discovery standard of F.R.C.P. 26. *See, e.g.*, *Azima v. Citibank, N.A.*, 2022 WL 1287938, at *3 (S.D.N.Y. Apr. 29, 2022) ("Under these circumstances, the Court finds that the proposed subpoena is not

---

[9] As Mr. Chudleigh emphasizes, the Bermuda Supreme Court will ultimately determine whether the evidence obtained through this Section 1782 Petition, including deposition transcripts, is admissible in the Appraisal Proceeding. Second Chudleigh Decl. ¶ 42 ("Section 1782 is a discovery procedure" in Bermuda.) Mr. Taylor, Athene's counsel in the Appraisal Proceeding, apparently agrees. *Id.* ¶ 11 (stating that the Chief Justice decides on final admissibility).

'overbroad or unduly burdensome' when judged by the 'familiar standards of Rule 26 of the Federal Rules of Civil Procedure.'") (citing *Mees*, 793 F.3d 291 at 302).  As one of Respondents' own cases recognizes, courts should take into account the "size and resources" of the subpoena recipient when that recipient "will necessarily be affected by the final judgment entered in, the underlying litigation." *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1996).

This Court has repeatedly recognized that even significant work to comply with a Section 1782 subpoena does not constitute an undue burden.  *In re Vale S.A.*, 2021 WL 311236, at *4 (S.D.N.Y. Jan. 29, 2021) (rejecting contention that compliance "would involve the production of thousands of documents and 'inordinate numbers of hours' of work" because the same conclusionary complaint can be made "in many § 1782 applications"); *In re Evenstar Master Fund*, 2021 WL 3829991, at *13 (S.D.N.Y. Aug. 27, 2021) ("inconvenience alone will not justify an order to quash"); *In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016) (same).  To show undue burden, a respondent must therefore provide details "concerning the manner and extent of the burden and the probable negative consequences of insisting on compliance." *Id.*; *see also In re Biomet Orthopaedics Switzerland GmbH*, 742 F. App'x 690, 699 (3d Cir. 2018) (holding that respondent in a Section 1782 case failed to offer "any empirical evidence" of undue burden and noting that "[a] specific showing of burden is commonly required.").[10]

---

[10] Courts also frown on a Section 1782 respondent taking an absolutist approach and refusing to provide *any* discovery. *See Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1272-73 (11th Cir. 2014) (rejecting an all-or-nothing approach and stating that respondents should at least "meet somewhere in the middle.").  Standard discovery procedure entails negotiating search terms before a search for responsive documents, yet Respondents failed to meaningfully engage in that process and stand on the limited production

Here, neither Respondents nor Athene has identified ***any*** particularized undue burden to justify quashing or limiting the Subpoenas.[11]   Respondents merely argue, in essence, that a complex corporate transaction such as the Merger must have generated many responsive documents and thus Respondents need not search for and produce evidence. Neither the number of document requests (40), nor the fact that certain requests seek "all documents" concerning a topic, demonstrates an undue burden.  Such an unsupported claim of undue burden was decisively rejected in the context of discovery assistance for a foreign appraisal action:

> I reject [respondent's] complaints that Liverpool made no attempt to narrowly tailor its requests and that the subpoena broadly listed "every category of conceivable relevance to the LINE transaction." The scope of the categories of subject matter sought by the subpoena is reasonable given the nature of and [respondent affiliate's] role in the transactions at issue in the appraisal action. I also reject out of hand [respondent's] complaint that the subpoena seeks 'all documents' related to those categories of documents. [respondent] offers no hint, let alone an estimate, of the number of documents covered by the subpoena.

_____

of documents they unilaterally cherry-picked from a central file.  *See* Second Wang Decl. ¶¶ 3-5. If this Court orders Respondents to comply with the Subpoenas, Petitioner will work with Respondents to select custodians prudently and use search terms effectively.  This targeted approach would alleviate any concerns about undue burden.

[11] The scattershot cases cited in the motions are inapposite.  *In re Hulley Enterprises, Ltd*., 358 F.Supp.3d 331 (S.D.N.Y. 2019) involved an exceptional situation in which a U.S. law firm with an office in Russia was asked to produce document about its representation of a Russian client, in possible violation of both U.S. attorney-client privilege and Russian law.  In *Ex parte Abdalla*, 2021 WL 168469 (S.D.N.Y. Jan. 19, 2021), the applicant sought discovery over a ***23-year*** period concerning ***93*** entities and individuals. *Breaking Media, Inc. v. Jowers*, 2021 WL 1299108 (S.DN.Y. April 7, 2021) concerned discovery over an article published abroad which the movant did not argue was relevant to his claims and which implicated freedom of speech protection for journalists. In *Concord Boat*, 169 F.R.D. at 53-54, plaintiffs sued a client of Merrill Lynch for antitrust conduct in the recreational marine industry. The court understandably ruled that asking Merrill Lynch to produce discovery outside of the recreational marine sector would be disproportionately burdensome.  In *Homeward Residential, Inc. v. Sand Canyon Corp.*, 2017 WL 4676806 (S.D.N.Y. Oct. 17, 2017), the court denied discovery because the adversary in the underlying litigation was prepared to admit to the matters covered by the evidence at issue.  Finally, In *Retail Brand All., Inc. v. Factory Mut. Ins. Co.*, 2008 WL 622810, at *5 (S.D.N.Y. Mar. 7, 2008), the court permitted a written deposition of the CEO of a party to test his sworn claim of lack of knowledge.

