# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE PETITION OF**<br><br>**Invictus Special Situations Master I, LP,**<br>**for an Order Pursuant to 28 U.S.C.§ 1782 to**<br>**Conduct Discovery for Use in a Foreign**<br>**Proceeding** | **CASE NO. 1:22-mc-00130-ALC** _____<br><br>**SECOND DECLARATION OF MARK CHUDLEIGH IN SUPPORT OF THE PETITION OF INVICTUS SPECIAL SITUATIONS MASTER I, LP FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782** |

I, Mark Chudleigh, make the following declaration:

1.      I make this Second Declaration to supplement my First Declaration dated May 5, 2022, (ECF No. 7), which was filed in support of the petition (the "**Petition**") of Invictus Special Situations Master I, LP ("**Petitioner**" or "**Invictus**") for discovery pursuant to 28 U.S.C. § 1782 ("**Section 1782**").   I understand that the Court granted the Petition on an *ex parte* basis and Petitioner thereafter served the subpoenas on respondents.

2.      In this responsive Declaration I address the Declaration of Mr. Kevin Taylor dated November 14, 2022 (ECF No. 34), filed in support of a motion by Athene Holding Ltd. ("**Athene**" or the "**Company**") to intervene and vacate dated November 14, 2022 (ECF No. 33) and a motion by Apollo Global Management, Inc., and Marc Rowan (together "**Respondents**") to vacate, also dated November 14, 2022 (ECF No. 36).

3.      As noted in my First Declaration, I am admitted to practice law in Bermuda, England and California.  I represent dissenting shareholders (the "**Dissenting Shareholders**"), one of whom is Petitioner, in proceedings pending before the Supreme Court of Bermuda (the "**Bermuda**

**Supreme Court**") under Bermuda's Companies Act 1981 (the "**Act**") to determine the fair value of the Dissenting Shareholders' former shareholdings in Athene (the "**Appraisal Proceeding**"). In the Appraisal Proceeding, the Dissenting Shareholders contend that the consideration Apollo paid them for their Athene shares was inadequate and did not constitute "fair value" within the meaning of Section 106 of the Act.  If the Bermuda Supreme Court determines that the fair value of those Athene shares exceeds the value of the consideration paid, the Dissenting Shareholders will be entitled to receive payment of the difference from the merged entity.

4.      In this Declaration, I seek to correct certain misunderstandings or misstatements of the record regarding the Appraisal Proceeding and/or of Bermuda law, made by Mr. Taylor and/or by Athene and Respondents in their respective memoranda of law (ECF Nos 35 and 37), all which I have reviewed.

5.      I will address the issues in the following order, namely: (a) the Chief Justice of the Bermuda Supreme Court has already stated on the record in this Appraisal Proceeding that parties to Bermuda proceedings are entitled to seek Section 1782 discovery as a matter of Bermuda law, a point that Mr. Taylor tacitly accepted; (b) the scope of discovery in Bermuda civil proceedings; (c) the scope of discovery in Bermuda appraisal proceedings; (d) obtaining third party evidence and discovery outside the jurisdiction of the Bermuda Supreme Court; (e) the availability of deposition testimony and discovery in Bermuda; (f) the admission of evidence in Bermuda civil proceedings, including evidence derived from 1782 discovery, and (g) the relevancy of the discovery requested in the Petition.

6.      Throughout the course of this Declaration, I refer to certain documents from the Appraisal Proceeding, sections of the Bermuda Rules of the Supreme Court ("**RSC**" or "**Bermuda Rules**"), relevant legal text, and judgments of the Bermuda, Cayman Islands and English Courts,

true and correct copies of which are appended as exhibits hereto: Transcript of the Appraisal Proceeding directions hearing on 2 November 2022 (Exhibit 1); the Order of the Chief Justice of Bermuda dated 22 November 2022 (Exhibit 2); *Crockwell v Haley* [1993] Bda LR 7 (Exhibit 3); *Compagnie Financière et Commerciale du Pacifique v Peruvian Guano Co* (1882) 11 QBD 55 (Exhibit 4); *Walsh and Taal v Horizon Bank International Ltd* BM 2008 SC 4 (Exhibit 5); *Modulable et Al v Butterfield Trust (Bermuda) Ltd* BM 2013 SC 45 (Exhibit 6); *Terceira v Terceira et Al* BM 2010 SC (Exhibit 7); The White Book 1999 Edition, Order 24 Commentary (Exhibit 8) O'Neil and Woloniecki's *The Law of Reinsurance*, 5th Edition, Chapter 13, Section 3 (Exhibit 9); *Jardine Strategic Holdings Limited* [2021] SC (Bda) 87 (Exhibit 10); *Re FGL Holdings* (FSD 184 of 2020) (Exhibit 11); *Golar LNG Limited v World Nordic SE* [2011] Bda L.R. 9 (Exhibit 12); *David Barry Reid v Mediahouse Ltd* [2016] SC (Bda) 109 Com (Exhibit 13); *Lehman Re* [2011] SC (Bda) 24 Com (Exhibit 14); RSC Order 38/9 (Exhibit 15); RSC Order 39/1 & 2 (Exhibit 16); *Stroude v Beazer Homes Ltd* [2005] EWCA Civ 265 (Exhibit 17); *Re FGL Holdings* (Unreported, 1 September 2022) (Exhibit 18); *Re Nord Anglia Education, Inc.* (Unreported, 17 March 2020) (Exhibit 19).

