# EXHIBIT 2

## IN THE SUPREME COURT OF BERMUDA

## CIVIL JURISDICTION

## (COMMERCIAL COURT)

### 2021: No. 387

**IN THE MATTER OF THE AGREEMENT AND PLAN OF MERGER BY AND AMONG ATHENE HOLDING LTD., APOLLO GLOBAL MANAGEMENT, INC., TANGO HOLDINGS, INC., BLUE MERGER SUB, LTD. AND GREEN MERGER SUB, INC. DATED AS OF 8 MARCH 2021**

**AND IN THE MATTER OF A PROPOSED STATUTORY MERGER AGREEMENT AMONG ATHENE HOLDING LTD., TANGO HOLDINGS, INC., AND BLUE MERGER SUB, LTD.**

**AND IN THE MATTER OF SECTION 106 OF THE COMPANIES ACT 1981**

**BETWEEN:**

> **(1)  STONEHILL INSTITUTIONAL PARTNERS LP**
> **(2)  STONEHILL MASTER FUND LTD**
> **(3)  APS HOLDING CORPORATION**
> **(4)  DIAMOND FAMILY INVESTMENTS, LLC**
> **(5)  INVICTUS SPECIAL SITUATIONS MASTER I, LP**

<u>**Plaintiffs**</u>

**and**

## ATHENE HOLDING LTD.

<u>**Defendant**</u>

---

## ORDER FOR DIRECTIONS

---

**UPON** the Originating Summons of the Plaintiffs

**AND UPON** the Plaintiffs' Summons for Directions dated 28th April 2022

**AND UPON** hearing Counsel for the Plaintiffs and Counsel for the Defendant (also referred to herein as the **"Company"**) (together referred to as **"the Parties"**).

**IT IS HEREBY ORDERED THAT:**

A.    **Initial Disclosures**

1.    Subject to the terms of the Confidentiality and Non-Disclosure Agreement as set out in **Appendix 2** hereto, the Company shall disclose and produce to the Plaintiffs all documents (of whatever description, whether electronic, hard copy or in any other format) within the Company's possession, custody or power that the Company provided to or received from Lazard Frères & Co. LLC (**"Lazard"**) and Houlihan Lokey Capital, Inc. (**"Houlihan Lokey"**) in connection with the valuation of the Company and their engagement as advisors in respect of the merger pursuant to the Agreement and Plan of Merger dated 8 March 2021 (**"Merger"**), as follows:

1.1.    Within 14 days of this Order the Company shall disclose and produce all documents that were made available by or on behalf of the Company to Lazard and Houlihan Lokey;

1.2.    Within 60 days of this Order, the Company shall disclose and produce any other documents described in paragraph 1, which for the avoidance of doubt shall include any documents which record communications between the Company and Lazard and/or Houlihan Lokey, whether or not those documents were transmitted between the Company and Lazard and/or Houlihan Lokey, including but not limited to any meeting agenda or notes or minutes of calls and meetings between the Company and Lazard and/or Houlihan Lokey.

2.    Subject to the terms of the Confidentiality and Non-Disclosure Agreement as set out in **Appendix 2** hereto, the Plaintiffs shall disclose and produce to the Company within 14 days of this Order:

2.1    A schedule setting out a full history of the Plaintiffs' dealings in shares in the Company between 3 January 2019 and 3 January 2022, specifying the price(s) and date(s) of all trades; and

27319201.1 A5415.A02770

2.2    All documents (of whatsoever description, whether electronic, hard copy or in any other format) within the Plaintiffs' possession, custody or power between 3 January 2020 and 3 January 2022 , reflecting or relating to any valuations, or similar analyses, of the Company that the Plaintiffs prepared, reviewed or considered regarding the Company or the Company's shares.

3.    The Parties shall be at liberty to make requests for discovery of additional documents or categories of documents, such requests to be made, in the first instance, in writing to the other Party and, if such requests are not assented to within 7 days, by application to the Court pursuant to RSC Order 24, Rule 7.

4.    The Parties shall comply with the disclosure protocol at **Appendix 1** hereto when disclosing and producing documents.

5.    The parties shall use their best endeavours to agree the date when discovery has been completed (the **"Discovery Completion Date"**), failing which any party may apply to the Court for further directions. In this context, "discovery" shall include experts' Information Requests in accordance with Section E and any management meetings in accordance with Section E.

