# EXHIBIT 5

© Copyright 2022, vLex Justis. All Rights Reserved.

Copy for personal use only. Distribution or reproduction is not allowed.

# Walsh and Taal v Horizon Bank International Ltd

**Id. vLex Justis** VLEX-792722521

**Link:** https://justis.vlex.com/#vid/walsh-and-taal-v-792722521

**Text**

Supreme Court

Kawaley, J.

25 of 2004

Walsh and Taal
and
Horizon Bank International Limited

**Appearances:**

Mr. Narinder Hargun and Mr. Christian Luthi, Conyers Dill & Pearman, for the plaintiff.

Mr. Jan Woloniecki and Ms. Shade Subair, Attride-Stirling & Woloniecki, for the defendant.

Civil Practice and Procedure - Discovery — Whether deposition made at the examination of a witness could be disclosed — Privilege — Whether there was waiver of the privilege that was attached to deposition.

Kawaley, J.

The plaintiffs seek disclosure of the transcript of the examination of the former Vice-President of the defendant, which took place in the still pending primary winding-up proceedings of the defendant under St. Vincent and Grenadines' law. But they only seek disclosure of those portions of the deposition which relate to the "directing minds" issue which is central to their claim that the fraudulent knowledge of the Toronto defendants may be imputed to the defendant thus impressing certain deposits paid into its Bermuda account with a trust in their favour. The plaintiffs contend that if such document was privileged, this privilege was waived, primarily

because the Liquidator disclosed the contents of an interview which led to the deposition in an affidavit sworn in support of a stay of these proceedings on May 31, 2005, and has published on the company's website an October 7, 2005 report which refers to the deposition itself.

By a cross-application, the defendant seeks orders that either (a) no disclosure is required, or (b) if disclosure is required, it should be on the conditions that (i) the plaintiffs undertake not to use the examination transcript for any other purpose, and (ii) the plaintiffs call Kevin Coombs as a witness.

The defendant in the course of the hearing agreed to disclose the notes of an informal interview with Kevin Coombs which were explicitly referred to in the then Provisional Liquidator's May 13, 2005 Report. But counsel explicitly did so without prejudice to the defendant's right to object to their admissibility and/or relevance) at next month's trial. The deposition which the defendant refuses to disclose (unless the plaintiff undertakes to call Kevin Coombs as a witness at trial) was taken after the May 13, 2005 Report was relied upon in the present action. The deposition was referred to in a subsequent October 6, 2005 Report which has already been disclosed. In both reports it is admitted that Kevin Coombs took instructions from the Toronto defendants and these persons appeared to be the directing or controlling minds of the defendant company.

The primary questions which fall for determination are (a) whether the deposition is discoverable under the usual relevancy test, (b) whether the deposition is privileged, and/or (c) if it is privileged, can privilege still be claimed? The first question is the simplest one. If these questions are resolved in the plaintiffs' favour, whether conditional disclosure should be granted must then be determined.

**IS THE EXAMINATION DEPOSITION DISCOVERABLE?**

The parties respective pleaded cases on the "directing minds" issue are as follows:

> "7. HBI was at all material times the alter ego of the Toronto defendants and/or alternatively they, along with Kervin Coombes, were its controlling and/or directing minds. The plaintiffs rely upon the matters set out in 9 below in support of their averment that Coombes and the Toronto defendants were the controlling and/or directing minds of HBI and, as a consequence, their knowledge and acts, as set out below, are to be attributed to HBI.
>
> 9. At all relevant times prior to the appointment of the Controller and the Liquidator…
>
> > (d) HBI, Coombes, and Prucha carried on business for HBI under the control and direction of the Toronto defendants, William F. Presnail ("Presnail"), Mark Edwards ("Edwards") and Daniel O. Connor ("O'Connor)…"[Amended Points of Claim]
>
> 10. With respect to paragraph 9 of the Amended Points of Claim:…

(d) It is admitted and averred that at all material times Kevin Coombes was the controlling and/or directing mind of HBI who acted upon the instructions of the other individual Toronto defendants. Save as aforesaid, subparagraph (d) is denied.." [Amended Defence]

It is obvious and beyond serious argument that any portion of the Coombs deposition which relate to instructions received from any of the Toronto defendants "which, it is reasonable to suppose, contains information which may or-not which must-either directly or indirectly enable the party requiring [disclosure] either to advance his own case or to damage the case of his adversary": Compagnie Financiere du *Pacifique v. Peruvian Guano Company* [1883] 11 Q.B.D 55 at 62–63. The requested document is, therefore, prima facie discoverable as Mr. Hargun contended.

