# EXHIBIT 6

NG-9J84MDUI 4838-7157-4952v1

© Copyright 2022, vLex Justis. All Rights Reserved.
Copy for personal use only. Distribution or reproduction is not allowed.

# Modulable et Al v Butterfield Trust (Bermuda) Ltd

**Id. vLex Justis** VLEX-793164265

**Link:** https://justis.vlex.com/vid/modulable-et-v-butterfield-793164265

**Text**

<u>Supreme Court</u>

Kawaley, C.J.

<u>65 of 2012</u>

Modulable et al
and
Butterfield Trust (Bermuda) Limited

**Appearances:**

Mr. David Kessaram, Cox Hallett & Wilkinson, for the plaintiffs

Mr. Jan Woloniecki and Mr. Nathaniel Turner, Attride-Stirling & Woloniecki, for the defendant

Civil practice and procedure - Discovery — Parties obliged to assist court in achieving the Overriding objective under Order 1A Rule 3— Fair trial impossible without Ordering disclosure.

Trusts and Trustee - Relationship between Protector and Trustee — Whether protectors Are the agents of the Trust — Documents in possession of protector are within The trustee's power — Common Interest Privilege — Whether legal advice may Sought by Trustee may be shared with the protectors and beneficiaries of the Trust — Whether advice obtained by Trustee was privileged — Privilege not lost merely by sharing on a Confidential basis with persons interested in the Administration of Trust — Whether retainer letters in respect of legal status subject to disclosure — Unfair to conceal terms which are not privileged.

Kawaley, C.J.

User-generated version David Thom                                                                                              vlexjustis

The plaintiff's present application for specific discovery made by Summons dated April 19, 2013 arises in an action in which the plaintiffs contend that the defendant, as Trustee of the Art I Trust, in or about 2007 entered into a legally binding agreement to pay CHF 120 million for the construction of a Salle Modulable in Lucerne. It is common ground that the defendant made certain initial payments towards the Project until signifying that they intended to abandon it in 2010.

The interlocutory history has been particularly acrimonious, with initial skirmishes centring on the defendant's attempts to gain disclosure of the plaintiffs' third-party funding arrangements. From the outset of discovery, each side has adopted a somewhat rigid and rhetorical stance; the plaintiffs contending that the defendant is determined to avoid compliance with its discovery obligations, the defendant responding that the plaintiffs' requests are largely irrelevant and oppressive because the trial will only ultimately turn upon the construction of three short documents which have already been disclosed.

Each side's framing of the other's motivations is essentially exaggerated as it is obvious that it is to some extent legitimate for the plaintiffs to seek to maximize the scope of discovery they can obtain and for the defendant as a professional trustee to minimize the burden of discovery and the potential cost burden for the beneficiaries to whom it owes fiduciary duties. However, the dust stirred up by the contentious exchanges on discovery has, it must be noted, obscured an important feature of our modern civil procedural code. The parties are obliged to assist the Court to achieve the Overriding Objective under Order 1A rule 3 an obligation which they have been equally culpable of neglecting in relation to the discovery process.

In fairness to the parties and their legal advisers, the expedited trial directions ordered by this Court (primarily, it must be said, at the defendant's prompting) has added additional time pressure to the discovery process. However, the effect of compressing the time available for discovery only rationally increases the need for the parties to adopt a collaborative stance generally and for the plaintiffs, in particular, to adopt a finely tuned approach to their requests rather than insisting on production defined in the most wide-ranging terms.

By the time the present application was heard the plaintiffs were able to substantially narrow the scope of their requests in large part because they had successfully cajoled the defendant into filling and/or explaining actual or apparent gaps in their initial discovery.

The appropriate test

Mr. Kessaram submitted that his application was an application for disclosure and not production and so the liberal test of relevance laid down in Compagnie Financiere et Commerciale du *Pacifique v.* The Peruvian Guano Company (1882) 11 QBD 55 at 63 applied. Mr. Woloniecki responded that in reality the plaintiffs were seeking production of further documents and not simply a further and better list; inspection had taken place by means of the defendant uploading documents to a data room and the parties were now in the final stages of preparing witness statements. Accordingly, it was for the plaintiffs pursuant to Order 24 rule 12(1) to show that

User-generated version David Thom

vlexJustis

production was "necessary either for disposing fairly of the cause or matter or for saving costs." In reply, the plaintiffs' counsel did not insist on having the Court adjudicate the application purely on the basis of discovery by list as opposed to production.

Having regard to my duty to seek to take into account the overriding objective when exercising any discretion under the Rules, I propose to treat the application as in substance one for production and find that the applicants bear the burden of demonstrating the necessity for the production they seek. In so doing I will generally assume in the plaintiffs' favour that the documents they seek are relevant and potentially liable to be disclosed applying the broader Peruvian Guano test.

