# EXHIBIT 7

© Copyright 2022, vLex Justis. All Rights Reserved.
Copy for personal use only. Distribution or reproduction is not allowed.

# Terceira v Terceira et Al

**Id. vLex Justis** VLEX-793160157

**Link:** https://justis.vlex.com/vid/terceira-v-terceira-et-793160157

**Text**

<u>Supreme Court</u>

Kawaley, J.

<u>399 of 2009</u>

Terceira
and
Terceira et al

**Appearances:**

Mr. Glenn Harvey-McKean, Mello Jones and Martin, for the plaintiff

Mr. David Kessaram, Cox Hallett Wilkinson, for the defendants

Civil practice and procedure - Specific discovery application — Plaintiff succeeding in three out of nineteen requests.

Kawaley, J.

By Summons dated August 23, 2010, the plaintiff applies for the following substantive relief:

1   The defendants produce a Further and Better List of Documents to be verified by Affidavit within seven (7) days which takes into account all matters referred to in the Supporting Affidavit of Glenn Harvey-McKean; 1.2 The defendants disclose all relevant correspondence and/or other documentation not so disclosed which is or has been in their possession, custody or control, and, in respect of documents no longer in their possession,

custody or power, state when they parted with the same and what has become of such documents; 1.3 The defendants shall verify all Lists of Documents by Affidavit within seven (7) days of the date of this Order.

The first two limbs of the application were vigorously contested, in an action which is set down for trial on November 24, 2010 and in relation to which the defendants' List of Documents was served on or about April 16, 2010. The plaintiff's attorneys first raised the adequacy of disclosure set out in the defendant's List in an email dated May 12, 2010. It appears inspection did not take place until the following day at the earliest. On July 27, 2010, the plaintiff's attorneys ("MJM") sent the defendant's attorneys ("CHW") a detailed request for specific discovery of various documents. This request was essentially rebuffed on relevance grounds by letter dated August 5, 2010 after CHW had issued their own specific discovery application.

On August 2, 2010, the defendants issued a Summons for Specific Disclosure which was effectively heard before the Chief Justice on August 19, 2010 when he ordered the plaintiff to serve a Further and Better List. Because the plaintiff's present application was not filed until after this Order was made, the defendants understandably sought to characterise it as a "tit-for-tat" application. CHW's August 5, 2010 letter invited the plaintiff's attorneys to agree directions for the August 19, 2010 hearing of the defendant's application (which in the event was heard substantively on the first return date of the defendants' Summons).

It is unclear why the plaintiff's present application could not have been issued in response to CHW's August 5, 2010 letter so that both discovery applications could have been heard together by the same judge to save costs and avoid any possibility of inconsistent rulings on overlapping issues. Upon receipt of the latter correspondence, it ought to have been obvious that the defendants were not willing to make the requested further discovery unless ordered by the Court. The making of the Chief Justice's August 19, 2010 Discovery Order had no or no apparent relevance to any decision by the plaintiff's attorneys as to the need to make an application of their own. The timing of the filing of the plaintiff's present application unavoidably causes the Court to approach it with rather more caution than might otherwise have been the case.

**THE PLEADINGS AND THE ISSUES TO BE DETERMINED AT TRIAL**

The plaintiff by his Statement of Claim dated November 24, 2009 seeks the following primary relief:

1   A declaration that the plaintiff alone is beneficially entitled to all the legal and beneficial interest in the building and associated land upon which it sits at 5 Marsh Lane, Devonshire Parish. 5.2 Alternatively, a declaration that the defendants hold the legal title to the building and associated land upon which it sits at 5 Marsh Lane, Devonshire Parish on trust for the benefit of the plaintiff.

This relief is sought, very broadly, on the grounds that as a result of the parties' late father

promising in or about 1989 that he would convey the Property to the plaintiff, he (the plaintiff) borrowed funds and erected a building there which was registered for land tax purposes in the plaintiff's sole name. Not only did he pay for the building and maintain it, but he did not pursue other investment opportunities since 1989 in reliance on his father's promise to gift him the Property.

