# EXHIBIT 8

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 2 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

# Order 24—Discovery and Inspection of Documents

White Book 1999 | Commentary last updated January 1, 2000

Volume 1

Section 1 - Rules of the Supreme Court

Commencement and Progress of Proceedings

Order 24—Discovery and Inspection of Documents

24/0/1

| Contents | | para. |
|---|---|---|
| 1. | Mutual discovery of documents (O.24, r.1) | 24/1 |
| 2. | Discovery by parties without order (O.24, r.2) | 24/2 |
| 3. | Order for discovery (O.24, r.3) | 24/3 |
| 4. | Order for determination of issue, etc., before discovery (O.24, r.4) | 24/4 |
| 5. | Form of list and affidavit (O.24, r.5) | 24/5 |
| 6. | Defendant entitled to copy of co-defendant's list (O.24, r.6) | 24/6 |
| 7. | Order for discovery of particular documents (O.24, r.7) | 24/7 |
| 7A. | Application under ss.33(2) or 34(2) of the Supreme Court Act 1981 (O.24, r.7A) | 24/7A |
| 8. | Discovery to be ordered only if necessary (O.24, r.8) | 24/8 |
| 9. | Inspection of documents referred to in list (O.24, r.9) | 24/9 |
| 10. | Inspection of documents referred to in pleadings, affidavits and witness statements O.24, r.10) | 24/10 |
| 11. | Order for production for inspection (O.24, r.11) | 24/11 |
| 11A. | Provision of copies of documents (O.24, r.11A) | 24/11A |
| 12. | Order for production to Court (O.24, r.12) | 24/12 |
| 13. | Production to be ordered only if necessary, etc. (O.24, r.13) | 24/13 |
| 14. | Production of business books (O.24, r.14) | 24/14 |
| 14A. | Use of documents (O.24, r.14A) | 24/14A |
| 15. | Document disclosure of which would be injurious to public interest: saving (O.24, r.15) | 24/15 |
| 16. | Failure to comply with requirement for discovery, etc. (O.24, r.16) | 24/16 |
| 17. | Revocation and variation of orders (O.24, r.17) | 24/17 |

# Editorial Introduction

24/0/2 The method of proof known as "discovery" developed by the Courts of Equity and subsequently adopted in other jurisdictions comprised: (i) *discovery of deeds and documents*, by which a person could be compelled to produce for inspection deeds or documents relevant to a dispute which were in his possession or power; (ii) *discovery of facts* by which a person might be ordered to answer as to the existence of some fact within his knowledge and relevant to a dispute. Discovery in the latter sense was the origin of interrogatories, administered to another party to an action under the provisions now found in O.26. Discovery in the former sense was the foundation of discovery of documents in the form dealt with by this Order.

The obtaining of discovery of documents in a proper case always was, according to English law, a right as between subject and subject. It is a right which continues to exist unless taken away. The Evidence Act 1851 gave the common law courts power to compel a party to allow inspection of documents in all cases in which "a discovery might have been obtained by filing a bill, or by any proceeding in a court of equity". Thus, a party wishing to obtain discovery of documents was not forced temporarily to stay his action and proceed by bill in equity. Relief could be provided by proceedings integral to his action and the action for discovery between parties fell into

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 3 of 67

desuetude (see further "Action for discovery", paras 24/0/11 and 24/2/2, below). Since 1875, the procedure for these proceedings has been contained in rules of court.

## Fundamental provisions of Order

24/0/3
Rule 10 states that any party shall be entitled at any time to serve a notice on any other party "in whose pleadings, affidavits or witness statements" reference is made to any document requiring him to produce that document for the inspection of the party giving the notice and to permit him to take copies thereof. The law of discovery is principally concerned with documents other than those falling in this restricted category.

Rules 3 and 5 are fundamental to the structure of the Order. Rule 3(1) states that the Court may order any party to a cause or matter (whether begun by writ, originating summons or otherwise) to make and serve on any other party a list of the documents "which are or have been in his possession, custody or power relating to any matter in question in the cause or matter", and may at the same time or subsequently also order him to make and file an affidavit verifying such a list and to serve a copy thereof on the other party. If satisfied that discovery "is not necessary" the Court may dismiss or adjourn the application or make a limited order (r.8). Rule 5 states that a list of documents made in compliance with an order under r.3, must be in Form No. 26 in Appendix A, and must enumerate the documents in a convenient order and as shortly as possible but describing each of them or, in the case of bundles of documents of the same nature, each bundle, sufficiently to enable it to be identified. If it is desired to claim that any documents are privileged from production, the claim must be made in the list of documents with a sufficient statement of the grounds of the privilege. An affidavit made as aforesaid verifying a list of documents must be in Form No. 27 in Appendix A. A party who has served a list of documents on any other party in compliance with an order under must allow the other party to inspect the documents referred to in the list (other than any which he objects to produce) and to take copies thereof (r.9). No order requiring production of documents for inspection should be made unless the Court is of opinion that the order "is necessary" either for disposing fairly of the cause or matter or for saving costs (r.13). If any party who is required by an order to make discovery of documents or to produce any documents for the purpose of inspection or any other purpose or to supply copies thereof fails to comply with that order, then the Court may make such order as it thinks just including, in particular, an order that the action be dismissed or, as the case may be, an order that the defence be struck out and judgment be entered accordingly. Further, such party is liable to committal (r.16).

# Significant developments

## Mutual discovery (rr.1 & 2)

24/0/4
Historically speaking, these rules, providing for discovery of documents by order of the Court, form the heart of O.24. In 1962, for the purpose of reducing costs and delay, it was provided that, in a wide variety of proceedings (but excluding running down cases), parties should be required by rules to give "mutual discovery" by exchanging lists in Form No. 26 without any prior order being sought from the Court (implementing recommendations made in the Final Report of the Committee on Supreme Court Practice and Procedure (Cmd. 8878, 1953) (the Evershed Committee)). Provisions to this effect are now found in rr.1 and 2. Discovery is automatic upon close of pleadings. A party dissatisfied with his opponent's compliance with these rules may require him to swear an affidavit in Form No. 27 and, of course, may seek an order from the Court in the usual way. The rules applying to discovery by court order apply to mutual discovery (subject to necessary modifications).

© 2022 Thomson Reuters.

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 4 of 67

## Discovery before proceedings against prospective party (r.7A)

**24/0/5**  In 1969, for the purpose of reducing costs and delay, by statute the Court was given power to order that a person who appears to the Court likely to be a party to subsequent proceedings in which a claim in respect of personal injuries or death is likely to be made to disclose and produce documents in his possession, custody or power (Supreme Court Act 1981, s.33(2), see Vol. 2, Section 20A, paras 20A-215 to 20A-218). The procedural machinery for dealing with this matter is found in r.7A.

## Discovery against non-party (r.7A)

**24/0/6**  In 1970, by statute the Court was given power, in proceedings in which a claim in respect of personal injuries or death is made, to order a person who is not a party to the proceedings and who appears to the Court likely to have in his possession, custody or power relevant documents to disclose and produce those documents (Supreme Court Act 1981, s.34(2), see Vol. 2, Section 20A, para. 20A-219). (E.g. a hospital which has treated the plaintiff.) This development provided a significant exception to the general rule that discovery may not be had against a "mere witness" (see further "Action for discovery", paras 24/0/11 and 24/2/2). The procedural machinery for dealing with this matter is found in r.7A.

## Disclosing identity of wrongdoer (Norwich Pharmacal principle)

**24/0/7**  In *Upmann v. Elkan (1871) L.R. 12 Eq. 140*, Lord Romilly M.R. said: "if through no fault of his own a person gets mixed up in the tortious acts of others so as to facilitate their wrongdoing he may incur no personal liability but he comes under a duty to assist the person who has been wronged by giving him full information and disclosing the identity of wrongdoers". This principle was endorsed by the House of Lords in *Norwich Pharmacal v. Customs and Excise Commissioners [1974] A.C. 133; [1973] 2 All E.R. 943, HL*. It has been relied on and developed in a number of subsequent cases and must be borne in mind in any account of the law of discovery of documents (see further "Action for discovery", paras 24/0/11 and 24/2/2, below).

## Discovery in aid of execution of judgment

**24/0/8**  For the purpose of rendering execution effective, a judgment debtor may be required to give disclosure of his assets, both within and without the jurisdiction, under O.48, r.1 or, in a case outside O.48, under the Supreme Court Act 1981, s.37. Further, a judgment creditor may strengthen his position by applying for a *Mareva* injunction "freezing" the judgment debtor's assets. Indeed, a party anticipating judgment in his favour may apply for such injunction before judgment. For the purpose of rendering a *Mareva* injunction effective (whether granted before or after judgment), the Court may make ancillary orders requiring the defendant (1) to make a statement disclosing his assets, (2) to give discovery of documents, and (3) to answer interrogatories. Such orders can assist (1) in determining the existence, nature and location of assets, (2) in clarifying questions of title concerning assets, and (3) in identifying third parties to whom notice of the injunction should be given for the purpose of ensuring that they do not advertently or inadvertently assist the defendant in the removal or disposal of assets. Where third parties are identified they too may be required to make disclosures. In modern times, the law relating to ancillary orders of this type has developed rapidly and many of the recent cases on discovery of documents have arisen in this context.

© 2022 Thomson Reuters.

Case 1:22-mc-00130-ALC  Document 41-10  Filed 12/20/22  Page 5 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

## Preservation of documents

**24/0/9**  For the exceptional power of the Court to preserve documents and permit their inspection, see O.29, r.2, and *Piller (Anton) K.G. v. Manufacturing Processes Ltd [1976] Ch. 55; [1987] 1 All E.R. 779, CA*, and other cases there cited.

# The right to discovery

**24/0/10**  It follows from what is said above that the existence and extent of a right of discovery depends upon whether the person from whom it is sought is a party to an action (not being an action for discovery only) a prospective party or a stranger. The position may be summarised as follows:

1. The rules in this Order are principally concerned with the discovery of documents between parties; such discovery may be "automatic" (in an action with pleadings, except in running down cases) or by order (rr.2 & 4).

2. Discovery of documents may be obtained by originating summons against a prospective defendant but only if the proposed claim is for damages for death or for personal injuries (r.7A).

3. As a general rule, discovery of documents cannot be obtained against a stranger; nor is it proper to join a stranger as a party merely for the purpose of discovery. If documents or information in the possession of a stranger are required, it is ordinarily necessary to call him as a witness at the hearing (*Burstall v. Beyfus (1884) 26 Ch.D. 35* at 40 and 41, per Lord Selborne L.C.). As indicated above, exceptions to this rule are provided by r.7A, by applications of the principle derived from the *Norwich Pharmacal* case, and by the Court's power to attach to injunctions in aid of execution of judgments ancillary orders affecting third parties.

# Action for discovery

**24/0/11**  As to the remedy of an action for discovery for the purpose of discovering the identity of a wrongdoer and for other purposes, see paras 24/2/2 *et seq.*, below.

# Privilege

**24/0/12**  Some classes of documents, although they must be disclosed in the list of documents made in compliance with r.2 or with an order under r.3 as "relating to any matter in question" between the parties, may be privileged from production (e.g. on grounds of legal professional privilege). If it is desired to claim that any documents are so privileged, the claim must be made in the list of documents "with a sufficient statement of the grounds of the privilege" (r.5(2)). Production may be refused on grounds of privilege also in those situations where, contrary to the general rule, discovery may be obtained against a person who is not a party. The law of privilege is not found in the provisions of O.24 but in case law and statute and is stated in notes following r.5.

© 2022 Thomson Reuters.

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 6 of 67

## Related sources

24/0/13
• Supreme Court Act 1981, ss.33 and 34 (Vol. 2, Section 20A, paras 20A-215 to 20A-219)

• Queen's Bench Practice Direction No. 8 (Case Management), para. 2(2a) (Vol. 2, Section 2C, paras 2C-22 to 2C-24) [Court will exercise its discretion to limit discovery]

• Chancery Guide, Sect. 3.4.11 (Discovery and Interrogatories) (Vol. 2, Section 2B, paras 2B-212 et seq.)

• Guide to Commercial Court Practice, Sect. XI (Discovery and Interrogatories) (para. 72/A14) and App. IV (Information for summons for directions) (para. 72/A50) and App. VI (Pre-Trial Check List) (para. 72/A52)

• CCR, O.14 (Discovery and Interrogatories)

• CCR, O.17, r.11(3) (Discovery under automatic directions)

## Forms

24/0/14
The following Prescribed Forms in Appendix A are relevant to O.24 (see Vol. 2, Section 1A, paras 1A-24 and 1A-25):

• PF No. 26—List of documents (r.5)

• PF No. 27—Affidavit verifying list of documents (r.5)

The following Queen's Bench Masters' Practice Forms are relevant to O.24 (Vol. 2, Section 1B, paras 1B-34 and 1B-35):

• PF 45—Notice requiring affidavit verifying lists of documents (r.2(7))

• PF 50—Summons for directions pursuant to O.25 (para. 7)

24/1
**1.— Mutual discovery of documents (O.24, r.1)**

**(1)** After the close of pleadings in an action begun by writ there shall, subject to and in accordance with the provisions of this Order, be discovery by the parties to the action of the documents which are or have been in their possession, custody or power relating to matters in question in the action.

**(2)** Nothing in this Order shall be taken as preventing the parties to an action agreeing to dispense with or limit the discovery of documents which they would otherwise be required to make to each other.

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC Document 41-10 Filed 12/20/22 Page 7 of 67

# History of rule

**24/1/1** Taken from O.24, r.1, of 1962 without alteration. Till then discovery of documents and interrogatories were dealt with in one Order (O.31).

# Note

**24/1/2** For annotations to this rule, see paras 24/2/2 et seq., below.

### 2.— Discovery by parties without order (O.24, r.2)

**24/2** **(1)** Subject to the provisions of this rule and of rule 4, the parties to an action between whom pleadings are closed must make discovery by exchanging lists of documents and, accordingly, each party must, within 14 days after the pleadings in the action are deemed to be closed as between him and any other party, make and serve on that other party a list of the documents which are or have been in his possession, custody or power relating to any matter in question between them in the action.

Without prejudice to any directions given by the Court under Order 16, rule 4, this paragraph shall not apply in third party proceedings, including proceedings under that Order involving fourth or subsequent parties.

**(2)** Unless the Court otherwise orders, a defendant to an action arising out of an accident on land due to a collision or apprehended collision involving a vehicle shall not make discovery of any documents to the plaintiff under paragraph (1).

**(3)** Paragraph (1) shall not be taken as requiring a defendant to an action for the recovery of any penalty recoverable by virtue of any enactment to make discovery of any documents.

**(4)** Paragraphs (2) and (3) shall apply in relation to a counterclaim as they apply in relation to an action but with the substitution, for the reference in paragraph (2) to the plaintiff, of a reference to the party making the counterclaim.

**(5)** On the application of any party required by this rule to make discovery of documents, the Court may—
**(a)** order that the parties to the action or any of them shall make discovery under paragraph (1) of such documents or classes of documents only, or as to such only of the matters in question, as may be specified in the order, or

**(b)** if satisfied that discovery by all or any of the parties is not necessary, or not necessary at that stage of the action, order that there shall be no discovery of documents by any or all of the parties either at all or at that stage;

and the Court shall make such an order if and so far as it is of opinion that discovery is not necessary either for disposing fairly of the action or for saving costs.

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 8 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

> **(6)** An application for an order under paragraph (5) must be by summons, and the summons must be taken out before the expiration of the period within which by virtue of this rule discovery of documents in the action is required to be made.
>
> **(7)** Any party to whom discovery of documents is required to be made under this rule may, at any time before the summons for directions in the action is taken out, serve on the party required to make such discovery a notice requiring him to make an affidavit verifying the list he is required to make under paragraph (1) and the party on whom such a notice is served must, within 14 days after service of the notice, make and file an affidavit in compliance with the notice and serve a copy of the affidavit on the party by whom the notice was served.

## History of rule

24/2/1   Reproduces O.24, r.2, of 1962 with amendments made by S.I. 1969 No. 1105 consequent on the abolition by s.16 1(a) of the Civil Evidence Act 1968 of the privilege against exposure to forfeiture.

## Action for discovery (rr.1 & 2)

24/2/2   An action for discovery alone does not lie against a defendant who is not himself a wrongdoer and has no connection with the wrong-doing. An action for discovery will therefore not lie against a person who knows the identity of the alleged tortfeasor, but who himself has neither committed nor facilitated the committal of the tort (*Ricci v. Chow [1987] 1 W.L.R. 1658; [1987] 3 All E.R. 534, CA*). But where a defendant through no fault of his own (and whether voluntarily or not) "has got mixed up in the tortious acts of others so as to facilitate their wrong-doing he may incur no personal liability but he comes under a duty to assist the person who had been wronged by giving him full information and disclosing the identity of the wrongdoers" (per Lord Reid in *Norwich Pharmacal Co. v. Commrs. of Customs and Excise [1974] A.C. 133; [1973] 2 All E.R. 943, HL*). See also *British Steel Corp. v. Granada Television Ltd [1981] A.C. 1096; [1981] 1 All E.R. 417, HL*; *Harrington v. North London Polytechnic [1984] 1 W.L.R. 1293; [1984] 3 All E.R. 666, C.A*; and *Re Goodwin [1990] 1 All E.R. 608*. In *CHC Software Care Ltd v. Hopkins and Wood [1993] F.S.R. 24*, the Court followed and extended *Norwich Pharmacal Co. v. Commissioners of Customs & Excise*, above, and held that the jurisdiction to order such discovery was not limited to cases of identifying wrongdoers. Thus discovery was ordered against the defendant solicitors of the names and addresses of the persons to whom similar threat letters had been sent together with the text thereof even though the recipients were not wrongdoers since the copies of the letters and any distribution list of names and addresses of recipients, were documents relevant to the issues pleaded in the action (slander of title, malicious falsehood and trade libel). See too *P v. T Ltd [1997] 1 W.L.R. 1309; [1997] 4 All E.R. 200*, where the Court extended Norwich Pharmacal and granted discovery against the defendant to enable the plaintiff to use the fruits of discovery to bring proceedings against a third party even though it could not be ascertained whether the third party had committed a tort against the plaintiff without the information sought.

In the absence of evidence of an intention to sue the wrongdoer, it cannot be asserted that it is necessary in the interests of justice to have his name disclosed. The test is necessity not expediency or desirability (*Handmade v. Express Newspapers [1986] F.S.R. 463*). If there are facts which will require investigation at trial, it is not proper to make a Norwich Pharmacal order on motion (ibid.).

The plaintiff seeking the name of the wrongdoer will have to pay a blameless defendant's expenses in providing the information; and if the defendant has any doubts then he may properly require the matter to be submitted to the Court before supplying the information and the plaintiff will nevertheless be obliged to pay the costs of these

© 2022 Thomson Reuters.

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 9 of 67

proceedings (ibid.). Where a plaintiff obtains the name of a wrongdoer by an action for discovery in which he has to pay the costs, and where the wrongdoer can or ought to foresee that steps by way of investigation and discovery are likely to result from his wrong, the plaintiff may recover such costs as damages in subsequent proceedings against the wrongdoer (*Morton-Norwich Products Inc. v. Intercon (No. 2) [1981] F.S.R. 337*).

An action for discovery alone, like the making of an order under the Bankers' Books Evidence Act 1879 (see paras 38/13/2 et seq. below) requires the exercise of the Crown's Sovereign authority to assist in the administration of justice, and therefore the Court will not, save in exceptional circumstances, impose on a foreigner, in particular a foreign bank, who or which is not a party to the principal proceedings, any requirement to produce documents which are outside the jurisdiction and which concern business transacted outside the jurisdiction (*Mackinnon v. Donaldson Lufkin & Jenrette Securities Corp. [1986] Ch. 482; [1986] 1 All E.R. 653*).

Where no dispute of fact is involved proceedings by originating summons may be appropriate since a claim for discovery only would not seem to fall within r.2 of O.5.

Discovery of the identities of infringers and other wrongdoers may also be obtained by an interlocutory order in proceedings for other relief in relation to the same subject-matter (*R.CA Corp. v. Reddingtons Rare Records [1974] 1 W.L.R. 1445; [1975] 1 All E.R. 38*). See *Loose v. Williamson [1978] 1 W.L.R. 639; [1978] 3 All E.R. 89* (disclosure of identity of parties removing shellfish from the plaintiff's sole and several fishery and seaground). But discovery of customers' names in a copyright infringement action will not be ordered, because until those persons have notice of the claim they are not wrongdoers (*Roberts v. Jump Knitwear Ltd [1981] F.S.R. 527*).

Where a party is properly impleaded as defendant to a claim for a quia timet injunction restraining him from publishing information imparted to him in breach of confidence, he is amenable to the full scope of the court's wide power to order discovery inter partes; the fact that the plaintiff's primary purpose in seeking discovery is to identify the source of the information does not inhibit or restrict the court's power to order discovery for the purposes of the quia timet litigation (*X. Ltd v. Morgan-Grampian (Publishers) Ltd [1990] 2 All E.R. 1, HL*).

## Meaning of "documents" (rr.1 & 2)

24/2/3   The meaning of "documents" is not restricted to paper writings, but extends to anything upon which evidence or information is recorded in a manner intelligible to the senses or capable of being made intelligible by the use of equipment. Thus tape recordings of evidence or information are documents (*Grant v. Southwestern and County Properties Ltd [1975] Ch. 185; [1974] 2 All E.R. 465*). "Inspection" extends to examining such recordings or other documents with appropriate equipment (ibid., at 198). Microfilms used to keep records are "books" for the purpose of the Bankers' Book Evidence Act 1879 (*Barker v. Wilson [1980] 1 W.L.R. 884; [1980] 2 All E.R. 81*) and are therefore, presumably, "documents" for the purposes of this Order.

A computer database which forms part of the business records of a company is, in so far as it contains information capable of being retrieved and converted into readable form, a "document" for the purposes of O.24 and therefore susceptible to discovery (*Derby & Co. Ltd v. Weldon (No. 9) [1991] 1 W.L.R. 652; [1991] 2 All E.R. 901*). And see *Alliance & Leicester Building Society v. Ghahremani [1992] 32 R.V.R. 198*; word processing file of computer within the definition of document for purpose of an order preserving documents in connection with proceedings.

Furthermore, photocopies of documents are generally discoverable since they are equally capable of assisting the parties in the preparation of their case (*Dubai Bank v. Galadari (No. 7) [1992] 1 W.L.R. 106; [1992] 1 All E.R. 658*).

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 10 of 67

## "Within 14 days after the pleadings in the action are deemed to be closed" (r.2(1))

24/2/4    *Close of pleadings* is defined in O.18, r.20. Automatic discovery only arises in actions tried with pleadings—i.e. almost invariably begun by writ (cf. r.3(1)). Default by a party in making discovery by list under this rule entitles the other party to apply to strike out his pleading (*Chipchase v. Rosemond [1965] 1 W.L.R. 153; [1965] 1 All E.R. 145*). For the meaning of "action," see SCA 1981, s.151. The words "after the pleadings in the action are deemed to be closed" indicate that a plaintiff is not entitled, without an order of the Court, to discovery from a defendant against whom he has signed judgment in default of notice of intention to defend. See, under the earlier rules, *Gould v. National Provincial Bank [1960] Ch.337; [1960] 1 All E.R. 544*.

## Actions for infringement of a patent (rr.1 & 2)

24/2/5    Rules 1 and 2 apply in an action for infringement of patent except that each party must serve his list of documents within 21 days after service of notice of admissions under O.104, r.10(2) or within 21 days after close of pleadings (see O.104, r.11(1)).

## "any other party" (r.2(1))

24/2/6    The term is limited by the words "relating to any matter in question between them." Discovery takes place between the parties between whom some issue arises in the action. It may therefore take place between defendants where, for example, each is attributing to the negligence of the other the injury to the plaintiff, or is alleging that the negligent person was the other's servant (see *Brown v. Watkins (1885) 16 Q.B.D. 125*, and *Shaw v. Smith (1886) 18 Q.B.D. 193* (where there was no issue between the defendants); *Spokes v. Grosvenor Co. [1897] 2 Q.B. 124*; *Cory v. Cory [1923] 1 Ch. 90*; *Molloy v. Kilby (1880) 15 Ch.D. 162*; *Birchal v. Birch, Crisp & Co. [1913] 2 Ch. 375, CA*; *Alcoy, etc., Co. v. Greenhill (1896) 74 L.T. 345*). The question is not now of much practical importance since r.6 enables a defendant to obtain a copy of a list of documents which his co-defendant has supplied to the plaintiff. But he may not have supplied or been required to supply a list to the plaintiff, and under r.2(2) would not be liable to make discovery to the plaintiff in a running-down action without an order of the Court, and the issues may not be the same between defendant and plaintiff as between co-defendants.

## "list of documents"

24/2/7    See r.5(1) for the form of list of documents now required by the rules.

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 11 of 67

# "Documents which are or have been in his possession, custody or power" (r.2(1))

**24/2/8**  These words are new to the extent that although s.6 of the Evidence Act 1851 (which gave the power of ordering inspection at common law) had used the expression "in the custody or under the control," the rules as to discovery and inspection in force from 1875–1964 (O.31, rr.12, 14) used the words "possession or power," while the deponent to the statutory form of affidavit of documents (O.31, r.13, and App. B, No. 8) after saying in para. 1 "I have in my possession or power," etc., deposed in para. 5 "I have not now and never had in my possession, custody or power or in the possession, custody or power of any other person on my behalf … any … other … document." But the present rule in effect embodies the practice and decisions under the former O.31, in regard to *discovery* of documents. Under that Order a distinction was made (following the old Chancery practice) between the obligation to make discovery of documents and the obligation to produce documents for inspection. There was an obligation to *disclose* documents which were or had been in the deponent's possession or power and in which he had a joint property with other persons or no property at all, and also, *semble*, documents which were or had been in his mere custody (Bray, p.225); there was no obligation to produce them for inspection (see Bray, pp.196–209, 224–227). The word "custody," included in the present rule, makes clear that the party is under a duty to disclose documents belonging to others of which he has (or has had) merely the custody.

Accordingly the party must disclose under this rule (and the Court has power to order him to do so under r.3(1)) the following classes of documents:

**1. Documents that are or have been in his possession**
Possession is distinguished from mere corporeal holding, i.e. custody. A bailee or agent has possession of documents entrusted to him for the owner; a servant as such has merely custody.