*See*, *e.g.*, *In re Liverpool Ltd. P 'ship*, 2021 WL 3793901, at *3 (D. Del. Aug. 26, 2021).

At bottom, the Merger was a complex $11 ***billion*** stock-for-stock transaction.  By Apollo's own admission, the Merger was of "strategic importance" to Apollo. Apollo Mot. at 13.  Apollo may have liability to the Dissenting Shareholders if they prevail in the Appraisal Proceeding. *See* Second Chudleigh Decl. ¶ 3.  It should come as no surprise that Apollo may be required to provide discovery about numerous relevant topics regarding such a transaction.  Given the decisive role Apollo played in and the significant benefit it derived from the Merger, its immense financial resources, and its stakes in the outcome of the Appraisal Proceeding, the burden imposed on Apollo here is proportionate and reasonable.

Respondents and Athene also argue incorrectly that only narrow evidence of valuation, and not evidence concerning the facts surrounding the Merger, is relevant in the Appraisal Proceeding.  But the Bermuda Supreme Court is not limited to evidence intrinsic to valuation. Second Chudleigh Decl. ¶¶ 50-55.  Consistent with Cayman precedent, the Bermuda Supreme Court is likely to consider conduct-related factors when determining whether the Conversion Ratio was fair value, including: (a) whether the transaction process "had been carried out in good faith"; (b) the motivations of actors who had interests on both the buy and sell sides of the transaction; (c) the manner in which conflicts were managed; and (d) the influence that the existence of a controlling shareholder had on the special committee's negotiating stance.  *Id*. The discovery that Respondents and Athene challenge as irrelevant falls squarely within these broad parameters. *Id*. ¶ 54.

Just to illustrate, because Tango Holdings, Inc. was a party to the Merger agreement, *see* ECF 6, Ex. H at 1, discovery into its formation and purpose would shed light into the process that led to the Merger.  Discovery into whether and how Apollo considered an alternative transaction is warranted because of the appearance that Apollo executed the Merger for its selfish ends.  Given

Mr. Rowan's long-standing association with Athene and his direct role in the Merger, Petitioner is entitled to know how he benefitted personally.  And because Apollo attempts to lend aura of respectability to the Merger by claiming that it was approved by special committees, *see* Apollo Mot. at 5, Invictus is entitled to probe its well-founded suspicion of conflicts of interest on those committees.

Because the evidence that may be considered in the Appraisal Proceeding is broad, the corresponding scope of the Subpoenas is reasonable.  These Subpoenas are typical of third-party subpoenas routinely served and approved in support of foreign appraisal proceedings.  *See, e.g., In re Kingstown Partners Master Ltd.*, 2022 WL 1081333, at *6 (S.D.N.Y. Apr. 2022) (discovery requests were reasonable due to the "substantial amount in controversy in the FGL Appraisal, Respondents' access to information relevant to that proceeding, and the parties' resources.").

Finally, Athene argues that the discovery sought in the Subpoenas is duplicative of discovery available in the Appraisal Proceeding.[12]  Athene fails to demonstrate an overlap between discovery in these two cases.  But even if such duplication existed, judges in this District have decisively rejected duplication as grounds for denying Section 1782 discovery.  For example, this Court in *In re Kuwait Ports Auth.* explained that what matters is whether the respondent in a Section 1782 case is a party to the foreign litigation or at least subject to the jurisdiction of the foreign court.  2021 WL 5909999, at *9.  This Court further held that "to the extent there is some overlap in the information sought here and in the [Foreign] Proceeding . . . the proposed subpoena

_____

[12] Athene seriously misstates the record by stating that "Petitioner acknowledges, much of the discovery sought will be duplicative of what will be sought in the Bermuda Action."  Athene Mot. at 14.  The cited portion of the Petition says the opposite: "Much of discovery Petitioner seeks will be uniquely within Respondents' possession or control. But even if some of the requested discovery includes documents that might be obtained through parties to the Appraisal Proceeding, that does not weigh against approving this Petition." Pet. at 21.

would likely provide corroborating information that would bear on those proceedings."). *Id*.[13] Athene's "duplication" argument therefore fails.