7.      Since my First Declaration, the Court has held a Directions Hearing and entered a Directions Order (discussed in more detail below), Athene has provided part of its initial documentary discovery (the remainder of which is due in January 2023) and the Dissenting Shareholders have completed their documentary discovery. The parties disclosed their respective valuation experts on December 19, 2022.

8.      The next phase of the Appraisal Proceeding will involve additional discovery being requested by way of information requests from the parties' experts pursuant to paragraph 13 of the Directions Order and requests for specific discovery pursuant to paragraph 3 of the Directions Order

3

before the "Discovery Completion Date" is agreed or, in the event of dispute, determined by the Court pursuant to paragraph 5 of the Directions Order.

9.       Following the Discovery Completion Date, the parties' valuation experts will then have 90 days to prepare and file their valuation reports.  Therefore, it is desirable and advances efficiency that the Petitioner is able to obtain discovery from Respondents under Section 1782 during the current phase of the Appraisal Proceeding so the valuation experts can take it into consideration (along with other evidence) following the Discovery Completion Date.

### The Bermuda Supreme Court Has Acknowledged and Athene Has Conceded Petitioner's Entitlement to Seek Section 1782 Discovery

10.       On November 2, 2022, subsequent to my First Declaration and almost two weeks before Mr. Taylor signed his Declaration, the parties to the Appraisal Proceeding appeared before the Honourable Narinder Hargun, Bermuda's Chief Justice, at a two-hour procedural hearing to consider directions for the Appraisal Proceeding, including in relation to discovery ("**Directions Hearing**").  I represented the Dissenting Shareholders and Mr. Taylor represented the Company, Athene, at that hearing.  A transcript of the Directions Hearing ("**Transcript**") and the Chief Justice's resulting order ("**Directions Order**") are at Exhibits 1 and 2.

11.       During the Directions Hearing, the Chief Justice and Mr. Taylor had this highly relevant exchange regarding a Bermuda party's entitlement to Section 1782 discovery (pp. 26-27 of Exhibit 1):

> "*MR TAYLOR: And my lord, so -- and the other thing in this context that is important ... is you will see in the material that the Plaintiffs in this case have utilised the available rules in the US to subpoena Apollo and get information directly from Apollo.  And so my lord, and look, I pass no comment on that.  I'm not a US lawyer, presumably they're entitled to do that.*
> *But in those circumstances when we've –*
>
> *CHIEF JUSTICE HARGUN:  There is a House of Lords' decision which says that*

4

*they are entitled to do it.*

MR TAYLOR:   *Were entitled to do it whether or not subsequently, my lord, you decide that everything's admissible I think remains with you.  And that's something for down the road.*

CHIEF JUSTICE HARGUN:  *Yes".*

12.      In light of the context of the exchange between Chief Justice Hargun and Mr. Taylor, I believe the Chief Justice was referring to the English House of Lords' landmark *South Carolina Insurance Co. v Assurantie Maatschappij* [1987] 1 A.C. 24, which I discussed at paragraphs 14 and 15 of my First Declaration (*see* Exhibit 2 thereto) and which Mr. Taylor failed to respond in his Declaration. This decision, issued by the highest court in the United Kingdom and affirmed by recent lower court decisions in England (as discussed in my First Declaration), states that a party to an English litigation has the *right* to seek Section 1782 discovery in the United States, including discovery that is not available under English procedural rules. The House of Lords in *South Carolina Insurance Co.* set out very narrow circumstances under which an English court could entertain a request to block a party's Section 1782 discovery application: (a) the requesting party has invaded the legal or equitable rights of its adversary, or (b) the requesting party has behaved in an unconscionable manner.

13.      Bermuda is an Overseas Territory of the United Kingdom. The final appellate court for Bermuda is the Judicial Committee of the Privy Council of the United Kingdom. The Privy Council shares the same pool of judges with the House of Lords, which was renamed in 2009 as the Supreme Court of the United Kingdom. As I discussed in my First Declaration, decisions of the House of Lords and the Supreme Court are de facto binding in Bermuda.