## B.    Lists of Documents

6.    The Parties shall ensure that all documents they disclose are appropriately indexed in an electronically searchable form pursuant to **Appendix 1**. The indices shall be updated contemporaneously with any documents being disclosed.

7.    In relation to the documents which are to be disclosed pursuant to this Order, the Parties shall produce lists of documents in accordance with **Appendix 1** and RSC O.24, r.5(1) and (2). The indices referred to at paragraph 6 above shall be treated as the Company's list of documents in accordance with RSC O.24, r.5.

## C.    Experts

8.    The Plaintiffs (collectively) and the Company shall have leave to instruct and to call as a witness at trial one expert witness each in the field of valuation to opine upon the fair value of the Plaintiffs' shares in the Company (each a **"Valuation Expert"** and together the **"Valuation Experts"**).

3

9.      The Valuation Experts shall be appointed and the Parties shall advise each other of the identities and email addresses of the respective Valuation Experts so appointed by no later than 45 days from this Order.

10.     The parties and the Valuation Experts shall endeavour to agree on the valuation date (or dates) failing which the parties shall have liberty to apply to the Court for a determination as to the appropriate valuation date.

11.     No later than 21 days after the Discovery Completion Date , the Parties shall notify each other of any additional expert evidence they wish to seek leave to adduce (such as expert evidence as to deal process or specific industry sectors) ("**Additional Expert(s)**") and proposed directions for evidence of any Additional Expert evidence. The Parties shall then confer as soon as practicable with the view to determining whether agreement can be reached, subject to the grant of leave, to adduce evidence of any Additional Expert(s) and, if so, directions for such evidence of such Additional Expert(s).

12.     In the event of agreement the Parties shall as soon as practicable file a Consent Order with the Court seeking leave to adduce evidence of any Additional Expert(s) and directions for such expert evidence that are agreed. To the extent of any disagreement over whether leave should be granted to adduce evidence of any Additional Expert(s), or in relation to directions for such expert evidence, any application to the Court to resolve such disagreement shall be made no later than 14 days of the date that the notification was provided pursuant to paragraph 11.

**D.      Experts' Information Requests**

13.     The Valuation Experts shall be entitled to make written requests of the Company and/or the Plaintiffs for (a) the provision of relevant documents (of whatever description, whether electronic, hard copy or in any other format) and/or (b) the provision of relevant information, provided always that such documents or information are requested for the purpose of the preparation of their reports ("**Information Requests**"). The parties shall, so far as practicable, respond promptly to any such requests and in any event no later than 21 days from the date of the request. The Company and/or Plaintiffs (as the case may be) shall disclose and produce any materials provided pursuant to this paragraph in accordance with the disclosure protocol at **Appendix 1**. There shall be liberty to apply if documents and/or information sought are not provided or the Company and/or Plaintiffs are unable to comply with the request within the 21-day period.

4

14.     In accordance with the Overriding Objective, the Valuation Experts shall use their best endeavours to limit the frequency of Information Requests and to submit only clear and concise questions that are reasonably required to assist in the formulation of the Valuation Experts' opinions.

15.     Any Information Requests from a Valuation Expert and any responses from the Defendant thereto shall be copied simultaneously by email to the Valuation Expert for the other party or parties.

16.     Nothing in this Order or in **Appendix 2** hereto shall derogate from each party's implied obligation not to use the documents obtained thereby for any improper or collateral purpose.

**E.     Management Meetings**

17.     No later than the Discovery Completion Date, any party whose Valuation Expert wishes to meet with the Company's management for the purposes of obtaining information relevant to the preparation of the Valuation Reports ("**Management Meetings**"), shall make a written request to the other party together with proposed directions in relation to the conduct of Management Meetings. Thereafter the Parties shall confer as soon as practicable a view to determining whether agreement can be reached on the holding of any Management Meetings and, if so, on directions for such Management Meetings.

18.     In the event of agreement the Parties shall as soon as practicable file a Consent Order with the Court in relation to the holding of Management Meetings. To the extent of any disagreement in relation to the holding of Management Meetings, any application to the Court to resolve such disagreement shall be made no later than 14 days of the date that the notification was provided pursuant to paragraph 17.

**G.     Expert Reports of Valuation Experts and Joint Memorandum**

19.     Signed reports of each of the Valuation Experts shall be:

19.1     confined to the fair value of the Plaintiffs' shares as at the valuation date;

19.2     filed and exchanged simultaneously within 90 days of the Discovery Completion Date; and

19.3    stated to be prepared in compliance with the Rules of the Supreme Court 1985 and the duties of an expert identified at paragraph 48 of the Supreme Court of Bermuda decision, *A. Brewster et al. v The Premier of Bermuda et al.* [2021] SC (Bda) 45 Civ (9 June 2021).