**IS THE EXAMINATION DEPOSITION PRIVILEGED?**

For the reasons set out in the defendant's Skeleton Argument at paragraphs 30–34, I am satisfied that depositions taken in examination proceedings under provisions similar to section 195 of the Bermuda Companies Act are generally confidential and privileged. This finding is supported by the three cases on which Mr. Woloniecki relied, In *re Greys Brewery Company* (1883) 25 Ch. D 400, *North Australian Territory Company v. Goldsborough* [1889] 2 Ch 381 and [Learoyd v. Halifax Joint Stock Banking Company](#) [1893] 1 Ch 686.

Modern liquidation practice confirms this conclusion. Information relating to litigation in which a company in liquidation is involved is routinely sealed in this court, so that the liquidator's litigation strategy (developed under the supervision of the committee of inspection and/or the court) will not be prejudiced by third party disclosure. Limited reports of the progress of an investigation or litigation given in reports to creditors have apparently never given rise to applications for the confidential material referenced therein to be disclosed to a litigation adversary who gains access to the typically widely distributed liquidator's report. In this case, it appears that both reports relied upon by the plaintiffs are posted on the company's website, and are thus available to the public at large. It is a quantum leap to infer from this fact alone that the deposition transcript itself has become a public document because it is referred to in a published report.

I find that the deposition of Kevin Coombs taken by the liquidator is prima fade privileged from discovery. Nevertheless, it remains to consider whether privilege still attaches thereto or whether it has been waived or otherwise lost.

For completeness I should note that I accept Mr. Woloniecki's submission that the statements made by the defendant's former officer while being examined by the provisional liquidator whose appointment brought the directors' powers to an end cannot be admissible as admissions made by an agent of the defendant company.

Does privilege still attach to otherwise discoverable portions of the deposition transcript the

plaintiffs seek?

### (a) WAS PRIVILEGE IN THE SECOND REPORT WAIVED BY DEPLOYMENT IN THE LITIGATION OF THE INITIAL REPORT?

I reject Mr. Hargun's submission that reliance on the May 11, 2005 report by the defendant in these proceedings constituted a waiver of any privilege attaching to the transcript which was subsequently recorded at the formal examination hearing, and only referenced in the October 6, 2005 Report. It seems to me that the facts in this case fall outside the principle that where a party "deploys" part of a document which contains privileged material in the course of contentious proceedings, privilege in the whole document will be held to be waived:
[Derby & Co. Ltd. v. Weldon](#) [1991] 1 W.L.R. 660.

Not only did the transcript not exist when the earlier report was placed before this court in support of the stay application, but what was material on the application at which the informal initial interview was relied upon before this court was the fact that it appeared that the defendant company was being directed and controlled by persons other than its legal owners. What Mr. Coombs said was not being deployed by the defendant in answer to the merits of the plaintiffs' claims at all; it was being contended that the ordinary depositors' claims should be advanced in the primary liquidation proceedings in St. Vincent. The dictum of Vinelott, J. in
[Derby & Co. Ltd. v. Weldon](#) [1991] 1 W.L.R. 660 at 668E upon which Mr. Hargun relied was made in a materially different factual context:

> "In both those cases what was material in the interlocutory proceedings was the fact that the plaintiff had given advice to a particular effect and not the substance of the advice or the extent of the instructions given to the lawyer. In the instant case, the plaintiff deployed [the] evidence in answer to the claims made… as to the knowledge of the plaints… Moreover, these very matters have been brought into issue by Mr. Lyndon-Stanford [the defendant's counsel]."