Findings: Category 1 documents

A Deed of Addition was apparently executed by the defendant as Trustee of the Art I Trust on November 6, 2007 which added the following beneficiaries to the Trust:

> "Any registered charity and non-profit making entity proposed by the Trustee and consented by the Protectors other than one which is an excepted Person (as defined in the Trust)."

The plaintiffs have no positive basis for asserting that they were made beneficiaries pursuant to this Deed. The defendant's positive case is that they were never made beneficiaries. It seems to me to be inherently improbable that the Trustee would have proposed and the Protectors would have consented to the plaintiffs becoming beneficiaries without notifying them at the time. I find that the documents sought under paragraphs 2 and 3 of the plaintiffs' draft Minute of Order are not "necessary either for disposing fairly of the cause or matter or for saving costs."

The documents requested under paragraphs 4 to 6 of the same draft Order ought in my judgment to be produced. The meeting minute of the October 7, 2009 meeting was produced by Mr. Woloniecki with a flourish in the course of the hearing; the outstanding audited financial statements said not to be in the defendant's possession can clearly be obtained from the Trust's auditors, as Mr. Kessaram pointed out.

The last sub-category of documents relate to two payments made to the plaintiffs in 2008 and 2009 and how they were accounted for both internally and by the Trust's auditors. I find that the documents described in paragraphs 7 to 13 of the draft Order ought to be produced (to the extent that they have not already been produced).

I would make no Order at this stage in respect of paragraph 14 and the structure charts on the assumption that these are likely to be explained in the evidence and on the basis that their necessary connection to the central issues to be tried appears to me to be too peripheral based on the material presently before the Court to justify ordering the production of all documents relating to their preparation.

Findings: Category 2 documents

- These documents essentially relate to other donations made by the defendant as Trustee of the Art I and/or Art II Trust which the plaintiffs, somewhat speculatively, consider may support their case that a binding commitment was made to them in respect of the Project. As the defendant proposes to explain these donations in its evidence, I think it is premature and would be disproportionate in costs terms to compel the defendant to produce the documents described in paragraphs 15, 18 and 19 of the draft Order at this stage.

- However, the Annual Report for the Art Mentor Trust 2009 ought to be produced (paragraph 16). The request under paragraph 17 of the draft Order is too broad and is refused.

Findings: Category 3 documents

- This category embraces documents in the possession of the Protectors, Dr. Scheuer (retired in 2010) and Professor Dr. Dr. Bicker relating to the other donations and the commitment made in relation to the Project. The plaintiffs contend that the Protectors are agents of the Trustees and that the documents are accordingly within the Trustee's power. I accept that all they need to make out is a prima facie case of agency: Matthews & Malek, 'Disclosure', 4th edition, at 6.54. The defendant disputes this characterisation of the relationship between the Trustee and the Protectors.

- I accept entirely Mr. Kessaram's submission that some of what the Protectors did from time to time may have been, practically viewed, acts carried out on behalf of the Trustees and perhaps even beyond what their strict role of Protector may have required. However, in my judgment any documents likely to be of relevance to the present proceedings and which the Protectors have in their custody or control or power most likely predominantly derive from the legal status of a protector in relation to the Trust. There is no basis for concluding that over and above their role as Protectors, the individuals concerned were separately retained by the Trustee to perform specific agency functions.

- Mr. Woloniecki aptly characterised a protector as an "independent fiduciary". The status of a protector is primarily to be determined by the terms of the relevant trust deed:

    "The nature of the protector's powers under the trust deed will determine how the Court will treat them. For example, a protector's power to appoint and remove a trustee has been determined by the Bermuda Courts to be a fiduciary power." (Alec Anderson, 'Trust and Private Client Practice in Bermuda', paragraph 5.18, in 'Offshore Commercial Law in Bermuda' (Wildy, Simmonds & Hill: London, 2013).)

- In my judgment the Protectors may not properly be characterised as agents for discovery purposes. Their role under the Art I Trust includes appointing additional trustees and removing existing trustees and providing the "Necessary Consent" to the Trustees in respect of the exercise of important discretionary powers in the administration of the Trust. This conclusion is

reinforced rather than undermined by the fact that the disclosure obligations of protectors were equated to trustees in the following case upon which Mr. Kessaram relied: *Bathurst (Countess) v. Kleinwort Benson (Channel Islands) Trustees Ltd.* [2007] WTLR at paragraph 113 (Guernsey Royal Court).

I decline to order the production of this category of documents on the grounds that they are not under the power of the defendant in its capacity as Trustee of the Art I and/or the Art II Trust.

Findings: Category 4 documents

The final head of documents sought to be produced are unredacted copies of various documents which have been produced already in redacted form. In controversy is whether common interest privilege attaches to certain communications and/or whether any such privilege which might otherwise have been asserted has been waived.