The Defence and Counterclaim dated January 28, 2010 make the following principal averments. Firstly, it is asserted that the common intention between the plaintiff and his father was that the plaintiff would erect the premises, use part for his own business at a nominal rent and use rental income from the other parts of the building to repay the loan.

He would finance the construction by a loan in his own name because, inter alia, the Deceased "wished to develop the land but was unable to obtain the bank financing to do so because of his age and other circumstances" (Defence, paragraph 9). It is denied the plaintiff suffered any detriment. Secondly, it is asserted that the plaintiff is estopped from asserting the present claim by agreement, namely an April 4, 1996 Deed of Family Arrangement pursuant to which the plaintiff "agreed to accept a one-seventh share in the deceased's Estate instead of a one-sixth share" (Defence, paragraph 18). Thirdly, it is asserted that the plaintiff has been guilty of inordinate delay in only bringing his claim after both of the parties' parents had died making it impossible for the defendants to obtain witness statements and making it difficult for them to defend the claim.

The Counterclaim alleges that within three months of the death of the Deceased's wife, the plaintiff "agreed to pay a reasonable amount per month for his use and occupation of 5 Marsh Lane or alternatively acknowledged a liability to the estate for a reasonable amount per month for such use and occupation. It was agreed that a reasonable amount would be a professionally assessed market rent less 10% by reason of the family relationship between the parties which in the circumstances was assessed at $8002 per month". Damages for the period June 1, 2007 to December 31, 2009 are particularized as amounting to 6/7ths of $248,062 or $212, 624.57. The same amount is claimed in the alternative for breach of the plaintiff's fiduciary duties as executor of the Deceased's estate (Counterclaim, paragraphs 22–27). In addition it is alleged that the plaintiff is liable to account to the estate for rents received by him from the Property.

The Reply and Defence to Counterclaim denies the counterclaims asserted by the defendants and, inter alia, in response to the breach of fiduciary claim, the "plaintiff alleges that the first and second defendants are vicariously liable and will be liable on a joint and several basis. Therefore, the plaintiff seeks contribution and indemnity from the first and second defendant for any losses or damages that may be awarded by this Court" (paragraph 22). No additional independent claims are asserted against the defendants in respect of monies allegedly due from them to the Estate.

**FINDINGS: SPECIFIC DISCOVERY APPLICATION**

The plaintiff seeks: (1) all Estate documents; (2) all bank statements from 1996 to date; (3) loan

documents relating to the $76,000 loan and related guarantee; (4) estate property documents; (5) all probate documents; (6) the Estate accounts; (7) Joan Terceira's bank records 1996–2007; (8) loan documents relating to Joan and/or Harold Terceira; (9) records of rental payments made by the respective defendants in respect of Estate properties since 1996; (10) records of all rental income received by the Estate from third parties; (11) copies of the defendants' bank records relating to (9); (12) specific details of occupation of and rental income from residential and commercial properties including four specified properties; (13) the date of gifts of three properties and particulars of any associated obligations; (14) copies of documents related to (13); (15) miscellaneous details of the properties since 1996; (16) details of whether properties are still owned; copies of all supporting documents; (17) supporting documentation; (18) any other relevant documents not so far disclosed; and (19) all minutes and other documents relating to Four Star Development since 1988.

Looked at in the round, these requests are oppressive and insufficiently linked to any specific matters in issue in the present action to justify ordering disclosure, subject to a few exceptional cases which are considered further below. The Court cannot simply mechanically apply the standard broad test for relevance in the context of discovery relied upon by Mr. Harvey-McKean: *Compagnie Financiere du Pacifique v. Peruvian Guano* (1882) 11 QBD 55 at page 63. Mr. Kessaram rightly drew the Court's attention to Order 24 rule 8 which is now fortified by Order 1A of the Rules. Order 24 rule 8 provides as follows:

> "24/8 Discovery to be ordered only if necessary
>
> On the hearing of an application for an order under rule 3 or 7 the Court, if satisfied that discovery is not necessary, or not necessary at that stage of the cause or matter, may dismiss or, as the case may be, adjourn the application and shall in any case refuse to make such an order if and so far as it is of opinion that discovery is not necessary either for disposing fairly of the cause or matter or for saving costs."