**2. Documents that are or have been in his custody**
Therefore documents of a limited company, held by an employee or director ordered to make discovery, are included in one or other of these two classes.

**3. Documents that are or have been in his power**
These include all documents which, though they are not in his possession or custody, he has a right to obtain from the person who has them—e.g. where he is the owner and has not parted with the right to possession. It follows that the words include also:

**4. Documents which are or have been in the possession, custody or power of any agent for him**
(see *Murray v. Walter (1839) Cr. & Ph. 114* at 125; *Swanston v. Lishman (1881) 45 L.T. 360*; *Mertens v. Haigh (1863) 3 De G. J. & S. 328*; *Yasuda Fire & Marine Co. of Europe Ltd v. Orion Marine Insurance Underwriting Agency Ltd [1995] Q.B. 174* (continuing entitlement in principal after termination of agency in absence of express exclusion to the contrary to documents relating to acts done in his name during agency)).

**5. Documents which are or have been in his possession, custody or power jointly with or as agent or servant of some other person**
(see cases cited under 4 above and *Taylor v. Rundell (1841) Cr. & Ph. 104*; *Bovill v. Cowan (1870) L.R. 5 Ch.495*).

The foregoing rules are subject to the overriding consideration that O.24 is concerned with the physical possession or custody of documents, or the power to obtain such possession or custody. If such documents are not in the physical possession, etc., of a party, he may be ordered to give discovery if he has the right to control them personally or in the capacity in which he is sued; he may not be so ordered if his control of the documents is in

© 2022 Thomson Reuters.

Case 1:22-mc-00130-ALC Document 41-10 Filed 12/20/22 Page 12 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

another capacity, e.g. as a director of a company (*B. v. B. (Matrimonial Proceedings: Discovery) [1978] Fam. 181; [1979] 1 All E.R. 801*). It is a question of fact whether the documents of a subsidiary company are within the power of its parent company (*Lonrho Ltd v. Shell Petroleum Ltd [1980] Q.B. 358, affirmed [1980] 1 W.L.R. 627*).

An employee is not acting within the course of his employment in giving evidence to a liquidator pursuant to s.236 of the Insolvency Act 1986 and thus the transcript of such evidence in the hands of the employee is not in the power, custody or control of the employer and so not discoverable (*Macmillan Inc. v. Bishopgate Investment Trust (No. 2) [1993] I.C.R. 385*).

There is no jurisdiction to make an order against a party to use all reasonable means to obtain possession of documents so that an order for the discovery of those documents, which at the time was not possible, might then be made, see *Dubai Ltd v. Galadari (No. 6) (1992) The Times, October 14, CA*.

Documents of a company are not necessarily "in the power" of its majority shareholder; dominance in the running of the company's business does not prove the requisite degree of control; it must be shown that the company is under the unfettered control of the shareholder (*Re Tecnion Investments Ltd [1985] B.C.L.R. 434, CA*).

The documents of an insolvent company, sorted and stored by company's receivers, held not to be within power of the Secretary of State who had instituted proceeding under Company Directors Disqualification Act 1986 to disqualify a former director whose application for discovery by Secretary of State was refused (see *Re Lombard Shipping and Forwarding Ltd [1992] B.C.C. 700; (1992) The Times, July 29*).

See too *Lewis v. Powell [1897] 1 Ch. 678* and *Frogmore Estates Plc v. Berger, July 20, 1992, (unrep.)*, Chancery Division, Knox J., both cases of documents in hands of former solicitors exercising lien over same.

Working notes of professional advisers are normally the property of the adviser (*Chantrey Martin v. Martin [1953] 2 Q.B. 286, CA* (accountants)). If a party has no control over them, an opposite party may obtain inspection before trial by subpoena under *Khanna v. Lovell White Durrant [1995] 1 W.L.R. 121*.


## Obligations of solicitors in respect of discovery by their clients

24/2/9   It is necessary for solicitors to take positive steps to ensure that their clients appreciate at an early stage of the litigation, promptly after the writ is issued, not only the duty of discovery and its width but also the importance of not destroying documents which might possibly have to be disclosed (per Megarry J. in *Rockwell Machine Tool Co. Ltd v. E.P. Barrus (Concessionaires) Ltd [1968] 2 All E.R. 98*). Moreover it is not enough simply to give instructions that documents be preserved. Steps should be taken to ensure that documents are preserved (*Infabrics Ltd v. Jaytex Ltd. [1985] F.S.R. 75* where, because a defendant had not preserved documents affecting the quantum of damage, the maxim omnia praesummuntur contra spoliatorem was applied against him).

"It cannot be too clearly understood that solicitors owe a duty to the court, as officers of the court, carefully to go through the documents disclosed by their client to make sure, as far as possible, that no relevant documents have been omitted from their clients' affidavit" per Salmon J. (as he then was) in *Woods v. Martins Bank Ltd [1959] 1 Q.B. 55* at 60.

See too comments on duty to notify court and/or to withdraw in the event of client not complying with proper advice in respect of discovery in *Myers v. Elman [1940] A.C. 282* at 293–4, 300–301 and 322–3.

See also para. 24/2/17, "Continuing obligation to give discovery."

© 2022 Thomson Reuters.

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 13 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

## Production and inspection

**24/2/10**  Until 1962 there was a distinction between the obligation to give discovery (i.e. to disclose the existence of documents) and the obligation to produce disclosed documents for inspection. A party was (and still is) obliged to disclose the existence of documents in his possession, etc., even though his possession may not be exclusive or may be only physical custody, e.g. as a servant; the obligation to produce documents was narrower and extended only to documents in the sole legal possession of the party giving discovery (see the notes to O.31, r.14, in editions of the Annual Practice prior to 1962).

Under the present rules the obligation to give inspection extends prima facie to all documents to which the obligation to give discovery extends (see r.2(1) (automatic discovery); r.3(1) (discovery by order); r.7(1) (discovery of specific documents); rr.9 to 11 (inspection) and per Lord Cross in *Alfred Crompton Amusement Machines Ltd v. Commissioners of Customs and Excise [1974] A.C. 405 at 429; [1973] 2 All E.R. 1169* at 1180). But the Court has a discretion whether to order inspection, and it may be that, in the exercise of such discretion, it will have regard to any prejudice to persons having a right to the documents in question. Moreover, the Court will not make an order either for discovery or inspection which is premature or not necessary for disposing fairly of the cause or matter or for saving costs (rr.8, 13).

## "Relating to any matter in question between them" (r.2(1))

**24/2/11**  These words refer, not to the subject-matter of an action, but to the questions in the action. So, in an action for possession of land, where the plaintiff's title is in question, they refer to the title, not the land (per Lindley J. in *Philipps v. Philipps (1879) 40 L.T. 815* at 821). They are not limited to documents which would be admissible in evidence (*Compagnie Financière du Pacifique v. Peruvian Guano Co. (1882) 11 Q.B.D. 55*, per Brett L.J. at pp.62, 63; *O'Rourke v. Darbishire [1920] A.C. 581* at 630) nor to those which would prove or disprove any matter in question: any document which, it is reasonable to suppose, "contains information which may enable the party (applying for discovery) either to advance his own case or to damage that of his adversary, if it is a document which may fairly lead him to a train of inquiry which may have either of these two consequences" must be disclosed (*Compagnie Financière, etc. (1882) 11 Q.B.D. 55* at 63). See also *The Captain Gregos (1990) The Times, December 21, CA*. Brett L.J.'s formulation of relevance for discovery purposes at p. 63 of the *Compagnie Financière* case was it appears approved by the Court of Appeal in *Taylor v. Anderton [1995] 1 W.L.R. 447; [1995] 2 All E.R. 420*. The formulation was stated to make it clear that the definition of relevance was framed in the widest possible terms. Compare the more restricted approach in *O Co. v. M Co. [1996] 2 Lloyd's Rep. 347*, in which it appears *Taylor v. Anderton* was not cited. In *O Co. v. M Co.* the Court said that: "The principle was never intended to justify demands for disclosure of documents at the far end of the spectrum of materiality which on the face of it were unrelated to the pleaded case of the plaintiff or defendant and which were required for purely speculative investigation. The excessively wide application of Brett L.J.'s formulation of relevance has probably contributed more to the increase of the costs of English civil and commercial litigation in recent years than any other factor other than the development of the photocopying machine. That formulation must not, in my judgment, be understood as justifying discovery demands which would involve parties to civil litigation being required to turn out the contents of their filing systems as if under criminal investigation merely on the off-chance that something might show up from which some relatively weak inference prejudicial to the case of the disclosing party might be drawn. On the contrary, the document or class of documents must be shown by the applicant to offer a real probability of evidential materiality in the sense that it must be a document or class of which in the ordinary way can be expected to yield information of substantial evidential materiality to the pleaded claim and the defence to it in the broad sense which I have explained. If the document or class cannot be demonstrated to be *clearly* connected to issues which have already been raised in the course of the proceedings, or which would in the ordinary way be expected to be raised in the course of the proceedings, if sufficient information were available, the application should be dismissed." Parts of documents disclosed on discovery may be blanked out as irrelevant (*G.E. Capital*

*Corporate Finance Group v. Bankers Trust Co. [1995] 1 W.L.R. 172, CA; [1995] 2 All E.R. 993, CA*). Documents required merely for the purpose of comparing handwriting, where the handwriting of another document is in issue, may be "relevant" (*Jones v. Richards (1885) 15 Q.B.D. 439*; interrogatories in a libel action). Any documents shedding light on the amount of the damages claimed must be disclosed, and written complaints from third persons as to a matter in question (see *Board v. Thomas Hedley & Co. [1951] 2 All E.R. 431*—complaints from later users of a product alleged to be dangerous; *Blakebrough v. British Motor Corp. (1969) 113 S.J. 366, CA*). Thus in a personal injury action an employee who claimed damages for loss of earnings or impaired earning capacity had if so requested by his employer to disclose general medical records of the whole of his medical history to his employer's medical advisers (*Dunn v. British Coal Corporation [1993] I.C.R. 591; (1993) The Times, March 5; (1993) The Independent, March 10, CA*. On the issue whether a party is a moneylender, discovery must be given of documents later as well as earlier than the transaction in question (*Marshall v. Goulston Discount (Northern) Ltd [1967] Ch.72; [1966] 3 All E.R. 994, CA*). Where defences of breaches of Arts 85 or 86 of the Treaty of Rome are pleaded, the Court will be concerned to prevent a wide-ranging fishing discovery based upon a pleading in general terms, especially where privilege from disclosure or production may be claimed (*British Leyland Motor Corp. Ltd v. Wyatt Interpart Co. Ltd [1979] F.S.R. 39*).

Discovery is not required of documents which relate to irrelevant allegations in the pleadings which even if substantiated could not affect the result of the action, *Martin & Miles Martin Pen Co. Ltd v. Scrib (1950) 67 R.P.C. 127* at 131, CA, and *Martin &Biro Swan Ltd v. H. Millwood Ltd (1954)71 R.P.C. 316*.

In proceedings for infringement of a patent, where the defendant seeks to attack its validity, discovery may be ordered of documents filed by the plaintiff in applications for patent protection in foreign jurisdictions, notwithstanding that such documents may be inconclusive of the issues in the action, if they assist the defendant by disclosing the line which may be taken by the plaintiff in resisting the attack on the validity of the patent (*Vickers Plc v. Horsell Graphic Industries Ltd [1988] R.P.C. 421*).

In an action brought by a plaintiff against a chief constable for damages for assault, unlawful arrest, false imprisonment and malicious prosecution by the police, the plaintiff is not entitled to discovery of documents containing adjudications of guilt in police disciplinary proceedings against police officers allegedly involved in the plaintiff's arrest and detention, since the documents are not probative of the conduct alleged; the Court should not order discovery on matters which go solely to cross-examination or as to similar fact transactions, where such discovery would be oppressive and where evidence of such transactions is not admissible (*Thorpe v. Chief Constable of Greater Manchester [1989] 2 All E.R. 827, CA*).

A plaintiff who brings a personal injury action against her former employer is entitled to discovery of the details of earnings of three comparative earners employed by the defendant, where the amount which the plaintiff would have earned if she had not had to leave her employment is in question in the action and the plaintiff has a claim for continuing loss; disclosure of such documents does not contravene the Data Protection Act 1984, because such disclosure is permitted by virtue of s.34(5) of that Act (*Rowley v. Liverpool City Council (1989) The Times, October 26, CA*).

Until a liability covered by s.1 of the Third Parties (Rights Against Insurers) Act 1930 had been established a third party was not entitled to discovery of the existence of insurance cover (*Nigel Upchurch Associates v. Aldridge Estates Investment Co. [1993] 1 Lloyd's Rep. 535*). Section 1 did not transfer to the third party any contractual right to seek declaratory relief before a specific liability had been established or any right to be indemnified contingent upon liability being established. See similarly *Woolwich Building Society v. Taylor (1994) The Times, May 17*.

See too Chancery Guide, Section 3.4(c) which indicates that parties should as a matter of good practice prepare and if possible agree a list of issues which are considered by either party to be essential to his case and further consider to which issues discovery should relate and in addition whether discovery should take place in stages.

# "Third party proceedings" (r.2(1))

24/2/12

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 15 of 67

Automatic discovery does not apply in third party proceedings. Until the summons for directions in third party proceedings is heard there is no obligation to give discovery, and on that summons the Master orders whatever discovery is needed.

## Running-down actions (r.2(2))

24/2/13    The Court does not order discovery against a defendant in a running-down action unless some issue in the action calls for it—e.g. an issue as to whether the driver of the vehicle was the defendant's servant, or whether a vehicle had been properly maintained.

## "Action for the recovery of any penalty …" (r.2(3))

24/2/14    Section 16(1)(a) of the Civil Evidence Act 1968 abrogated the rule whereby a person cannot be compelled to answer any question or produce any document or thing if to do so would tend to expose him to a forfeiture. It remains, however, that, by virtue of the previous law, as amended by s.14 of the above Act, a party may, in his list of documents or answers to interrogatories, claim privilege from disclosure of particular documents or refuse to answer particular interrogatories on the ground that the documents or answers may expose him or his spouse to proceedings for a criminal offence under the law of any part of the U.K. or for the recovery of a penalty provided by that law (see notes to r.5 and O.26, r.1). But apart from this protection a defendant to an action in which the issue is as to his liability to a penalty is under no obligation to make discovery of documents under this rule, and the Court will not under r.3 order discovery of documents against him, or under O.26 allow interrogatories to be administered to him (*Martin v. Treacher (1886) 16 Q.B.D. 507, CA*; *Mexborough v. Whitwood [1897] 2 Q.B. 111, CA*; *Seddon v. Commercial Salt Co. [1925] 1 Ch.187, CA*). The words in the rule "recoverable by virtue of any enactment" mean penalties recoverable under a statute as distinct from sums recoverable under a contract and sums in the nature of compensation recoverable by statute (Adams v. *Batley and Cole v. Francis (1887) 18 Q.B.D. 625*—statutory penalty for infringement of copyright; *Hobbs v. Hudson (1890) 25 Q.B.D. 232*—action for double value for goods fraudulently removed by a tenant, held penal; *Colne Valley Water Co. v. Watford and St. Albans Gas Co. [1948] 1 K.B. 500, CA*—penalties for pollution of water supply; *Sanders v. Wiel [1892] 2 Q.B. 321, CA*—penalty for infringement of copyright. Contrast Mayor etc., of *Derby v. Derbyshire C.C. [1897] A.C. 550*, where the action was not for a penalty but for an order a breach of which might expose the defendant to a penalty in subsequent proceedings).

A fine which might be imposed by the European Commission on an undertaking which intentionally breaches the provisions of Art. 81 of the Treaty of Rome is a "penalty" which would be recoverable under an English statute (*Re Westinghouse Electric Corp., Uranium Contract Litigation of M.D.L. Docket 235 [1978] A.C. 547; [1978] 1 All E.R. 434, HL(E)*). A claim for conversion damages in respect of dealings in infringing copies pursuant to s.18 of the Copyright Act 1956 is not an action for the "recovery of any penalty recoverable by virtue of any enactment" (*Richmark Camera Services Inc. v. Neilson-Hordell Ltd [1981] F.S.R. 413*). See also para. 24/5/34, below, "Documents tending to criminate or expose to a penalty."

## Limitation of automatic discovery (r.2(5) & (6))

24/2/15    Notwithstanding the provision in para. (1) for automatic discovery of documents within 14 days after close of pleadings, a party may apply under paras (5) and (6) to limit his obligation to make discovery. The application is by summons to be taken out within the 14 days, though the Court may extend the time for good reason. As a rule,

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 16 of 67

no affidavit should be filed on the summons. The Court will not postpone discovery to a later stage under para. 5(b) unless, e.g. there is a preliminary issue to be tried (e.g., the issue as to liability) and the postponed discovery is likely to be heavy, or there is some other exceptional reason.

## Form of affidavit (r.2(7))

24/2/16   See O.24, r.5.

## Continuing obligation to give discovery

24/2/17   Although one reading of O.24, r.1 may suggest that discovery need be given only of documents which have come into a party's possession before the date of his list of documents, this is not the limit of a party's obligation to give discovery imposed by the rule. The obligation is general, and requires the disclosure of all relevant documents whenever they may come into a party's possession. This requirement is supported by the linked principle that a party must not seek to take his opponent by surprise (cf. O.18, rr.8 and 9), and that he must not, by withholding relevant documents, mislead his opponent or the Court into believing that the statement in his list that he has given full discovery continues to be true (*Mitchell v. Darley Main Colliery Co. (1884) Cab. & Ell. 215*). An obvious example is where a plaintiff, who is claiming damages for prospective loss of earnings, obtains new lucrative employment during the course of the action; this fact must be communicated to the defendant and further discovery must be made (or, at all events, offered). In default, the plaintiff may be ordered to pay any costs occasioned by the failure to give discovery promptly.

See too *Vernon v. Bosley (No. 2) [1997] 3 W.L.R. 683; [1997] 1 All E.R. 614; [1999] Q.B. 18* in which the Court of Appeal reaffirmed that a party to civil litigation was under a continuing obligation under RSC, O.24, r.1 until the conclusion of the proceedings to disclose all relevant documents whenever they came into his possession, unless they were clearly privileged from disclosure, notwithstanding that discovery by list or affidavit had already been made. Where, therefore, a document was disclosed to a party after he had closed his case, or the evidence as a whole was concluded, he should apply to the court to reopen the case in the light of the disclosure if the document was of real significance and there was otherwise a risk of injustice.

3.— **Order for discovery (O.24, r.3)**

24/3   **(1)** Subject to the provisions of this rule and of rules 4 and 8, the Court may order any party to a cause or matter (whether begun by writ, originating summons or otherwise) to make and serve on any other party a list of the documents which are or have been in his possession, custody or power relating to any matter in question in the cause or matter, and may at the same time or subsequently also order him to make and file an affidavit verifying such a list and to serve a copy thereof on the other party.

**(2)** Where a party who is required by rule 2 to make discovery of documents fails to comply with any provision of that rule, the Court, on the application of any party to whom the discovery was required to be made, may make an order against the first-mentioned party under paragraph (1) of this rule or, as the case may be, may order him to make and file an affidavit verifying the list of documents he is required to make under rule 2, and to serve a copy thereof on the applicant.

Case 1:22-mc-00130-ALC Document 41-10 Filed 12/20/22 Page 17 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

> **(3)** An order under this rule may be limited to such documents or classes of document only, or to such only of the matters in question in the cause or matter, as may be specified in the order.

## History of rule

24/3/1    Reproduces O.24, r.3, of 1962.

## Effect of rule

24/3/2    The objects of this rule (which, unlike the provisions for automatic discovery in r.2(1) is not limited to an action with pleadings) are (a) to enable a plaintiff to apply for discovery against a defendant in a running-down action where some issue calls for discovery (see r.2(2) and note); (b) to enable a party to apply for discovery by list, or for an order for an affidavit verifying a list, against a party who has not fulfilled his obligations under r.2; (c) to enable a party to an originating summons to apply for discovery, which will now normally be ordered if facts are in issue (*Coni v. Robertson [1969] 1 W.L.R. 1007; [1969] 2 All E.R. 609*). The application should normally be made, in an action, on the hearing of the summons for directions, and should not be supported by affidavit.

For the meaning of the terms "documents … in his possession, custody or power," and "relating to the matter in question," see notes to r.2.

## Judicial review as a means of obtaining discovery

24/3/3    The Court will in some cases enforce a right to inspect documents by mandamus or mandatory order made on application for judicial review. See *R. v. Southwold Corp. (1907) 97 L.T. 431*. Cf. *R. v. Bradford-on-Avon Rural District Council (1908) 99 L.T. 89*; *Davies v. Gas Light and Coke Co. [1909] 1 Ch. 248* at 253; affirmed *[1909] 1 Ch. 708, CA*; *R. v. Godstone Rural District Council [1911] 2 K.B. 465*, parochial elector; *Cuff v. London and County Land and Building Co. Ltd [1912] 1 Ch. 440, CA*, refused to auditors of company on interlocutory application; *R. v. Hampstead Borough Council (1917) 116 L.T. 213*, refused to members of borough council as matter of discretion; *R. v. Barnes Borough Council, ex p. Conlan [1938] 3 All E.R. 226* (similar case). See also *City of Birmingham District Council v. O. [1983] A.C. 578; [1983] 1 All E.R. 497, HL*.

## Discovery in proceedings for judicial review

24/3/4    O.24, r.3 (unlike O.24, rr.1 and 2) is wide enough in scope to apply to proceedings for judicial review. Therefore, although discovery is not automatic in judicial review proceedings, the court may order discovery where such an order is necessary for disposing of the matter fairly within the meaning of O.24, r.8 (*R. v. Inland Revenue Commrs., ex p. J. Rothschild Holdings p.l.c. [1986] S.T.C. 410; (aff.) [1987] S.T.C. 163 CA*).

© 2022 Thomson Reuters.

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 18 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Because of the nature of an application for judicial review, discovery in judicial review proceedings is inevitably different from discovery in an action begun by writ; although the Court has power under O.24, r.3 to order discovery in judicial review proceedings, it will be appropriate in fewer cases and is likely to be more circumscribed (*R. v. Secretary of State for the Home Office, ex p. Harrison [1988] 3 All E.R. 86, CA*). A minister who had to make a decision as part of an appellate process would necessarily consult with officials in his department and obtain their expertise and advice and unless that consultative exercise involved a new point with which the parties had had no opportunity of dealing, the minister was under no duty to disclose material resulting from such consultative process (*R. v. Secretary of State for Education, ex p. S (1994) The Independent, September 21*).

Since in applications for judicial review the burden of proof lies on the applicant to raise his case, the Court will refuse to order discovery against the respondent in order to make good defects in the evidence adduced by the applicant (*R. v. Secretary of State for the Home Department, ex p. Singh (1988) The Independent, April 11, CA*).

As a general principle in judicial review discovery will be ordered where it is required in order that the justice of the case may be advanced and where it is, within the meaning of O.24, r.8, necessary for disposing fairly of the matter; the Court should not order discovery, however, where there is no material before it to show that the reasoning of the respondent's decision-making process is defective or unreasonable or open to challenge, and where the purpose of the application is to study the respondent's documents to see if some flaw in the decision-making process can be established (*R. v. Commrs. of Inland Revenue, ex p. Taylor [1988] C.O.D. 61, (affd.) [1988] S.T.C. 832; [1989] 1 All E.R. 906, CA*). See too *R. v. Secretary of State for Foreign and Commonwealth Affairs, ex p. World Development Movement Ltd [1995] 1 W.L.R. 385; [1995] 1 All E.R. 611 CA*.

The Home Secretary, when refusing to accept a parole board's recommendation for release of a prisoner, cannot, on the ground of privilege, withhold medical reports from an applicant seeking judicial review of his decision; but the applicant has to show that the reports are central to the application as well as relevant, and there may be cases where the Home Secretary will be justified in withholding them on medical grounds (*R. v. Secretary of State for Home Department, ex p. Benson (1988) The Independent, November 14*).

The Court, in considering an application for judicial review, has no jurisdiction to order discovery of documents for the purposes of a re-hearing of the subject matter of the application where such documents are irrelevant to the judicial review proceedings (*R. v. Secretary of State for Education and Science, ex p. G. (1989) The Times, July 7*).

Where the issue in the application for judicial review is whether the decision maker had power to make his decision, and where there is no reason to doubt the accuracy of the reasons given for that decision, it is unnecessary to order discovery of documents relating to the reasons given (*R. v. Secretary of State for the Environment, ex p. Islington Borough Council (1991) The Times, September 6, CA*).

## Stage at which discovery may be ordered

24/3/5   The Court has a wide discretion when to order discovery in the interest of justice. But it is, generally, inexpedient and unnecessary to do so until the issues have been defined by the pleadings (*R.H.M. Foods Ltd v. Bovril Ltd [1982] 1 W.L.R. 661; [1982] 1 All E.R. 673, CA*). But if inspection is so desirable that it is very nearly essential before statement of claim it will be ordered: *Dun and Bradstreet Ltd v. Typesetting Facilities Ltd [1992] F.S.R. 320.*

## "Any other party"

24/3/6   See this note to r.2.

© 2022 Thomson Reuters.

Case 1:22-mc-00130-ALC  Document 41-10  Filed 12/20/22  Page 19 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

So a third party brought in as a co-defendant to a counterclaim against him and the plaintiff is entitled to discovery against the plaintiff if there are rights to be adjusted in the action between them (*Alcoy Ry. Co. v. Greenhill (1896) 73 L.T. 452*) but not otherwise (*Molloy v. Kilby (1880) 15 Ch.D. 162*; *Eden v. Weardale Co. (1887) 34 Ch.D. 223*) and when the order for directions puts the third party in the position of a defendant, or raises some question or issue between him and the plaintiff, he may obtain discovery from the plaintiff (*Eden v. Weardale Iron and Coal Co. (1887) 35 Ch.D. 287, CA*) or the plaintiff may obtain discovery against him (*Eden v. Weardale Co.* above; *MacAllister v. Rochester (Bishop) (1880) 5 C.P.D. 194*).