In sum, Respondents and Athene fail to establish any undue burden to support denying the Petition.

## II.    THERE IS NO BASIS TO "DEFER" THIS SECTION 1782 APPLICATION

Respondents ask this Court to defer a ruling on this Section 1782 Petition.  This request should be rejected for at least three separate reasons.

*First*, Respondents justify this delaying request by asserting that Invictus's discovery requests are improper as a matter of Bermuda law. *Se*e Apollo Mot. at 9-11.  But Respondents are incorrect.  Documentary discovery in Bermuda is broad, see *supra* at 13 and the Bermuda Supreme Court will look beyond the narrow issue of valuation, *see supra* at 17.  Respondents' assertion of a "presumption," *see* Apollo Mot. at 10, against the use of foreign deposition transcripts in Bermuda is wrong. Second Chudleigh Decl. ¶ 35.

*Second*, Respondents' attempt to postpone a Section 1782 petitioner's entitlement to discovery to an unknown future stage of the foreign litigation would turn Section 1782 on its head. The Supreme Court held that commencement of a foreign legal proceeding is *no*t necessary to obtain discovery. *Intel*, 542 U.S. at 259 (a foreign proceeding qualifies under Section 1782 as long as it is in "reasonable contemplation," even if not "pending" or "imminent."); *see Kuwait Ports*

---

[13] *See also In re Evenstar Master Fund*, 2021 WL 3829991, at *11 (holding "the plain language of § 1782 does not" permit a court to consider the possibility that the requested discovery is available in the foreign proceeding); *In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020) (this Court is not under Section 1782 "asked to consider whether the requested evidence is [also] located extraterritorially, but [only] whether the 'person from whom discovery is sought is a participant in the foreign proceeding.'" (emphasis in original); *In re Aso*, 2019 WL 2345443, at *7 (S.D.N.Y. June 3, 2019) ("[T]he subpoenaed parties are uniquely positioned to provide corroborating information.").

*Auth.*, 2021 WL 5909999, at *10 (quoting *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123–25 (2d Cir. 2015)) (permitting a potential Cayman litigant to obtain Section 1782 discovery on the basis of its retention of Cayman counsel and articulation to this Court of a plausible theory of liability). Here, Invictus has initiated an appraisal proceeding which has passed through preliminary stages, has provided discovery to its adversary, has retained and disclosed a valuation expert and has indicated an intent to provide the requested Section 1782 discovery to its valuation expert, *see* Second Chudleigh Decl. ¶¶ 8-9.  Invictus is entitled to have the discovery now, not at some unknown hypothetical point of Respondents' choosing in the Appraisal Proceeding.

*Third*, Respondents' requested delay does not work as a practical matter in the Appraisal Proceeding and is likely to cause Petitioner to forfeit its right to obtain Section 1782 discovery. Second Chudleigh Decl. ¶¶ 43, 49.  As noted, Dissenting Shareholders have to provide evidence to their valuation expert soon.  In addition, under Bermuda procedural law, the Bermuda Supreme Court does not generally make gate-keeping pre-trial preliminary rulings on admissibility of evidence. *Id*. ¶ 43. There is no equivalent of U.S. style pre-trial motion in limine practice. *Id*. ¶¶ 45-46. Instead, the Bermuda Supreme Court almost always evaluates admissibility of evidence when such evidence is before the Court at trial. *Id*.  ¶ ¶ 43-46.  A Petitioner is unlikely to have time return to this Court to make discovery requests under Section 1782. *Id*. ¶¶ 44-48.

## III.    THE REQUESTED DEPOSITIONS ARE WARRANTED

### A.    Apollo Is Subject to a Rule 30(b)(6) Deposition

It is settled law that "the obligation for sitting for a deposition is not, in and of itself, burdensome." *Probulk Carriers Ltd. v. Marvel Int'l Mgmt. and Transp.*, 180 F.Supp.3d 290, 293 (S.D.N.Y. 2016). And this Circuit liberally permits depositions via Section 1782 discovery. *In re Ex Parte Application of Porsche Automobil Holding SE*, 2016 WL 702327, at *13 (S.D.N.Y. Feb.

18, 2016) (it was "relatively evident from precedent in this circuit generous to Section 1782 applicants that there was a reasonable chance [respondents] would have to produce documents and prepare witnesses on a short timetable"). Apollo tries to resist a corporate deposition by repeating its incorrect argument that the discovery requested in the Petition is not relevant or permissible as a matter of Bermuda law. Apollo also incorrectly complains in conclusory fashion that it is too burdensome to comply, which does not establish an undue burden.  And, even if Apollo chooses to produce multiple witnesses to comply with Subpoenas, "it is not unusual for a Rule 30(b)(6) deposition to involve extensive preparation and multiple witnesses." *In re Evenstar Master Fund*, 2021 WL 3829991, at *14.