14.      This was confirmed by Bermuda's Court of Appeal in *Crockwell v Haley* [1993] Bda LR 7 at 179 – 180(Exhibit 3). Under that decision, a judge in Bermuda is expected to follow decision of the House of Lords and is allowed to depart from precedents only if *"social conditions*

*of Bermuda"* make it impractical to follow English precedent.   No such social conditions exist in relation to Section 1782 discovery and *South Carolina Insurance Co.* is therefore *de facto* binding law in Bermuda.

15.     The Chief Justice's understanding that a Bermudian litigant is entitled to seek Section 1782 discovery, as articulated during the Directions Hearing, is consistent with the de facto binding *South Carolina Insurance Co.*  decision. During the Directions Hearing, Mr. Taylor did not challenge the Chief Justice's understanding and the propriety of Petitioner's Section 1782 Petition. In fact, Mr. Taylor's comments to the Chief Justice that, ultimately, admissibility of the evidence obtained through the Petition rests with the Chief Justice is reasonably read as a concession that there is nothing improper about the Petition as a matter of Bermuda law and procedure.

16.     Mr. Taylor regrettably omits this on-point exchange with the Chief Justice from his Declaration. Despite the Chief Justice's remarks that Section 1782 discovery is permissible, Mr. Taylor's apparent agreement with those remarks, and the long-standing English authority on this point, Mr. Taylor nevertheless attempts to question in paragraph 23 of his Declaration, ***without any supporting authority***, whether the Bermuda Court might regard the use of discovery obtained for Bermuda proceedings via Section 1782 as improper.  Respectfully, Mr. Taylor's conclusionary, unsupported and self-serving statement regarding how Bermuda law would view Section 1782 evidence cannot be taken seriously.

17.     Mr. Taylor omits to inform this Court that, if Athene had wanted to contend that there is anything improper about the Petitioner seeking Section 1782 discovery as a matter of Bermuda law, then Athene was at liberty to apply to the Bermuda Supreme Court for a determination and relief, including at the recent Directions Hearing. For example, Athene could have requested the Bermuda Court to grant it an injunction to prevent the Petitioner from conducting

Section 1782 discovery.  This was the approach attempted before the English House of Lords in *South Carolina Insurance Co.* and before the Cayman Islands Court of Appeal in *Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited* [2009] CILR 553, which was discussed in paragraphs 18 and 19 of my First Declaration (see Exhibit 6 thereto).  In both cases, the appellate courts refused to grant injunctive relief, finding that by exercising rights available under Section 1782, a party to litigation was not departing from or interfering with the procedure of the English Court or the Cayman Islands Court.

18.     As can be inferred from the exchange between the Chief Justice and Mr. Taylor at the Directions Hearing (quoted at paragraph 11 above), it is highly likely that the Bermuda Supreme Court would take the same view as he English Court and the Cayman Islands Court and would refuse to issue an injunction, a position that Mr. Taylor appears to have accepted by implicitly agreeing with the Chief Justice's comments. Now, it seems, having consciously decided not to ask the Bermuda Supreme Court to rule on the propriety of the Petitioner's Section 1782 discovery, Athene and Apollo invite this Court to make a determination on behalf of the Bermuda Court.

### The Broad Scope of Discovery in Bermuda Civil Proceedings

19.     As a triple qualified lawyer, I have over 25 years' experience of the discovery processes of the United States, English and Bermuda Courts. To the extent Mr. Taylor is referring to documentary discovery, I strongly disagree with his statement at paragraph 15 of his Declaration that "*the scope of discovery available in Bermuda is also limited in nature and scope*." In my experience, the nature and scope of documentary discovery in Bermuda proceedings is in fact generally similar to that in United States proceedings.

20.     Under RSC Order 24, r.1(1), unless the Court otherwise orders, parties to Bermuda proceedings are obliged to give discovery of all "*documents which are or have been in their*

7

*possession, custody or power relating to matters in question in the action"* (see Exhibit 9 to my First Declaration). This is known in Bermuda as "general discovery". Contrary to Mr. Taylor's suggestion, this rule imposes an obligation to give broad discovery of documents. This is underscored by the "train of enquiry" ambit that derives from the following passage in the widely-cited decision of the English Court of Appeal in *Compagnie Financière et Commerciale du Pacifique v Peruvian Guano Co* (1882) 11 QBD 55 (Exhibit 4) (generally referred to by lawyers and judges as "*Peruvian Guano*"):