20.    The Valuation Experts shall meet at a mutually convenient time, whether in person, by telephone call or video link or howsoever they shall decide (the "**Valuation Experts' Meeting**"), but no later than 28 days after the exchange of the Expert Reports, to discuss the differences between their respective expert reports with a view to narrowing the issues between them and producing the Joint Memorandum required by paragraph 21.

21.    A joint memorandum of the Valuation Experts (the "**Valuation Experts' Joint Memorandum**") recording:

21.1    the fact that they have met;

21.2    when and where they met, and that they discussed the issues of expert evidence;

21.3    the issues on which they agree;

21.4    the issues on which they disagree; and

21.5    a brief summary of the reasons for any such disagreement,

shall be completed and issued to the parties by the Valuation Experts by no later than 14 days following the Valuation Experts' Meeting.

22.    Any supplemental Valuation Expert Reports (the "**Supplemental Valuation Expert Reports**") shall be confined to the points of difference between the Valuation Experts and shall be exchanged simultaneously by no later than 28 days following the issuance of the Valuation Experts' Joint Memorandum.

**H.    Fact Witness Evidence**

23.    Any factual witness evidence to be relied upon at trial shall be filed and served within 28-days of the Discovery Completion Date.  The Parties shall file any evidence in response by no later than 21 days thereafter.

6

27319201.1 A5415.A02770

24.    Leave is hereby granted to the Parties to cross-examine any fact witness on his or her evidence and  any such witness shall attend for cross-examination.

**I.    Case Management, Case Management Conference and Trial Date**

25.    Unless the Parties otherwise agree, a case management conference shall be held on the earliest date convenient to the Court and the Parties' counsel after the deadline for exchange of any supplemental expert reports.

26.    The Parties shall, on an ongoing basis while the proceedings are extant, pay the costs of the recording and transcription of any hearings (such costs to be allocated 50% to the Plaintiffs and 50% to the Defendant in the first instance, but ultimately to be costs in the proceedings), subject to the Parties agreeing on the supplier and fee quote prior to each hearing or to dispense with recording and/or transcription.

27.    Liberty for any party to apply to modify this Order or for further directions in respect of the matters addressed in this Order.

28.    No sooner than 120 days from the date of this Order, the parties may seek to agree and thereafter provide the Court with a provisional estimate together with mutually available dates of Counsel for the trial to be fixed and in the absence of agreement any party may apply for directions in relation to the listing of the trial

29.    Costs in the cause.

Dated this 2nd day of  November 2022

The Honourable Mr Narinder Hargun
**CHIEF JUSTICE OF THE SUPREME COURT OF BERMUDA**

27319201.1 A5415.A02770

## APPENDIX 1

### Disclosure Protocol pursuant to Paragraph 4 of this Order

**A.**   **Definitions**

1.   **Document** means original and all non-identical copies of all written or printed items and electronically stored information and includes communications (which for the avoidance of doubt includes any written, or electronic transmission of information).

2.   **Custodians** means those persons likely to have discoverable documents and communications in their possession, custody or power.

3.   **Metadata** means data about data. In the case of an electronic Document, metadata is typically embedded information about the Document that is not readily accessible once the native electronic Document has been converted into an electronic image or paper Document, for example, the date on which the Document was last printed or amended. Metadata may be created automatically by a computer system (system metadata) or may be created manually by a user (application metadata).

4.   **MD5 Hash Value** means the Message Digest algorithm 5 which is used to provide a 128-bit hash or "digital signature" for electronic Documents and is generated upon the basis of the binary data of a file; where two or more items have the same MD5 Hash Value they are deemed to be duplicates.

5.   **Native File Format** means an electronic Document stored in the original form in which it was created by a computer software program.

6.   **Non-Custodial Data Sources** means those data sources (**such** as shared drives, servers, etc.) likely to contain electronically stored information that would be subject to disclosure.

7.   **Parent Document** means a Document with one or more attachment.  For example, an email is a parent Document and any Documents attached to the email are its attachments.

**B.**   **Preservation of Documents**

8.   The Company will preserve all potentially discoverable Documents, including the metadata of such Documents, and  ensure no metadata is altered during the preservation, collection, review or disclosure process.