In the present case the defendant is not positively bringing into issue what Kevin Coombs said in the course of examination at all. Defensively, however, it is clear on the face of the pleadings that issue is joined on whether or not, factually and legally, the Toronto defendants may be said to have been, at all material times, the directing minds of the defendant so that their allegedly fraudulent knowledge may be imputed to the defendant company. When I pressed Mr. Woloniecki to clarify whether his client's case raised purely legal issues wholly distinct from the facts, he was bound to concede that the "directing minds" principle was "fact sensitive". Paragraph 7(n) of the Amended Points of Claim relies on the following admission in Mr. Wide's October 6, 2005 Report:

> "2. Guiding Minds
>
> My review has confirmed my preliminary view that the guiding minds of Horizon in the performance of its day to day activities … include Mr. Edwards, Mr. Presnail and Mr. O'Connor, all residents of Ontario, Canada."

- The "review" is apparently also a reference to informal interviews with Kevin Coombs conducted before the formal examination, which is merely foreshadowed in the sentence in paragraph 2 of the Report, which follows the sentence quoted in paragraph 7(a) of the Points of Claim. Issue is joined on the face of the pleadings as to whether the October 7, 2005 report does in fact contain an admission to the fact that, based on information obtained during the examination of Kevin Coombs, that the directing minds of the company included the Toronto defendants. Paragraph 8 of the Amended Defence reads as follows:

    > "It is admitted and averred that at all material times Kevin Coombes was the controlling and/or directing mind of HBI who acted upon the instructions of other individual Toronto defendants. Save as aforesaid, paragraph 7 of the Amended Points of Claim is denied"

- So, as in the case of the plaintiffs' and defendant's pleas under paragraph 9(d) and 10(d) of the Points of Claim and Defence respectively, it is denied that the Toronto defendants were the controlling or directing minds of the defendant. The question at trial will be (a) whether the defendant's liquidator's October 6, 2005 report, as read with the earlier report, constitutes an admission on the "controlling and/or directing mind" issue, and (b) whether the admissible evidence supports the plaintiffs or the defendant's legal characterisation of the relevant facts. There is no suggestion that the transcript represents more than a potential witness's account of the nature and extent of instructions he received from the persons the plaintiffs contend were the "controlling and/or directing" minds of the company. The witnesses the parties propose to call have already been identified and the defendant does not propose to call Mr. Coombs at all.

- So, at this stage, there is no suggestion on the pleadings or the court record that the defendant has deployed or intends to deploy the contents of the examination in support of its case that the persons who gave instructions to Coombs cannot be characterised as the controlling or directing minds of the company.

**(b) HAS PRIVILEGE BEEN OTHERWISE WAIVED OR LOST?**

- To determine whether privilege has been waived or otherwise lost, it is necessary to be clear on the nature of privilege claimed. The privilege applicable to examinations conducted by liquidators or trustees in bankruptcy appears to be analogous to the privilege that attaches to documents prepared in contemplation of litigation. But it arises in a statutory context which provides a public interest element somewhat distinct from the public policy rationales which apply to pre-litigation privilege generally.

- When a company is insolvent and a liquidator is appointed, the court may invoke the following statutory powers contained in our Companies Act, 1981:

    > "195(1) The court may, at any time after the appointment of a pro-visional liquidator or the making of a winding-up order, summon before it any officer of the company or

> persons known or suspected to have in his possession any property of the company or supposed to be indebted to the company, or any person whom the court deems capable of giving information concerning the promotion, formation, trade, dealings, affairs or property of the company.
>
>> (2) The court may examine such person on oath, concerning the matters aforesaid, either by word of mouth or on written interrogatories, and may reduce his answers to writing and require him to sign them."