Mr. Kessaram referred in his submissions to paragraph 11.63 of Matthews and Malek, which states as follows:

> "In considering 'common interest privilege' it is necessary to distinguish two main cases. The first is when existing privileged material is shared with others on a confidential basis, and no new material (e.g. a copy) is created. In this case there is no need to satisfy the 'common interest' criteria. There is already a privilege in the existing material, and the only question is whether privilege has been lost by waiver. Because the sharing is not with an opponent in litigation, and confidentiality is preserved, privilege in the existing material is not lost. The other main case is where new material is created by a communication between two persons, who may or may not have a "common interest", and the question is whether that new material attracts privilege. Here there are three sub-cases to consider. The first is where the communication is confidential and made by a party's lawyer for the dominant purpose of litigation, actual or contemplated: this will attract litigation privilege anyway. Second, even if it is not made in such circumstances, but the communication consists simply of confidential sharing or copying existing privilege material, made for that purpose, is also privileged, without the need to show a common interest. So it is only in the third, residual sub-case, where the confidential communication is made in circumstances that would not ordinarily attract litigation privilege (e.g. made by the client not the lawyer, or not for the dominant purpose of litigation), and does not consist in the confidential sharing or copying of existing privileged material, that 'common interest' privilege can have any role to play. (There is also the question whether such a communication could be covered by so-called 'joint interest' privilege; this is considered later.)"

This passage does not support the submission that redactions are only permissible in respect of direct communications with lawyers. Nor does it support the proposition that any sharing of privileged material constitutes waiver where common litigation privilege does not apply. If the Trustees sought legal advice from their lawyers, the advice received would have been protected

by legal advice privilege. If that advice was shared on a confidential basis with interested parties, the pre-existing privilege would neither automatically be lost nor properly viewed as having been waived. Waiver would only clearly occur by disclosure to one's litigation opponent or by disclosure to a third party in non-confidential circumstances suggesting that the privilege has been abandoned. *R (Prudential plc) v. Special Commissioner of Income Tax* [2013] 2 WLR 325 is concerned with what type of adviser qualifies for the purpose of legal advice privilege, not with the question of how the privilege either arises or may be lost.

Sharing of legal advice with the Protectors and beneficiaries

- In Fourth Pollock, the defendant's Managing Director deposes as follows:

  > "31. Information, including legally privileged information flowed freely between the defendant's trust officers, the Committee of Protectors and the beneficiaries during the course of 2010, when the defendant took the decision to stop funding the sale Modulable project….In my experience, it is very common for there to be such discussions among the trustees, beneficiaries and protectors of trusts of this kind, where there are legal questions and the possibility of litigation. It is difficult to see how the protectors can do their job…unless the protectors can see the legal advice."

- Although these assertions are made in support of the application of common interest privilege to communications between the Trustees, beneficiaries and the Protectors, it illuminates the true context in which such communications take place. The relevant legal advice was not being shared with strangers to the Trust or the world at large but with persons legally interested in the Trust. It seems obvious that the privileged material was only shared with the beneficiaries and Protectors on a confidential basis. Although the Trust Deed was not referred to in argument, it is interesting to note the terms of the following clause:

  > "36 NON-DISCLOSURE OF DOCUMENTS BY TRUSTEES
  >
  > WITHOUT prejudice to any right under the proper Law of the trustees to refuse disclosure of any document and so far as such law permits it is hereby declared that the Trustees shall not be bound to disclose to any person any of the following documents that is to say:
  >
  > > (a) this Settlement or any copy of it as distinct from disclosure to any beneficiary of the fact that he or she is a Beneficiary and the nature of his or her interest hereunder);
  > >
  > > (b) Any document disclosing any deliberations of the Trustees (or any of them) as to the manner in which the Trustees should exercise any power or any discretion conferred upon the Trustees by this Settlement or disclosing the reasons for any particular exercise of any such power or discretion or the material upon which such reasons shall or might have been based;
  > >
  > > (c) Any other document relating to the exercise or proposed exercise of any power or discretion conferred on the Trustees by this Settlement (not being legal

advice obtained by the Trustees at the cost of the Trust Fund)." [emphasis added]

Clause 36 contemplates that trust information generally will be confidential although legal advice obtained by the Trustees at the expense of the Trust may be disclosed. This provision must be read with clause 19 of the Deed, which empowers the Trustees "with the Necessary Consent":

> "(9) To take the opinion of legal counsel locally or where necessary or appropriate elsewhere concerning any difference arising under this Settlement or any matter in any way related to the Trust or to their duties in connection with the Trusts hereof and in all matters to act in accordance with such counsel."