Rule 3 governs applications for a Further and Better List and rule 7 applications for specific discovery. Even where documents requested are legally relevant, the Court retains the discretion to decline to order discovery. As Lindley LJ observed in a passage cited in *Ballantine v. Dixon* [1974] 2 All ER 503 at 508 g-h, and upon which the defendants' counsel relied:

> "Of course, it is in some cases difficult to draw the line between those facts which are properly …[pleaded]…and those which are not; but in cases of doubt it has always been the practice of the Court to find out whether the facts as to which information is required are so material as to render discovery reasonable…"

The quoted dictum was made in the context of a higher level stage of discovery, interrogatories, but the principle must also apply where specific documents are being sought over and above what has been disclosed by way of List. So it is not enough for the plaintiff to show that potentially relevant documents have not been disclosed. They must be shown to be sufficiently material to justify the time and costs involved of complying with an order for specific discovery, assuming the application to be as broad as it is in the present case.

**BANK RECORDS AND STATEMENTS OF DECEASED/ESTATE FROM 1996/ BANK RECORDS OF HAROLD AND/OR JOAN TERCEIRA**

In paragraph 29 of the Specific Disclosure Submissions and Skeleton Argument of the plaintiff, the rationale for this part of the application is summarised as follows:

> "The bank records and statements will evidence the financial status of the late Harold Terceira and his ability to secure a loan(s) at all material times, but more importantly, whether there were real rental income receipts from the plaintiff, defendants and/or third parties up until the time of his death in 1996, as well as from 1996 to 2007."

I find that the only relevant category of rental receipts is those emanating from the plaintiff himself. Whether any other persons paid rent to Estate properties is not relevant to the pleaded issues in this case. In the exercise of my discretion I decline to order the production of the requested bank statements on the grounds that there is no basis for concluding that material documents exist. It is the plaintiff's case that he did not pay rent.

The defendants accept this, counterclaiming for rent they contend he owes the Estate.

His non-payment of rent is not an issue which falls to be determined at trial. Although the existence of evidence that the plaintiff did pay rent is theoretically relevant (in that it could undermine the plaintiff's case), but it is not material because the potential issue is not in dispute on the pleadings.

Paragraph 40 of the plaintiff's Submissions seeks to justify the disclosure of Joan Terceira's bank records from 1996–2007 on similar grounds to those advanced in support of the request just dealt with above. This request, (7), is refused for the same reasons.

**LOAN DOCUMENTATION RELATING TO DECEASED'S $76,000 LOAN AROUND THE SAME TIME AS THE PLAINTIFF'S LOAN RELATING TO THE PROPERTY/OTHER LOAN DOCUMENTATION**

The first of these two categories of documentation, (3), is also relevant leaving in issue the question of materiality. There is a plea (supported by the defendants' Witness Statements) that the Deceased wanted to develop the Property himself but "was unable to obtain the bank financing to do so because of his age and other circumstances". This explanation as to why the Deceased would have agreed to let the plaintiff borrow money to erect a building goes to the heart of the plaintiff's case. It is somewhat unclear how material the documents in category (3) would be; but in light of the pleaded Defence I find that specific discovery of loan documentation relating to the $76,000 loan which was obtained in the same general time-frame as the agreement relied upon by the plaintiff ought to be ordered.

I decline to order disclosure of other loan documentation, (8) (Harold and Joan Terceira

generally, without any limitation in time). This request is for documents which are either not relevant or not sufficiently material.

### ESTATE PROPERTY DOCUMENTS

Most of the documents sought, categories (1), (4), (5), (6), and (9)–(12) are claimed on the mistaken premise that this Court at trial will be required to determine whether any of the defendants have committed breaches of fiduciary duty as executors and/or owe any rents to the Estate. These issues fall beyond the scope of the present case. The basis for these requests was made clear in counsel's oral submissions and paragraph 40 of the plaintiff's Skeleton Argument.