But as a general rule discovery in an action can only be ordered as between the parties to the action (*James Nelson & Sons Ltd v. Nelson Line Ltd [1906] 2 K.B. 217* at 223, 224, CA; *Shaw v. Smith (1886) 18 Q.B.D. 193* at 197; *Burchard v. Macfarlane [1891] 2 Q.B. 241* at 247, 250, 251, CA; *Pollock v. Garle [1898] 1 Ch. 1, CA*; *O'Shea v. Wood [1891] P.286* at 288, CA) and there is no power to order a person who is not a party to the action to give discovery (*Williams v. Ingram (1900) 16 T.L.R. 434*, affirmed on this point CA, 451); or to stay proceedings until he does so (*Fraser v. Burrows (1877) 2 Q.B.D. 624*). Where, however, a person is using the name of another as a nominal plaintiff only, for the purpose of bringing an action in which he alone is really interested, the proceedings may be stayed until the real plaintiff gives discovery (*Willis & Co. v. Baddeley [1892] 2 Q.B. 324, CA*; *James Nelson & Sons Ltd v. Nelson Line Ltd [1906] 2 K.B. 217*) but the nominal plaintiff is also liable to make discovery (*Wilson v. Raffalovich (1881) 7 Q.B.D. 553, CA*). Thus, where a principal residing abroad is the real plaintiff but is suing through his agent here, the defendant is entitled to have the action stayed until such discovery is made as the real plaintiff would have been obliged to make had he been the plaintiff on the record (*Willis & Co. v. Baddeley*). Underwriters taking over the conduct of an action under their right of subrogation in the name of a cargo owner who was and remains a substantial party to the action cannot be compelled to make discovery (*James Nelson & Sons, Ltd v. Nelson Line*, above).

Where a defendant is sued in a representative capacity (e.g. on behalf of insurers or underwriters other than himself) the represented persons are not parties to the proceedings for the purposes of O.15, r.12(3); accordingly no order for discovery under O.24, r.3 can be made against the represented persons, and no order can be made under the rule against the defendant in respect of documents which are in the possession, custody or power of persons other than himself and not in his possession, custody or power (*Ventouris v. Mountain [1990] 1 W.L.R. 1370; [1990] 3 All E.R. 157*; affirmed [1991] 3 All E.R. 472, CA; (1991) 141 New L.J. 237, CA).

Where a person has no connection with the matters in issue between the parties to an action other than that he might be called as a witness, the rule is that discovery cannot be obtained against him. Where, however, a party seeks to obtain on discovery information from a corporation which is a party to the action, and such relevant information is in the possession of the corporation's servants or agents, the Court can require those servants or agents, although not themselves parties to the action, to make on behalf of the corporation the discovery sought. Servants or agents so required to make discovery should normally be given an opportunity of being heard before any order for discovery is made against them, and only in exceptional circumstances will an ex parte order be justified (*Harrington v. North London Polytechnic [1984] 1 W.L.R. 1293; [1984] 3 All E.R. 666, CA*).

## Foreign sovereign or state

24/3/7    A foreign sovereign or state suing in this country must give discovery (*South African Co. v. Compagnie Franco-Belge [1898] 1 Ch. 190*; *U.S.A. v. Wagner (1867) L.R. 2 Ch. 582*) and the Court will stay proceedings until the plaintiff has named a proper person to give discovery (*Costa Rica Republic v. Erlanger (1875) 1 Ch.D. 171*; *Peru (Republic) v. Weguelin (1875) L.R. 20 Eq. 140*).

Case 1:22-mc-00130-ALC  Document 41-10  Filed 12/20/22  Page 20 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

# Application for a further and better list of documents

**24/3/8**    A list of documents, verified by affidavit is normally conclusive (see r.7, n. "Effect of the rule", para. 24/7/2) subject to two qualifications, namely (1) that an application may be made under r.7, for an affidavit in regard to specific documents or classes of documents, where the facts fall within that rule, and (2) that an application may be made for a further and better list of documents in the following conditions.

An order may be made for a further and better list of documents where it appears (a) from the list itself, or (b) from the documents referred to in it, or (c) from admissions made either in the pleadings of the party making discovery or otherwise, that the party making discovery has or has had other relevant documents in his possession, custody or power (*Jones v. Monte Video Co. (1880) 5 Q.B.D. 556*; *Compagnie Financière du Pacifique v. Peruvian Guano Co. (1885) 1 T.L.R. 188, CA*; *Hall v. Truman, Hanbury & Co. (1885) 29 Ch.D. 307* at 319; *Jones v. Andrews (1888) 58 L.T. 601, CA*; *Yorkshire Provident, etc., Co. v. Gilbert [1895] 2 Q.B. 148* at 155, CA; *Kent Coal Concessions v. Duguid [1910] 1 K.B. 904, CA*, affirmed in HL *[1910] A.C. 452*, where the plaintiff disclosed balance-sheets which were evidently compiled from books, but disclosed no books, and a further affidavit was ordered). The admission need not necessarily be contained in the list of documents or in the pleadings (*British Association of Glass Bottle Manufacturers Ltd v. Nettlefold [1912] 1 K.B. 369, CA*; affirmed in HL *[1912] A.C. 709*). An admission made in any manner will suffice (ibid.). A letter referred to in a letter disclosed in the list will itself be presumed to be relevant until the contrary is shown (*Ormerod, Grierson & Co. v. St. George's Ironworks (1906) 95 L.T. 694*; *Irish Agricultural Society v. M'Cowan (1913) 47 Ir.L.T. 20*). An order may be made where the basis on which the first list has been made, is palpably wrong—where the party has misconceived his case so that the Court is confident that if he had conceived it properly he would have disclosed further documents (*British Association of Glass Bottle Manufacturers Ltd v. Nettlefold*, above).

As regards the claim for privilege, the only cases in which the affidavit can be controverted are those in which it can be seen from the whole affidavit or from the nature of the case or of the documents themselves, that the party making discovery has erroneously represented or misconceived their nature or effect (*Att.-Gen. v. Emerson (1882) 10 Q.B.D. 191* at 198, 203, 204, CA; *Roberts v. Oppenheim (1884) 26 Ch.D. 724*; *Frankenstein v. Gavin's Cycle Cleaning and Insurance Co. [1897] 2 Q.B. 62*; *Lyell v. Kennedy (No. 3) (1884) 27 Ch.D. 1* at 20—23; *Brookes v. Prescott [1948] 1 All E.R. 907, CA*). But the Court will not speculate upon such misrepresentation or misconception, and will accept the list, verified by affidavit, as conclusive unless it can see distinctly that the oath of the party cannot be relied upon (*Roberts v. Oppenheim*, above; see also *Jones v. Andrew (1888) 58 L.T. 601*). An application for a further and better list (as distinct from an application under r.7) should not normally be supported by an affidavit.

It is not the purpose of discovery to give a party the opportunity to check whether discovery by the opposing party has been properly carried out. If a party does not believe an opponent, e.g. where alleged irrelevant parts of a document are blanked out, he should call the deponent to appear and be cross-examined (*Berkeley Administration Inc. v. McClelland [1990] 2 W.L.R. 1021*).

The first paragraph to this note was referred to in *Ventouris v. Mountain [1991] 1 W.L.R. 607; [1991] 3 All E.R. 472, CA* where it was emphasised, at p. 622 and p. 486 respectively, that the requirements in the case of an application under r.7 are different from the requirements in an application under this rule. A party seeking an order for further discovery should therefore consider carefully under which rule he should proceed or whether he should rely on both rules. If or to the extent that he resorts, or can only resort, to r.7 he must comply with the requirements of para. (3) of that rule or his application must fail.

**4.— Order for determination of issue, etc., before discovery (O.24, r.4)**

**24/4**

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 21 of 67

**(1)** Where on an application for an order under rule 2 or 3 it appears to the Court that any issue or question in the cause or matter should be determined before any discovery of documents is made by the parties, the Court may order that that issue or question be determined first.

**(2)** Where in an action begun by writ an order is made under this rule for the determination of an issue or question, Order 25, rules 2 to 7, shall, with the omission of so much of rule 7(1) as requires parties to serve a notice specifying the orders and directions which they desire and with any other necessary modifications, apply as if the application on which the order was made were a summons for directions.

## History of rule

24/4/1    Reproduces O.24, r.4, of 1962.

## Practice

24/4/2    This rule is rarely applied. See also r.2(5)(b) and note thereto.

24/5    **5.— Form of list and affidavit (O.24, r.5)**

**(1)** A list of documents made in compliance with rule 2 or with an order under rule 3 must be in Form No. 26 in Appendix A, and must enumerate the documents in a convenient order and as shortly as possible but describing each of them or, in the case of bundles of documents of the same nature, each bundle, sufficiently to enable it to be identified.

**(2)** If it is desired to claim that any documents are privileged from production, the claim must be made in the list of documents with a sufficient statement of the grounds of the privilege.

**(3)** An affidavit made as aforesaid verifying a list of documents must be in Form No. 27 in Appendix A.

## History of rule

24/5/1    Taken from O.24, r.5, of 1962.

## Form of list of documents

24/5/2

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 22 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Prior to 1964 the lists of documents supplied by one party to another varied much in form, and commonly were nothing more than a list of documents. Under the present rule the list must be in Form No. 26 of App. A—that is to say, follows in substance, with some abbreviation, the form of the previous affidavit of documents except that it is in the third person and unsworn. The present affidavit (Form No. 27) is an affidavit verifying the list.

The list does not contain any documents save those relating to the matters in question, and accordingly, the Court will assume against the party making the list, at least until the contrary is shown, that the documents in the list are all relevant and liable to production. There are two Schedules to the list. In Sched. 1 is the list of the documents which the party has in his possession, custody or power. It is divided into two Parts: Part I consists of the documents for which he claims no privilege; Part II of the documents for which he claims privilege from production. Sched. 2 comprises the documents which he had, but has not now, in his possession, custody or power.

## By whom affidavit should be made

24/5/3    The prescribed form of affidavit (see Vol. 2, Section 1A, para. 1A-25) requires the plaintiff or defendant to be the deponent. The obligation imposed by O.24, r.5(3) is therefore an obligation on the relevant party personally. The obligation must be modified in relation to corporations, and the practice whereby solicitors swear verifying affidavits in their capacity as agents for their clients has escaped criticism, but the obligation cannot otherwise be delegated, for example, to the holder of a power of attorney (*Clauss v. Pir [1987] 3 W.L.R. 493; [1987] 2 All E.R. 752*).

## "Enumerate the documents in a convenient order"

24/5/4    The provisions for enumeration and description under this rule are fundamental to the proper execution of discovery which is itself an essential part of a process whereby the merits of the respective parties contentions are to be evaluated and if necessary determined. The rule provides what is to be done. No specific order of the Court is required. It is part of the process of ensuring that all relevant documentation is disclosed. Documents must be sufficiently identified to enable the other party to ascertain and ask for those he wishes to inspect specifying them appropriately and to enable the Court, if application is made, to see whether the rule or any order for discovery has been complied with and if necessary to make, e.g. an order for production for inspection which is clear and can be enforced. Accordingly (except where the documents are too numerous, and include large numbers of documents of the same nature) the lists should usually consist of items in order of date, with the number of the item, the description (e.g. letter from plaintiff to defendant) and the date. If the descriptions are prolix, the party giving them may be ordered to pay the costs occasioned by the prolixity (*Hill v. Hart-Davis (1884) 4 Q.B.D. 470* on this point only).

## "Describing each of them"

24/5/5    See the previous note. But there is a certain difference between documents for which privilege from production is claimed and other documents. As is said above, the description is not for the purpose of enabling the other party to learn the contents of the document or to test the truth of the plea of privilege. Nor is it for the purpose of causing the party giving discovery to furnish evidence against himself (*Gardner v. Irvin (1878) 4 Ex.D. 49* at 53, CA). It is not required that the dates of the documents should be specified nor the names of the makers (ibid.). "Correspondence between the (defendant) and his solicitors for the purpose of obtaining legal advice" is sufficient (ibid.).

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 23 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHTEBK-99 520528513...

Where privilege is claimed for professional communications of a confidential character obtained for the purpose of getting legal advice, the claim for privilege is to be treated as itself a sufficient description of the communications, irrespective of the scale of discovery or the complexity of the issues involved, and consequently the party seeking disclosure is not entitled to satisfy himself by means of fuller description of the communications for which privilege is claimed that it is not claimed for documents outside its proper scope; moreover the court will not order the party claiming privilege to disclose all communications with his legal advisers, or to provide fuller particulars of such communications, even where it has been shown in relation to one transaction that the advice was sought in furtherance of a fraudulent design, since to order such disclosure would be contrary to the public policy on which legal professional privilege is founded (*Derby & Co. Ltd v. Weldon (No. 7) [1990] 1 W.L.R. 1156; [1990] 3 All E.R. 161*).

## "Bundles of documents"

24/5/6    The provisions in regard to bundles of documents now embody the strict Chancery practice, in existence for many years but not always followed in the QBD. They only apply where there is a large number of documents of the same nature. In such a case, each of the documents must be numbered, as in other cases, but the bundle may be described as a whole—e.g., "letters (or copy letters) from A to B, tied up in a bundle marked A and numbered from 1 to 50 and initialled by me."

The documents must be of the same nature. Divers documents though dealing with the same subject-matter or transaction and filed or bundled together do not come within the exception (*Sveriges Angfartygs Assurans Faening v. The 1976 Eagle Insurance Company SA, March 28, 1990; (unrep.)*, Hobhouse J., Com.Ct.).

## Documents privileged from production

24/5/7    Some classes of documents, although they must be disclosed in the affidavit of documents as "relating to matters in question in the action," are nevertheless privileged from production and inspection. These may be conveniently summarised as: (1) documents protected by legal professional privilege (see paras 24/5/8 et seq. below); (2) documents tending to criminate or expose to a penalty the party who would produce them (see para. 25/5/34, below); and (3) documents privileged on the ground of public policy (see para. 24/5/35, below).

## 1. Legal professional privilege

24/5/8    It is necessary to divide into two classes the documents that are protected on this ground, namely (a) those that are privileged whether or not litigation was contemplated or pending, and (b) those that are only privileged if litigation was contemplated or pending when they were made or came into existence. Where legal professional privilege exists and is not waived or abrogated it is paramount and absolute and not subject to the balancing exercise of weighing competing public interests against each other as in the field of public interest immunity, see *R. v. Derby Magistrates' Court, Ex p. B [1995] 4 All E.R. 526, HL*. The case of *R. v. Derby Magistrates' Court, ex p. B* is also reported at *[1996] A.C. 487*. In that case Lord Taylor C.J. said:

"The principle which runs through all these cases, and many other cases which were cited, is that a man must be able to consult his lawyer in confidence, since otherwise he might hold back half the truth. The client must be sure that what he tells his layers in confidence will never be revealed without

© 2022 Thomson Reuters.

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 24 of 67

his consent. Legal professional privilege is thus much more than an ordinary rule of evidence, limited in its application to the facts of a particular case. It is a fundamental condition on which the administration of justice as a whole rests. … Nobody doubts that legal professional privilege could be modified, or even abrogated, by statute, subject always to the objection that legal professional privilege is a fundamental human right protected by the European Convention for the Protection of Human Rights and Fundamental Freedoms, as to which we did not hear any argument … (But) whatever inroads may have been made by Parliament in other areas, legal professional privilege is a field which Parliament has so far left untouched."

In *Director General of Fair Trading v. Reid, December 20, 1994*, Buckley J., Restrictive Practices Court, held that civil contempt proceedings should be approached more by analogy with the criminal than the civil practice and ordered discovery of prior drafts of witness statements just as a criminal prosecutor would have to in order to comply with his duty to disclose unused material.

## (a) Communications privileged although no litigation was contemplated or pending

### Solicitor and client

24/5/9    Letters and other communications passing between a party, or his predecessors in title, and his, or their solicitors are privileged from production, provided they are, and are sworn to be, confidential, and written to, or by, the solicitor in his professional capacity, and for the purpose of getting legal advice or assistance for the client (*O'Shea v. Wood [1891] P. 286, CA*; *Gardner v. Irvin (1878) 4 Ex.D. 49* at 53, CA; *Kennedy v. Lyell (1883) 23 Ch.D. 387* at 404, CA; *Wheeler v. Le Marchant (1881) 17 Ch.D. 675* at 682, CA; cf. *More v. Weaver [1928] 2 K.B. 520*; *Minter v. Priest (1930) 46 T.L.R. 301, HL*; *Re Duncan, (decd.), Garfield v. Fay [1968] P. 306; [1968] 2 W.L.R. 1479*—foreign legal advisers); but not otherwise (ibid.; *Original Hartlepool Collieries v. Moon (1874) 30 L.T. 193* at 585; *Moseley v. Victoria Co. (1886) 55 L.T. 482*.

Although originally confined to advice about litigation, legal professional privilege has long been extended to non-litigious business. The test is whether the communication or other document is made confidentially for the purposes of legal advice. Those purposes have to be construed broadly. Privilege obviously attaches to a document conveying legal advice from solicitor to client and to a specific request from the client for such advice. It does not follow, however, that all other communications between solicitor and client lack privilege. Where information is passed by the solicitor or client to the other as part of a process aimed at keeping both informed, so that advice may be sought and given, privilege will attach. Moreover legal advice is not confined to telling the client the law; it may include advice about what should prudently and sensibly be done in the relevant legal context. Privilege does not extend without limit, however, to all solicitor and client communications upon matters within the ordinary business of a solicitor. The range of assistance given by solicitors to their clients and of activities carried out by solicitors on behalf of their clients has greatly broadened in recent times, and is still developing. The scope of legal professional privilege has to be kept within reasonable bounds (*Balabel v. Air India [1988] 2 W.L.R. 1036; [1988] 2 All E.R. 246, CA*; *Smith-Bird v. Blower [1939] 2 All E.R. 406*).

The reasons for this privilege are fully stated by Lord Brougham in *Greenough v. Gaskell (1833) 1 My. & K. 98*; by Lord Cottenham in *Reid v. Langlois (1849) 1 Mac. & G. 627*; by Jessel M.R. in *Anderson v. Bank of British Columbia (1876) 2 Ch.D. 644* at 649; by Cotton L.J. in *Southwark Water Co. v. Quick (1878) 3 Q.B.D. 315* at 321, and by Stirling J. in *Ainsworth v. Wilding [1900] 2 Ch. 315* at 321; see Bray, p.350. It precludes an action for libel in respect of statements contained in such communications (*More v. Weaver [1928] 2 K.B. 520, CA*; but in *Minter v. Priest (1930) 46 T.L.R. 301, HL*, the question whether the privilege was absolute or qualified was expressly reserved).

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 25 of 67

This privilege extends to documents otherwise within it, although they contain statements of fact as to matters *publici juris*, such as statements as to proceedings in chambers in the presence of the other party (*Ainsworth v. Wilding*). It extends to bills of costs relating to litigation actual or in contemplation (*Chant v. Brown (1852) 9 Ha. 790*; *Turton v. Barber (1874) L.R. 17 Eq. 329*) but it does not extend to a communication which took place in the presence of the opposite party, or with the opposite party (but see *Feuerheerd v. L. G. O. Co.*) or which are wholly publici juris (*Ainsworth v. Wilding*). The privilege is not affected by the fact that the action in which discovery is sought is founded on a policy insuring the plaintiff against damages and costs incurred in an action to which the discovery relates (*Daily Express (1908) Ltd v. Mountain (1916) 32 T.L.R. 592, CA*).

The privilege extends to information which the solicitor receives in a professional capacity from a third party and which he conveys to his client (*Re Sarah C. Getty Trust, Getty v. Getty [1985] 3 W.L.R. 302; [1985] 2 All E.R. 809*).

The principle that a client should be able to obtain legal advice in confidence requires that, where professional privilege applies to lawyer-client communications, internally circulated documents or parts of documents revealing such communications are also privileged, whatever the purpose, other than fraud, for which such documents are brought into existence (*Bank of Nova Scotia v. Hellenic Mutual War Risk Assn. (Bermuda) Ltd ; The Good Luck [1992] 1 A.C. 233; [1991] 2 W.L.R. 1279; [1991] 3 All E.R. 1; [1991] 2 Lloyd's Rep. 191*; *The Independent, October 31, 1988, HL*), noted at [1992] 2 Lloyd's Rep. 540). See too *British & Commonwealth Holdings plc v. Quadrex Holdings Inc. (No. 2), The Times, December 8, 1988*.

### Third party as medium of communications

24/5/10     So confidential letters or communications between a party and his solicitor, in his professional capacity, made through a clerk or agent employed by the solicitor (*Wheeler v. Le Marchant (1881) 17 Ch.D. 675* at 682, CA) or, and by the client in order to convey information to or from the solicitor (*Reid v. Langlois (1849) 1 Mac. & G. 627*; *Hooper v. Gumm (1862) 2 Johns. & H. 602*; *MacFarlan v. Rolt (1872) L.R. 14 Eq. 580*; *Anderson v. Bank of British Columbia (1876) 2 Ch.D. 644* at 649; *Wheeler v. Le Marchant (1881) 17 Ch.D. 675* at 682, 684) are privileged.

### Solicitors and partners as professional agents

24/5/11     So, too, letters and communications between a solicitor and his partner (*Mostyn v. West Mostyn Coal Co. (1876) 34 L.T. 531*), or professional agent (*Hughes v. Biddulph (1827) 4 Russ. 190*; *Bolton v. Liverpool Corp. (1833) 1 My. & K. 88* at 96; *Catt v. Tourle (1870) 23 L.T. 485* at 486; *Goodall v. Little (1851) 1 Sim.(N.S.) 155*; *MacFarlan v. Rolt (1872)*) are equally privileged. This does not apply to correspondence between the solicitors for opposite parties (*Gore v. Harris (1851) 21 L.J.Ch.10*).

### Legal advisers in the service of a party

24/5/12     The same privilege attaches to communications with a solicitor in the whole-time service of a party (e.g. a solicitor to a government department or a commercial enterprise) as to communications with a solicitor practising independently, provided that such communication relates to legal as distinct from administrative matters (*Alfred Crompton Amusement Machines Ltd v. Commrs. of Customs and Excise (No. 2) [1974] A.C. 405; [1973] 2 All E.R. 1169, HL*). An applicant has no right to inspect communications between in-house lawyers where there is an application for judicial review pending, as such documents are subject to legal professional privilege once litigation has started (*R. v. Law Society, ex p. Rosen, The Independent, February 19, 1990*).

Case 1:22-mc-00130-ALC Document 41-10 Filed 12/20/22 Page 26 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

**Counsel**

24/5/13    Instructions and briefs to counsel and cases for counsel's opinion and counsel's opinions thereon, and counsel's drafts and notes, are privileged (*Mostyn v. West Mostyn Coal and Iron Co.*; *Bristol Corp. v. Cox (1884) 26 Ch.D. 678*; *Curtis v. Beaney [1911] P. 181*; *Lowden v. Blakey (1889) 23 Q.B.D. 332*, draft advertisements settled by counsel; *Pearse v. Pearse (1846) 1 De G. & S. 12*; *Bolton v. Liverpool Corp. (1833) 1 My. & K. 88, 93*; *Manser v. Dix (1855) 1 K. & J. 451*; *In the Estate of Copper (1911) 27 T.L.R. 462*; *Vigneron-Dahl, Ltd v. Pettit [1925] W.N. 177*, drafts of documents in support of application for *fiat* of Att.-Gen.) but the indorsement on a brief of the result of the trial or the order made is not (*Walsham v. Stainton (1863) 2 H. & M. 1*; *Nicholl v. Jones (1865) 2 H. & M. 588*).

All the above are privileged, although no litigation was pending or contemplated at the time when the communication took place (*Minet v. Morgan (1873) L.R. 8 Ch. 361*; *O'Shea v. Wood [1891] P. 286* at 289, 290; *Mostyn v. West Mostyn Coal and Iron Co. (1876) 34 L.T. 531*; *Wheeler v. Le Marchant (1881) 17 Ch.D. 675* at 682; *Turton v. Barber (1874) L.R. 17 Eq. 329*; *Lowden v. Blakey (1889) 23 Q.B.D. 332*; *Collins v. London General Omnibus Co. (1893) 68 L.T. 831*; *Greenough v. Gaskell (1833) 1 My. & K. 98* at 102).

**Patent and trade mark agents**

24/5/14    By virtue of the provisions of s.280 of the Copyright, Designs and Patents Act 1988, communications between a client and his patent agent relating to the protection of any invention, design, technical information or trade mark or any matter involving passing off are privileged in the same way as such communications would be protected if they were between the client and his solicitor. Similarly, by virtue of s.87 of the Trade Marks Act 1994, communications between a client and his trade mark agent in relation to the protection of any design or trade mark or as to any matter involving passing off are also privileged.

## (b) Communications privileged only when litigation was contemplated or pending

**Solicitors and non-professional agent or third party**

24/5/15    Communications between a solicitor and a non-professional agent or a third party, directly, or through an agent (*Anderson v. Bank of British Columbia (1876) 2 Ch.D. 644* at 650) which come into existence after litigation is contemplated or commenced and made with a view to such litigation, either for the purpose of obtaining or giving advice in regard to it, or of obtaining or collecting evidence to be used in it, or obtaining information which may lead to the obtaining of such evidence, are privileged (*Anderson v. Bank of British Columbia (1876) 2 Ch.D. 644* at 649; *Wheeler v. Le Marchant (1881) 17 Ch.D. 675* at 681, CA; *Steele v. Stewart (1843) 13 Sim. 533*, affirmed 1 Ph. 471; *Walsham v. Stainton (1863) 2 H. & M. 1*; *Simpson v. Brown (1864) 33 Beav. 482*; *Wilson v. Northampton Rail (1872) L.R. 14 Eq. 477*; *Re Duncan (decd), Garfield v. Fay [1968] P. 306; [1968] 2 All E.R. 395*—litigation in a foreign Court). Except in the case where the non-professional agent is acting merely as the medium of communication between the solicitor and his client (ibid., at 681, and see *Reid v. Langlois* and cases cited) such communications between a solicitor and a non-professional agent are not privileged, unless made with a view to litigation contemplated or existing (*Wheeler v. Le Marchant (1881) 17 Ch.D. 675* at 682, CA). This applies to information such as a surveyor's report obtained by a solicitor with a view to giving his client legal advice, and such information is not privileged unless obtained with a view to contemplated or existing litigation (ibid., per Brett L.J. at 683). As to the extent of this principle, see per Cotton L.J. *Kennedy v. Lyell (1883) 23 Ch.D. 387* at 407; per Stirling J. *Learoyd v. Halifax Banking Co. [1893] 1 Ch. 686* at 691; per Denman J. *Lowden v. Blakey (1889) 23 Q.B.D. 332*

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 27 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

at 334; per Lindley M.R. *Calcraft v. Guest [1898] 1 Q.B. 759* at 762. It is not open to a licensee to claim the privilege to which his licensor is entitled if the licensor is not a party to the action and has not claimed privilege (*Reeves Bros. Inc. v. Lewis Reed & Co. Ltd [1971] R.P.C. 355*, refusing to extend the basis of the reasoning in *Calcraft v. Guest*).