### B.    The "Apex" Doctrine Does Not Immunize Mr. Rowan from a Deposition

In their attempt to shield Mr. Rowan from a deposition, Respondents misapply the "apex" doctrine.  This narrow legal principle is crafted to only protect senior executives who lack unique personal knowledge of the relevant facts from being unnecessarily deposed.  It is not a "blank check" under which a senior executive officer who has relevant personal knowledge can avoid sitting for a deposition. Mr. Rowan's own cases make this point abundantly clear.  *Harapeti v. CBS Television Stations Inc.*, 2021 WL 3932424, at *2-3 (S.D.N.Y. Sept. 2, 2021) (senior executive of CBS had no unique personal knowledge of alleged discrimination of a former freelance employee of a CBS affiliate in Miami); *Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2020 WL 6273396, at *1 (S.D.N.Y. Aug. 28, 2020) (plaintiffs "have not shown that Mr. Gorman [the chairman of Morgan Stanley] has unique evidence, personal knowledge of the claims at issue."); *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 2019 WL 6271324, at *2 (S.D.N.Y. Nov. 25, 2019) (noting the magistrate judge tested the executive's claimed lack of personal knowledge). Those cases also make it clear that a senior executive invoking the apex

doctrine must submit a sworn declaration concerning his purported lack of personal knowledge of the litigation.[14]  Here, Mr. Rowan tellingly has not submitted such a sworn declaration.

Mr. Rowan cannot credibly sign such a declaration because the public record is repleted with references to his direct personal involvement in the Merger. Simply put, Athene was Mr. Rowan's "greatest triumph for Apollo" and he was the "force behind" Apollo's eventual acquisition of Athene. *See* ECF No. 6, Ex. G.  Mr. Rowan personally launched the process to acquire Athene by having a one-on-one lunch with a senior executive of Athene. Mr. Rowan gave Mr. Beilinson advance notice before Mr. Rowan signed Apollo's written offer to acquire Athene. and personally participated in negotiations for the Merger. *See* ECF No. 5 at 6-7 (describing Mr. Rowan's personal involvement in Merger negotiations).  Following the close of the Merger, Mr. Rowan spoke to the public multiple times about the benefits of the Merger to Apollo. *See supra* at 6.

This is more than enough to subject Mr. Rowan to a deposition.[15]  *Andes Petroleum Ecuadro Ltd. v. Occidental Expl. & Prod. Co.*, 2022 WL 3227874, at *3 (S.D.N.Y. Aug. 10, 2022) (high level executives were properly subject to depositions because "[e]ach allegedly was involved either in the transactions resulting in OEPC's insolvency (or failure to obtain any portion of the settlement proceeds), or has access to specialized knowledge as to OEPC's financial conditions

---

[14] *See Harapeti*, 2021 WL 3932424 ("Friend does not have unique or personal knowledge of the claims at issue in the Florida Action, as Friend has stated in a sworn statement."); *Iowa Pub. Employees' Ret. Sys.*, 2020 WL 6273396, at *1 ("Mr. Gorman has submitted a sworn declaration stating that he has 'no personal knowledge of the specific facts concerning this litigation.'").

[15] Respondents' assertion that "Petitioner has made no attempt to explain to us, much less to demonstrate to this Court, that Mr. Rowan has unique knowledge," *see* Apollo Mot. at 15 is demonstrably incorrect.  *See* Pet. at 21-22 and ECF 30 at 4. And it is Mr. Rowan's burden to demonstrate that he does not have personal knowledge, not Petitioner's burden to show that he has such knowledge.  In any event, Petitioner has conclusively established that Mr. Rowan cannot meet his burden.

and assets."); *In re Kidd*, 2020 WL 5594122, at *9-10 (D. Conn. Sep. 18, 2020) (granting Section 1782 application for deposition testimony because senior corporate officers "would be *more* and not less likely to have knowledge of the Transaction, given its size and scope.") (emphasis in original).

Therefore, Invictus is entitled to depose Mr. Rowan.

## **CONCLUSION**

For the foregoing reasons and the reasons set forth in Petitioner's opening memorandum of law, Petitioner respectfully requests that the Court deny the motions order Respondents to comply with the Subpoenas.

Dated: December 20, 2022                    Respectfully submitted,

By: */s/  Minyao Wang*

William T. Reid IV
Rachel S. Fleishman
Minyao Wang
Yonah Jaffe
**REID COLLINS & TSAI LLP**
420 Lexington Avenue
Suite 2731
New York, NY 10170
Telephone: (212) 344-5200
Facsimile: (212) 344-5299
wreid@reidcollins.com
rfleishman@reidcollins.com
mwang@reidcollins.com
yjaffe@reidcollins.com