   *"I think it obvious from the use of those terms ["a document relating to any matter in question in the action"] that the documents to be produced are not confined to those, which would be evidence either to prove or to disprove any matter in question in the action ... The doctrine seems to me to go farther than that ... It seems to me that every document relates to the matters in question in the action, which not only would be evidence upon any issue, but also which, it is reasonable to suppose, contains information which may – not which must – either directly or indirectly enable the party ... either to advance his own case or to damage the case of his adversary. I have put in the words "either directly or indirectly", because, as it seems to me, **a document can properly be said to contain information which may enable the party requiring the affidavit either to advance his own case or to damage the case of his adversary, if it is a document which may fairly lead him to a train of inquiry, which may have either of these two consequences.***" (at page 62 to 63) (emphasis added)

   21.    The *Peruvian Guano* holding has been expressly approved and followed in several Bermuda cases. *See Walsh and Taal v Horizon Bank International Ltd* BM 2008 SC 4 (Exhibit 5)*, Modulable et Al v Butterfield Trust (Bermuda) Ltd* BM 2013 SC 45 (Exhibit 6)*; Terceira v Terceira et Al* BM 2010 SC (Exhibit 7) and the notes to RSC Order 24, r.1(1) in the 1999 "White Book"

(1999 being the year in which the Bermuda Rules were adopted from the then English rules) (Exhibit 8).

22.     Consistent with *Peruvian Guano*, a leading treatise on Bermuda civil procedure confirms that the test relevance under Bermuda law is wide and not limited as Mr. Taylor incorrectly states:

> "The test is wider than direct relevance to issues in the pleadings, and covers the following categories of documents:
> (1)  which are direct evidence of facts in issue, or which are to be used at trial;
> (2)  which contain information which may enable one's opponent to advance his own case, or damage one's own case; or
>             (3)    which 'may fairly lead him to a train of inquiry which may have either of those consequences'"

See O'Neil and Woloniecki's *The Law of Reinsurance*, § 13-093 (Exhibit 9)

23.     In addition to general discovery, RSC O.24/7 provides that parties may seek "specific discovery" to supplement general discovery.  Consistent with this Rule, Paragraph 3 of the Directions Order makes express provision for the parties to seek specific discovery under RSC O.24/7 in the Appraisal Proceeding, in addition to the initial specific discovery ordered by paragraphs 1 and 2 and to the discovery to be obtained through requests from the parties' experts pursuant to paragraph 13.  There is no language in the Directions Order prohibiting third party discovery in general or Section 1782 discovery in particular.

### The Broad Scope of Discovery in Bermuda Appraisal Proceedings

24.     The Bermuda Rules generally applicable to civil proceedings apply in all respects to appraisal proceedings in Bermuda. There is no special carve out for discovery in appraisal proceedings in Bermuda. *Jardine Strategic Holdings Limited* [2021] SC (Bda) 87 (Exhibit 10) is a recent authority on procedures for appraisal proceedings in Bermuda. In *Jardine*, the Court cited with approval to multiple appraisal decisions of the Grand Court of Cayman Islands holding that discovery in appraisal proceedings is broad. For example, paragraph 64 of the *Jardine* decision cites

to the decision of the Cayman Islands Court in *In re FGL Holdings* (FSD 184 of 2020) (Exhibit 11) for the proposition that it "*is well settled that extensive discovery of documents within the possession, custody or power of petitioner companies is essential*" in appraisal cases and that this imposes "*an onerous and expensive burden on the company, but it is essential for the fair determination of the matter*" (at paragraphs 11 and 12). The citations to Cayman Island authorities are not surprising.  As I explained in paragraph 17 of my First Declaration, there is limited Bermuda case-law regarding appraisal cases and like Bermuda, the Caymans Islands is an Overseas Territory of the United Kingdom that acts as an offshore financial center.

25.    I therefore strongly disagree with Mr. Taylor's suggestion, at paragraphs 15 and 19 to 21 of his Declaration, that discovery in Bermuda appraisal actions is more limited than that available generally in civil proceedings.

26.    In the case of *Jardine*, the Bermuda Supreme Court imposed some limits on initial discovery in recognition of the fact that Jardine is an extraordinarily large conglomerate with extensive and diverse worldwide interests. Indeed, the Court believed that general discovery could generate **35 million pages** of documents. The Bermuda Court ruled that: "*general discovery under Order 24 rule 3(1) is not necessary in the exceptional circumstances of this case … and in any event general discovery is not necessary at this stage.*" (paragraph 91).

27.    Indeed, if discovery in appraisal cases were as limited as Mr. Taylor claims, it would not have been necessary for the Bermuda Supreme Court to discuss the exceptional features of Jardine.  It could have simply ruled that that the requested discovery went beyond the scope of generally available discovery in Bermuda appraisal actions.