8

**C.    De-duplication**

9.    Stand-alone electronic Documents or entire Document families with the same MD5 Hash Value will be identified and any duplicates removed, except:

    9.1.    where duplicates are added to a List of Documents because they are family members of other Documents which are also disclosed.  Duplicates which are part of a family are not to be removed, unless the whole of the family are in fact duplicates.

    9.2.    scanned hard copy Documents.

10.    A deNIST filter will be applied to the Documents during processing to identify and remove files that are generally created by operating systems or applications and contain no user-generated information or data. The deNIST culling process identifies files found on the National Institute of Standards and Technology (NIST) list of Documents that hold no value for litigation purposes.

**D.    Format**

11.    Electronic Documents are to be provided in their Native File Format, subject to:

12.    Documents, other than excel spreadsheets, that have been redacted in accordance with this protocol, which Documents will be produced in Tagged Image File Format (**TIFF**) with the relevant .opt file and Document ID coding;

13.    Excel spreadsheets, that have been redacted in accordance with this protocol, which Documents will be produced in a Native Format or near Native Format by using a software solution that retains the full functionality of the excel spreadsheet while applying redactions, such as Milyli, Evolver, or Redact Assistant.

14.    All PDF and TIFF Documents will be provided with corresponding Document level OCR text files where possible.  All PDF and TIFF Documents will also be bates stamped with the Document ID.

15.    The Company will ensure Documents are decrypted, or that passwords are supplied. To the extent encryption for Documents cannot be successfully processed despite reasonable efforts, a slip sheet stating that the Documents cannot be decrypted shall be inserted in its place, including

the metadata required, to the extent it can be reasonably extracted from the file in its encrypted form.

16.   Unless otherwise agreed or ordered by the Court, parties should not place any restrictions on Documents that prevent opposing parties from accessing them.

17.   Family-inclusive Documents will be produced with metadata load files containing the family attachment range to allow linking of Documents from the same family. Subject to any claim to privilege, all family Documents are to be disclosed where only one member of a family Document is identified as relevant.

**E.   Document Coding**

18.   The Company shall provide the following metadata detail for each Document, where such detail is reasonably available:

18.1.   Document ID: The document ID must be a unique reference and should be 8 digits in length following the party indicator, utilising zeros if necessary, e.g. GASLOG-00001234

18.2.   Parent document ID: If there is no Parent Document, leave this field blank.

18.3.   Last Modified Date: This should be the date and time last modified, or the manually coded date in the format DD/MM/YYYY, 00:00:00.

18.4.   Date Created: This should be the original date and time a file was created and may be the same as the Last Modified Date.

18.5.   Sent date: The date and time that the Document was sent in the case of an email and may be the same as the Date Created.

18.6.   File name/subject/description: This may be the file name or subject line of an email or other descriptor.

18.7.   Document title: The extracted title of the Document.

18.8.   Document type: (ie. .pdf, .xls, .msg etc).

18.9.   Sender/Author: The name of the author of a Document or sender of an email.

18.10.  CC: The name of the recipient(s) of the Document in a CC. Use a semi-colon (;) symbol as the multi-value separator.

18.11.  BCC: The name of the recipient(s) of the Document in a BCC. Use a semi-colon (;) symbol as the multi-value separator.

18.12.  Recipient: The name of the recipient(s) of the Document. Use a semi-colon (;) symbol as the multi-value separator.

18.13.  Custodian  or Non-Custodian Data Source: The name of the custodian from whom the Document was drawn, and the names of any other custodians who had duplicate copies of the Document.

18.14.  MD5 Hash Value: as defined.

18.15.  Contains Redactions: This will be a binary "Yes/No" code applying where the whole or part of a Document has been redacted.

18.16.  Reason for Redaction: This will identify the reason for the redaction using the following labels, as applicable:

18.16.1.  Litigation privilege;

18.16.2.  Legal professional privilege;

18.16.3.  Without prejudice privilege.

**F.   Excluded Documents**

19.   Temporary internet files, cookies and irrelevant gif files (ie. company logos) are to be excluded from searches and discovery (to the extent possible).

**G.   Withholding Disclosure - Privilege and Confidentiality**

20.   Nothing in this Protocol will prevent a party from withholding Documents from production on the basis of any applicable Bermuda law.

21.   If a claim of privilege is asserted over a portion of a Document only, that portion will be redacted and the Document produced.