These powers are generally regarded as somewhat draconian, because our system of law generally does not permit witnesses to be summoned or examined before trial. Any interviews which take place with witnesses before trial are purely on a voluntary basis. But these powers are conferred by statute to mitigate the financial loss which might flow from insolvencies if the liquidator's could only recover assets with the voluntary cooperation of persons who may often have been responsible for the insolvency and have a vested interest in non-cooperation. Case law has prevented abuse of these powers by providing that a liquidator should not compulsorily examine a former officer in circumstances where the purpose of the examination is to gather evidence for a claim which the liquidator has already decided to bring against such officer. But the purpose of the examination powers is to enable the liquidator to advance the winding-up proceedings by identifying and recovering assets, where necessary by commencing separate recovery actions. Section 420 of the St. Vincent and Grenadines Companies Act is based on the same provision in the English 1948 Companies Act (section 268) as our section 195. Although the statute contemplates the examination taking place before the court, in practice a private examination usually takes place.

In *re Greys Brewery Company* is the earliest case cited by counsel. This case mainly supports the principle that confidentiality attaches to the examination process. Chitty, J. explained:

> "The nature of the proceedings is essentially this: the person examined is not being examined as a witness… What is being done is this: discovery is sought to be obtained which may be useful to the court in the conduct of the proceedings in the winding-up, and, to my mind, looking at the section and the purpose for which the provisions of that section were inserted, an examination of this kind must be considered in the nature of a secret proceeding. (1883) 25 Ch. D 400 at 403"

Chitty, J. supported the decision of the liquidator to exclude creditors from the examination hearing. However, he also averted (at page 408) to the circumstances in which such secrecy rights might be lost:

> "It must not be for a moment supposed that when litigation arises, if ever it should and any attempt is made to make use of the examination, the whole matter will not be then dealt with in public; and all parties who are concerned in any summons in the winding-up or the like, against whom the examination is sought to be made use of so far as it can, will then be at liberty to examine and cross-examine in any way they may think fit…"

The English Court of Appeal shortly thereafter confirmed that where a person who has been examined gives evidence at trial, cross-examination may be permissible on the examination deposition, but that the transcript is not liable to disclosure before trial. *In North Australian Territory Company v. Goldsborough* [1889] 2 Ch 381, Lord Esher [At page 386] stated:

> "It comes to this, that answers given in an examination under sect. 115 never can be used as evidence of proof except for the purpose of contradicting a witness; they are not taken as evidence in an action, but for the purpose of obtaining information to enable the company or its liquidator to decide as to propriety of bringing or continuing an action: they are not proofs and can never be used as proofs."

In this nineteenth century case, the insolvent company was the plaintiff, and the plaintiff's counsel (in evidence on commission taken in Melbourne) used the liquidator's examination transcripts to cross-examine the defendants' witnesses, while the defendants counsel did not have access to the depositions. Yet Lindley, L.J. observed:

> "The argument on behalf of the defendants practically comes to this: that because use was made of these depositions by the plaintiffs' counsel in Melbourne, the defendants are entitled to see them. On what principle are they so entitled? It is said that they are entitled because these depositions ought to have been scheduled in the plaintiff's affidavit of documents as documents in their possession relating to matters in dispute in the action; but, if they had been scheduled, privilege would as a matter of course have been claimed for them… and it would not be fair to the plaintiffs if we were to treat these depositions as documents in their possession unprotected by a claim of privilege [At page 387]."

Mr. Hargun produced no authority which contradicted the proposition that the examination transcript he sought is, by its very character, not a discoverable document unless it is sought to contradict the trial testimony of a witness by reference to what he said during the examination. For this further reason, I reject the submission that any collateral waiver of privilege occurred in respect of the subsequent examination when the informal interviews were referred to in the May 6, 2005 report which was filed in support of the defendant's application stay the claims brought in these proceedings by persons not party to the dispute between the parties to the present action.

It remains to consider the submission that confidentiality has been lost because the transcript is prospectively referenced in the October 7, 2005 report, which has been made available to the plaintiffs and which is publicly available on the defendant's website. Again, there is no authority which supports the proposition that a mere reference to an examination transcript, publicly or otherwise, extinguishes the confidentiality which was previously attached to the transcript or deposition. The plaintiffs' counsel referred to Chapter 19 of Charles Hollander QC, 'Documentary Evidence', 9th edition (Sweet & Maxwell: London, 2006), 'Loss and Waiver of Privilege'. Paragraph 19–03 states as follows:

> "Where privileged documents such as counsel's advice are referred to in open correspondence, the only question is whether there is a loss of confidentiality which

will preclude a subsequent claim to privilege. Quoting the extract will not give rise to loss of confidentiality in the entire document or opinion. It may give rise to a loss of confidence in the extract quoted, although that may not matter."