So the Trust Deed explicitly contemplates that the Protectors will be involved in any matter which requires the taking of legal advice and that the Trustees may be required to disclose such advice to any persons to whom they are required to explain or justify their consequential actions. Implicitly, the Deed contemplates that beneficiaries may need to be made aware of the contents of legal advice. In my judgment it is inconsistent with any sensible interpretation of the rules of privilege to construe the sharing of legal advice by trustees with protectors involved in administering the trust and beneficiaries equitably interested in the trust as waiving the privileged character of the advice.

For the reasons set out in the passage from paragraph 11.63 of Matthews and Malek cited above, I find that no need for the Trustees to rely on common interest privilege arises. Mr. Woloniecki sought to justify the redactions on these grounds although it is doubtful that the doctrine properly applies in general terms to communications between persons with as diverse interests as trustees and beneficiaries with the position of trustees and protectors being even more ambiguous. Obviously the position may be different depending on the facts and the nature of the advice in question. A mutuality of interest may well exist on the facts of the present case based on the fact that all concerned were 'rowing in the same direction'.

However, I see no need to dispose of the present application by resolving such issues. The proper analysis is that the advice when obtained by the Trustees was privileged and that such privilege was not lost merely by sharing it on a confidential basis with persons interested in the administration of the Trust. Such persons would include Mr. Hamm, the partner of and financial advisor to a beneficiary.

Communications with Contract Media AG

Redactions have been made to communications with a media consultant retained to assist the Trustees with, inter alia, the public relations dimension of the Trustees' litigation strategy. Again, I see no reason in principle why an implicitly confidential sharing of litigation strategy advice with a company retained to provide expert advice should be viewed as extinguishing or otherwise waiving the privilege which existed when the original legal advice was received.

User-generated version David Thom

vlexJustis

However, to the extent that the need to rely on common interest privilege does arise, the relationship between the Trustees and the media consultants would in my judgment be akin to a principal and agent one and attract common interest privilege in any event. In this respect, I am guided by the reasoning in Thanki, 'The Law of Privilege', 2nd edition at paragraphs 6.30 to 6.36, upon which Mr. Kessaram himself relied.

Retainer letters in respect of the legal status of the commitment made to the plaintiffs

Mr. Kessaram submitted that documents evidencing "the existence of the retainer itself" would not be privileged: Thanki, paragraph 2.88. This principle was not challenged by the defendant's counsel.

It is clearly relevant for the plaintiffs to know the scope of advice which was sought. If the Trustees did retain lawyers to advise on the binding nature of the commitment at the centre of this action as appears to be the case, it would in my judgment be unfair for them to be permitted to conceal the terms upon which they did so if those terms are not privileged. I order the defendant to produce any documents evidencing the scope of the retainer of any lawyers retained by the Trust to advise on the implications of the decision to "pull the plug on" the Project.

Conclusion: Category 4 requests

In the exercise of my discretion I decline to compel the defendant to produce unredacted versions of the Category 4 documents for the reasons set out above. Further, I see no proper basis for concluding at this stage on the alternative basis that a fair trial would be impossible without ordering disclosure.

The defendant should, however, disclose any documents evidencing the fact of the retention of lawyers to advise on the legal implications of the commitment made to the plaintiffs by the Trust in relation to the Project.

Reserved costs of confidentiality application

In summary, the defendant's Summons dated January 11, 2013 seeking extensive confidentiality undertakings in relation to discovery was ultimately compromised on terms substantially similar to undertakings offered by the plaintiffs on January 16, 2013. The defendant elected to forego substantiating the allegations which were advanced in support of more draconian undertakings and, in the final analysis, unreasonably incurred costs in relation to its Summons. The plaintiffs sought costs on an indemnity basis in large part because of the abandoned attack launched on the character of their principals.

In my judgment the plaintiffs ought to be awarded their costs in relation to the defendant's confidentiality Summons to be taxed if not agreed on the standard basis. The abandoned allegations were not formally withdrawn; they were simply not pursued. But, looked at in the round, it is only fair that the plaintiffs should be compensated in costs for having to defend a

Summons which was pursued when it could have been compromised, on terms similar to those ultimately agreed, shortly after the Summons was served.

Summary

' The plaintiffs' application for specific disclosure and/or production is granted and refused to the extent set out above in respect of each of the four categories of requests.

; The plaintiffs have liberty to apply in relation to issues which may arise as a result of the production ordered and in respect of any documents where I have indicated that I am not minded to order production at the present time.

) The plaintiffs are awarded the costs of the defendant's January 11, 2013 Summons to be taxed if not agreed on the standard basis.

) In summary, the plaintiffs have succeeded in part in respect of Categories 1 and 2 and the defendant has substantially succeeded in respect of Categories 3 and 4. Unless either party applies within 14 days by letter to the Registrar to be heard as to costs, the costs of the present application shall be in the cause.

Dated this 27th day of May, 2013

Ian R.C. Kawaley Cj