These broad requests relate to documents which are either not relevant or not sufficiently material.

### DOCUMENTS RELATING TO OTHER GIFTS

Requests (13)–(17) seek documents in relation to three specific gifts of property to four of the plaintiff's siblings, presumably made by the Deceased. Requests (13) and (14) I find to be clearly relevant, if the gifts were arguably made by the Deceased inter vivos as asserted on page 4 of MJM's letter dated July 27, 2010 to CHW. From page 4 of the CHW response dated August 5, 2010, it appears that the first two gifts were in fact purchases and the third one is admitted. The only outstanding matters appear to be documentation relating to the purchases (so the plaintiff can verify whether market value was paid) and particulars of the value of the Tennessee property which was sold 15–20 years ago.

I order specific discovery in terms of requests (13) and (14) but refuse as irrelevant, and/or oppressive the supplementary requests for further information ((15)–(17)).

### DOCUMENTS RELATING TO FOUR STAR DEVELOPMENT LTD. ("FOUR STAR")

The Property was purportedly conveyed to Four Star by the Deceased by voluntary conveyance dated June 1, 1995. According to the defendants' evidence, this deed was disclosed by the plaintiff himself and the conveyance formed part of the Deceased's estate planning whereby he was attempting to transfer all his property to this company so that its shares could be distributed to his children. It is obvious that documents relating to the transfer itself (if any) in 1995 and the actual or contemplated share ownership of the Four Star during the same period are relevant.

I am not satisfied at this juncture that all documents relating to the company as sought in request (19) are either relevant or material. I order the defendants to produce all minutes for Four Star for calendar year 1995 and copies of the share register showing the share ownership position from at least January 1, 1995 to present, although the entire historical share register should be

produced assuming (as seems likely in what is a closely held company) it only runs to a few pages.

In paragraph 29 of the Second Charleson Affidavit, it is deposed that the company records were under the control of a MJM management company, Quorum Ltd., which the defendants themselves have had difficulty obtaining information from because of other family-related litigation in which the company is embroiled. It is not asserted that the corporate records are still under MJM's indirect control. Mr. Harvey-McKean submitted that in May this year the majority shareholders voted to move the corporate administration to Coson Ltd., a CHW company. This assertion was not, to my understanding, challenged.

I accept that it is not obvious that these records will be highly material but because the voluntary conveyance of the Property is such a potentially significant act on the Deceased's part, specific discovery of the narrower category of Four Star documents identified above is on balance justified.

### APPLICATION FOR AFFIDAVIT VERIFYING LIST

This aspect of the plaintiff's application was not ultimately opposed. I order that the defendants file an affidavit verifying their List of Documents.

### SUMMARY

For the above reasons the following specific discovery requests made in the plaintiff's Specific Discovery Summons and particularized in the Schedule thereto are granted, all other requests being refused:

.1    loan documentation in relation to the $76,000 loan taken out by the Deceased around the same time as the plaintiff borrowed to develop the Property ((3)); 28.2 information about other gifts made by the Deceased ((13)–(14)); 28.3 share register and minutes for calendar year 1995 in relation to Four Star.

In addition, I order the defendants to verify their List of Documents by Affidavit within seven days hereof. The parties of course shall have liberty to apply in relation to any matters which may arise from the implementation of the Order drawn up to give effect to this Ruling, including the drawing-up of the Order itself.

Because the plaintiff has only succeeded in respect of three out of 19 requests and only partially succeeded in respect of a fourth, it is not obvious that he should be awarded the costs of the present application. It does not seem just, on the other hand that the defendants ought to recover more than, say, 80% of their costs. Because compliance with this Order may be potentially

problematic and raise issues which bear on the issue of costs, unless either party applies by letter to the Registrar within 21 days to be heard as to costs, I would reserve the costs of the present application (Whenever the issue of costs is determined the defendants' counsel will be invited to explain why after judgment was reserved the Court was copied by his firm with party and party correspondence relating to an aspect of discovery which fell to be determined by this Court. This material was not taken into account in deciding the present application).

Kawaley, J.