Documents obtained by a solicitor with a view to enabling him to prosecute or defend an action, or give advice with reference to existing or contemplated litigation, are privileged (*Learoyd v. Halifax Banking Co. [1893] 1 Ch. 686* at 690; cf. *North Australian Co. v. Goldsborough [1893] 2 Ch.381*); so are documents which come into existence merely as materials for the brief (*Southwark Water Co. v. Quick (1878) 3 Q.B.D. 315* at 320; *The Palermo (1883) 9 P.D. 6*); but this does not extend to copies of unprivileged documents, such as letters, although obtained by the solicitor (*Chadwick v. Bowman (1886) 16 Q.B.D. 561*. See *Lyell v. Kennedy (1884) 27 Ch.D. 1*). When depositions of the crew of the R. in regard to a collision with the P. were taken by the Receiver of Wrecks, and in an action arising out of the collision the Board of Trade refused to give copies of the depositions to the owners of the P., it was held that copies of the depositions obtained for the purpose of the action by the solicitors to the owners of the R. were privileged (*The Palermo (1883)*).

Documents which come into existence for some purpose other than to instruct a lawyer or to form part of his brief are not privileged, and do not subsequently become privileged simply because they are sent to a lawyer as part of his instructions. Privilege cannot be claimed in respect of a copy of an affidavit taken for the purposes of legal advice when the original affidavit is not privileged (*Dubai Bank Ltd v. Galadari [1989] 3 All E.R. 769, CA*, not following *R. v. Board of Inland Revenue, ex p. Goldberg [1989] Q.B. 267; [1988] 3 All E.R. 248*).

Documents prepared confidentially after a dispute has arisen between the plaintiff and the defendant, and for the purpose of obtaining information, evidence or legal advice with reference to litigation existing or contemplated between the parties to an action, are privileged (per Cotton L.J.; *Wheeler v. Le Marchant (1881) 17 Ch.D. 675* at 685). So where an examination under *s.27 of the B.A. 1883* was held with a view to enable the solicitor of the trustee to advise him whether an action should be brought, the transcript of notes of the proceedings at the examination was held to be privileged (*Learoyd v. Halifax Joint Stock Banking Co. (1893)*). So where during an action, anonymous letters relating to the matters in dispute were sent to the plaintiff, to her solicitor, and to her counsel, the two latter were held privileged, but not the letter to the plaintiff (*Re Holloway (1887) 12 P.D. 167, CA*).

Communications between an advising lawyer and the client's trade mark agent when litigation is contemplated are privileged (*McGregor Clothing Co. Ltd's T.M. [1978] F.S.R. 353*).

**Client and non-professional agent or third party**

24/5/16   The general principle is that documents embodying communications with (including reports to or from) a non-professional servant, agent or third party are privileged if, and only if, coming into existence for the purpose of obtaining legal advice in existing or anticipated proceedings (see the cases summarised in the judgment of Havers J. in *Seabrook v. British Transport Commission [1959] 1 W.L.R. 509, [1959] 2 All E.R. 15*).

The application of this test is easy enough in straightforward cases; privilege will clearly extend to communications for such purposes made to a solicitor through an agent, and to information obtained from a third party at the request of a solicitor to enable him to enforce or resist a claim by legal proceedings. Difficulties arise, however, (a) in determining the status of documents coming into existence for more than one purpose, and (b) in deciding at what stage it can fairly be said any such purpose is obtaining advice in anticipated litigation, as contrasted with obtaining information as to an occurrence which may lead to litigation.

As to (a) a document which is produced or brought into existence where the dominant purpose of its author, or of the person or authority under whose direction (whether particular or general) it is produced or brought into existence, is the use of the document or its contents in order to obtain legal advice, or to conduct or aid in the conduct of litigation in reasonable prospect at the time of its production, is privileged and excluded from inspection (*Waugh v. British Railways Board [1980] A.C. 521, [1979] 2 All E.R. 1169, HL*).

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 28 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

The dominant purpose of a document does not necessarily fall to be ascertained by reference to the intention of its actual composer (*Guinness Peat Properties Ltd v. Fitzroy Robinson Partnership [1987] 1 W.L.R. 1027; [1987] 2 All E.R. 716, CA*). The person or authority under whose direction a document is produced or brought into existence is in many cases the employer of the author; in such cases reference must be made to the intentions of the employer rather than to the intention of the author alone (*Waugh v. British Railways Board* (above); *McAvan v. London Transport Executive [1982] CA Transcript 498*). In other cases a document may be brought into existence at the direction of insurers (either as a condition of the insurance policy of a party to the action or otherwise). In such cases reference must be made to the intention of the insurers. Where the dominant purpose of the insurers in procuring the document is its submission to legal advisers for advice on whether the claim should be paid or resisted, e.g. because fraud is suspected (*Re Highgrade Traders Ltd [1984] B.C.L.C. 151, CA*), or because the claim is in a complicated area of indemnity involving large sums of money (*Guinness Peat Properties Ltd v. Fitzroy Robinson Partnership [1987] 1 W.L.R. 1027; [1987] 2 All E.R. 716, CA*), the document will be held to be privileged. Such privilege can be claimed by a party to an action notwithstanding that it is the insurers rather than that party who seek to use the document to obtain legal advice (*Guinness Peat Properties Ltd v. Fitzroy Robinson Partnership* (above)). The document will not be held to be privileged, however, where the insurance claim is simple and straightforward, and where the dominant purpose of the insurers in procuring the document is the assessment of the quantum of the claim rather than obtaining of legal advice on liability.

As to (b) the question, which is often closely connected with that raised in (a), is whether it is sufficient that the documents were made against the more or less likely contingency of it becoming necessary to obtain legal advice to make or resist a claim by litigation, or whether there must be an actual, present intention to obtain such advice at the time that the documents are made. In answer to this question the Court of Appeal has held that, if litigation is reasonably in prospect, documents brought into existence for the purpose of enabling solicitors to advise whether a claim shall be made or resisted are protected by privilege, whether or not a decision to instruct solicitors has been made at the time the documents are brought into being, subject only to the caveat that such purpose is the dominant purpose of their creation (*Re Highgrade Traders Ltd [1984] B.C.L.C. 151, CA*; *Guinness Peat Properties Ltd v. Fitzroy Robinson Partnership [1987] 1 W.L.R. 1027; [1987] 2 All E.R. 716, CA*).

It must always be remembered that the time at which the dominant purpose of the author of a document, or of the person or authority under whose direction it is made, is to be judged, is the time when the document is brought into being. Such judgment ought not to be coloured by the subsequent use of the document or the subsequent intentions of the author, or of the person or authority under whose direction it is made, about how the document may best be used. Thus in *Jones v. Great Central Railway Co. [1910] A.C. 4, HL*, the dominant purpose of the making of a report by a trade union member to his trade union was, at the time the document was made, to allow the trade union to consider whether or not it should give financial assistance to the member to enable him to bring proceedings against his employer for wrongful dismissal. In *Alfred Crompton Amusement Machines Ltd v. Commrs. of Customs and Excise (No. 2) [1974] A.C. 405; [1973] 2 All E.R. 1169, HL*, the dominant purpose of the commissioners in procuring certain documents from the third parties was, at the time the documents were brought into being, the valuation of the appellants' goods for purchase tax. In neither case were the documents held to be privileged, notwithstanding that in both cases litigation was reasonably in prospect at the time the documents were brought into being and that in both cases the documents were subsequently used to obtain legal advice and to conduct the litigation.

Accident reports to employers or insurers may fall on either side of the line. In several cases such reports have been held to be privileged on the grounds that, at the time they were made or procured, the dominant purpose of those who made or procured them was the obtaining of legal advice whether to resist a claim for damages (*Ogden v. London Electric Ry. Co. (1933) 49 T.L.R. 542*; *Westminster Airways v. Kuwait Oil Co. [1951] 1 K.B. 134*; *Seabrook v. British Transport Commission [1959] 1 W.L.R. 509; [1959] 2 All E.R. 15*). On the other hand an accident report, the preparation of which is required by National Health Service circulars is not subject to legal professional privilege where the dominant purpose of its preparation is not submission to solicitors in anticipation of litigation, even although one of the purposes of such reports, mentioned in the circulars, is use by solicitors if litigation should be commenced in respect of the accident (*Lask v. Gloucester Health Authority [1991] 2 Med LR, 379, CA*). Thus where the dominant purpose in the preparation of an

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 29 of 67

accident report is the avoidance of similar accidents in the future, the report will not be privileged, even although a subsidiary purpose in its preparation is its use in the conduct of anticipated litigation.

Where a document produced under a statutory duty (e.g. *s.7(3) of the Company Directors Disqualification Act 1986*) did not threaten the inviolability of communication between a party and his lawyer, that party could not claim legal professional privilege for it by asserting that the document's dominant purpose was for use in litigation, see *Secretary of State for Trade and Industry v. Baker [1998] Ch 356; [1998] 2 W.L.R. 667; [1998] 1 All E.R. 673*. The court stated that there was no general privilege that attached to documents brought into existence for the purposes of litigation independent of the need to keep inviolate communications between client and legal adviser. If documents for which professional privilege was sought did not relate in some fashion to communications between client and legal adviser, there was no element of public interest that could override the ordinary rights of discovery.

### Pre-existing documents or copies of or extracts therefrom

24/5/17   Documents do not become privileged by the mere fact that they have at some time been submitted to a solicitor (*Graham v. Bogle [1924] 1 Ir.R. 68*); and copies, obtained by a party from third persons, of unprivileged documents which he had lost, do not necessarily become privileged (*Chadwick v. Bowman (1886) 16 Q.B.D. 561*). Thus legal professional privilege does not extend to cover an original document, even if obtained by a party to litigation or his legal adviser for purposes of the litigation, if the document has not come into existence for the purposes of the litigation, but is already in existence before the litigation is contemplated or commenced. A pre-existing document not entitled to privilege does not become privileged merely because it is handed to a solicitor for the purposes of litigation (*Ventouris v. Mountain, The Italia Express [1991] 3 All E.R. 472, CA*). But original or copy documents obtained or prepared by the party for the purpose of obtaining his solicitor's advice in view of pending or anticipated litigation, or by his solicitor for the purposes of pending or anticipated litigation, are privileged (*The Palermo (1883) 9 P.D. 6*; *Lyell v. Kennedy (1884) 27 Ch.D. 1*; *Pearce v. Foster (1885) 15 Q.B.D. 114*; *Watson v. Cammell Laird & Co. Ltd [1959] 1 W.L.R. 702; [1959] 2 All E.R. 757*). However the notion that there may be a privileged copy of an un-privileged document is now discounted; *Lubrizol v. Esso Petroleum Co. (No. 4) [1993] F.S.R. 64*. Legal professional privilege does not attach to documents which are in the possession of both parties unless the documents would tend to indicate either the advice that might be sought or the advice that was given (ibid., at p.70).

### Confidential documents

24/5/18   No communication made by or on behalf of the opposite party can be confidential; per Cotton L.J. *Kennedy v. Lyell (1883) 23 Ch.D. 387*, p.405; *Ainsworth v. Wilding [1900] 2 Ch.321*; *Spenceley v. Schulenburgh (1806) 7 East 357*; *Desborough v. Rawlins (1838) 3 My. & Cr. 515*; *Baker v. L. & S. W. Ry. Co. (1867) L.R. 3 Q.B. 91*; *Gore v. Bowser (1851) 5 De G. & S. 30*; *Ford v. Tennant (1863) 32 Beav. 162*. In *Feuerheerd v. L. G. O. Co. [1918] 2 K.B. 565*, however (where the above cases were not cited and the point apparently not even raised) the CA is reported to have held that a statement made and signed by the plaintiff, and obtained from her by the defendants' claims inspector for the purpose of being laid before the defendants' solicitor was privileged. It is submitted that this decision is wrong, and that *Tobakin v. Dublin Southern Trams Co. [1905] 2 I.R. 58*, which the CA refused to follow, was right. The previous sentence was cited with approval by the Court of Appeal in Northern Ireland (see *McKay v. McKay [1988] N.I.L.R. 79* at 92–93).

### Other legal advisers

24/5/19   The above principles are not confined to solicitors, but extend to confidential communications with any legal adviser, as for instance, a Scots (*Wheeler v. Le Marchant (1881) 17 Ch.D. 675*, p.679; *Lawrence v. Campbell (1859) 4 Drew 485*) or French (*MacFarlan v. Rolt (1872) L.R. 14 Eq. 580*) or Dutch (*Bunbury v. Bunbury (1839) 2 Beav. 173*) legal adviser.

Case 1:22-mc-00130-ALC  Document 41-10  Filed 12/20/22  Page 30 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

**Co-plaintiffs or co-defendants**

24/5/20    Communications between co-plaintiffs (*Hutt v. Haileybury College (1888) 4 T.L.R. 277, CA*) or co-defendants (*Hamilton v. Nott (1873) L.R. 16 Eq. 112*; *Jenkyns v. Bushby (1866) L.R. 2 Eq. 547*; *Betts v. Menzies (1857) 26 L.J.Ch.528*; *Goodall v. Little (1851) 1 Sim.(N.S.) 155*) stand on the same footing as communications with non-professional agents, and are only privileged under the same circumstances. But where one of several trustees is a solicitor, communications between him and his co-trustees which would be privileged if he were not a co-trustee, are privileged (*Re Whitworth [1919] 1 Ch.320, CA*; affirmed, sub nom. *O'Rourke v. Darbishire [1920] A.C. 581, HL*).

**Common interest legal privilege**

24/5/21    A privilege in aid of anticipated litigation in which several persons have a common interest although all such persons have not been made parties to the action; see *Buttes Gas and Oil Co. v. Hammer (No. 3) [1981] 1 Q.B. 223* at 243, 267. Such common interest did not come to an end simply because a dispute arises as to who should conduct the proceedings but documents brought into existence in respect of such dispute did not attract common interest legal privilege though they might attract some other form of privilege; see *Leif Hoegh & Co. A/S v. Petrolsea Inc. (The World Era) (No. 2) [1993] 1 Lloyd's Rep. 363*. See too *Formica Ltd v. Export Credits Guarantee Department [1995] 1 Lloyd's Rep. 692*; held that where a guarantor of losses incurred by a company had been contractually entitled to view documents which had come into existence in the company's pursuit of its potential losses, the guarantor was entitled to specific discovery of the documents as the guarantor had a common interest with the company in the recovery of the company's debts.

**Other advisers**

24/5/22    Communications between a party and his medical adviser (*Wheeler v. Le Marchant (1881) 17 Ch.D. 675* at 681) or his spiritual adviser (ibid.) or a non-professional friend or adviser (ibid.; *Smith v. Daniel (1874) L.R. 18 Eq. 649*) are not privileged although of the most confidential kind (ibid.); nor are communications with a pursuivant of the Herald's College (*Slade v. Tucker (1880) 14 Ch.D. 824*). For position in relation to patent and trade mark agents, see para. 24/5/14, above.

Reports prepared by bank accountants in course of investigating problem loans were not protected as (a) such were not communications between bank and its legal advisers and (b) were not documents produced in contemplation of litigation (*Price Waterhouse (A Firm) v. B.C.C.I. Holdings Luxembourg SA (1992) B.C.L.C. 583*).

Where proceedings had been conducted initially by a party receiving advice from a firm of personnel consultants, that advice was not privileged from discovery as it was not covered by legal professional privilege (*New Victoria Hospital v. Ryan [1993] I.C.R. 201, E.A.T.*).

The public interest in making confidential documents relating to an alleged fraud of an international bank available to parties to private foreign litigation directed towards exposing such fraud outweighed the public interest in preserving the confidentiality in those documents, *Pharnon and Others v. Bank of Credit and Commerce International SA, Price Waterhouse intervening*, (application for leave to comply with a subpoena to produce documents), *[1998] 4 All E.R. 455*.

**Subsequent litigation**

24/5/23

The general principle is, that a document once privileged is always privileged (*Calcraft v. Guest [1898] 1 Q.B. 759*, per Lindley M.R. at 761; *Goldstone v. Williams [1899] 1 Ch. 47* at 52) and the privilege applies both in the existing or contemplated and any other litigation (ibid.; *Pearce v. Foster (1885) 15 Q.B.D. 114*; *Bullock v. Corrie (1878) 3 Q.B.D. 356*; *Curtis v. Beaney [1911] P.181*). If documents for which privilege can be claimed are brought into existence for the purpose of an action which ultimately is not proceeded with, the privilege does not cease, but can be claimed in a subsequent action other than that for which they were originally brought into existence (*Pearce v. Foster (1885)* and see *Ainsworth v. Wilding [1900] 2 Ch.315*); and "the mere fact that documents used in a previous litigation are held and have not been destroyed, does not amount to waiver of the privilege" (*Calcraft v. Guest [1898] 1 Q.B. 759*). But the privilege can be claimed only by a party to the original litigation or his successor in title (*Reeves Bros. Inc. v. Lewis Reed & Co. Ltd [1971] F.S.R. 17*); a licensing arrangement with such a party is not equivalent to a succession in title (ibid.).

If the privilege which prevailed in the original action is properly claimed in a subsequent action by the person originally entitled to it, or his successor, there is no additional requirement that the subsequent action should be between the same parties or involve the same subject-matter; provided there is sufficient connection for the document to be relevant, the party entitled to privilege is able to assert it in the subsequent action (*The Aegis Blaze [1986] 1 Lloyd's Rep. 203; (1986) 130 S.J. 15, CA*). The same rule prevails even where the original and subsequent actions are in different jurisdictions. A litigant's privilege arising in proceedings in a foreign court is an answer to a claim in subsequent proceedings in England for production of a document the subject of such privilege (*Minnesota Mining & Manufacturing Co. v. Rennicks (UK) Ltd [1991] F.S.R. 97*). Nor does the use of the documents in the foreign proceedings constitute a waiver of the privilege where the documents were called into existence for the purpose of such litigation: ibid.

A document adduced or evidence given by a party in a private arbitration, however, is not privileged from disclosure in subsequent litigation between such party and others who are not parties to the arbitration (*Shearson Lehman Hutton Inc. v. Maclaine Watson & Co. Ltd (No. 3) [1988] 1 W.L.R. 946; [1989] 1 All E.R. 1056*).

# Legal professional privilege generally

## Documents publici juris

24/5/24   Documents which are publici juris are not privileged (*Nicholl v. Jones (1865) 2 H. & M. 588*; *Goldstone v. Williams [1899] 1 Ch. 47*, p.52). This applies to shorthand or other notes of proceedings in open Court (ibid.; *Re Worswick (1888) 38 Ch.D. 370*; *Lambert v. Home [1914] 3 K.B. 86, CA*, overruling *Nordon v. Defries (1882) Q.B.D. 508*) or at chambers (*Ainsworth v. Wilding [1900] 2 Ch. 315*) or before an arbitrator (*Rawstone v. Preston Corp. (1885) 30 Ch.D. 116*) and to the indorsements on counsel's brief of the result of the trial or the order of the Court (*Nicholl v. Jones*) or depositions filed in the course of an action (*Goldstone v. Williams*) or office copies thereof (ibid.). But this does not apply to privileged documents merely because they are exhibited to depositions which are entered and read in an order of compromise (ibid.). Nor does it apply to a collection of copies or extracts of public records or documents made by a solicitor for the purposes of a defence, or the result of his research and skill (*Lyell v. Kennedy (No. 3) (1884) 27 Ch.D. 1, CA*, see *Lambert v. Home [1914] 3 K.B. 86*, at 90, 92) and see Bray, p.490).

## Fraud or illegality

24/5/25   This professional privilege does not extend to cases where the document came into existence as a step in a criminal or illegal proceeding, as, e.g. if a solicitor is consulted on how to do an illegal act (*Bullivant v. Att.-Gen.*

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 32 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

*for Victoria [1901] A.C. 196* at 201, per Lord Halsbury and at 206, per Lord Lindley; see also *R. v. Cox (1884) 14 Q.B.D. 153*). In an action against ex-employees for conspiracy to injure, breach of the duty of fidelity and breach of confidence, discovery was ordered of documents passing between the defendants and their solicitors relating to the setting up of the companies within which the defendants proposed to operate (*Gamlen Chemical Co. (U.K.) Ltd v. Rochem Ltd [1983] R.P.C.1.*). But privilege is not lost if the purpose of the document was to ask, or give, advice as to how (lawfully) "to keep out of an Act of Parliament" (*Bullivant v. Att.-Gen. for Victoria*, above, at 207) or to warn against the results of contemplated acts (*Butler v. Board of Trade [1971] Ch.680; [1970] 3 All E.R. 593*). To bring a case within this exception there must be a definite charge of fraud or illegality and a prima facie case must be made out (*Re Whitworth [1919] 1 Ch.320* at 336, 349, CA; affirmed *[1920] A.C. 581; 89 L.J.Ch.162, sub nom. O'Rourke v. Darbishire, HL*). The Court will be slow to displace the privilege and would not do so on mere suspicion as opposed to the establishment of a prima facie case of fraud or illegality (*Royscott Spa Leasing Ltd v. Lovett (1995) The Independent, January 23*). Notwithstanding that the word "fraud" has not been used in the statement of claim, privilege can be displaced if the facts alleged enable the Court to recognise fraud (*Gamlen* case, above). It is immaterial whether the solicitor is party to the alleged fraud or not (*Williams v. Quebrada Railway, Land & Copper Co. [1895] 2 Ch.751*). Where communications which would otherwise be within the protection of legal professional privilege have been made in furtherance of a fraudulent design, a party is not entitled to assert legal professional privilege as a ground for refusing to disclose such communications in circumstances where the party seeking disclosure is able to establish a strong prima facie case of fraud; the court, however, will be very slow to deprive a party of the important protection of legal professional privilege on an interlocutory application, and will judge each case on its facts, striking a balance between the important considerations on which legal professional privilege is founded and the gravity of the charge of fraud that is made (*Derby & Co. Ltd v. Weldon (No. 7) [1990] 1 W.L.R. 1156; [1990] 3 All E.R. 161*). See also *Nationwide B.S. v. Various Solicitors (1998) The Times, February 5*.

Fraud is here used in a relatively wide sense. It embraces the effecting of iniquity. Advice sought for the purpose of effecting iniquity is not privileged. Thus in *Barclays Bank plc v. Eustace [1995] 1 W.L.R. 1238; [1995] 4 All E.R. 511, CA*, court held that where on a prima facie view the client was seeking to enter into transactions at an under value the purpose of which was to prejudice the bank, such purpose was sufficiently iniquitous for public policy to require removal of legal professional privilege from communications between client and solicitor in relation to setting up such transactions.

The existence or absence of privilege cannot be affected by whether the fraud concerns an earlier transaction or the conduct of the proceedings in which discovery is sought. Disclosure at an interlocutory stage, however, based on prima facie evidence of fraud in the conduct of the proceedings, carries a far greater risk of injustice to the party against whom discovery is sought than disclosure in relation to earlier transactions. The risk of injustice to such party if he is compelled to disclose what he has told his solicitors to enable them to defend him against allegations of fraud, together with the damage to the public interest which would be caused by requiring the disclosure of such confidences, outweighs the risk of the other party being deprived of the information (*Chandler v. Church (1987) 137 N.L.J. 451*).

It is not the law that legal professional privilege is defeated whenever there is a fraud. A fraudulent party should not be protected by privilege, but the victim of fraud should not lose the privilege in respect of his innocent correspondence through the fraud of another (*Banque Keyser Ullman S.A. v. Skandia (U.K.) Insurance Co. Ltd [1986] 1 Lloyd's Rep. 336, CA*).

In order to determine whether a communication between a solicitor and his client is not privileged because its purpose is the furtherance of crime, the Court is entitled to look at the document in question without requiring the party who objects to the claim for privilege to prove by evidence outside the document that it came into existence for that purpose (*R. v. Cox (1884) 14 Q.B.D. 153*; *R. v. Governor of Pentonville Prison, ex p. Osman (No. 2) [1989] 3 All E.R. 701*. Communications in furtherance of fraud are not protected by legal professional privilege regardless of whether the plaintiff's case is founded on that particular fraud. Where a defendant, having committed a fraud, subsequently attempts to further the fraud through the deception of his solicitor, the relevant communication between the defendant and his solicitor is deprived of the element of professional confidence and privilege in respect thereof is displaced (*Dubai Bank Ltd v. Galadari (No. 6) (1991) The Times, April 22*).

Case 1:22-mc-00130-ALC  Document 41-10  Filed 12/20/22  Page 33 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

## Trustee and cestui que trust

**24/5/26**    Privilege cannot be claimed by a trustee against his cestui que trust (*Re Mason (1883) 22 Ch.D. 609*; *Wynne v. Humberston (1858) 27 Beav. 421*; *Devaynes v. Robinson (1855) 20 Beav. 42*; *Re Postlethwaite, Re Rickman, Postlethwaite v. Rickman (1887) 35 Ch.D. 722*); nor against persons in an analogous position (*Gouraud v. Edison Co. (1888) 57 L.J.Ch.498*; cf. *Bristol Corp. v. Cox (1884) 26 Ch.D. 678* at 683. See also *Re Whitworth* (solicitor trustee)).

## Proprietary right

**24/5/27**    The privilege would not cover documents in which the party seeking discovery has a proprietary right, but he must establish the existence of the right (*Re Whitworth*).

## Company and shareholder

**24/5/28**    See *Woodhouse & Co. v. Woodhouse (1914) 30 T.L.R. 559*.

## Parties employing same solicitor

**24/5/29**    Where two parties employ the same solicitor in the course of, for example, a conveyancing transaction, communications between either of them and the solicitor in his joint capacity have to be disclosed in favour of the other; where one of the parties is subsequently adjudicated bankrupt the other party cannot assert legal professional privilege as a ground for refusing to disclose such communications to the trustee in bankruptcy, who is to be treated for such purpose as being in the same position as the bankrupt and not as a third party (*Re Konigsberg (a bankrupt), ex p. The Trustee v. Konigsberg [1989] 3 All E.R. 289*).