28.     Moreover, as with the Appraisal Proceeding, the Court ordered certain specific discovery, gave the parties the right to come back for further specific discovery and provided for the valuation experts to submit requests for discovery.

29.     In my First Declaration, I referred to the decision of the Bermuda Supreme Court in *Golar LNG Limited v World Nordic SE* [2011] Bda L.R. 9 (Exhibit 12) in which the Court observed that it would consider *"all the relevant information that is put before it"* regarding valuation. In seeking to distinguish *Golar*, Mr Taylor notes that *Golar* concerned an appraisal under Section 103 of the Act  under which the Court must determine the "value" of the shareholder's shares whereas the Appraisal Proceeding concerns Section 106 under which the Court must determine the "fair value" of the shareholder's shares. In its motion to intervene and vacate, Athene wrongly states that *Golar "*was brought under a different statute": Sections 103 and 106 are both sections in Part VII of the Act which concerns "Arrangements, Reconstructions, Amalgamations and Mergers".

30.     Mr. Taylor offers no authorities to support the artificial distinction he is attempting to draw and I am aware of none.  I also disagree with the suggestion in Athene's motion to intervene and vacate that the distinction between Sections 103 and 106 has the effect of *"excluding the vast majority of Petitioner's requested discovery"* or that there is *a "materially important difference between Section 103 and Section 106(6)."*  The distinction between "value" *simpliciter* and "fair value" has no bearing at all on the scope of discovery in Section 106 cases as compared to Section 103 cases but, if it did, I would expect the scope of discovery under section 106 to be *wider* than under Section 103 – not narrower as Athene seeks to suggest - as in a Section 106 case, such as the Appraisal Proceeding, the Court is required to take into account issues of "fairness" relevant to value in addition to determining value.  Athene's proposed reading of the statute makes no textual sense.

## **Obtaining Third Party Evidence and Discovery Outside the Jurisdiction of Bermuda**

31.     Mr. Taylor suggests at paragraph 13 of his Declaration that the Bermuda Rules provide *"a complete system for examining and obtaining documents from persons not located in Bermuda."*  To the extent that Mr. Taylor is suggesting that the Bermuda Rules provide the *exclusive* means of obtaining evidence from third parties outside Bermuda, I strongly disagree.  As already noted, Mr. Taylor conceded at the Directions Hearing that parties to Bermuda proceedings are entitled to seek Section 1782 discovery in the United States.  That concession, which is supported by House of Lords' precedent, is not consistent with the position Mr. Taylor is taking in his Declaration.

32.     Mr. Taylor suggests that the Petitioner should use the letter of request approach to obtain third party evidence outside the jurisdiction, despite acknowledging at paragraph 15 of his Declaration that it is *"limited in nature and scope*."  As I explained in my First Declaration, there is no requirement for a party to Bermuda litigation to use the letter of request process, which in any event is a process for designed for obtaining *trial evidence*, not *pre-trial discovery* as is being requested here. Thus, for example, the letter of request process is used to obtain trial witness testimony (i.e. "a deposition for *evidence*") where a third party witness is outside the jurisdiction of the Bermuda Supreme Court and so cannot be subpoenaed to attend before the Court to be examined and cross-examined in person at trial. Provided the relevant procedures are followed, the resulting transcript of the witness' testimony can then be admitted as evidence at trial as if the witness had testified in person. In my experience, litigants in Bermuda will use Section 1782 to obtain evidence by way of discovery from third parties located in the United States, including by ay of deposition discovery (i.e. "a deposition for *discovery"*).

12

33.     Indeed, to the extent that Mr. Taylor suggests that a litigant in a Bermuda litigation is *required* to resort to a letter of request, his position is squarely foreclosed by the *South Carolina Insurance Co.* case in which the House of Lords confirmed that parties to English proceedings are entitled to use the Section 1782 procedure to obtain discovery from a third party in the United States irrespective of the availability of a letter of request procedure.   In that case, the party to the English proceeding opposing Section 1782 relief made the same argument to the House of Lords that Mr. Taylor is advancing here. However, Lord Brandon squarely ruled at 44B that *"it cannot be unjust or unconscionable for the defendants to take the 'direct route' for obtaining the documents"* through Section 1782.