27319201.1 A5415.A02770

22.    The redacted sections of a Document are to be identified as such either by being blacked out or by otherwise being marked as having been redacted and stating the reason for the redaction in the List of Documents.

23.    If a party asserts that a Document is privileged and was inadvertently produced, then at the request of that party, no party shall make use of it or any information derived therefrom save with the express leave of the Court. Any request under this paragraph shall be in writing

**H.    List of Documents**

24.    The following information shall be provided in the List of Documents to the extent that this information is reasonably available:

   24.1.   Document ID;

   24.2.   Parent document ID;

   24.3.   Last Modified Date;

   24.4.   Date Created;

   24.5.   Email sent date;

   24.6.   Conversion ID;

   24.7.   Title/subject/description;

   24.8.   Document type: (ie. .pdf, .xls, .msg etc);

   24.9.   Sender/Author;

   24.10.  Recipient;

   24.11.  Contains Redactions;

   24.12.  Reason for Redaction.

25.    To the extent the information is not available to the Plaintiffs through the Company's production, the Plaintiffs reserve the right to reasonably request further information from the disclosing party in relation to specific Document(s), other than those fields listed above.

27319201.1 A5415.A02770

26. The List of Documents will be ordered by family group, with attachments listed below Parent Documents.

27. In respect of attachments to emails, the above paragraph shall apply and:

   27.1. any Document that is attached to or embedded within another Document is to be classed as an attachment (unless an excluded Document); and

   27.2. attachments must be listed as separate Documents.

28. The List of Documents will be provided in an excel spreadsheet format (.xls) or such other format as may be agreed by the Parties.

**I. Form of Production**

29. Unless otherwise agreed production by the Company is to be given via a "load file" which meets the requirements of this protocol.

**J. Variation**

29. This protocol may be varied by agreement of the parties in writing or by order of Court.

**APPENDIX 2**

**Form of Confidentiality and Non-Disclosure Agreement pursuant to Paragraphs 1 and 2
of this Order**

**Non-Disclosure Agreement**

**This Non-Disclosure Agreement** (this "**Agreement**"), effective_____2022 ("**Effective
Date**"), is entered into by and **between:**

1.  Athene Holding Ltd ("**the Company**"); and

2.  The parties listed in Appendix A hereto (each a "**Dissenter**" and together the "**Dissenters**")

    (each herein referred to individually as a "**Party,**" or collectively as the "**Parties**").

**WHEREAS**

(A)     On March 8, 2021, Apollo Global Management, Inc., ("**AGM**"), entered into an Agreement
        and Plan of Merger with: (1) the Company; (2) Tango Holdings, Inc., a direct wholly owned
        subsidiary of AGM ("**HoldCo**"), (3) Blue Merger Sub, Ltd., a direct wholly owned subsidiary
        of HoldCo ("**Company Merger Sub**"), and (4) Green Merger Sub, Inc, a direct wholly owned
        subsidiary of HoldCo ("**AGM Merger Sub**)".

(B)     On 3 January 2022, pursuant to the Agreement and Plan of Merger, AGM and AHL completed
        an all-stock merger transaction to combine their respective businesses through: (1) the merger
        of the Company Merger Sub into AHL, pursuant to which AHL was the surviving entity and
        became a direct wholly owned subsidiary of HoldCo; and (2) the merger of AGM Merger Sub
        into AGM, pursuant to which AGM was the surviving entity and became a direct wholly
        owned subsidiary of HoldCo. The above mergers became effective concurrently and, upon
        their consummation, AGM and AHL both became direct wholly owned subsidiaries of HoldCo,
        which was renamed "Apollo Global Management, Inc."

(C)     Pursuant to section 106 of the Companies Act 1981, the Dissenters, former shareholders of the
        Company identified in Appendix A, applied to the Supreme Court of Bermuda (the "**Court**")
        for an appraisal of the fair value of their shares by filing an Originating Summons in Cause
        No 387 of 2021 (the "**Proceedings**").

(D)     By 16 November 2022, the Company and the Dissenters will produce documents in
        accordance with an Order made by Chief Justice Hargun on 2 November 2022 (the
        "**Directions Order**") and the parties will be producing further documents pursuant to the
        Directions Order for use in connection with the Proceedings (the "**Purpose**").

14

(E)     Both the Company and the Dissenters are engaged in proprietary and confidential business activities and could be prejudiced if confidential information pertaining to them or their affiliates or their respective businesses are disclosed publicly or to third parties or used for purposes unrelated to the Proceedings.