In my judgment, the fact that the intention to conduct a formal examination of various officers (including, by implication, Kevin Coombs) has been referred to in a liquidator's report which itself is not (or is no longer) a confidential document does not mean that any deposition subsequently taken itself has lost its privileged character. If reference to privileged information destroyed the unpublished information's privilege, liquidators would be unable to apprise creditors in a large liquidation of the progress of investigations into potential claims, or indeed decisions in relation to litigation, in reports which would inevitably be accessible to the company's debtors as well. For present purposes, the position with respect to the referenced portions of the examination transcript does not matter although it will at trial. Only if the deposition itself had been made public would the privilege in the entire document clearly have been lost. It has long been liquidation practice for liquidators to take steps to preserve the confidentiality in examination records as a whole in circumstances where they must surely have made some limited disclosure about their contents as part of their duty to report to the general body of creditors. As Stirling, J. [1893] 1 Ch 686 at 693 noted in *Learoyd v. Halifax Joint Stock Banking Company*, a case where privilege was claimed by a trustee in bankruptcy and the defendant contended that no privilege existed because the rules of court required the examination transcript to be filed in court and thus available for inspection:

> "It is true that the Rules in Bankruptcy provide that the evidence so taken is to be filed; but they do not say that it is to be filed immediately. If that was done the main object of the examination might be defeated. The point has often been considered both by myself and by the other judges with reference to depositions taken under sect. 115 of the Companies Act, 1862. The practice under that section in all branches of the court is that the depositions, when taken, shall be returned to the Chief Clerk for use in the liquidation; but they are not filed until the court is satisfied, through the Chief Clerk, that no harm can be done by their publication."

Although no issue of a reference to some of the privileged material arose in the quoted case, it illustrates the general point that unless a liquidator has deliberately published an entire examination deposition, the courts will be slow to conclude that privilege has been lost in the document as a whole. This is fundamentally because the privilege derives from statute for the benefit of the insolvent estate, and insolvency rules and practice will be flexibly and pragmatically applied with this public policy goal in mind. The insolvency scheme in Commonwealth jurisdictions such as Bermuda and St. Vincent requires liquidators to keep the general body of creditors apprised, to a limited extent, of confidential matters such as (a) the results of investigations, and (b) the effect of legal advice, in circumstances which might inevitably result in the contents of such limited disclosures coming into the public domain. It would clearly be contrary to this legislative scheme and the public policy goals which underpin it to treat such limited disclosures as depriving the private documents referred to of their entitlement to ongoing privilege. There is no persuasive basis for construing this form of partial disclosure by way of reference to the contents of a confidential deposition as "inconsistent with the maintenance of the confidentiality which the privilege is intended to protect" *Mann v. Carnell*

[1999] 210 C.L.R. 1 at 13, cited in Hollander, 'Documentary Evidence', at paragraph 19–17.

For these reasons, I find that the examination transcript of Kevin Coombs is not required to be disclosed by the defendant to the plaintiff for the purposes of the present proceedings. As the litigation presently stands, there is no prospect of the former Vice-President being called by the defendant and subject to potential cross-examination about the consistency of his trial testimony with his previous examination. And privilege in the relevant document has neither been waived nor lost.

**CONCLUSION**

It follows that the defendant is entitled to an order in terms of paragraph 2 of the defendant's Summons filed on January 3, 2008, and no order is made as to paragraph 1, which was disposed of by way of a without prejudice concession, or paragraph 3, which does not arise.

Had I found that the plaintiffs were entitled to discovery on the basis contended for, I would not have imposed the conditions sought to be imposed under paragraph 3 of the defendant's said Summons.

The plaintiffs' discovery Summons dated January 16, 2007 is dismissed. Unless either party applies by letter to the Registrar within 14 days to be heard as to costs, I would order that the costs of the present applications should be the defendant's in any event.

Kawaley, J.