## Waiver or loss of privilege

**24/5/30**    The privilege is in all cases the privilege of the client and not of the solicitor or legal adviser (*Anderson v. Bank of British Columbia (1876) 2 Ch.D. 644* at 649; *Procter v. Smiles (1886) 55 L.J.Q.B. 467* at 527, 528, CA) and may be waived by the client (*Calcraft v. Guest [1898] 1 Q.B. 759* at 761, CA) but not by the solicitor or legal adviser (*Procter v. Smiles*; *Greenough v. Gaskell (1833) 1 My. & K. 98* at 102). But it is not waived by reason of the documents being put to the defendant in examination before an examiner and exhibited to his depositions, or by being put before a judge in chambers in order that he may decide whether a compromise of the action is a proper one (*Goldstone v. Williams [1899] 1 Ch. 47*). Nor is it waived merely by referring to the documents in a pleading (*Roberts v. Oppenheim (1884) 26 Ch.D. 724, CA*) or in an affidavit (*Infields Ltd v. Rosen & Son [1938] 3 All E.R. 591, CA*). Waiver as to some of several documents does not involve a waiver as to the others (*Lyell v. Kennedy (1884) 27 Ch.D. 1, CA*). If part of a document is put in evidence, or read to the Court, privilege will be waived for the whole document, unless the remaining part deals with an entirely different subject-matter (*Great Atlantic Insurance Co. v. Home Insurance Co. [1981] 1 W.L.R. 529; [1981] 2 All E.R. 485, CA*). Similarly, if part of a letter is disclosed on discovery, the disclosing party is deemed to be waiving privilege in relation to

the whole letter, unless it can be shown that the other parts of the letter are so distinct as to amount to different documents (*Pozzi v. Eli Lilly & Co. (1986) The Times, December 3*). Likewise disclosure of part of contents of a report waives privilege as to the whole, *Chandris Lines v. Wilson & Horton Ltd [1981] 2 N.Z.L.R. 600*. See also *Bank of Nova Scotia v. Hellenic Mutual War Ris Assn. (Bermuda) Ltd ; The Good Luck (1988) The Independent, October 31, 1988.* Noted at [1992] 2 Lloyd's Rep. 540. The rule that the reading in open court of part of a privileged document resulted in waiver of privilege in the whole does not apply where the non-waiving party had already seen the whole document (*Def American Inc. v. Phonogram Ltd (1994) The Times, August 16*).

The fact that an expert witness in his report referred to statements made by other witnesses did not, upon disclosure of that report at an interlocutory stage, constitute a waiver of the privilege that would otherwise attach to those statements (*Booth v. Warrington Health Authority [1992] P.I.Q.R. 137*, per Tucker J., distinguishing *Great Atlantic Insurance Co.*, above). Where a medical report is served with the statement of claim under O.18, r.12(1A), the plaintiff should, if the defendant so requests on legal and medical advice, provide the details of the full relevant medical history of the plaintiff relied on by the plaintiff's doctor for the purpose of preparing the report, in so far as that history is derived from a document supplied to the doctor which has not already been disclosed. In addition, the identity and authorship and date of such document should be disclosed. The identification of the document should not however be treated as a waiver of any privilege that the plaintiff has in respect of the document (*B. v. John Wyeth & Brother Ltd [1992] 1 W.L.R. 168, CA*).

But the use of a document for the purpose of cross-examination does not itself make it part of the evidence so as to entitle the other party to investigate other privileged documents on all the topics mentioned in it; the use of a document for cross-examination waives privilege for the transaction actually described in the document but not for matters merely mentioned in it (*General Accident Fire & Life Assurance Corp. Ltd v. Tanter, The Zephyr [1984] 1 W.L.R. 100; [1984] 1 All E.R. 35*).

The mere fact that a party may have waived the professional privilege which exists between solicitor and client does not result in the waiver of the further privilege which protects documents brought into existence for the purpose of litigation, pending or contemplated; consequently the opposite party is entitled to the discovery of documents relating to the matters as to which professional privilege has been waived up to the date that litigation was contemplated but not thereafter (*George Doland Ltd v. Blackburn Robson Coates & Co. [1972] 1 W.L.R. 1338; [1973] 2 All E.R. 959*).

The institution of civil proceedings against a solicitor by his client constituted an implied waiver of professional privilege in relation to all relevant documents concerned with the suit to extent necessary to enable the court to adjudicate the dispute fully and fairly. Where an issue was one of causation of loss and the defendants alleged that the plaintiffs would have gone ahead with the transaction involved irrespectively of the advice received and sought to establish such by reference to earlier transactions in which they had acted for the plaintiffs, the plaintiffs' implied waiver extended to the documents in the other transactions (*Lillicrap v. Nalder & Son (a firm) [1993] 1 W.L.R. 94; [1993] 1 All E.R. 724, CA*).

A reference in an affidavit to a legal document or to a conversation with solicitors does not amount to a waiver of legal professional privilege in respect of the communication (*Tate & Lyle International Ltd v. Government Trading Corp. (1984) 87 L.S.Gaz. 3341, (CA).*

The mere service of a witness statement under an order of the court does not waive privilege in connected documents. There is no waiver unless and until statement is deployed in court (*Balkanbank v. Taher (1994) The Times, February 19*. Contrast *Clough v. Tameside and Glossop Health Authority [1998] 1 W.L.R. 1478; [1998] 2 All E.R. 971*.

Where a party deploys material in court on an interlocutory application, privilege that can otherwise be claimed in relation to that and associated material will be treated as waived altogether, with the result that the party cannot then assert privilege for the same material at the subsequent trial. Where, however, the party merely refers in interlocutory proceedings to the fact that he has obtained legal advice, and states the effect of that advice without disclosing the substance of it or the extent of the instructions given to the legal adviser, he does not thereby waive the right to claim privilege at the trial in respect of the legal advice itself (*Derby & Co. Ltd v. Weldon (No. 10) [1991] 1 W.L.R. 660; [1991] 2 All E.R. 908*). Affidavit evidence in ex parte proceedings exhibiting opinions from counsel and solicitors was not in the public domain and neither party to the action waived any rights they had to assert against third parties a claim for privilege in respect of such documents;

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 35 of 67

see *Leif Hoegh & Co. A/S v. Petrolsea Inc. (The World Era) (No. 2) [1993] 1 Lloyd's Rep. 363*. The question whether, if privilege has been waived in relation to part of a document or evidence by production of a tape recording or transcript of part of a conversation, fairness requires that the other party should be entitled to adduce in evidence the whole of the document or evidence of the whole of the conversation to ensure that the court is not misled by seeing or hearing part out of context, is a question that can only be answered by the judge after he has read the whole of the document or transcript or heard the tape recording in full (ibid.). Although the fact that a party may have waived the privilege which protects documents brought into existence for the purpose of litigation does not automatically result in a waiver of the privilege for the same documents which exists between solicitor and client, the court will not sever the two privileges in circumstances where both the privileges attach to a single communication, and say that one has been waived but the other not (ibid.).

There is a statutory requirement for a claimant for costs to disclose privileged documents to the Court on taxation, and, when this is done, part of the privilege attaching to such documents is temporarily relaxed. The taxing officer, however, has a duty to be fair to both parties and to ensure that privilege is maintained as far as possible without preventing the other party from having an opportunity to challenge the taxation. In rare circumstances the taxing officer may have to disclose privileged documents in order to strike an appropriate balance, but any disclosure will only be for the purposes of the taxation; the privilege can subsequently be reasserted (*Goldman v. Hesper [1988] 1 W.L.R. 1238; [1988] 3 All E.R. 197, CA*; see also *Hobbs v. Hobbs [1960] P. 112; [1959] 3 All E.R. 827*, and *Pamplin v. Express Newspapers Ltd [1985] 2 All E.R.185*).

Where documents which are clearly privileged when made are disclosed by a party to the police in accordance with his public duty to assist in a criminal investigation, and where such disclosure is for the limited purpose of such investigation and any subsequent criminal trial, no waiver of privilege in relation to civil proceedings is made or implied. It is contrary to public policy that assistance with a criminal investigation should lead to loss of legal professional privilege in a civil action (*British Coal Corp. v. Dennis Rye Ltd (No. 2) [1988] 3 All E.R. 816, CA*).

In *Children Act 1989* and wardship matters where the interests of the child were paramount, the legal professional privilege attaching to medical reports yielded to such overriding principle (*Essex County Council v. R. [1994] 2 W.L.R. 407* and noted at [1994] Fam. 167; *Oxfordshire County Council v. M [1994] Fam. 151; [1994] 2 W.L.R. 393; [1994] 2 All E.R. 269*).

Legal privilege may also give way to a contractual obligation to disclose (*Brown v. G.R.E. [1994] 2 Lloyd's Rep. 325, CA*).

## Death of client

24/5/31    Privilege is not lost by reason of the death of the client (*Bullivant v. Att.-Gen. for Victoria*, above).

## Successor in title to party

24/5/32    Legal professional privilege of a party to an action enures for the benefit of the successor in title to that party, at any rate, where the relevant interest subsists (*Cresent Farm (Sidcup) Sports Ltd v. Sterling Offices Ltd [1972] Ch. 553; [1971] 3 All E.R. 1192*, applying *Minet v. Morgan (1873) 8 Ch.App. 361*; *Schneider v. Leigh [1955] 2 Q.B. 195, CA*, and doubting *Greenlaw v. King (1838) 1 Beav. 137*).

## Secondary evidence or copies of privileged document

24/5/33

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 36 of 67

Secondary evidence as to the contents of a privileged document is admissible as against the party resisting its production (*Calcraft v. Guest [1898] 1 Q.B. 759, CA*). Thus if a party has an opportunity of taking or getting a copy of such a document he can use it as secondary evidence (ibid.).

If, however, he has possession of such a copy document but has not yet used it in his litigation, the mere fact that he intends so to use it in the future is no answer to a claim against him by the person in whom the privilege is vested for delivery up of the copy, or to restrain him from disclosing or making use of its contents (*Goddard v. Nationwide Building Society [1987] Q.B. 670; [1986] 3 W.L.R. 734; [1986] 3 All E.R. 264, CA*). Moreover public policy requires that a litigant should not be permitted to make use of a copy of a privileged document as evidence, where he has obtained it by stealth or a trick, or by otherwise acting improperly (*I.T.C. Film Distributors Ltd v. Video Exchange Ltd [1982] Ch. 431; [1982] 2 All E.R. 241*).

Where counsel's papers are accidentally sent to the other side an injunction may be granted against a stranger who has innocently come by confidential information to which he is not entitled, but so as to be capable of being directed the order should be directed towards outward acts rather than inwards thoughts, though without sanctioning deliberate covert action (*English and American Insurance Co. Ltd v. Herbert Smith [1988] F.S.R. 232*). See too *Ablitt v. Mills & Reeve (a firm), The Times, October 25, 1995*; injunction granted restraining the first defendants, solicitors to the second defendant, from continuing to act on the second defendants' behalf in the main action in addition to the undertaking they had given not to make use of information gained from files mistakenly sent to them. It does not follow, however, that an injunction will be granted in every case following the unauthorised disclosure of a privileged and confidential document to prevent its future use. The Court must exercise discretion by balancing the legitimate interests of the party to whom the document belongs in seeking to keep its contents suppressed and the legitimate interests of the other party in seeking to make use of it. In carrying out such a balancing exercise, the circumstances in which the document comes into the hands of the latter party, the issues in the action, the relevance of the document and whether it would in one way or another have to be disclosed, together with the nature of the privilege, are all matters which have to be taken into account (*Webster v. James Chapman & Co. [1989] 3 All E.R. 939*).

In general, however, and except where it is too late to restore the status quo, the law will not encourage parties to litigation or their solicitors to take advantage of obvious mistakes made in the course of the process of discovery; where a party seeks to take advantage of an obvious mistake made by his opponent, copies of privileged documents of the other party which may have come into the possession of the party seeking such advantage, or his solicitors, will be ordered to be handed back to the other party, and an injunction will be granted restraining the party seeking such advantage from using information contained in or derived from the documents (*Derby & Co. Ltd v. Weldon (No. 8) [1991] 1 W.L.R. 73; [1990] 3 All E.R. 762, CA*).

## 2. Documents tending to criminate or expose to a penalty

24/5/34  A party is not compelled to give discovery which will tend to criminate or expose to proceedings for a penalty him or his spouse under the law of any part of the U.K. (*Civil Evidence Act 1968, s.14*). It is sufficient if he claims that he believes that the discovery "will," "would," "may," or "might," tend to incriminate him or so expose him: the difference in phraseology is immaterial, provided the risk is apparent to the Court (*Lamb v. Munster (1882) 10 Q.B.D. 110*; *Triplex Safety Glass Co. Ltd v. Lancegaye Safety Glass (1934) Ltd [1939] 2 K.B. 395, CA*; *Spokes v. Grosvenor Hotel Co. [1897] 2 Q.B. 124, CA*; *National Association of Operative Plasterers v. Smithies [1906] A.C. 434*; *Waterhouse v. Barker [1924] 2 K.B. 759*; *Sitwell v. Sun Engraving Co. [1937] 4 All E.R. 366, CA*). The risk of exposure must be real, see *Renworth v. Stephanson [1996] 3 All E.R. 244, CA*, a case where in addition to the protection of s.31 of the Theft Act 1968, the chances of a charge separate and distinct from a Theft Act Offence was remote and the claim to privilege failed. But except in actions for the recovery of a penalty (where discovery of documents or interrogatories will not be ordered at all or will not be ordered in regard to that claim—see r.2(3) and O.26, r.1, n. "Penalties") this objection must be taken in the list of documents or answers to interrogatories, and is not admissible till that stage is reached (*Spokes v. Grosvenor Hotel Co.*, above; *National Association of Operative Plasterers v. Smithies*, above). Accordingly, in *British Leyland Motor Corp. Ltd v. T.I. Silencers Ltd [1979] F.S.R. 591; [1980] 1 C.M.L.R. 598*, a party who was alleged to be in breach of Arts. 85 and 86 of the Rome Treaty was

Case 1:22-mc-00130-ALC  Document 41-10  Filed 12/20/22  Page 37 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

ordered to make a list of documents relating to this issue. See too *BCCI (Overseas) Ltd (in liquidation) v. Price Waterhouse [1997] 3 W.L.R. 849; [1997] 4 All E.R. 781; [1998] Ch. 84*: the prohibition with criminal sanctions against disclosing information relating to the business affairs of any party under s.82(1) of the Banking Act 1987 cannot be overridden by any party's obligation to give discovery. Proceedings for civil contempt are proceedings for the "recovery of a penalty" within section 14(1) of the Civil Evidence Act 1968 in respect of which there is a privilege against self-incrimination, though for the purposes of civil proceedings pertaining to infringement of intellectual property or passing off such privilege has been withdrawn by section 72 of the Supreme Court Act 1981, see *Cobra Golf Inc. v. Rata, [1998] Ch. 109; 1997 2 W.L.R. 629; [1997] 2 All E.R. 150*

Such privilege must be claimed on oath by the very person who seeks to reply upon it. Thus a claim by a solicitor on his clients' behalf was not properly made, see *Downie and Others v. Coe and Others (1997) The Times, December 28, CA*.

The privilege no longer extends to a liability to penal proceedings abroad (Civil Evidence Act 1968, s.14) but for the purposes of this section liability to a penalty under EEC legislation forming part of the law of the U.K. by virtue of the European Communities Act 1972 is a penalty under the law of the U.K., and privilege may be claimed (see para. 24/2/147). It does not extend to a penalty which is no longer recoverable, nor an offence which has been pardoned (see, e.g. *Att.-Gen. v. Cunard Co. (1877) 4 T.L.R. 177*). Some statutes provide that the liability to criminal prosecution shall afford no objection to discovery in civil suits (*Ramsden v. Brearley (1875) 33 L.T. 322; Lefroy v. Burnside (1879) 41 L.T. 199*) and by s.14(3) of the Civil Evidence Act 1968, this equally applies to such liability of a spouse.

Where a claim to privilege against self-incrimination is made in a case involving allegations of breaches of the Rome Treaty, the Court may order a stay (subject to appropriate conditions) pending investigation by the Commission (*British Leyland Motor Corp. v. Wyatt [1979] F.S.R. 583*).

By the S.C.A. 1981, s.72, the privilege against compliance with orders for discovery or the answering of questions on the grounds that compliance might involve penalties or criminal proceedings relating to infringement of industrial property rights, has been withdrawn. For the extent to which those grounds formerly existed, see *Rank Film Distributors Ltd v. Video Information Centre [1982] A.C. 380; [1981] 2 W.L.R. 668*). The section is not limited to a case where criminal proceedings have not yet been commenced (*Charles of the Ritz Group Ltd v. Jory [1986] F.S.R. 14*).

Privilege under this heading will prevail unless the person claiming it can be adequately protected by some other means. In *A.T. & T. Istel Ltd v. Tully [1993] A.C. 45; [1992] 3 W.L.R. 344; [1992] 3 All E.R. 523*, the House of Lords stated that although the privilege against self-incrimination existed and could only be removed or altered by Parliament, there was no reason to allow a defendant in civil proceedings to rely upon it thus depriving the plaintiff of his rights where the defendant's own protection was adequately covered by other means. In this case the C.P.S. had stated by letter that the order for discovery in its terms restricted them to utilising material already collected or independently gathered and para. 33 of the original order of Buckley J. prohibited use of material so disclosed in the prosecution of either defendant and accordingly compliance with the order for disclosure would not create any real danger for the defendants of prejudice in criminal proceedings. See too *United Norwest Co-operatives Ltd v. Johnstone (1993) The Times, February 24, CA*. In civil proceedings under the Drug Trafficking Act 1980, however, where discovery is sought by the prosecutor in related criminal proceedings, an undertaking by the prosecutor not to use information obtained on discovery in or in connection with criminal proceedings against the defendant may adequately protect the defendant, and accordingly discovery may be ordered notwithstanding the plea of privilege (*Re A Defendant (1987) The Independent, April 2*).

The privilege against self-incrimination may be overridden where Parliament has expressly or by necessary implication, so provided (see *R. v. Harz ; R. v. Power [1967] 1 A.C. 760* (demand for information under s.24(6) of the Purchase Tax Act 1963); applied in *Bank of England v. Riley [1992] Ch. 475; [1992] 2 W.L.R. 840, CA* (demand for information under s.42 of the Banking Act 1987)).

Disclosure to police authority of a report obtained voluntarily and filed without objection did not infringe privilege against self-incrimination, see *Re L (Minors) (Police Investigation: Privilege) [1995] 1 F.L.R. 999, CA (affirmed by the House of Lords) [1997] A.C. 16; [1996] 2 W.L.R. 395; [1996] 2 All E.R. 78, HL(E)*.

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 38 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

# 3. Documents privileged on the ground that production would be injurious to the public interest

24/5/35     This ground of privilege is now set out in r.15.

The law defining this ground of privilege or, more properly, immunity from production and the conditions of its exercise are mainly to be found in the decisions of the House of Lords in *Burmah Oil Co. Ltd v. Governor and Co. of the Bank of England [1980] A.C. 1090; [1979] 3 All E.R. 700* and *Conway v. Rimmer [1968] A.C. 910; [1968] 1 All E.R. 874*. This privilege does not depend on the objection of a party; the rule is one on which a Judge should if necessary insist, even though no objection is taken. The test is not whether the documents are "State documents" or marked "confidential" or whether their production might invoke public discussion or criticism of a government department, or the attendance of officials needed elsewhere, but whether production would be injurious to the public interest—or, in other words, whether the withholding of the documents is necessary for the proper functioning of the public service. The public interest in concealment should be balanced against the public interest that the administration of justice should not be frustrated. The applicable principles are comprehensively re-stated in *Evans v. Chief Constable of Surrey [1989] 2 All E.R. 594*, and are also usefully and succinctly summarised in *Barrett v. Ministry of Defence (1989) The Independent, January 23*. See further *R. v. Bromell, Re Coventry Evening Newspapers Ltd [1993] Q.B. 278; [1992] 3 W.L.R. 916, [1993] 1 All E.R. 86, CA*—held, re-affirming the requirement to balance the two public interests referred to in the text above, that it would be repugnant to justice to withhold documents which appeared to point to corruption on part of named police officers in a libel action brought by those officers who had already recovered substantial libel damages from other sections of the media.

For the application of these principles, see:

*Alfred Crompton Amusement Machines v. Commissioners of Customs and Excise [1974] A.C. 405; [1973] 2 All E.R. 1169, HL* (information obtained confidentially by the Crown for the valuing of goods for tax purposes);

*R. v. Lewes Justices, ex p. the Gaming Board of Great Britain [1973] A.C. 388; [1972] 2 All E.R. 1057, HL*, affirming D.C. (confidential inquiries by the Gaming Board from the police as to applicants for certificates of consent; protected);

*Norwich Pharmacal Co. v. Customs and Excise Commrs. [1974] A.C. 133; [1973] 2 All E.R. 943* (names of persons likely to have violated the plaintiff's patent rights not protected);

*D. v. N.S.P.C.C. [1978] A.C. 171; [1977] 1 All E.R. 589, HL* (information as to ill treatment of children given to a charitable body having statutory authority to bring proceedings protected, though the body was not an organ of the government);

*Re M. (A Minor) (1989) The Times, December 29, CA* (local authority social work records);

*Lonrho Ltd v. Shell Petroleum Ltd [1980] 1 W.L.R. 627 HL* (material furnished in confidence to an inspector inquiring into breaches of sanctions-protected);

*Arias v. Metropolitan Police Commr. (1984) 128 S.J. 784*; CA (documents of finance corporation seized by police investigating offences involving fraud);

*Hasselblad (G.B.) Ltd v. Orbinson [1985] Q.B. 475; [1985] 1 All E.R. 173, CA* (public interest requires that a letter written to the European Community Commission, in the course of proceedings begun by the Commission against the plaintiff alleging breach of Art. 85 of the EEC Treaty, could not be used as the basis of a libel action);

*Continental Re-insurance Corp. (U.K.) Ltd v. Pine Top Insurance Ltd [1986] 1 Lloyd's Rep. 8, CA* (documents brought into being in circumstances of confidentiality);

*R. v. Bournemouth Justices, ex p. Grey, [1986] 150 J.P., 392; [1987] 1 F.L.R. 36* (records of adoption agency, containing admission of paternity by the putative father not protected);

*Re M. (Minors) (Confidential Documents) [1987] F.L.R. 46* (probation service records);

*Barrett v. Ministry of Defence, The Independent, January 23, 1989* (report of Ministry of Defence Board to Inquiry into death of airman).

*Bookbinder v. Tebbitt (No. 2) [1992] 1 W.L.R. 217* (information obtained during investigations carried out by Audit Commission into local authority spending protected).

*Gill and Goodwin v. Chief Constable of Lancashire (1992) The Guardian, October 27*, (Police Public-Order Manual protected but disclosure could be ordered if otherwise impossible to present case).

*Re Barlow Clowes Gilt Managers Ltd [1992] Ch. 208* (transcripts of interviews conducted on behalf of joint liquidators in compulsory winding up prima facie protected. Court also applied *Marcel v. Commissioner of Police for the Metropolis [1992] 2 W.L.R. 50, CA*, in directing liquidators not to make voluntary disclosure of transcripts but to restore application (made originally by liquidators for directions in respect of disclosure to Companies Court) in the Crown Court to set aside witness summonses on ground of public interest immunity). In any event there should be no disclosure without notice to witnesses concerned, see *Soden v. Burns, R. v. Secretary of State for Trade and Industry, ex p. Soden [1996] 1 W.L.R. 1512*.

*DPP v. Morrow (1993) The Independent, April 14*, documents maintained in an abortion clinic relating to abortions carried out under the Abortion Act 1967 protected.

*Lonhro plc v. Fayed (No. 4) [1994] Q.B. 775; [1994] 2 W.L.R. 209; [1994] 1 All E.R. 870 CA*, documents which related to a person's tax affairs and which came into existence with specific reference to his tax liability did not attract public interest immunity where they were held by the taxpayer and he refused consent to their disclosure.

*Kelly v. Commissioner of Police of the Metropolis (1997) The Times, August 20*, (Forms MG3A, 6, 6A, 6D, 6E and 20 of the forms sent to the Crown Prosecution Service by police forces following an investigation into a suspected criminal offence covered by class public interest immunity).

The confidentiality of the records of a local education authority is insufficient ground for protection from disclosure (*Thompson v. Inner London Education Authority (1977) 74 L.S.Gaz. 66*). The Court would not protect information from disclosure just because it was "exempt information" within s.100 of the Local Government Act 1972, but the information could be protected if the necessary elements of breach of confidence could nevertheless be made out (*West Midlands Police Authority v. Walsall Metropolitan Borough Council (1992) The Independent, February 26*).

In *R. v. Chief Constable of West Midlands Police, ex p. Wiley; R. v. Chief Constable of Nottinghamshire Police, ex p. Sunderland [1995] 1 A.C. 274; [1994] 3 All E.R. 420*, the House of Lords held that there was no general public interest immunity in respect of documents coming into existence during an investigation into a complaint against the police under Part IX of the Police and Criminal Evidence Act 1984 though there might be reasons why because of the contents of a particular document it would be appropriate to extend such immunity to that document. The House of Lords also sought to discourage the use of collateral proceedings rather than the proceedings in which the document/s were relevant to determine the status of the document/s. The *Neilson* case and the cases in which it was subsequently applied should therefore be regarded as wrongly decided. Quaere to what extent class immunity in other areas as opposed to individual document immunity is still available.

See too *Kaufmann v. Credit Lyonnais Bank (1995) The Times, February 1*; no class immunity for confidential bank report sent to SFA (the regulatory body of which the bank was a member) unless it could be clearly demonstrated there was a need to withhold such information from investors. In *Taylor v. Chief Constable of Greater Manchester, [1995] 1 W.L.R. 447; [1995] 2 All E.R. 420 CA* the Court of Appeal held that reports prepared by investigating

© 2022 Thomson Reuters.