34.     I have identified two reported Bermuda decisions addressing "outwards" letters of requests for the purposes of obtaining evidence i.e. requests to a foreign court by the Bermuda Court. *David Barry Reid v Mediahouse Ltd* [2016] SC (Bda) 109 Com  (Exhibit 13) concerned a request for third party evidence in the Cayman Islands, a jurisdiction that does not offer a procedure for obtaining evidence or discovery from a third party similar to Section 1782. Therefore, in that case, the letter of request process was the *only* means available to obtain third party evidence from a Cayman-based witness who was outside the jurisdiction of the Bermuda Supreme Court. *Lehman Re* [2011] SC (Bda) 24 Com, (Exhibit 14) does involve obtaining evidence from a third party witness in the United States but the letter of request was not seeking a deposition for discovery (as under Section 1782) and was seeking a deposition for evidence to be used as trial testimony and therefore the letter of request process was an appropriate approach in that case. Neither decision contains even a hint that the letter of request process is the exclusive means by which a litigant in Bermuda can obtain foreign-based evidence.

## The Availability of Deposition Testimony and Discovery in Bermuda

35.     Mr. Taylor is correct that the Bermuda Supreme Court does not itself possess jurisdiction to directly order deposition <u>discovery</u>. However, for the reasons explained above, the Bermuda Court does not object to parties to Bermuda proceedings obtaining deposition discovery through Section 1782 (and the Chief Justice of Bermuda, as the presiding judge in the Appraisal Proceeding, has confirmed this). Further, for the reasons explained at paragraphs 42 to 49, the Bermuda Supreme Court will admit and take into account evidence obtained via Section 1782 discovery subject to the usual rules on admissibility and relevance that are applied to all evidence from wherever sourced. There is no presumption against the admission of deposition transcripts obtained from Section 1782.

36.     At paragraph 16 of his Declaration, Mr. Taylor quotes Order 38/9(1) to (3) of the Bermuda Rules (Exhibit 15), which concern the process for <u>admitting a </u>deposition for <u>evidence for trial</u> (as opposed to the process for <u>obtaining</u> a deposition for <u>discovery</u>),  although he omits to quote Order 39 (cited below) to which it relates, thereby creating the incorrect impression that these procedural provisions are somehow applicable to the use of Section 1782.

37.     In his Declaration, Mr. Taylor conflates the approach of the Bermuda Supreme Court to the admission of witness evidence by way of deposition for the purposes of obtaining evidence in the form of testimony for use at trial (for example, due to a witness being unable to attend in person) with a deposition for the purposes of discovery.  Unlike the United States, where courts have jurisdiction to order both types of deposition (and where depositions of witnesses are routine at the discovery stage), the Bermuda Supreme Court's jurisdiction is limited to ordering deposition for *trial* testimony.  However, while the Bermuda Supreme Court does not itself possess jurisdiction to order a deposition for *discovery*, it does not object to a party to proceedings in Bermuda availing

itself of third-party discovery procedures, such as the Section 1782 procedure, to obtain third party

discovery (including deposition testimony) for use in Bermuda proceedings.

38.    Order 39/1 and Order 39/2 of the Bermuda Rules include (Exhibit 16):

"*The Court may in any cause or matter where it appears necessary for the purposes of justice, make an order … for the examination on oath before a judge, an officer or examiner of the Court or some other person, at any place, of any person". (Order 39/I(1))*

"*Where the person in relation to whom an order under [Order 39/1] is required is out of the jurisdiction, an application may be made—"* (Order 39/2(1))

39.    Order 39 is concerned <u>only</u> with the obtaining of deposition testimony for the

purposes of seeking to introduce the resulting transcript as evidence at trial. This is illustrated by

the *Lehman Re* and  *David Barry Reid v Mediahouse Ltd* decisions referred to at paragraph 34

above from which it can be seen that the evidence was being obtained in close proximity to trial

and not as part of the discovery phase of the proceedings,

40.    Order 38/9, which Mr. Taylor quotes, only concerns the admissibility of Order 39/1

depositions (i.e. for the purposes of trial testimony) and has nothing to do with obtaining or

admitting as evidence deposition discovery obtained through Section 1782.  Moreover, Order 38/9

is concerned only with the ultimate admissibility of deposition testimony and not a party's

entitlement to obtain it in the first place:

"*No deposition taken in any cause or matter shall be received in evidence at the trial of the cause or matter unless—*

*(a) the deposition was taken in pursuance of an order under Order 39, rule 1, and*

*(b) either the party against whom the evidence is offered consents or it is proved to the satisfaction of the Court that the deponent is dead, or beyond the jurisdiction of the Court or unable from sickness or other infirmity to attend the trial".* (Order 38/9)

15

41.     In its motion to intervene and vacate, Athene seeks to rely on the fact that the Petitioner has supposedly not complied with the inapplicable Order 39/1(1) as a reason for denying the Petitioner the right to obtain Section 1782 discovery. But Order 39/1(1) is completely irrelevant to discovery, including Section 1782 discovery, and applies only to depositions to obtain evidence for use at trial (in the absence of live witness testimony) under the entirely different letter of request process.  That the Bermuda Supreme Court is willing to admit evidence obtained via the Section 1782 process is apparent from the *Hiscox* decision referred to at paragraph 46 below and in paragraph 16 of my First Declaration (*see* Exhibit 5 thereto).