(F)     In consideration of the promises and the mutual agreements and covenants set out in this agreement, and intending to be legally bound, the Parties hereby agree as follows:

## 1     Definitions

"**Appointee**" means each person whom an Expert appoints to assist him or her in any work relating to the Proceedings, including the preparation of the Expert Reports and the Joint Memorandum (such terms as defined in the Directions Order).

"**Discloser**" means any Party which discloses Confidential Information or RAI (as defined below) in accordance with the Directions Order.

"**Experts**" means the respective expert witnesses appointed by the Company and the Dissenters in relation to the Proceedings in accordance with the Directions Order.

"**Recipient**" means any person who, in accordance with the Directions Order and subject to the provisions of this Agreement, is entitled to receive, access, download or review Confidential Information or RAI.

"**Representatives**" means, a Party's agents, advisors (including legal advisors), representatives (which, for the avoidance of doubt, includes the Parties' employees, directors, and officers), attorneys, counsel, experts and consultants required to assist the Party in relation to the Proceedings.

## 2     Confidential Information

### 2.1     Definitions

"Confidential Information" means all information relating to the Purpose that is not public information.

"Restricted Access Information" or "RAI" means any information designated, by way of written notice, by any Party as RAI due to the highly sensitive nature of the information, such that the information warrants a higher standard of protection (subject to any challenge to the RAI designation in accordance with paragraph 3.3).

27319201.1 A5415.A02770

**2.2    Exceptions**

Confidential Information or Restricted Access Information shall not include any information that: (i) was publicly available at the time of disclosure to the Recipient by the Discloser; (ii) becomes publicly available after disclosure to the Recipient by the Discloser through no action or inaction of the Recipient or any other person contrary to the terms of this Agreement; or (iii) is in the rightful possession of the Recipient without confidentiality obligations or restrictions as to its use or disclosure.

**2.3    Compelled Disclosure**

If the Recipient becomes legally compelled to disclose any Confidential Information or Restricted Access Information to any third party, the Recipient will, insofar as it is legally permitted to do so, provide the Discloser prompt written notice of such disclosure and will provide such assistance to the Discloser as the Discloser may reasonably require in seeking a protective order or another appropriate remedy in advance of such disclosure with a view to providing an opportunity for the Discloser to avoid or limit such disclosure or otherwise to agree the timing, form and content of such disclosure. If the Discloser waives the Recipient's compliance with this Agreement or fails to obtain a protective order or other appropriate remedy, that Recipient will furnish only that portion of the Confidential Information or Restricted Access Information that is legally required to be disclosed, provided that any Confidential Information or Restricted Access Information so disclosed shall maintain its confidentiality protection for all purposes other than such legally compelled disclosure.

**2.4    Procurement of compliance**

Each Party shall procure that, to the extent applicable, its (a) Experts and their Appointees and/or (b) Representatives, to whom Confidential Information or Restricted Access Information is made available (i) acknowledge and comply with the provisions regarding Confidential Information contained in this Agreement, and (ii) at all times protect the secrecy of and avoid disclosure and unauthorized use of the Confidential Information or Restricted Access Information.

**3    Restricted Access Information**

**3.1    Restrictions on access**

In addition to the protections and restrictions imposed on Confidential Information and RAI in this Agreement, any information designated RAI shall be disclosed or made available only to:

- the Recipient's Bermuda, U.S. and English legal advisors;

16

- the Recipient's discovery and document hosting vendors;

- the Recipient's expert(s) appointed by the Court for purposes of the Proceedings;

- the Court (including the Registrar of the Supreme Court of Bermuda together with any administrative staff);

- No more than three designated directors or employees of each Party (the "**Designated Individuals**") at any time to be designated in accordance with paragraph 3.2.

3.2    By 16 November 2022, each Party shall notify the other Parties in writing of its Designated Individuals including their job titles and business addresses. Any Party may replace a Designated Individual by notifying the other Parties in writing.  Any Designated Individual who is replaced shall immediately return or destroy any and all documents designated RAI in their possession and/or their access to such documents shall immediately be revoked by the responsible Party.

3.3    A Designated Individual shall, prior to receiving any document or information designated RAI, sign an undertaking indicating that the individual has: i) read and understood this Agreement; ii) agrees to be bound by its terms as if the individual were a party to it; and iii) acknowledges that the information the individual is receiving is RAI.