Case 1:22-mc-00130-ALC  Document 41-10  Filed 12/20/22  Page 40 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

officers on the conduct of proceedings under Part IX of the Criminal Evidence Act 1984 formed a class which was entitled to public interest immunity and that their disclosure would only be ordered where the public interest in production outweighed that in preserving their confidentiality.

*Alfred Crompton Amusement Machines Ltd v. Commissioners of Customs and Excise (No. 2) [1974] A.C. 405; [1973] 2 All E.R. 1169, HL,* prevents the conclusion that confidential information obtained by public authorities from the citizen under compulsion remains inviolate and incommunicable to anyone. Moreover, the police may produce documents in their hands to the court for use in civil proceedings in obedience to an order of subpoena duces tecum if the owner of the documents could have been required to produce them under such an order if they had still been in his possession (*Marcel v. Commissioner of Police [1992] 2 W.L.R. 50, CA*).

Although public interest immunity cannot be waived, it may evaporate if those involved in the giving and receiving of the information concerned consent to its disclosure; in deciding whether the administration of justice should prevail over public interest immunity, the fact that partial disclosure has already eroded the immunity is a relevant consideration (*Multi Guarantee Co. Ltd v. Cavalier Insurance Co. Ltd (1986) The Times, June 24*).

The objection on ground of public interest immunity may be made either on an application for discovery under this Order—as when inspection is asked of documents referred to in a party's list of documents—or at the trial when, by subpoena or other means, the production of the documents is called for. Where the objection is taken before trial, the decision to object should be taken by the Minister who is the political head of the department, and he should have seen and considered their contents and himself have formed the view that it would be contrary to the public interest to produce them—either because of their actual contents or because of the class of documents to which they belong. And if the objection is that they belong to a class of documents which it would be contrary to the public interest to produce, the class to which they belong must be specified (*Re Grosvenor Hotel, London [1964] Ch. 464; [1964] 1 All E.R. 92, CA; Merricks v. Nott-Bower [1965] 1 Q.B. 57; [1964] 1 All E.R. 717*). But the decision remains that of the Judge, and if, in spite of the Minister's affidavit, in the view of the Court the objection was not taken bona fide, or there are no reasonable grounds for apprehending danger to the public interest, the Court has a residual power to override the objection. It is generally best that the Judge should see the documents before ordering production, and if he thinks that the Minister's reasons for refusing production are not clearly expressed he will have to see them before ordering production. He can see them without their being shown to the parties and the Minister has a right to appeal before they are produced. However although a court was obliged to be vigilant to see that a claim of public interest immunity was raised only in appropriate circumstances where an appropriate certificate signed by a Secretary of State claiming immunity from disclosure of material on the ground of national security was before the court, the court should not exercise its right to inspect that material (*Balfour v. Foreign and Commonwealth Office, [1994] 1 W.L.R. 681; [1994] 2 All E.R. 588, CA*).

The objection should be made by affidavit of the political head. But where it is not convenient or practicable for the Minister to act, either because he is ill or out of reach or because the effective head of the department is a permanent official, it would be reasonable for the permanent head to take the objection, as, e.g. the Chairman of the Board of Customs and Excise (*Alfred Crompton Amusement Machines v. Commissioners of Customs etc. [1971] 2 All E.R. 843*, per Eveleigh J.). There is no rule of law or practice that precludes the claim being raised in other ways. Thus, where there was clear authority to support the assertion that class immunity applied, it was sufficient for the claim to be raised by a responsible official within the organisation involved; see *O'Sullivan v. Commissioner of Police of the Metropolis (1995) The Times, July 3*, a case concerning Form 151 the initial report sent by police to Crown Prosecution Service following an investigation into a suspected criminal offence where claim made by barrister employed in commissioner's solicitor's department. If the objection to production arises at the trial, it may in the first instance be conveyed to the Court by an official of the department, producing a certificate signed by the Minister, stating what is necessary. If the Court is not satisfied, it can request the Minister's personal attendance (see, on the question whether the Minister can be cross-examined, *Re Grosvenor Hotel [1964] Ch. 464, CA*). The same principles apply to the exclusion of oral as of documentary evidence (*Duncan v. Cammell Laird & Co. [1942] A.C. 624* and cases there cited). So, a witness may not look at those documents to refresh his memory and then give oral evidence (*Gain v. Gain [1961] 1 W.L.R. 1469; [1962] 1 All E.R. 63*). Once a Court has decided that documents are covered by this privilege, that position continues though they have passed into the possession of another person (*Auten v. Rayner (No. 2) [1960] 1 Q.B. 669; [1958] 3 All E.R. 566*). The contents of a certificate given by a Secretary of State are evidence in the action and may be challenged by other parties. Even where such a certificate leads to a consent order whereby other parties agree not to challenge the certificate (i.e.

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 41 of 67

that the documents to which it refers should not be disclosed); it does not prevent them from denying the contents (*Sethia v. Stern (1987) The Times, November 4, CA*).

See further, as to the circumstances in which the objection to discovery should and will be taken, *Ellis v. Home Office [1953] 2 Q.B. 135, CA*, and the statement of the Lord Chancellor in the House of Lords ((1956) The Times, June 7). The Lord Chancellor subsequently announced in the House of Lords ((1962) The Times, March 9) modifications in the practice in regard to statements made to the police in the course of a criminal investigation.

In *Bennett v. Commissioner of Police for the Metropolis [1995] 1 W.L.R. 488; [1995] 2 All E.R. 1* it was held that it is at least arguable that the Secretary of State concerned is under a duty to consider, before objecting to discovery, whether the public interest in non-disclosure is outweighed by the public interest in the documents being available in the interests of the administration of justice.

## Discovery against the Crown

24/5/36   At the time of the decision of *Duncan v. Cammell Laird & Co. [1942] A.C. 624* discovery could not be ordered against the Crown. Now, however, by s.28(1) of the Crown Proceedings Act 1947, the Crown, when a party to civil proceedings, may be required to make discovery of documents or answer interrogatories, subject to Crown privilege, and the principles in regard to that privilege and its exercise are the same as in an action to which the Crown is not a party. See O.77, r.12(2).

# Other grounds of privilege

## Communications between husband and wife

24/5/37   This ground of privilege, which arose from s.3 of the Evidence (Amendment) Act 1853, was abrogated by s.16(3) of the Civil Evidence Act 1968 (see *Shenton v. Tyler [1939] Ch.620*).

## Legal aid

24/5/38   Information obtained by the Law Society and associated bodies on an application for a civil aid certificate was privileged from disclosure under what is now s.38 of the Legal Aid Act 1988 (*Whipman v. Whipman [1951] 2 T.L.R. 518*).

## Privileged communication under the law of defamation

24/5/39   In an action of slander a defendant interrogated as to whether he spoke the words may object to answer on the ground that, if spoken, they were spoken on an occasion absolutely privileged (*Barratt v. Kearns [1905] 1 K.B. 504*; cf. *Webb v. East (1880) 5 Ex.D. 108, CA*).

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 42 of 67

## Documents relating solely to the case of the party giving discovery

24/5/40    This ground of privilege was abolished by s.16(2) of the Civil Evidence Act 1968.

## Confidential communications

24/5/41    A litigant is not entitled to claim privilege for documents and information merely because they were supplied to him in confidence by a third party (*Alfred Crompton Amusement Machines Ltd v. Commrs. of Customs and Excise (No. 2)* reversing, on this point, the Court of Appeal); but the confidentiality of the communication may be relevant to other heads of privilege, e.g. public interest (ibid.). See also *Norwich Pharmacal Co. v. Commrs. of Customs and Excise [1974] A.C. 133* and *Science Research Council v. Nassé [1980] A.C. 1028; [1979] 3 All E.R. 673, HL*).

## Technical secrets

24/5/42    Where a party claims secrecy in relevant material (e.g. a defendant in a patent infringement action claims that his process is secret) the governing principle is that the Court should order a controlled measure of discovery to select individuals upon terms ensuring that there should be neither use nor further disclosure of the confidential information to the prejudice of the party concerned and yet so that the other party may have full free disclosure as is consistent with adequate protection of the trade secrets concerned. There is no form of universal order, nor is it the case that at later stages in an action wider disclosure cannot be ordered. In each case the Court must decide what measure of disclosure is appropriate, to whom it should be made and upon what terms (*Warner-Lambert Co. v. Glaxo Laboratories Ltd [1975] R.P.C. 354, CA*). See also *Centri-Spray Corp. v. Cera International Ltd [1979] F.S.R. 175*, where disclosure to independent expert of secret drawings is unlikely to be useful, controlled disclosure to the plaintiff's employees may be permitted subject to express undertakings to keep the disclosed material confidential). See further *Format Communications Mfg. Ltd v. I.T.T. (United Kingdom) Ltd [1983] F.S.R. 473, CA*, discovery and inspection of secret computer source code ordered, subject to suitable safeguards and notwithstanding plaintiff's offer of inspection by independent expert.

In *Atari Inc. v. Philips Electronics & Associated Industries Ltd [1988] F.S.R. 416*, discovery of the plaintiffs' secret computer source code was ordered without limitation on the terms of disclosure upon the defendants and their expert giving strict undertakings as to confidentiality.

## Admiralty

24/5/43    A report made by a master to his owners for which privilege is claimed should be identified in the appropriate part of the list of documents and privilege there claimed. Such a document is not one which can be considered covered by the words "letters sent by the plaintiff (defendant) to his agents or solicitors for the purposes of the action" (Direction of the Admiralty Registrar, March 8, 1955).

© 2022 Thomson Reuters.

Case 1:22-mc-00130-ALC Document 41-10 Filed 12/20/22 Page 43 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

# Disclosed documents

**24/5/44** Once a document such as a witness statement has been disclosed no question of privilege can arise but only one of admissibility, and such statements once disclosed can be used as the basis for an application for discovery (*Black & Decker Inc. v. Flymo Ltd [1991] 3 All E.R. 158; [1991] F.S.R. 93*).

# Without prejudice communications

**24/5/45** The "without prejudice" rule governs the admissibility of evidence and is founded upon the public policy of encouraging litigants to settle their differences rather than litigate them to a finish (*Cutts v. Head [1984] Ch. 290; [1984] 1 All E.R. 597, CA*). The rule applies to exclude all negotiations genuinely aimed at a settlement, whether oral or in writing, from being given in evidence. The purpose of the rule is to protect a litigant from being embarrassed by any admission made purely in an attempt to achieve a settlement. "Without prejudice" material will be admissible if the issue is whether or not negotiations resulted in an agreed settlement (*Walker v. Wilsher (1889) 23 Q.B.D. 335*), but in relation to any other issue an admission made in order to achieve a compromise should not be held against the maker of the admission or received in evidence; moreover an admission made to reach a settlement with a party is not admissible in proceedings between the maker of the admission and a different party, even if such proceedings are within the same litigation (*Rush & Tompkins Ltd v. Greater London Council [1988] 3 W.L.R. 939; [1988] 3 All E.R. 737, HL*). The right to discovery and production of documents does not necessarily depend upon the admissibility of documents in evidence (*O'Rourke v. Darbishire [1920] A.C. 581, HL*), but the general public policy that applies to protect genuine negotiations from being admissible in evidence is also extended by the Courts to protect those negotiations from being discoverable to third parties (*Rush & Tompkins Ltd v. Greater London Council* (above)). Any discussions between the parties for the purpose of resolving the dispute between them are not admissible, even if the words "without prejudice" or their equivalent are not expressly used (*Chocoladefabriken Lindt & Sprungli A.G. v. Nestlé Co. Ltd [1978] R.P.C. 287*). It follows that documents containing such material are themselves privileged from production.

Without prejudice correspondence before settlement of an action for damages by first named plaintiff against his former employers not privileged in plaintiffs subsequent action for negligence against solicitors who had advised the plaintiff before his former employer had dismissed him where the statement of claim in the subsequent action asserted that the settlement was an attempt to mitigate loss caused by the negligence and the defendants did not seek to show that admissions made in the course of such correspondence were true. The plaintiffs had put their own conduct in issue and had thereby waived any privilege in such correspondence (*Muller v. Linsley & Mortimer (a firm) (1994) The Times, December 8; [1995] Gazette No. 3*, p.38, CA).

If one party to negotiations on a without prejudice basis wishes to change the basis thenceforth to an open one, the burden is on that party to bring the change to the attention of the other party and to establish on an objective basis that the recipient would have realised that a change in the basis of negotiation was being made (see *Cheddar Valley Ltd v. Chaddlewood Ltd [1992] 1 W.L.R. 820*).

Conversely the heading "without prejudice" does not conclusively or automatically render privileged a document so marked. If privilege is claimed, but challenged, the Court has to examine the document in question and determine its nature (*South Shropshire District Council v. Amos [1986] 1 W.L.R. 1271; [1987] 1 All E.R. 340, CA*). The rule which confers privilege on "without prejudice" communications is not limited to documents which constitute offers; privilege may also attach to "without prejudice" documents written in the opening stages of negotiations (ibid.).

© 2022 Thomson Reuters.

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 44 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

A letter, stated by a party to be written without prejudice, which amounts not to an offer to negotiate, but merely to an assertion of that party's rights, or an attempt to argue that his case is well founded, is not privileged (*Buckinghamshire County Council v. Moran [1989] 2 All E.R. 225, CA*).

Transcripts of tape recordings of conversations between the parties, made by one party without the knowledge of the other, where there is a bona fide and reasonably tenable charge of crime or fraud, and where there is a prima facie case that the communications in question are made in preparation for, or in furtherance or as part of it, are not covered by "without prejudice" privilege (*Hawick Jersey International Ltd v. Caplan (1988) The Times, March 11*). But an unambiguous admission of impropriety during a conversation is required to render admissible in evidence a tape recording of a negotiation aimed at settling the dispute (*Alizadeh v. Nikbin (1993) The Times, March 19, CA*). See further *Forster v. Friedland, November 10, 1992, CA Transcript 92/1052*.

A note made by a plaintiff's solicitor of a telephone conversation between him and the defendant's solicitor, which merely records the substance of the conversation and contains nothing in the nature of a communication to the plaintiff, is not a document privileged from discovery as between plaintiff and defendant even if the subject matter of the conversation is "without prejudice"; hence, where such a note has been properly disclosed by the plaintiff, the defendant is not entitled, on the principle that waiver of a privileged document requires the release from privilege of all material relevant to the matter as to which professional privilege has been waived (for which see para. 24/5/30, above), to disclosure of all memoranda passing between the plaintiff and his solicitor relating to the conversation, because there has been no waiver of a privileged document (*Parry v. News Group Newspapers Ltd (1990) New L.J. 1719, CA*).

A letter containing an offer to settle may be written as an open letter and used by the party writing it during the trial, providing it has relevance and does not form part of continuing without prejudice negotiations (*Dixons Stores Group Ltd v. Thomas Television Plc [1993] 1 All E.R. 349*).

The contents of without prejudice correspondence could be disclosed in an application to strike out for want of prosecution for the purpose of explaining the passage of time and the conduct of the parties during the negotiations especially where inordinate and inexcusable delay was alleged. Furthermore such admission was not necessarily one-sided since the defendant might want to establish that the plaintiff had not been negotiating sincerely or was dragging his feet (*Family Housing Association (Manchester) Ltd v. Michael Hyde & Partners (a firm) [1993] 1 W.L.R. 354; [1993] 1 All E.R. 567, CA*).

When a solicitor writes "threats" letters on behalf of a client, he has no confidence or legal professional privilege therein, whatever the position as regards his client himself. If such a "threats" letter is inaccurate the solicitor has a duty to put that right, though there may be difficulties when the solicitor has ceased to act for that client or when questions arise as to whether he should write such a correcting letter of his own accord (*CHC Software Care Ltd v. Hopkins and Wood [1993] F.S.R. 241*).

## "A sufficient statement of the grounds of the privilege."

24/5/46   As a general rule the list should specify the class of documents (e.g. "letters passing between myself and my solicitor") as well as stating the ground of privilege (e.g. "for the purpose of taking my solicitor's advice") so that the Court may see for itself on what ground privilege is claimed and that the class of documents is one to which that ground may apply. If those two conditions are properly complied with—at any rate, if the list is verified by affidavit—the plea is conclusive unless and until disproved (e.g. by a successful application under r.7 or by proving an admission inconsistent with the plea). But if the plea is insufficiently taken or the ground of privilege is one not known to the law, the remedy of the other party is either to apply by summons under r.11(1)(b) for an order for production of the documents or to apply under r.3 for a further and better list of documents, verified by affidavit.

The statement of general principle in this note is subject to the exception that where the other party, or his solicitor, either procures inspection of a document by fraud, or, on inspection, realises that he has been permitted to see the document only by reason of an obvious mistake, the Court will intervene to protect the mistaken party by the grant

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 45 of 67

of an injunction (*Guinness Peat Properties Ltd v. Fitzroy Robinson Partnership [1987] 1 W.LR. 1027; [1987] 2 All E.R. 716, CA*). See too *Pizzey v. Ford Motor Co. Ltd (1993) The Times, March 8*. cf. para. 24/5/33; above, "Secondary evidence or copies of privileged document."

There is no provision in the rules allowing amendment without leave of a list of documents. Where a party mistakenly includes in Part I of Schedule I of his list documents for which he wishes to claim privilege, he may rectify the mistake prior to inspection by notifying the other party in writing of the documents concerned and the ground on which he objects to produce them; after inspection of the documents, however, it is too late to correct such a mistake, because their contents are revealed and admissible as secondary evidence, and the other party is therefore entitled to copies of the documents under O.24, r.9 (*Re Briamore Manufacturing Ltd [1986] 1 W.L.R. 1429; [1986] 3 All E.R. 132*).

### 6.— Defendant entitled to copy of co-defendant's list (O.24, r.6)

24/6

**(1)** A defendant who has pleaded in an action shall be entitled to have a copy of any list of documents served under any of the foregoing rules of this Order on the plaintiff by any other defendant to the action; and a plaintiff against whom a counterclaim is made in an action begun by writ shall be entitled to have a copy of any list of documents served under any of those rules on the party making the counterclaim by any other defendant to the counterclaim.

**(2)** A party required by virtue of paragraph (1) to supply a copy of a list of documents must supply it free of charge on a request made by the party entitled to it.

**(3)** Where in an action begun by originating summons the Court makes an order under rule 3 requiring a defendant to the action to serve a list of documents on the plaintiff, it may also order him to supply any other defendant to the action with a copy of that list.

**(4)** In this rule "list of documents" includes an affidavit verifying a list of documents.

## History of rule

24/6/1   Introduced in 1962. See "any other party," para. 24/2/6.

### 7.— Order for discovery of particular documents (O.24, r.7)

24/7

**(1)** Subject to rule 8, the Court may at any time, on the application of any party to a cause or matter, make an order requiring any other party to make an affidavit stating whether any document specified or described in the application or any class of document so specified or described is, or has at any time been, in his possession, custody or power, and if not then in his possession, custody or power when he parted with it and what has become of it.

**(2)** An order may be made against a party under this rule notwithstanding that he may already have made or been required to make a list of documents or affidavit under rule 2 or rule 3.

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 46 of 67

> **(3)** An application for an order under this rule must be supported by an affidavit stating the belief of the deponent that the party from whom discovery is sought under this rule has, or at some time had, in his possession, custody or power the document, or class of document, specified or described in the application and that it relates to one or more of the matters in question in the cause or matter.

## History of rule

24/7/1 Reproduced from O.24, r.7, of 1962.

## Effect of rule

24/7/2 It was well-established under the former O.31, and in the days before discovery was given by lists, that statements in a party's affidavit of documents are conclusive—for example, on the question whether he has or has had any documents other than those disclosed (*Gardner v. Irvin (1878) 4 Ex.D. 49, CA*; *Jones v. Monte Video Co. (1880) 5 Q.B.D. 556, CA*; *Compagnie Financière du Pacifique v. Peruvian Guano Co. (1882) 11 Q.B.D. 55, CA*; *Hall v. Truman, Hanbury & Co. (1885) 29 Ch.D. 307* at 319); or as to their relevancy (*Budden v. Wilkinson [1893] 2 Q.B. 432, CA*; *Mogul Steamship Co. v. McGregor & Co. (1886) 2 T.L.R. 752*); or as to the grounds stated in support of a claim for privilege from production (*Budden v. Wilkinson*; *Bewicke v. Graham (1881) 7 Q.B.D. 400, CA*; *Bulman and Dixon v. Young, Ehlers & Co. (1883) 49 L.T. 736*; *Frankenstein v. Gavin's Cycle Cleaning and Insurance Co. [1897] 2 Q.B. 62, CA*; *Lyell v. Kennedy (No. 3) (1884) 27 Ch.D. 1* at 19; *Chowood Ltd v. Lyall [1929] 2 Ch. 406*). The party seeking discovery could not, with a view to obtaining a further and better affidavit of documents, adduce evidence (except on an application under O.31, r.19A (3) the predecessor of the present rule) to show that the affidavit already filed was insufficient or untrue (*Edmiston v. British Transport Commission [1956] 1 Q.B. 191, CA*) nor, as a rule, could he interrogate for that purpose (*Morris v. Edwards (1890) 15 App.Cas. 309* at 313–315, HL). The same principles apply to a list of documents verified by affidavit; subject to the following paragraphs the affidavit is conclusive (*Walker (John) & Sons Ltd v. Ost (Henry) & Co. Ltd [1970] R.P.C. 151, CA*). Thus where an affidavit or affirmation is made pursuant to an order under O.24, r.7 the other party is not entitled to contravene what is sworn or affirmed therein by a further contentious affidavit or by obtaining an order to cross-examine that party since the latter's oath/affirmation in answer is conclusive at interlocutory stage of the action (*Lonrho plc v. Fayed (No. 3) (1993) The Times, June 24*).

The position is subject to two qualifications. First, a party was and is entitled to apply for a further and better list, where it appears on the face of the list already served (e.g. where a plea of privilege is taken on grounds inadmissible in law) or on the face of disclosed documents (e.g. letters referring to other letters) or on an admission that in all probability the party has or has had other relevant documents beyond those disclosed. For the purpose of such an application no affidavit is required (see "Application for a further and better list of documents", para. 24/3/8).

The second (and more important) qualification is that under the present rule an application may be made for an affidavit as to specific document or classes of documents. This must be supported by an affidavit stating that in the belief of the deponent the other party has or has had certain specific documents which relate to a matter in question. But this is not sufficient unless a prima facie case is made out for (a) possession, custody or power, and (b) relevance of the specified documents (*Astra National Productions Ltd v. Neo Art Productions Ltd [1928] W.N. 218*). This case may be based merely on the probability arising from the surrounding circumstances or in part on specific facts deposed to. See too *Berkeley Administration v. McClelland [1990] F.S.R. 381* where at p.382 the Court restated the principles as follows: (1) There is no jurisdiction to make an order under RSC, O.24, r.7, for the production of documents unless (a) there is sufficient evidence that the documents exist which the other party

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 47 of 67

has not disclosed; (b) the document or documents relate to matters in issue in the action; (c) there is sufficient evidence that the document is in the possession, custody or power of the other party. (2) When it is established that those three prerequisites for jurisdiction do exist, the court has a discretion whether or not to order disclosure. (3) The order must identify with precision the document or documents or categories of document which are required to be disclosed, for otherwise the person making the list may find himself in serious trouble for swearing to a false affidavit, even though doing his best to give an honest disclosure. The application may be answered by an affidavit of the respondent read at the hearing of the summons, but the usual practice is for the respondent to argue the matter without an affidavit (if he opposes the application) and for the Master, if he thinks a prima facie case has been made out, to order an affidavit of specific documents. The making of the order does not prevent the respondent from deposing, in the affidavit that he makes, that he in fact has had no such documents, or that they are irrelevant, or from covering up irrelevant parts, and on a subsequent application for production it may still be decided that the documents are irrelevant (*Thornett v. Barclays Bank (France) Ltd [1939] 1 K.B. 675*). An application for discovery of a specific class of documents was refused in *Kahn (David) Inc. v. Conway Stewart & Co. Ltd [1972] F.S.R. 169* upon the grounds that the probative value of the documents, if they existed, would be so slight as not to justify the inconvenience of giving discovery; and upon grounds that such discovery was not in the circumstances necessary for determining the issue to which it was said to relate.

Where a claim to see a class is made, the class must not be defined or described so widely as to include documents which are not relevant to the issue (*Molnlycke AB v. Procter & Gamble Ltd (No. 3) [1990] R.P.C. 498* approving *Fuji Photo Film Co. Ltd v. Carr's Paper Ltd [1989] R.P.C. 713*). The prerequisites mentioned above must be established in respect of the class described as a class, not as regards some in the class only.

An order for discovery may be made in aid of a Mareva injunction, e.g. to discover the whereabouts of the plaintiff's property or of the proceeds of fraud (*A. v. C. [1980] 2 All E.R. 347*; *Bankers Trust Co. v. Shapira [1980] 1 W.L.R. 1274; [1980] 3 All E.R. 353, CA*)

The Court has jurisdiction to order specific discovery under this rule even before service of the statement of claim, but the making of such an order generally calls for definition of the issues and should not normally be made. It is not a good ground for making such an order that the decision upon an application for an interlocutory injunction may in practice be conclusive (*R.H.M. Foods Ltd v. Bovril Ltd [1982] 1 W.L.R. 661; [1982] 1 All E.R. 673, CA*). Specific discovery before defence may be ordered where it is nearly certain that a defence of a particular nature will be raised and the discovery sought would enable the defendant to plead with particularity rather than by an initial bare denial (*Shippam Ltd v. Princes-Buitoni Ltd [1983] F.S.R. 427*).

It will often be convenient for the Court to consider an application for discovery under this rule with what conditions or safeguards any document ordered to be discovered should be inspected (*Format Communications Mfg. Ltd v. I.T.T. (United Kingdom) Ltd [1983] F.S.R. 473*; but see *Schering A.G.'s Patent [1986] R.P.C. 30*).

The Court has power to order a party to litigation to disclose documents produced in a previous arbitration between that party and someone else (*Shearson Lehman Hutton Inc. v. Maclaine Watson & Co. Ltd (1988) 138 New L.J. 185*).

The directions which the Court is empowered to give under O.24, r.7 and under O.12, r.8(5) include orders for discovery; such power, however, will be exercised only where the party seeking discovery can show that it is necessary for the fair disposal of the application (*Rome v. Punjab National Bank (1988) The Times, July 14*).