**Admission of Evidence in Bermuda Civil Proceedings, including Evidence Derived from Section 1782 Discovery**

42.     It is important to distinguish a party's right under Bermuda law and procedure to obtain discovery and a party's right to have documents (including deposition transcripts) admitted as evidence at trial. There is no bar in Bermuda to a party obtaining discovery (including by way of deposition discovery) on the basis that the information, if obtained, might subsequently be found to be inadmissible as evidence at trial. For example, in Bermuda litigation parties are required to give discovery of documents which, if relied on at trial, might nevertheless constitute inadmissible hearsay. As the name suggests, "discovery" is not merely about obtaining admissible evidence (though that is one of its purposes) and the *Peruvian Guano* decision (*see* paragraph 17 above) confirms that in Bermuda discovery extends to "train of enquiry" documents, which are documents that may lead to the discovery of other relevant documents. Focussing on the ultimate admissibility of information obtained through Section 1782, as Apollo does, misses the point that Section 1782 is a discovery procedure.

43.     At paragraph 22 of his Declaration, Mr. Taylor suggests that the Bermuda Supreme Court *"will evaluate the relevance and probative value of any evidence that the Plaintiffs seek to*

*introduce"* and he invites this Court to quash the Petitioners' Subpoenas *"without prejudice to being renewed after the Bermuda court determines the scope of the evidence that it will deem relevant and admissible in the proceeding"*.   Mr. Taylor attempts to create the false impression that the Bermuda Supreme Court will in due course perform a pre-trial "gate-keeper" role to the admission of evidence in the Appraisal Proceeding, as opposed to evaluating evidence when such evidence is before the Court at trial, in an effort to persuade this Court to defer consideration of the Subpoenas. This is not how admissibility issues are addressed in civil cases in Bermuda as can be illustrated by the lack of any provision in the detailed Directions Order for pre-trial admissibility determinations.  In fact, deferring consideration of the Subpoenas, as Mr, Taylor urges, would have the practical effect of preventing the Petitioner from pursuing Section 1782 discovery altogether as the Bermuda Supreme Court is very unlikely to determine admissibility questions until the trial by which time it will not be possible for the Petitioner to apply for Section 1782 discovery and to obtain it from Respondents.

44.     Mr. Taylor's highly impractical suggestion that this Court should await determinations of relevance or admissibility by the Bermuda Supreme Court fails to inform this Court of the strong likelihood that, by the time the Bermuda Supreme Court comes to determine any disputes as to the relevancy and admissibility of evidence, it will be simply too late for the Petitioner to renew its petition as any such determination would very likely occur during the course of the trial in the Appraisal Proceeding following which evidence will not be admitted absent very exceptional circumstances that are unlikely to arise here.

45.     All civil cases in Bermuda are determined, and all factual and evidential issues are resolved, exclusively by a judge (i.e. by what in the United States is called a "bench trial") and not by a jury.  Therefore, save in very rare circumstances (e.g. where a judge reviews a document in

the context of a dispute over whether it is privileged), Bermuda does not have anything akin to the United States' pre-trial motion in limine practice, as there is no need to pre-filter evidence from the trier of fact as the judge will have the necessary experience and legal training to evaluate and exclude evidence as appropriate at trial.  A Bermuda Court would therefore be reluctant to entertain an application to perform a pre-trial determination of admissibility or relevance as the Court will be best placed to evaluate the evidence - including its admissibility, relevance and evidential weight - in context during the course of the trial rather than at a separate preliminary hearing. This follows the practice in the English Courts as confirmed *Stroude v Beazer Homes Ltd* [2005] EWCA Civ 265 (Exhibit 17), in which the English Court of Appeal commented that any disputes about admissibility of evidence were best left to be resolved by the judge at the substantive hearing or trial.

46.     The approach of the Bermuda Supreme Court to the admissibility or relevance of evidence derived from Section 1782 discovery is no different to any other evidence obtained through discovery.  In my First Declaration, I noted that in *Hiscox* the Bermuda Supreme Court accepted into evidence Section 1782 discovery obtained from a non-party based in the United States. I recognise that hearsay issues can arise in relation to deposition testimony obtained by way of Section 1782 discovery if a party wishes to rely on it at trial, but such issues not infrequently arise in relation to evidence obtained in party/party discovery or through third party discovery within the jurisdiction of the Bermuda Supreme Court. Likewise, disputes as to the relevance of documents obtained by way of Section 1782 discovery can arise before the Bermuda Supreme Court as they invariably do in relation to other evidence relied on by litigating parties. However, the Bermuda Supreme Court is well used to making admissibility and relevance determinations and the

trial judge will be best placed to evaluate and to rule on competing admissibility and relevance arguments at trial.