3.4    Should the Recipient of any document designated as RAI disagree that the designation is justified, the Recipient will notify the Discloser within 5 business days of receipt. If the Recipient and the Discloser are unable to agree on the appropriate designation within 5 business days after the Discloser receives notice of the Recipient's disagreement, the Discloser shall within 10 business days apply to the Court for a determination as to whether  a RAI designation is justified. Until the Court makes any such order, the information shall be treated by all Parties as RAI in accordance with this Agreement.

**4**    **Non-use and Non-disclosure**

Except as may otherwise be agreed in writing by the Discloser or permitted by the courts of Bermuda by way of relief from the implied undertaking or, where the implied undertaking does not apply, by way of order relieving the Recipient of its obligations under this Agreement, all Confidential Information or Restricted Access Information and its contents received by the Recipient shall: (a) be maintained in accordance with this Agreement; and (b) be disclosed only to such persons and in such manner as permitted by this Agreement. Confidential Information shall not be used by the Recipient for any purpose unrelated to the Proceedings. The Recipient shall not disclose any Confidential Information or Restricted Access Information  or  permit  any  Confidential  Information  or  Restricted  Access

17

Information to be disclosed, either directly or indirectly, to any third party without the Discloser's prior written consent.

**5        Maintenance of Confidentiality**

Each Party shall protect the secrecy of and avoid disclosure and unauthorized use of the Confidential Information or Restricted Access Information. Without limiting the foregoing, each Party shall: (i) restrict access to the Confidential Information to the Experts, Appointees and Representatives who are required to assist the Recipient in relation to the Proceedings and who have acknowledged the terms of this Agreement; (ii) take at least those measures it employs to protect its own most highly confidential information and in such a way so as to prevent unauthorized access by any third party, and shall otherwise comply with applicable data protection legislation, including by taking such security measures against unauthorized or unlawful processing or actual loss or destruction of, or damage to, Confidential Information or Restricted Access Information as may be required under that legislation; (iii) reproduce proprietary rights notices on any copies, in the same manner in which such notices were set forth in or on the original; (iv) notify the Discloser of any unauthorized use or disclosure, or suspected unauthorized use or disclosure, of Confidential Information; (v) assert, to the fullest extent permitted by law, any right to resist disclosure which may exist in any Confidential Information or Restricted Access Information; and (vi) not waive any right to resist disclosure which may subsist at any time in any Confidential Information or Restricted Access Information, or cause or permit any such right to be waived or otherwise lost by any act or omission.

**6        Return of Materials**

Upon the earlier of (a) the final determination of the Proceedings (including all appeals therefrom); or (b) a legally binding agreement having been reached between the Company and any Dissenter (the **"Discontinued Dissenter"**) resulting in the discontinuance of the Proceedings as regards such Discontinued Dissenter then, insofar as the Recipient is either the Company, Discontinued Dissenter or the Representative, Expert or Appointee for the Discontinued Dissenter, all documents provided by the Discloser to such Recipient, comprising Confidential Information or Restricted Access Information shall be and remain the property of the Discloser, and such Recipient shall, at its own expense and within 28 days of receipt of a written demand from the Discloser, take all reasonable steps to: (i) return or destroy, or procure the return or destruction of, all originals and hard copies of documents containing Confidential Information or Restricted Access Information; (ii) so far as it is practicable to do so, permanently erase, or procure the permanent erasing of, all electronic copies of any Confidential Information or Restricted Access Information; and (iii) on request confirm to the Discloser in writing that the requirements of this Section have been fully complied with.

27319201.1 A5415.A02770

**7      No License**

The Confidential Information and any Restricted Access Information shall remain the property of the Discloser and neither its disclosure nor this Agreement shall be construed as granting the Recipient or any other person any rights (including any intellectual property rights) in or to Confidential Information and Restricted Access Information except as expressly set forth in this Agreement.

**8      Term**

The obligations of a Party under this Agreement shall survive until the earlier of 18 months following the return or destruction of materials pursuant to Section 6 above or such time as all Confidential Information and Restricted Access Information disclosed hereunder falls within any of the exceptions to Confidential Information and Restricted Access Information set forth in Section 2.2 through no action or inaction of the Recipient.

**9      Remedies**

The Parties agrees that damages would not be an adequate remedy for any breach of this Agreement, and any such breach, whether threatened or actual, will entitle the Discloser or any other relevant person to obtain injunctive relief, specific performance and any other applicable equitable relief and/or legal remedies.