# Costs

24/7/3  If, on the application under this rule, the Master decides a point of law or practice against the respondents he will normally award the costs against him. If, however, only a prima facie case for relevance and possession is made out, and it will not be seen till the affidavit is filed whether the respondent in fact has or has had relevant documents, the costs are usually reserved to a further application to the Master, but to save such further application an order as to costs is often agreed.

© 2022 Thomson Reuters.

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 48 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

**7A.— Application under ss.33(2) or 34(2) of the Supreme Court Act 1981 (O.24, r.7A)**

24/7A

**(1)** An application for an order under section 33(2) of the Act for the disclosure of documents before the commencement of proceedings shall be made by originating summons (in Form No. 10 in Appendix A) and the person against whom the order is sought shall be made defendant to the summons.

**(2)** An application after the commencement of proceedings for an order under section 34(2) of the said Act for the disclosure of documents by a person who is not a party to the proceedings shall be made by summons, which must be served on that person personally and on every party to the proceedings other than the applicant.

**(3)** A summons under paragraph (1) or (2) shall be supported by an affidavit which must—
**(a)** in the case of a summons under paragraph (1) state the grounds on which it is alleged that the applicant and the person against whom the order is sought are likely to be parties to subsequent proceedings in the High Court in which a claim for personal injuries is likely to be made;

**(b)** in any case, specify or describe the documents in respect of which the order is sought and show, if practicable by reference to any pleading served or intended to be served in the proceedings, that the documents are relevant to an issue arising or likely to arise out of a claim for personal injuries made or likely to be made in the proceedings and that the person against whom the order is sought is likely to have or have had them in his possession, custody or power.

**(4)** A copy of the supporting affidavit shall be served with the summons on every person on whom the summons is required to be served.

**(5)** An order under the said section 33(2) or 34(2) for the disclosure of documents may be made conditional on the applicant's giving security for the costs of the person against whom it is made or on such other terms, if any, as the Court thinks just, and shall require the person against whom the order is made to make an affidavit stating whether any documents specified or described in the order are, or at any time have been, in his possession, custody or power and, if not then in his possession, custody or power, when he parted with them and what has become of them.

**(6)** No person shall be compelled by virtue of such an order to produce any documents which he could not be compelled to produce—
**(a)** in the case of a summons under paragraph (1) if the subsequent proceedings had already been begun, or

**(b)** in the case of a summons under paragraph (2) if he had been served with a writ of subpoena duces tecum to produce the documents at the trial.

**(7)** In this rule "a claim for personal injuries" means a claim in respect of personal injuries to a person or in respect of a person's death.

**(8)** For the purposes of rules 10 and 11 an application for an order under

the said section 33(2) or 34(2) shall be treated as a cause or matter between the applicant and the person against whom the order is sought.

Case 1:22-mc-00130-ALC Document 41-10 Filed 12/20/22 Page 49 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

# History of rule

**24/7A/1**  Added by S.I. 1971 No. 1269. Amended by S.I. 1975 No. 911; S.I. 1982 No. 1111 and S.I. 1990 No. 1689.

# Scope and operation of rule

**24/7A/2**  This rule provides the machinery for dealing with two different, but related, matters, namely, obtaining an order for the disclosure of documents,

> (a) before the commencement of proceedings under ss.33 and 35 of the S.C.A. 1981 (see Vol. 2, Section 20A, paras 20A-215 to 20A-218, and 20A-221 to 20A-223); and

> (b) by a person who is not a party to proceedings already commenced under ss.34 and 35 of the S.C.A. 1981 (see Vol. 2, Section 20A, paras 20A-219 to 20A-220, and 20A-221 to 20A-223).

This rule has been made under the extended rule-making powers conferred originally by the A.J.A. 1970 and now by s.35(2) of the S.C.A. 1981 in order to bring into operation ss.33(2) and 34(2) of the 1981 Act (originally ss.31 and 32(1) of A.J.A. 1970), both of which provided that the power of the Court to make an order for the disclosure of documents thereunder should be exercisable "in such circumstances as may be specified in the rules."

By virtue of the provisions of ss.33(2) and 34(2) of the Act of 1981, this rule applies only to actions and claims for personal injuries, as defined by para. (7). It does *not* apply to other classes of actions, which so far as concerns the disclosure of documents by a non-party before trial continue to be governed by O.38, r.13. The result is that there are two parallel systems for the disclosure of documents before action and by a non-party, one relating to personal injury litigation and the other relating to other categories of actions. Thus, in personal injury actions, the Court has power under this rule to order the disclosure of documents by a non-party before trial, but in other types of actions, by virtue of O.38, r.13, the Court has no such power (see "Effect of rule," para. 38/13/1). By the operation of this rule, the parties in personal injury litigation will be able to obtain before trial the disclosure of relevant documents from a non-party, e.g. medical and hospital records, which in other classes of action they can obtain only by means of a subpoena duces tecum to attend and produce such documents at the trial. The effect of the rule is thus, in personal injury actions, to advance the time for the disclosure of relevant documents

> (a) by a likely party from the stage after action to the stage before action; and

> (b) by a non-party from the stage of trial to the pre-trial stage.

The powers conferred by ss.33(2) and 34(2) of the Act of 1981 have implemented the main recommendations of paras 293 to 303 of the Report of the Committee on Personal Injuries Litigation (Cmnd. 3691 (1968)). They are designed to enable personal injury litigation to be conducted with a view to settlement if possible or adjudication if necessary, on the basis that the parties should be able to obtain early and full disclosure of relevant documents from a likely party before action and from a non-party before trial. The parties should thus be enabled to engage in negotiations for settlement, or to prepare for and conduct the trial, of personal injury actions, not by proceeding in the dark, but in the light of the knowledge of the facts disclosed in the relevant documents.

This rule extends to Crown proceedings (see s.35(4) of the Act of 1981).

# "Claim in respect of personal injuries"

**24/7A/3**

These words in s.34(1) of the 1981 Act and para. (7) of this rule, are of wide application. It is sufficient if the nature and extent of personal injuries are a necessary element in the plaintiff's claim, even if the cause of action is not directly for damages for such injuries but is, e.g. for negligence against a solicitor (*Paterson v. Chadwick [1974] 1 W.L.R. 890; [1974] 2 All E.R. 772*).

On the other hand, an action against insurance brokers for damages for breach of contract to effect insurance cover on a vehicle on behalf of the plaintiff who suffered personal injuries when the vehicle was involved in an accident, is not an action for damages consisting of or including damage in respect of personal injuries within s.2(1) of the Limitation Act 1939 (now s.11(1) of the Limitation Act 1980) and is not thereby barred after the expiry of three years from the date of the accident (*Ackbar v. C. F. Green & Co Ltd [1975] Q.B. 582; [1975] 2 All E.R. 65*).

A claim for an indemnity under a contract of insurance of which the plaintiff in a personal injury action was the statutory assignee was not "a claim for damages for personal injuries" or "in respect of personal injuries" so as to empower the court to make an order for pre-action discovery against the insurers under s.33 (2) of the Supreme Court Act 1981: see *Burns v. Shuttlehurst Ltd, The Times, January 12, 1999*.

## Application for disclosure of documents before action

24/7A/4 An application for an order for the disclosure of documents before the commencement of proceedings under para. (1) can only be made where the following four conditions can be fulfilled, namely:

(1) that the person making the application appears to be likely to be a party to subsequent proceedings in the High Court;

(2) that a claim in respect of personal injuries to a person or in respect of a person's death is likely to be made;

(3) that the person against whom the order is sought appears to be likely to be a party to such proceedings; and

(4) that such person appears to be likely to have or to have had in his possession, custody or power any relevant documents.

Such an application must be made by an originating summons in the expedited form (Form 10) requiring the defendant to return the acknowledgment of service and to appear on the day stated on the hearing of the application. The person against whom the order is sought must be made the defendant (para. (1)) and of course he must be served in the usual way.

The summons should state that the application is made pursuant to O.24, r.7A(1) and it should specify the document or documents in respect of which the order is sought. See also *Campbell v. Tameside Metropolitan Borough Council [1982] Q.B. 1065; [1982] 2 All E.R. 791, C.A*.

## Application for disclosure of documents by non-party

24/7A/5 An application for an order for the disclosure of documents by a person who is not a party to the proceedings must be made by a summons in the action. The summons, however, must be directed to the person against whom the order is sought. It must be served on him as if it were an originating process; and it must also be served on every other party to the action (para. (2)).

The summons should state that the application is made pursuant to O.24, r.7A(2) and it should specify the document or documents in respect of which the order is sought.

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 51 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

# Affidavit in support

**24/7A/6**   The summons for the disclosure of documents, whether before action under para. (1) or by a non-party under para. (2) must be supported by an affidavit, a copy of which must be served on every person on whom the summons itself is required to be served (para. (4)).

The applicant ought normally to have already set out in writing the nature of his allegations (*Shaw v. Vauxhall Motors Ltd [1974] 1 W.L.R. 1035; [1974] 2 All E.R. 1185, CA*).

The supporting affidavit must fulfil the following requirements.

(1)It must specify or describe the documents in respect of which the order is sought.

(2)It must show, if practicable by reference to any pleading served or intended to be served in the proceedings, that such documents are relevant to an issue arising or likely to arise out of a claim for personal injuries made or likely to be made in the proceedings as the case may be.

(3)It must show that the person against whom the order is sought is likely to have or have had such documents in his possession, custody or power.

In the above respects, the supporting affidavit bears a close affinity to the supporting affidavit on an application for the discovery of particular documents under r.7.

(4)In addition, in the case of an application under para. (1) the affidavit must also state the grounds on which it is alleged that the applicant and person against whom the order is sought are likely to be parties to subsequent proceedings in the High Court in which a claim for personal injuries is likely to be made. For this purpose, it would be desirable, if not indeed necessary, to give particulars of the accident giving rise to the claim, and of the fact that the claim has been made or intimated, exhibiting the letter before action and so forth. Having regard to the purpose of the procedure "likely to be parties" should be liberally construed to include the case where the bringing of the action may depend on the result of the discovery, provided that the claim has a reasonable basis and is not irresponsible or speculative (*Dunning v. Board of Governors of United Liverpool Hospitals [1973] 1 W.L.R. 586; [1973] 2 All E.R. 454, CA*).

In a case where it is probable that a defence under s.11 of the Limitation Act 1980, will succeed, and that an application by the prospective plaintiff under s.33 of that Act to disapply the limitation period will not succeed, the Court may nevertheless exercise discretion to order discovery before action against the prospective defendant, where it cannot be said that the prospective plaintiff's claim is bound to fail, and where facts may emerge from the pre-action disclosure that are relevant to the limitation issues (*Harris v. Newcastle upon Tyne Health Authority [1989] 1 W.L.R. 96; [1988] 2 All E.R. 273, CA*).

# Order for discovery before action or by non-party

**24/7A/7**   An order for the disclosure of documents before action under para. (1) or by a non-party under para. (2) will not be for general discovery of documents as under r.3, but for discovery of particular documents as under r.7. The order should therefore specify or describe the documents to be disclosed with care and precision.

Where a plaintiff sues a defendant for damages for personal injuries, he is entitled to discovery of hospital notes and records against a health authority, even if it is not a party to the action; health authorities and medical practitioners should respond readily and promptly to any requests for disclosure, so that unnecessary expense and delay may be avoided (*Walker v. Eli Lilly & Co., [1986] E.C.C. 50*). But a health authority was not obliged to provide an itemised list of every document disclosed (see *M. v. Plymouth Area Health Authority [1993] P.I.Q.R. 223*).

© 2022 Thomson Reuters.

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 52 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

An order under para. (1) or para. (2) will not be made unless the discovery is necessary under r.8, which has been amended to apply to this rule. See *Barrett v. Ministry of Defence (1989) The Independent, January 23*.

Under para. (5) the Court has power to make the order for discovery before action or by a non-party conditional on the applicant giving security for costs or on such other terms as it thinks fit.

Any documents disclosed in the affidavit made in compliance with an order under this rule may be inspected and copies thereof taken by the applicant under r.10, or the Court may order production of such documents under r.11, since by para. (8) those rules have been made to apply to this rule.

The Court has a discretion to decline to make an order which would be unnecessary or oppressive or not in the interests of justice or injurious to the public interest. But if an order is made, it should be for production of the documents to the applicant or, if he is legally represented, to his legal advisers or legal and medical advisers, or, if he is not legally represented, to his medical adviser alone (see ss.33(2) and 34(2) of the Act of 1981).

The power of the Court to order a non-party to produce relevant documents is not fettered, except as provided by the relevant provisions of statute and the rules, and is to be exercised so as to further the proper administration of justice. Where the issue of a subpoena duces tecum could compel production of the documents by a non-party at the trial of the action, the interests of justice are not served by forcing a party to wait until trial for their production. This would prevent him from deploying his full position in cross-examination until the documents become available to him and from fully preparing his case until after the start of the trial. These propositions are derived from the decision of the House of Lords in *O'Sullivan v. Herdmans Ltd [1987] 1 W.L.R. 1047; [1987] 3 All E.R. 129, HL*; which was concerned with the Northern Irish equivalent of s.34 of the SCA 1981 and O.24. The Northern Irish rules, however, although similar to, are not the same as, the rules applicable in England and Wales, and the differences need to be borne in mind in applying the reasoning to English cases. In particular, the English O.24, r.8, unlike its Northern Irish counterpart, expressly requires the Court to refuse to make an order under O.24, r.7A if it is of opinion that discovery thereunder is not necessary either for disposing fairly of the cause or matter or for saving costs.

## Grounds for objecting to production

24/7A/8 The object of para. (6) is to enable a claim for privilege from production to be made in the same way and to the same extent in relation to discovery of documents before action as after action and in relation to discovery of documents by a person not a party to pending proceedings as on a subpoena duces tecum served on him to attend to produce the documents at the trial. This provision thus removes any doubt there might be as to the scope of the law of privilege in relation to proceedings not yet commenced and in relation to a person not a party to pending proceedings.

The Court is prohibited by s.35(1) of the Act of 1981 from making an order under s.33 or s.34 if it considers that compliance with the order, if made, will be likely to be injurious to the public interest. Hence public interest immunity may be a proper ground of objection to the making of such an order (*Taylor v. Anderton (1986) The Times, October 21*). The rules governing public interest immunity are the same in relation to applications for pre-action discovery as they are in relation to applications for discovery after action brought; there is no more stringent test to be applied when application for discovery is made before the pleading of a statement of claim (*Barrett v. Ministry of Defence (1989) The Independent, January 23*).

A non-party to an action against whom discovery is sought is not in general entitled to rely on the legal professional privilege of the defendant to the action in relation to a document brought into existence for the purpose of enabling the defendant to obtain legal advice pending litigation, unless there is some common interest between the defendant and the non-party. There is an overriding principle, however, that a defendant or potential defendant must be free to seek evidence without being obliged to disclose the result of his findings to his opponent. Consequently where a memorandum is prepared by a non-party at the request of a potential defendant in order to obtain legal advice, the Court will not order the non-party to disclose the memorandum to the plaintiff, even though the non-party is

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 53 of 67

not at the time a potential defendant and is in effect sheltering under the privilege of another (*Lee v. South West Thames Regional Health Authority [1985] 1 W.L.R. 845; [1985] 2 All E.R. 385, CA*).

## Costs of application under this rule

**24/7A/9**  The person against whom an order is sought under this rule is entitled to his costs of the application and of complying with any order made thereon, unless the court orders otherwise (see O.62, r.6(1) and (9)).

Where the person against whom an order is sought is at fault, e.g. where he has been dilatory in replying to a proper request to disclose documents, the Court may deny him his costs, or, in exceptional cases, order him to pay the applicant's costs of the application (*Hall v. Wandsworth Health Authority (1985) 129 S.J. 188; (1985) The Times, February 16*). "Costs in the cause" is an inappropriate order on application under this rule, because there is no certainty that the order for disclosure will lead to a claim or cause against the respondent (ibid.).

---

**24/8**

**8. Discovery to be ordered only if necessary (O.24, r.8)**

On the hearing of an application for an order under rule 3, 7 or 7A the Court, if satisfied that discovery is not necessary, or not necessary at that stage of the cause or matter, may dismiss or, as the case may be, adjourn the application and shall in any case refuse to make such an order if and so far as it is of opinion that discovery is not necessary either for disposing fairly of the cause or matter or for saving costs.

---

## History of rules

**24/8/1**  Reproduces O.24, r.8, of 1962, as amended by S.I. 1971 No. 1269.

## "If satisfied that discovery is not necessary …"

**24/8/2**  Under this rule, in contrast to r.13, it is for the party objecting to the order for discovery under rr.3, 7 or 7A to satisfy the Court that the discovery is not necessary, or not necessary at the stage the cause or matter has reached (*Dolling-Baker v. Merrett [1991] 2 All E.R. 890, CA*; *Ventouris v. Mountain [1991] 2 All E.R. 472* at 486, per Parker L.J.).

Where a split trial had been ordered so that the issue of liability was to be determined separately from the issue of quantum discovery on the issue of quantum would not normally be ordered, and only special circumstances going beyond a plaintiff's or defendant's interest in learning the amount in issue for the purpose of making informed decisions on whether to negotiate a compromise or to proceed with the action or defence would justify making such an order, *Baldock v. Addison [1995] 1 W.L.R. 158; [1995] 3 All E.R. 437; [1994] F.S.R. 665*. Compare *Kapur v. J.W. Francis & Co. (1998) The Times, March 4*.

See too *Practice Direction (Civil Litigation: Case Management)*, issued by the Lord Chief Justice and the Vice-Chancellor on January 24, 1995; *[1995] 1 W.L.R. 262* which in the context of the Court asserting greater control over the preparation and conduct of cases with a view to reducing the cost and delay of civil litigation, identifies

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 54 of 67

discovery as one of the areas in respect of which the Court will exercise its discretion to limit. It is set out in Vol. 2, Section 2B, para. 2B-227.

## Discovery as to credit.

24/8/3  As in the case of interrogatories discovery solely for the purpose of impeaching the credit of the opposite party and giving him a bad name will not be ordered; it probably does not "relate to a matter in question," within r.1 and in any event should be refused as a matter of discretion under this rule (*Ballantine (George) & Son Ltd v. F. E. R. Dixon & Son Ltd [1974] 1 W.L.R. 1125; [1974] 2 All E.R. 503; [1975] R.P.C. 111*). Discovery of other alleged instances of copying by a defendant in a copyright infringement action (so that a case of similar fact evidence can be presented) may be refused on the basis that it goes only to credit (*E.G. Music v. S.F. (Film) Distributors Ltd [1978] F.S.R. 121*).

**9. Inspection of documents referred to in list (O.24, r.9)**

24/9    A party who has served a list of documents on any other party, whether in compliance with rule 2 or 6 or with an order under rule 3, must allow the other party to inspect the documents referred to in the list (other than any which he objects to produce) and to take copies thereof and, accordingly, he must when he serves the list on the other party also serve on him a notice stating a time within seven days after the service thereof at which the said documents may be inspected at a place specified in the notice.

## History of rule

24/9/1  This rule (then r.10) was introduced in 1962. Amended by S.I. 1991 No. 531.

## Meaning of "inspection"

24/9/2  For the meaning of "inspection" in relation to documents such as tape recordings see para. 24/2/3.

## "Objects to produce"

24/9/3  See r.5 nn.

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 55 of 67

## "At a place specified in the notice"

**24/9/4**  See r.11(1)(c) and note.

## Failure to serve the notice

**24/9/5**  The remedy is to apply under r.11(1) for an order for production of documents referred to in the list.

## "To take copies thereof"

**24/9/6**  A right to inspect prima facie includes a right to inspect by an agent as well as personally (*Novey v. Keep [1909] 1 Ch. 561, 565*). The party inspecting is also entitled under a long-established practice to have copies supplied to him at his reasonable request on the proper charges (see O.66, r.3).

A party cannot correct a mistake in his list, whereby he omits to claim privilege for documents, after inspection; once inspection of the documents has taken place their contents are revealed and admissible as secondary evidence, and the other party is therefore entitled to copies of the documents (*Re Briamore Manufacturing Ltd [1986] 1 W.L.R. 1429; [1986] 3 All E.R. 132*).

See also the third paragraph of 24/5/46. "A sufficient statement of the grounds of the privilege."

**24/10**

**10.— Inspection of documents referred to in pleadings, affidavits and witness statements (O.24, r.10)**

**(1)** Any party to a cause or matter shall be entitled at any time to serve a notice on any other party in whose pleadings, affidavits or witness statements reference is made to any document requiring him to produce that document for the inspection of the party giving the notice and to permit him to take copies thereof.

**(2)** The party on whom a notice is served under paragraph (1) must, within four days after service of the notice, serve on the party giving the notice a notice stating a time within seven days after the service thereof at which the documents, or such of them as he does not object to produce, may be inspected at a place specified in the notice, and stating which (if any) of the documents he objects to produce and on what grounds.

## History of rule

**24/10/1**  Reproduces O.24, r.11 of 1962. Amended by S.I. 1992 No. 1907.

© 2022 Thomson Reuters.

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 56 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

## Effect of rule

24/10/2   This rule does not refer to documents contained in a list not verified by affidavit, but to any document referred to in any pleading or any affidavit or witness statement. The Court has jurisdiction under this rule and under rule 11(1) below to order discovery of a document referred to in a pleading or affidavit or witness statement, whether or not the document is in the possession, custody or power of the party in whose pleading or affidavit or witness statement the reference is made (*Rafidain Bank v. Agom Universal Sugar Trading Co Ltd [1987] 1 W.L.R. 1606; [1987] 3 All E.R. 859, CA*). The Court has a discretion whether or not to make such an order, and an order will not be made if good cause to the contrary is shown. The absence of possession custody or power may amount to good cause, but will not invariably do so; the decision depends on the facts of each particular case (*Rafidain Bank v. Agom Universal Sugar Trading Co. Ltd* (above); *Quilter v. Heatley (1883) 23 Ch.D. 42* at 48–51, CA). The party against whom the order is sought will be excused if he is privileged from producing the document in question (*Roberts v. Oppenheim [1900] 1 Ch.D. 724*; *Milbank v. Milbank [1900] 1 Ch. 376*; and see para. (2) of this rule and rr.11, 13 and 15). *Pleadings* includes particulars (*Cass v. Fitzgerald [1884] W.N. 18*; *Milbank v. Milbank*, above, p.385). *Affidavits* includes answers to interrogatories (*Moore v. Peachey [1891] 2 Q.B. 707*) and affidavits filed in compliance with an order made under r.7 (see *Pardy's Mozambique Syndicate v. Alexander [1903] 1 Ch.191*) and affidavits not yet filed, if a copy has been given to the other side (*Re Fenner and Lord [1897] 1 Q.B. 667, CA*) and exhibits to affidavits (*Re Hinchliffe [1895] 1 Ch.117*). The documents need not be identified or particularly described: it is sufficient that they are referred to generally (*Smith v. Harris (1883) 48 L.T. 869*). And where the reference is to entries in a book, inspection will be limited to those entries (*Quilter v. Heatley*, above, at p. 42). The notice may be served "at any time"–asking, for example, before serving defence, for a copy of a document referred to in the statement of claim.

A party's affidavits, for the purpose of this rule, include not only affidavits sworn by him, but also any affidavits procured, filed or used by him but sworn by a deponent who is not a party. The fair disposal of a cause or matter is not limited to the final disposal of the action, but involves the fair disposal of all stages of the cause or matter and therefore production of a document may be ordered on the grounds that it is necessary for fairly disposing of an interlocutory motion or summons in an action (*Dubai Bank v. Galadari (No. 2) [1990] 1 W.L.R. 731; [1990] 2 All E.R. 738, CA*).

Where a document is not specifically mentioned in an affidavit or pleading or witness statement, but an assertion made in the affidavit or pleading or witness statement gives rise to the inference that the document must or might exist, "reference is made" to it in the affidavit or pleading or witness statement for the purpose of ordering its production only if, on the fair meaning of the words in their context, the document is directly alluded to in the affidavit or pleading or witness statement, and not if the reference arises merely by inference; accordingly, a mere opinion that on the balance of probabilities a transaction referred to in an affidavit or pleading or witness statement must have been effected by a particular document does not give the court jurisdiction to make an order under the rule for its production (ibid.).

In *Dun and Bradstreet Ltd v. Typesetting Facilities Ltd [1992] F.S.R. 320* the Court treated the motion as made under O.24, r.10 and held inter alia (i) that delay in making an application for inspection does not affect the right to inspection and (ii) that as regards inspection of discs, cassettes and the like what the inspector wants is information as to the contents rather than inspection of the articles.

### 11.— Order for production for inspection (O.24, r.11)

24/11      **(1)** If a party who is required by rule 9 to serve such a notice as is therein mentioned or who is served with a notice under rule 10(1)—

Case 1:22-mc-00130-ALC  Document 41-10  Filed 12/20/22  Page 57 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

**(a)** fails to serve a notice under rule 9 or, as the case may be, rule 10(2), or

**(b)** objects to produce any document for inspection, or

**(c)** offers inspection at a time or place such that, in the opinion of the Court, it is unreasonable to offer inspection then or, as the case may be, there,

then, subject to rule 13(1), the Court may, on the application of the party entitled to inspection, make an order for production of the documents in question for inspection at such time and place, and in such manner, as it thinks fit.

**(2)** Without prejudice to paragraph (1) but subject to rule 13(1) the Court may, on the application of any party to a cause or matter, order any other party to permit the party applying to inspect any documents in the possession, custody or power of that other party relating to any matter in question in the cause or matter.

**(3)** An application for an order under paragraph (2) must be supported by an affidavit specifying or describing the documents of which inspection is sought and stating the belief of the deponent that they are in the possession, custody or power of the other party and that they relate to a matter in question in the cause or matter.

## History of rule

24/11/1  Taken from O.24, r.12 of 1962.

## "Objects to produce any document"

24/11/2  See notes to r.10 and r.5.