47.     As I note at paragraph 15 of my First Declaration and at paragraph 17 above, if Athene wished to challenge the Petitioner's right to seek Section 1782 discovery it was at liberty to make an application to the Bermuda Supreme Court for injunctive relief following the issuance of the Petition. However, Athene declined to take that approach, no doubt mindful of the immense difficulty it would face obtaining injunctive relief given English House of Lords' decision in *South Carolina*.

48.     In the unlikely event that the Bermuda Supreme Court was to determine the relevance or admissibility of evidence in advance of trial, it would likely be within a period of at most two months of the trial by which time the "Discovery Completion Date" contemplated by paragraph 5 of the Directions Order will have passed and the valuation experts' reports will have been prepared and filed pursuant to paragraphs 19 and 22 of the Directions Order, at which point in time it would be too late for experts to take into consideration evidence obtained via Section 1782 even if it could be obtained within the short period prior to trial.

49.     Therefore, Mr. Taylor's suggestion that this Court should defer consideration of the Petitioner's Section 1782 Petition is in fact a disguised attempt to defeat it altogether and not the practical suggestion that it purports to be.

### Relevance of the Requested Discovery

50.     Athene has questioned the relevance of the information that the Petition is seeking from Apollo under the subpoena. As noted above, ultimately relevance will be a matter for the judge in the Appraisal Proceeding to determine at trial when the matters in issue have been crystalized and when the judge can determine relevance in full context. However, as the merger was effected

by way of a "stock for stock" transaction, for the purposes of determining the fair value of the Company's shares pursuant to Section 106(6) of the Act, it will be necessary for the Bermuda Supreme Court to consider the value of both the Company's shares and the value of Apollo's shares received by the Company's shareholders by virtue of the "Exchange Ratio". This is because Section 106(6B) of the Act requires a determination of the *"amount paid to the dissenting shareholder"* which in this case was a payment in the form of shares in Apollo at the "Exchange Ratio". It is also highly relevant to the Appraisal Proceedings, including in relation to the "fairness" component of a fair value appraisal under Section 106 and in relation to the deal process, to consider Apollo's involvement as a key founding and long-term shareholder of Athene with extensive and privileged access to the affairs of Athene as compared to the outside shareholders such Plaintiffs in the Appraisal Proceeding.

51.    I am aware that in appraisal cases in the Cayman Islands the Grand Court is not limited to considering evidence related directly to intrinsic valuation issues. It will also consider the facts, matters and circumstances surrounding the contemplation, negotiation, timing, structure and completion of the merger and the deal process that leads to the merger price being set.

52.    I understand that in *Re FGL Holdings* (Unreported, 1 September 2022) (Exhibit 18), the Grand Court had regard to a number of conduct-related factors, considering in particular the merger voting arrangements were fair and whether the CEO had a conflict of interest.

53.    I further understand that *Re Nord Anglia Education, Inc.* (Unreported, 17 March 2020) (Exhibit 19), the Grand Court specifically considered the following factors when assessing fair value: (a) whether the transaction process "*had been carried out in good faith*" (paragraphs 114(a) and 125); (b) the motivations of the 'Baring Funds' who had interests on both the buy and sell sides of the transaction (paragraph 114(b)); (c) the manner in which conflicts were managed

(paragraph 126); (d) the influence that the existence of a controlling shareholder had on the special committee's negotiating stance (paragraphs 118 and 124); and (e) the fact that attempts were made to find other bidders (paragraph 120(a)).

54.     For reasons I have already discussed, I expect the Bermuda Supreme Court to follow the approach of the Cayman Islands Grand Court. Therefore, I believe, in light of the procedural irregularities that have been identified concerning the Merger, the discovery requested through Section 1782 meets this broad relevancy standard, including, without limitation: (a) the formation of Tango, which was the vehicle through which Apollo acquired Athene; (b) any discussion of an alternative transaction; (c) documents related to Apollo's conflicts committee and Athene's special committee; (d) corporate governance issues related to Apollo's ability to control Athene; (e) the above-market management fees that Apollo received from Athene; (f) potentially excessive compensation received by senior Athene personnel; and (g) Mr. Rowan's personal financial gains from the Merger.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on  December 20, 2022 at New York City, United States of America

_____

MARK CHUDLEIGH