**10      Assignment**

This Agreement shall bind and inure to the benefit of the Parties and their respective successors and permitted assigns; except that a Party may not assign, novate or otherwise transfer this Agreement, by operation of law or otherwise, without written consent of the other Party, such consent not to be unreasonably withheld. Any assignment or transfer of this Agreement in violation of the foregoing shall be null and void.

**11      Governing Law and Jurisdiction**

This Agreement will be interpreted and construed in accordance with the laws of Bermuda, without regard to conflict of law principles. With respect to any disputes arising out of or related to this Agreement, the Parties consent to the exclusive jurisdiction of, and venue in, Bermuda. The Parties hereby each represent and warrant that the person executing this Agreement on its behalf has express authority to do so, and, in so doing, to bind the Party thereto.

27319201.1 A5415.A02770

12      **Entire Agreement**

This Agreement contains the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior written and oral agreements between the Parties regarding such subject matter.

13      **Severability**

If a court or other body of competent jurisdiction finds, or the Parties mutually believe, any provision of this Agreement, or portion thereof, to be illegal, invalid or unenforceable, such provision will be enforced to the maximum extent permissible with whatever deletion or modification is necessary so that the provision is legal, valid and enforceable. To the extent it is not possible to delete or modify the provision, then such provision or part thereof shall, to the extent that it is illegal, invalid or unenforceable, be deemed not to form part of this Agreement and the legality, validity and enforceability of the remainder of this Agreement shall, subject to any deletion or modification made under this Section, not be affected.

14      **Third Party Rights**

This Agreement does not create any right under the Contracts (Rights of Third Parties) Act 2016 which is enforceable by any person who is not a party to it.

15      **Waiver**

No provision of this Agreement may be waived except in writing executed by the Party against whom the waiver is to be effective. A Party's failure to enforce any provision of or exercise any of its rights under this Agreement shall neither be construed as a waiver thereof, nor prevent the Party from enforcing any other provision of this Agreement, nor shall any single or partial exercise of rights preclude any other or further exercise of such rights.

16      **Variation**

No provision of this Agreement may be amended or otherwise modified except in writing signed by the Parties to this Agreement.

17      **Counterparts**

The Parties may execute this Agreement in any number of counterparts, each of which is deemed an original, but all of which together constitute one and the same agreement. This Agreement may be delivered by facsimile transmission or e-mail and facsimile copies of executed signature pages shall be binding as originals.

27319201.1 A5415.A02770

In witness whereof, the Parties by their duly authorized representatives have executed this Agreement as of the Effective Date.

**ON BEHALF OF THE COMPANY, ATHENE HOLDING LTD.**

By _____

Name:

Title:

**ON BEHALF OF THE DISSENTERS:**

By _____

Name:

Title:

## Appendix A

### Plaintiffs in Cause No 387 of 2021 (the "Proceedings")

Stonehill Institutional Partners LP

Stonehill Master Fund Ltd

APS Holding Corporation

Diamond Family Investments, LLC

Invictus Special Situations Master I, LP

IN THE SUPREME COURT OF BERMUDA

CIVIL JURISDICTION

(COMMERCIAL COURT)

2021: No. 387

IN THE MATTER OF THE AGREEMENT AND PLAN OF MERGER BY AND AMONG ATHENE HOLDING LTD., APOLLO GLOBAL MANAGEMENT, INC., TANGO HOLDINGS, INC., BLUE MERGER SUB, LTD. AND GREEN MERGER SUB, INC. DATED AS OF 8 MARCH 2021

AND IN THE MATTER OF A PROPOSED STATUTORY MERGER AGREEMENT AMONG ATHENE HOLDING LTD., TANGO HOLDINGS, INC., AND BLUE MERGER SUB, LTD.

AND IN THE MATTER OF SECTION 106 OF THE COMPANIES ACT 1981

BETWEEN:

(1)  STONEHILL INSTITUTIONAL PARTNERS LP
(2)  STONEHILL MASTER FUND LTD
(3)  APS HOLDING CORPORATION
(4)  DIAMOND FAMILY INVESTMENTS, LLC

(5) INVICTUS SPECIAL SITUATIONS MASTER I, LP

<u>Plaintiffs</u>

and

ATHENE HOLDING LTD.

<u>Defendant</u>

---

ORDER FOR DIRECTIONS

---

 

Kennedys Chudleigh Ltd.
20 Brunswick Street
Hamilton HM 10
Bermuda
Attorneys for the Plaintiffs

27319201.1 A5415.A02770