## "Offers inspection at a … place … unreasonable"

24/11/3  The previous O.31, r.17 specified, as the usual and proper place for inspection, "the office of his solicitor, or in the case of bankers' books or other books of account or books in constant use for the purpose of any trade or business … their usual place of custody." The words have been omitted from the present r.10, but these are still the appropriate places for production and inspection. In the case of an action proceeding in the Central Office, the appropriate place is the office of the solicitor or agent in London; but if circumstances warrant, the production may be ordered elsewhere, or partly in London and partly elsewhere (*Prestney v. Corporation of Colchester (1883) 24 Ch.D. 376, CA*) and even abroad (*Whyte & Co. v. Ahrens & Co. (1884) 50 L.T. 344*). It should never be necessary to bring to the Court a dispute as to the appropriate place of inspection, but the Court has a complete discretion in the matter. It may still order that the documents be deposited in Court to be inspected there in accordance with the old Chancery practice (*Leslie v. Cave [1886] W.N. 162*; and see r.13).

© 2022 Thomson Reuters.

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 58 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

# "To inspect any documents in the possession, custody or power."

24/11/4   These words, by the inclusion of the word "custody" and the words of para. (1) extend the previous powers of the Court to order inspection (see "Production and inspection", para. 24/2/10).

# "An application for an order under para. (2)"

24/11/5   Para. (2) enables the Court to order inspection of documents at a time when they have not been disclosed, or mentioned in a pleading or affidavit (see *Wiedemann v. Walpole (1890) 24 Q.B.D. 537*—reversed on grounds not material here) or in a witness statement but the power is not likely to be exercised with frequency and its exercise was very rare in those circumstances under the corresponding (pre-1962) O.31, r.18(2).

# Privilege improperly or insufficiently claimed

24/11/6   On the other hand an application under para. (1) or para. (2) for an order for inspection is a recognised method of compelling production of documents for which privilege is improperly or inadequately claimed.

# "affidavit … stating the belief of the deponent."

24/11/7   See r.7(3) and note.

# Inspection by a person not party to the proceedings

24/11/8   A party to an action may appoint a person who is neither his legal adviser, nor a professional expert to inspect the opposing party's documents on discovery, provided that he can show that such person's assistance is essential in the interests of justice, and the opposing party is unable to satisfy the Court that there will be a breach of confidentiality in respect of the documents so to be inspected (*Davies v. Eli Lilly & Co. [1987] 1 W.L.R. 428, CA*).

**11A.— Provision of copies of documents (O.24, r.11A)**

24/11A   **(1)** Any party who is entitled to inspect any documents under any provision of this Order or any order made thereunder may at or before the time when inspection takes place serve on the party who is required to produce such documents for inspection a notice (which shall contain an undertaking to pay

© 2022 Thomson Reuters.

**Order 24**—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 59 of 67

the reasonable charges) requiring him to supply a true copy of any such document as is capable of being copied by photographic or similar process.

**(2)** The party on whom such a notice is served must within seven days after receipt thereof supply the copy requested together with an account of the reasonable charges.

**(3)** Where a party fails to supply to another party a copy of any document under paragraph (2), the Court may, on the application of either party, make such order as to the supply of that document as it thinks fit.

## History of rule

**24/11A/1** Added by S.I. 1987 No. 1423.

## Document in a foreign language

**24/11A/2** There is no obligation on a party giving discovery of a document in a foreign language to provide a translation (*Bayer A.G. v. Harris Pharmaceuticals Ltd [1991] F.S.R. 170*).

**24/12**

**12. Order for production to Court (O.24, r.12)**

At any stage of the proceedings in any cause or matter the Court may, subject to rule 13(1), order any party to produce to the Court any document in his possession, custody or power relating to any matter in question in the cause or matter and the Court may deal with the document when produced in such manner as it thinks fit.

## History of rule

**24/12/1** Taken from O.24, r.13 of 1962.

## Effect of rule

**24/12/2** The former O.31, r.14, empowered the Court to order production generally; the present rule expressly enables the Court to order production to the Court. See, for inspection by the Court of documents for which privilege is claimed, r.13(2).

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 60 of 67

**13.— Production to be ordered only if necessary, etc. (O.24, r.13)**

24/13

(1) No order for the production of any documents for inspection or to the Court, or for the supply of a copy of any document, shall be made under any of the foregoing rules unless the Court is of opinion that the order is necessary either for disposing fairly of the cause or matter or for saving costs.

(2) Where on an application under this Order for production of any document for inspection or to the Court, or for the supply of a copy of any document, privilege from such production or supply is claimed or objection is made to such production or supply on any other ground, the Court may inspect the document for the purpose of deciding whether the claim or objection is valid.

## History of rule

24/13/1   Taken from O.24, r.14 of 1962. Amended by S.I. 1987 No. 1423.

## "Unless…the order is necessary…"

24/13/2   Under this rule, in contrast to r.8, it is for the party applying for the order for production to satisfy the court that the order for production and inspection is necessary either for disposing fairly of the cause or matter, or for saving costs (*Dolling-Baker v. Merrett [1991] 2 All E.R. 890, CA*). It is not enough for the applicant to show that the documents are relevant; he must also show that their production and inspection is necessary for one or more of the purposes mentioned in the rule (ibid.). See too *Wallace Smith Trust Co. Ltd (in liquidation) v. Delloitte Haskin & Sells (A Firm) [1997] 1 W.L.R. 257; [1996] 4 All E.R. 403, CA*, for an exposition of the matters to be considered in ordering production.

## Objection to production

24/13/3   A lien over the documents as against the other party may be a valid ground for objecting to produce them for inspection. But the Court may override the objection if, applying the test in r.13(1) production is necessary for disposing fairly of the action (*Woodworth v. Conroy [1976] Q.B. 884; [1976] 1 All E.R. 107, CA*).

Provided that the test laid down in O.24, r.13 was satisfied the fact that the transcripts of evidence given before two inspectors appointed under s.432 of the Companies Act 1985 was of evidence given under compulsion was no reason for ordering non-disclosure: *British and Commonwealth Holdings plc (in administration) v. Barclays De Zoete Wedd Ltd (No. 2), The Times, November 13, 1998.*

## "The Court may inspect the document"

**24/13/4**   The former O.31, r.19A(2) in terms only empowered the Court "to inspect the document for the purpose of deciding as to the validity of the claim of privilege"; but "privilege" was held to include any ground on which production was resisted (e.g. irrelevancy, *Ehrmann v. Ehrmann [1896] 2 Ch.826*, where a claim was made to seal up parts of the documents) except "Crown privilege," and the new rr.13 and 15 express the same meaning.

## In what circumstances the Court will inspect the document

**24/13/5**   "The question whether the Court should inspect the documents is one which is a matter for the discretion of the Court, and primarily for the Judge of first instance. Each case must depend on its own circumstances; but if, looking at the affidavit (and now the list of documents verified by affidavit) the Court finds that the claim to privilege is formally correct, and that the documents in respect of which it is made are sufficiently identified and are such that, prima facie, the claim for privilege would appear to be properly made in respect of them… the Court should, generally speaking, accept the affidavit as sufficiently justifying the claim without going further and inspecting the documents" (per Jenkins L.J., *Westminster Airways v. Kuwait Oil Co. [1951] 1 K.B. 134* at 146, CA). For a list of documents, verified by affidavit, is prima facie conclusive as to all matters stated therein in proper form. Nevertheless, parties do from time to time consent or ask for the Court to inspect the documents and decide upon them. The party applying for the order for inspection should give notice to the other party to produce the documents on the hearing of the application for inspection by the Master. The decision to inspect is appealable, but, on general principles, the Court of Appeal will not readily overrule the Judge's exercise of discretion.

## Technical secrets

**24/13/6**   See para. 24/5/42.

**24/14**

### 14.— Production of business books (O.24, r.14)

**(1)** Where production of any business books for inspection is applied for under any of the foregoing rules, the Court may, instead of ordering production of the original books for inspection, order a copy of any entries therein to be supplied and verified by an affidavit of some person who has examined the copy with the original books.

**(2)** Any such affidavit shall state whether or not there are in the original book any and what erasures, interlineations or alterations.

**(3)** Notwithstanding that a copy of any entries in any book has been supplied under this rule, the Court may order production of the book from which the copy was made.

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 62 of 67

## History of rule

24/14/1    O.24, r.16 of 1962. An order under this rule is rarely asked for or made.

> **14A. Use of documents (O.24, r.14A)**
>
> 24/14A    Any undertaking, whether express or implied, not to use a document for any purposes other than those of the proceedings in which it is disclosed shall cease to apply to such document after it has been read to or by the Court, or referred to, in open Court, unless the Court for special reasons has otherwise ordered on the application of a party or of the person to whom the document belongs.

## History of rule

24/14A/1    Added by *S.I. 1987 No. 1423*.

## Uncertainty as to use of material obtained on discovery

24/14A/2    A party who obtains discovery may use the documents disclosed to him only for the proper purposes of conducting his own case, and there is an implied undertaking by him not to use them for any collateral or ulterior purpose; any misuse of the documents may be restrained by injunction or punished as a contempt *(The Distillers Co. (Biochemicals) Ltd v. Times Newspapers Ltd [1975] Q.B. 613*, following *Alterskye v. Scott [1948] 1 All E.R. 469* at 471). A similar undertaking arises in respect of documents disclosed during arbitration proceedings (*Hassneh Insurance Co. of Israel v. Steuart J. Mew [1993] 2 Lloyd's Rep. 243*). The qualification to the implied undertaking namely that an award and reasons might be disclosed as of right if it was reasonably necessary for one party to disclose them for the purpose of the establishment of that party's rights against a third party either in order to found a defence or as the basis for a cause of action (see *Hassneh* above) was further considered in *Insurance Company v. Lloyd's Syndicate, [1995] 1 Lloyd's Rep. 272*, where the court held that "reasonably necessary" covered only the case where the right in question could not be enforced or protected unless the award and reasons are disclosed to a stranger to the arbitration. The making of the award must be a necessary element in the establishment of the party's legal rights against the stranger. An action based on a misused document will, ordinarily, be dismissed as an abuse of the process of the Court (*Riddick v. Thames Board Mills Ltd [1977] Q.B. 881; [1977] 3 All E.R. 677, CA*). See also *Home Office v. Harman [1983] A.C. 280; [1982] 1 All E.R. 532, HL*; and *Wilden Pump & Engineering Co. v. Fusfield [1985] F.S.R. 581*.

The Court has inherent jurisdiction to take precautions against the possibility that discovery may be abused, or cause unjustifiable hardship and may, to that end, impose restrictions upon inspection or permit it subject to undertakings. (*Church of Scientology v. D.H.S.S. [1979] 1 W.L.R. 723; [1979] 3 All E.R. 97*); for an example of undertakings against disclosure of material obtained on discovery see *Halcon International Inc. v. Shell Transport & Trading Co. [1979] R.P.C. 97, CA* (leave to make use of material obtained on discovery for some purpose other than the action refused).

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 63 of 67

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

At the conclusion of an action, however, the Court will not order one party to return to another photocopies of documents obtained on discovery, where the party who has obtained the copies has paid photocopying charges and where the title to the paper on which the copies are made is thereby vested in him, and where there is no real cause to believe that he will disregard the obligation not to use the copies for any purpose outside the action (*Brue Ltd v. Solly (1988) The Times, February 9*).

The implied undertaking not to use documents disclosed on discovery for any collateral or ulterior purpose may, in exceptional circumstances and on the application of the party obtaining discovery, be relaxed or modified by the Court (*Crest Homes plc v. Marks [1987] 3 W.L.R. 293; [1987] 2 All E.R. 1074, HL*; *Dory v. Wolf GmbH [1990] F.S.R. 266*). See too *Levi Strauss & Co. v. Barclays Trading Corp. [1993] F.S.R. 179*. As to the nature of the undertaking and the fact that it may also be modified or relaxed by the party providing the discovery as well as by order of the court, see *E.M.I. Records Ltd v. Spillane [1986] 1 W.L.R. 967* at 976.

It is permissible to use material obtained on discovery under the Anton Piller jurisdiction to bring proceedings against other parties shown by that material to be involved in misuse of the plaintiff's name or commercial property (*Sony Corp. v. Anand ; Seiko Time Ltd v. Domicrest (Fancy Goods) Ltd [1981] F.S.R. 398*).

Leave has to be obtained to use documents obtained on discovery for any purpose other than that for which discovery has been made (*Sybron Corp. v. Barclays Bank p.l.c. [1985] Ch. 299*). See too *Omar v. Omar [1995] 1 W.L.R. 1428; [1995] 3 All E.R. 571* where it was held that the documents disclosed, or to be disclosed, by the bank could be used by the plaintiffs both at the trial of the action and in foreign proceedings aimed at following and tracing the shares, and to establish ultimate liability in those foreign proceedings; that the use of the documents for a personal claim, being within the broad purpose of the original discovery, was an entirely legitimate purpose, so that leave to amend the plaintiffs' claim and to use the documents in relation to *Mareva* relief would be granted. In *Miller v. Scorey [1996] 1 W.L.R. 1122; [1996] 3 All E.R. 18*, the court held per curiam that while it may be that the court has jurisdiction to grant retrospective leave to use disclosed documents for a purpose outside the action in which they were disclosed, the circumstances in which it would be proper to exercise it would be rare. In this case leave was refused as such would have constituted a de facto validation of the issue of the proceedings obviating the need to issue fresh proceedings, thereby depriving the defendants of a limitation defence and permitting the plaintiffs to take unfair advantage of their own wrong.

In *Taylor v. Director of the Serious Fraud Office [1998] 3 W.L.R. 1040; [1998] 4 All E.R. 801,HL(E)*, the House of Lords held that in order to ensure that the privacy and confidentiality of those who made, and those who were mentioned in, statements contained in unused material which had come into existence as a result of a criminal investigation were not invaded more than was absolutely necessary for the purposes of justice, compliance by the prosecution with its obligation to disclose all such material to the defence generated an implied undertaking not to use the material for any purpose other than the conduct of the defence; and that, accordingly, documents disclosed to solicitors for one of the accused could not be used for the purposes of the action for defamation by the Plaintiffs; disapproving of *Mahon v. Rahn [1998] Q.B. 424, CA* in such respect. The court further held that the absolute immunity from suit which applied to judges, advocates and witnesses in respect of statements made in court extended also to out of court statements which could fairly be said to be part of the process of investigating a crime or a possible crime with a view to a prosecution; and that, accordingly, the statements made in the letter and the file note were subject to absolute immunity from suit in respect of an action for defamation.

The principles set out in this note apply to use of material obtained *on discovery*. They cannot be applied by analogy and without modification to use of material obtained from other parties in the course of litigation in other ways. For example, where a defendant seeks to restrain a plaintiff from using, for any purpose other than the proper conduct of the case, documents filed by the defendant in support of an application to strike out the action, the defendant must show more than a possibility of misuse of the documents; he must show that there is a real risk of improper conduct on the part of the plaintiff (*Esterhuysen v. Lonrho plc (1989) The Times, May 29, CA*).

Documents of a confidential nature, read out in camera in English proceedings may nevertheless be ordered to be available in proceedings before the E.C. Commission: *Apple Corps. Ltd v. Apple Computer Inc. [1992] F.S.R. 389; [1992] 1 C.M.L.R. 969*.

In *Bank of Crete SA v. Koskotas (No. 2) [1992] 1 W.L.R. 919; [1993] 1 All E.R. 748*, it was held that the Court should not prevent a party to an action disclosing documents to another person pursuant to a legal obligation in a foreign jurisdiction.

# Effect of rule (r.14A)

**24/14A/3** O.24, r.14A is not retrospective in effect. The coming into force of the rule on October 1, 1987, does not therefore of itself release or justify the release of a party from an undertaking of the kind referred to in the rule, where the document in question has been read in open Court before that date, although it is a consideration to be taken into account on an application by such a party to be released from his undertaking (*Bibby Bulk Carriers Ltd v. Cansulex Ltd [1989] 2 W.L.R. 182; [1988] 2 All E.R. 820*). The reasoning underlying the decision in *Home Office v. Harman [1983] A.C. 280; [1982] 1 All E.R. 532, HL* (see para. 24/14A/2, above "Uncertainty as to use of material obtained on discovery") is not undermined by O.24, r.14A whether this undertaking is given before or after this coming into force of the rule; if the contrary were the case the value of discovery would be seriously compromised (ibid.).

Rule 14A represents a change in the onus of showing why there should not be release from the implied undertaking where documents have been read or referred to in open court. This sentence referred to and approved in *Singh (Tejendra) v. Christie (1993) The Times, November 11*. Where documents are read *in camera*, however, the position may well be different (*Apple Corp. Ltd v. Apple Computer Inc., [1992] 1 C.M.L.R. 969; (1991) The Times, April 10*). In that case it was held that the fact that the documents were required for the purpose of parallel proceedings before the European Commission did constitute a cogent and persuasive reason why the undertaking should be discharged. Note however that the documents discovered in the English proceedings has been read only *in camera*.

The recipient of documents disclosed under compulsion of a Court order, but which are subsequently included in the bundle of documents for the use of the Court, and referred to in a skeleton argument lodged with the Court, does not hold the documents subject to an implied undertaking not to disclose them to a third party (*Derby & Co. Ltd v. Weldon (1988) The Independent, November 2*).

An order under the rule is justified if the application is well before trial and if the parties themselves have regarded the documents as sensitive; liberal quotations from such documents in affidavits are also sensitive; if an order is made under the rule there is little reason for hearing the application *in camera*; *Lubrizol v. Eno (No. 2) [1993] F.S.R. 53*.

This rule does not apply to documents disclosed under compulsion in crown court proceedings. As regards such documents the implied undertaking not to use such documents for any purpose other than those proceedings continues even after such documents had been read out in court unless an order is obtained from the crown court varying such implied undertaking (*Cunningham v. Essex County Council (1997) The Times, March 31* (a libel and malicious falsehood case)). In *Attorney-General for Gibraltar v. May, The Times, November 20, 1998* it was held that although the Attorney-General was bound by an implied undertaking not to use in criminal proceedings against the defendant taking place in Gibraltar the contents of an affidavit sworn by the defendant under a court order ancillary to an application for a *Mareva* injunction to freeze the defendant's assets, the court would exercise its discretion to release the Attorney-General from the implied undertaking.

Where a judge is invited to familiarise himself out of court with confidential material to which, in open court, only brief reference is made, and the judge subsequently gives a decision based on the material before him, including the confidential documents, such documents may be said to have been "referred to" by the court within the meaning of r.l4A (*Smithkline Beecham Biologicals S.A. v. Connaught Laboratories Inc. [1999] 4 All E.R. 498, CA*).

**15. Document disclosure of which would be injurious to public interest: saving (O.24, r.15)**

**24/15**

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC   Document 41-10   Filed 12/20/22   Page 65 of 67

The foregoing provisions of this Order shall be without prejudice to any rule of law which authorises or requires the withholding of any document on the ground that the disclosure of it would be injurious to the public interest.

## Effect of rule

**24/15/1**  This rule was introduced in 1965, see para. 24/5/35, "Documents…injurious to the public interest." In *Re Grosvenor Hotel, London (No. 2) [1965] 1 Ch. 1210; [1964] 3 All E.R. 354*, the Court of Appeal decided that the former rule was ultra vires in so far as it purported to alter (and not merely to state) the existing law.

**16.— Failure to comply with requirement for discovery, etc.(O.24, r.16)**

**24/16**  **(1)** If any party who is required by any of the foregoing rules, or by any order made thereunder, to make discovery of documents or to produce any documents for the purpose of inspection or any other purpose or to supply copies thereof fails to comply with any provision of that rule or with that order, as the case may be, then, without prejudice, in the case of a failure to comply with any such provision, to rules 3(2) and 11(1) the Court may make such order as it thinks just including, in particular, an order that the action be dismissed or, as the case may be, an order that the defence be struck out and judgment be entered accordingly.

**(2)** If any party against whom an order for discovery or production of documents is made fails to comply with it, then, without prejudice to paragraph (1) he shall be liable to committal.

**(3)** Service on a party's solicitor of an order for discovery or production of documents made against that party shall be sufficient service to found an application for committal of the party disobeying the order, but the party may show in answer to the application that he had no notice or knowledge of the order.

**(4)** A solicitor on whom such an order made against his client is served and who fails without reasonable excuse to give notice thereof to his client shall be liable to committal.

## History of rule

**24/16/1**  Taken from O.24, r.16 of 1962; amended in 1965. Amended by S.I. 1987 No. 1423.

## Application to dismiss the action or strike out the defence

**24/16/2**  The usual application and order is that the action be dismissed or the defence struck out (as the case may be) unless the party complies with the rule or order for discovery by a stated hour of a stated day. If it is intended to attach the defaulting party, the copy of the order made on the application must be indorsed with a notice under O.45, r.7 (*Hampden v. Wallis (1884) 26 Ch.D. 746, CA*). An order to dismiss or strike out need not be served. If an order

is made dismissing the action unless the discovery is given by a stated time, then at the end of that time, if the discovery has not been given, the action stands dismissed. It is not so dead, however, that it cannot be revived by an extension of time for compliance with the order (*Samuels v. Linzi Dresses Ltd [1981] Q.B. 115; [1980] 1 All E.R. 803, CA*, and para. *3/5/9*). But the jurisdiction to extend time after the expiry of an "unless" order will be exercised cautiously and, where appropriate, only on stringent terms (see *Samuels v. Linzi Dresses Ltd*, above).

The exclusion from any further part in the proceedings of a party who deliberately disobeys a preremptory order of the Court as to discovery is appropriate where there is a real risk that the default will render the fair trial of the action impossible and any judgment in favour of the defaulter unsafe. Once the order for discovery has been complied with, even if compliance is after the time stipulated in the order, the defaulter will not be excluded from the proceedings unless the circumstances are exceptional and there remains a real risk that justice cannot be done (*Logicrose Ltd v. Southend United Football Club Ltd (1988) The Times, March 5*). But an order under O.24, r.16 could be an effective sanction where admitted breaches in discovery had occurred or it was clear from party's own documents there was non-compliance (see *Lonrho plc v. Fayed (No. 3) (1993) The Times, June 24*). See also *Caribbean General Insurance Ltd v. Frizzell Insurance Brokers Ltd [1994] 2 Lloyd's Rep. 32, CA* See further *Cephus Shipping Corporation v. Guardian Royal Exchange Assurance plc, "The Capricorn", [1995] 1 Lloyd's Rep. 622*, where the Court expressed the opinion that the right view of *Fayed v. Lonrho Ltd* may be that unless the existence or suppression of documents is itself an issue for determination at trial of the action, affidavits of discovery remain conclusive and are subject to challenge by either party only in the limited circumstances identified in that case. In any other case an application made under O.24, r.16 remains effectively interlocutory whether made before or at trial. Accordingly the Court doubted whether it was possible to launch an application at trial on the premise that it is open as a matter of probability and on the basis of any useful answers extracted in cross-examination of any witness who happened to be called on issues which did arise for determination, to undermine an affidavit of discovery by someone who was not called at trial.

Although the normal prerequisite for the striking out of an action under r.16 is the existence of a real or substantial or serious risk that a fair trial will no longer be possible, in cases of contumacious conduct, e.g. the deliberate suppression of a document, striking out may be justified even where a fair trial may still be possible (*Landauer Ltd v. Comins & Co. (1991) The Times, August 7, CA*).

## Failure to comply with order for discovery

**24/16/3**  The Court should ensure that its order for discovery is complied with but should not otherwise punish a defaulter, e.g. by requiring the payment of the amount or the balance of the amount claimed into Court (see *Husband's of Marchwood Ltd v. Drummond Walker Developments Ltd [1975] 1 W.L.R. 603; [1975] 2 All E.R. 30,CA*).

An order for discovery which is stated to be "final" is not the same as an "unless" order (see note "Application to dismiss the action or strike out defence" above, and para. *3/5/9*, "Unless or conditional order to extend time"). An "unless" order spells out the consequences of failure to comply with its terms, and disobedience to such an order is likely to be held to be contumelious behaviour, resulting in the dismissal of the action or striking out of the defence, and, in the case of dismissal of the action, may prevent the plaintiff from issuing a second writ notwithstanding that the limitation period has not expired (see paras. 25/L/2 and 25/L/3, below). Failure to comply with a "final" order is a serious matter, but the Court is less likely to characterise such failure as contumelious behaviour, and, in consequence, if the limitation period has not expired, the action may be permitted to continue (*Realistics v. L.P. Marsh (Properties), March 6, 1986 (unrep.); CA*). In *Star News Shops v. Stafford Refrigeration Ltd (1997) The Times, November 18, CA; [1998] 1 W.L.R. 536; [1998] 4 All E.R. 408, CA*, it was held that it was wrong in principle to strike out a party's defence for breach of a non-peremptory order although O.24, r.16(1) did give jurisdiction to make such an order.

In approaching an application to dismiss an action on the basis of non-compliance with an order for specific discovery, a court could give the benefit of any doubt in the construction of the order to the plaintiff whose action was facing the prospect of being dismissed (*Triolacan Ltd v. Medway Power Drives Ltd (1991) The Times, October 21, CA*).

Order 24—Discovery and Inspection of Documents, UKBC-WHITEBK-99 520528513...

Case 1:22-mc-00130-ALC  Document 41-10  Filed 12/20/22  Page 67 of 67

## "Service on a party's solicitor" (para. 3)

24/16/4    Personal service is not necessary (*Hampden v. Wallis (1884) 26 Ch.D. 746*).

24/17

**17. Revocation and variation of orders (O.24, r.17)**

Any order made under this Order (including an order made on appeal) may, on sufficient cause being shown, be revoked or varied by a subsequent order or direction of the Court made or given at or before the trial of the cause or matter in connection with which the original order was made.

## History of rule

24/17/1    Repeats O.24, r.18 of 1962.

## Effect of rule

24/17/2    Where a defence had been struck out under r.16, the defendants applied for it to be restored under this rule on the grounds that they had subsequently produced a list of documents verified by an affidavit sworn by their solicitors. The plaintiffs gave reason why they believed that certain further documents must exist and the CA made it a condition of restoration that the defendants, by a responsible officer and not their solicitor, should make an affidavit as to whether they had or ever had had such documents in their possession and whether they were relevant (*Walker (John) & Sons Ltd v. Ost (Henry) & Co. Ltd [1970] R.P.C. 151*). See too *Frogmore Estates Plc v. Berger, July 20, 1992 (unrep.)*, Chancery Division, Knox J., for possibility of a variation order hereunder or of issuing a subpoena duces tecum against a former solicitor exercising a lien over discoverable documents: relief against order for discovery refused in this case as there was insufficient proof of inability to comply.

**End of Document**                    © 2022 Sweet & Maxwell