# EXHIBIT 13

[2016] SC (Bda) 109 Com (13 December 2016)



## In The Supreme Court of Bermuda

### COMMERCIAL COURT
### CIVIL JURISDICTION

### 2015: No. 341

IN THE MATTER OF THE COMPANIES ACT 1981
AND IN THE MATTER OF SECTION 111
AND IN THE MATTER OF GLOBAL DIRECTORIES LIMITED
(REGISTRATION NO: 2913)

**BETWEEN:-**

**DAVID BARRY REID**

**Petitioner**

-and-

(1) **MEDIAHOUSE LIMITED**
(2) **DONALD RANDOLPH FRENCH**
(3) **GLOBAL DIRECTORIES LIMITED**

**Respondents**

### RULING

### (In Chambers)

*Application for an order for the issue of a letter of request – Order 39 of the Rules of the Supreme Court 1985 – whether the evidence of the witnesses can be procured without the need for a letter of request – whether the application will delay the trial of the action – whether the witnesses can give substantial and material evidence on a real question to be tried between the parties*

Date of hearing: 8th and 9th December 2016

Date of ruling: 13th December 2016

Mr Cameron A Hill and Mr Nicholas Miles, Sedgwick Chudleigh Ltd, for the Petitioner

Mr Narinder Hargun and Ms Stephanie Hanson, Conyers Dill & Pearman Limited, for the Respondents

### Introduction

1. The Petitioner, David Reid ("Mr Reid") holds 15% of the outstanding shares in the Third Defendant, Global Directories Limited ("Global"). The First Defendant, MediaHouse Limited ("MediaHouse"), holds the other 85%. The Chief Executive Officer of MediaHouse, and one of its directors, is the Second Defendant, Donald French.

2. Mr Reid alleges that the affairs of Global are being conducted in a manner oppressive or prejudicial to his interests as a member. He seeks an order that Global should be wound up on the grounds that this would be just and equitable, or alternatively that pursuant to section 111 of the Companies Act 1981 the Respondents be ordered to purchase his shares at a price to be determined by an expert valuer.

3. Mr Reid contends that his shares in Global are worth more than $12 million. Yet in 2012 in divorce proceedings in Grand Cayman he reached an agreement with his ex-wife, Kerri Kanuga ("Ms Kanuga"), that they were only worth $500,000.

4. There would appear to be a striking discrepancy between these valuations. In order to explore this apparent discrepancy further, the Respondents have applied for an order for the issue of a letter of request to the judicial authorities in the Cayman Islands. The letter would seek the examination there upon oath of Ms Kanuga, Theo Bullmore and Peter Anderson ("the Cayman witnesses").

5. Mr Bullmore and Mr Anderson are the valuers who valued the shares in Global for Ms Kanuga and Mr Reid respectively in the divorce proceedings. All three potential witnesses are resident in Cayman. The Respondents submit that they are all able to give evidence about what Mr Reid disclosed in the divorce proceedings about his interest in Global.

**Respondents' case**

6. The Respondents' attorney in Cayman, Paul Smith, swore an affidavit in support of their application. He stated that the Respondents seek evidence from the Cayman witnesses in order to establish that in the divorce proceedings Mr Reid failed to make full and frank disclosure of certain facts and matters relevant to the valuation of the Global shares. Such non-disclosure, it was said, would support the Respondents' case that the present proceedings are an abuse of process.

7. The Respondents accept that, as they were not party to the divorce proceedings, the rule in Henderson v Henderson (1843) 3 Hare 100 that a party should not be twice vexed in the same matter would not be engaged. However they submit that it would be abusive for a litigant to give inconsistent evidence in different proceedings just because it suited him.

8. I agree that it would be abusive to bring proceedings in bad faith, knowing full well that they were founded on lies. The fact that a litigant had given inconsistent evidence in earlier proceedings would be relevant to the Court's assessment of his credibility in the later proceedings. But even if he were found to be lying in the later proceedings that would not necessarily establish that they had been brought in bad faith: eg he might have been lying to bolster what he genuinely believed to be a well-founded case.

9. Thus the real issue is whether the alleged inconsistencies undermine Mr Reid's credibility, either generally or in relation to the specific issues to which they relate, sufficiently for the Court to reject his application. If they

do not, then the Court will be unlikely to stay the action as an abuse of process; if they do, then the question of abuse of process will be redundant.

10. The specific issues in question, which the Respondents' lawyers have helpfully identified in correspondence, are:

    (1) Whether Global reneged upon an agreement to pay a dividend to Mr Reid equivalent in value to 15% of the amount of certain loans made by Global to MediaHouse. The Respondents say that Global did not make the dividend payments because Mr Reid asked them not to while his divorce was ongoing. Mr Reid denies making any such request.

    (2) Whether Global was a quasi-partnership. Mr Reid submits that it was and the Respondents submit that it was not.

    (3) Whether Global faces a "digital cliff", and if so the ramifications for its business. The Respondents submit that the growing primacy of electronic media means that Global's printed directory business has a limited shelf life. Mr Reid contends that the Respondents' stated concerns are exaggerated and that Global should be able to surmount them.

    (4) Whether a minority discount is appropriate when valuing Mr Reid's shares in Global. The Respondents submit that it is and Mr Reid submits that it is not.

11. The Respondents submit in relation to issue (1) that if in the divorce proceedings Mr Reid failed to disclose the existence of the agreement which entitled him to receive those dividends this would tend to corroborate their case that he did make such a request.

12. They submit in relation to issues (2) – (4) that if Mr Reid took a different position in the divorce proceedings then that would tend to undermine the credibility of his position on these issues in the present proceedings and enhance the credibility of their own position.

13. The Respondents further submit that material non-disclosure in the divorce proceedings would be relevant to the exercise of the Court's equitable discretion in the present proceedings as it would mean that the Petitioner did not approach the Court with "clean hands".

**Mr Reid's case**

14. Mr Reid submits that evidence from the Cayman witnesses is of at best contextual relevance and is unnecessary to resolve the specific issues with respect to which it is said to assist.

15. As to issue (1), Mr Reid submits that whether Global previously reneged upon an agreement to pay a dividend to Mr Reid is irrelevant as it is not disputed that a dividend has since been paid. What is in dispute is how the amount of the dividend should be calculated. He clarified that non-payment of a dividend before the divorce was finalised is not relied upon as constituting unfairly prejudicial or oppressive conduct.

16. As to issues (2) to (4), Mr Reid states that he has exhibited all the material relating to Global in these proceedings that he disclosed in the divorce proceedings. He says that if he has not disclosed it in these proceedings then he did not do so in the divorce proceedings.

17. Mr Reid further submits in relation to issues (2) to (4) that his position in the divorce proceedings on quasi-partnership, the digital cliff and a minority discount is apparent from the material generated during the divorce proceedings that he has exhibited in these proceedings.

18. As to clean hands, Mr Reid submits that there is not a sufficiently close connection between his alleged misconduct and the relief sought for the "clean hands" doctrine to be engaged. See Snell's Equity Thirty Third Edition at para 5-010 and the cases discussed there.

19. Specifically, Mr Reid submits that his alleged misconduct has not helped to bring about the oppressive or unfairly prejudicial state of affairs of which he complains. Thus, as in the analogous case of Vujnovich v Vujnovich (1989) 5 BCC 740 PC at 744D – 755A, it could not defeat his contention that Global should be wound up on just and equitable grounds.

20. Mr Reid speculates that the application has been brought for an improper purpose, namely to pressurise him into discontinuing these proceedings through the implied threat that if he does not do so the Respondents will alert his ex-wife to the possibility (which he denies) that he did not make full and frank disclosure in the divorce proceedings.

21. However it is not for me to speculate on the Respondents' motives. I am only concerned with whether it appears necessary for the purposes of justice to order that a letter of request be issued.

**Discussion**

22. The application is made pursuant to Order 39 of the Rules of the Supreme Court 1985. Order 39 rule 1 provides that the Court "*may in any cause or matter where it appears necessary for the purposes of justice*" order that evidence be taken by deposition. Order 39 rule 2 provides for the issue of a letter of request where the person to be examined is out of the jurisdiction.

23. I was referred to Phipson on Evidence, Eighteenth Edition[1], at para 8-37. This sets out a number of considerations which the courts have taken into account when deciding whether to make an order. For present purposes, the most relevant are:

    (1) Whether the evidence of the witness can be procured without the need for a letter of request.

---

[1] I was actually referred to the Seventeenth Edition. But the most recent edition is the Eighteenth, and the relevant paragraph in both editions is the same.

(2) Whether the application will delay the trial of the action.

(3) Whether the witness can give substantial and material evidence on a real question to be tried between the parties.

24. I shall consider the Respondents' application in relation to each of these considerations in turn.

### *Whether the evidence of the witness can be procured without the need for a letter of request*

25. There can be no well-founded objection to the Respondents' legal advisers approaching the Cayman witnesses with a view to obtaining evidence from them for the purpose of these proceedings. Nor to their advisers disclosing to the Cayman witnesses what Mr Reid has said in his affidavit evidence in these proceedings including about the payment of a dividend.

26. The Respondents have indicated that if I do not order the issue of a letter of request then that is what they intend to do. At the outset of this application it appeared that Mr Reid would object to such a course. Sensibly, he decided not to. It is difficult to see on what basis the Court could restrain a party from attempting to interview a potential witness.

27. Therefore it may be possible to procure the evidence of the Cayman witnesses without the need for a letter of request. However, for reasons which I need not go into, it would be imprudent to proceed on the assumption that it will be possible.

28. Irrespective of whether there is a letter of request, the Cayman witnesses may be subject to a duty of confidentiality in relation to the divorce proceedings which would limit the scope of their assistance. That is a matter of Cayman law, to be determined, if need be, by the Cayman courts.

### *Whether the application will delay the trial of the action*

29. The Petition was presented to the Court on 11th August 2015. It has been set down for a two week trial commencing on 30th January 2017. The application for an order for the issue of a letter of request has been brought very late in the day. The Respondents explained that Global paid a dividend to Mr Reid in July 2016. They informed him of the intended dividend payment by letter dated 15th June 2016 and deferred making the application until he had decided whether, in light of that payment, to continue with these proceedings. In October 2016 he indicated that he intended to do so. This is what prompted the Respondents to make the application. However it could have been made at any time prior to June 2016.

30. The Respondents' attorneys informed me that the evidence sought could be obtained by a letter of request without jeopardising the trial date. That seems to me to be an optimistic assumption, particularly if, as appears likely, Mr Reid were to object in the Cayman court to the production of the requested information. I should be reluctant to adjourn the trial part heard pending the resolution of any such objection.

### *Whether the witness can give substantial and material evidence on a real question to be tried between the parties*

31. This consideration derives from the judgment of Lindley LJ in Ehrmann v Ehrmann [1896] 2 Ch 611 EWCA at 614 – 615. I have broken the relevant passage into two paragraphs for ease of reference.

> "*Still we all know that the issuing a commission to take evidence abroad, or letters of request to a foreign Government to allow evidence to be taken, is a very serious matter—it involves great expense and delay, and ought never to be had recourse to unless it is really wanted for the purposes of the trial.*
>
> *The point to be looked to is whether the evidence which it is desired to obtain abroad is really necessary for the purposes of justice. It is not enough to say that possibly it may be of some use on some collateral matter—that it may be useful for the purpose of*

8

*corroborating a witness, or something of that kind; it must have a closer bearing on the issue.*"

32. The world evolves and litigation practice evolves with it. 120 years later the taking of evidence pursuant to a letter of request is no longer considered an extraordinary step. Nonetheless I was not referred to any subsequent case in which this passage was disapproved.

33. The evidence sought on the letter of request relates to a separate action, namely the divorce proceedings in Cayman. It goes to the credibility of the parties' evidence in the present case. The existence of any material disclosed by Mr Reid in the divorce proceedings beyond the material that he has already disclosed in these proceedings is speculative. Mr Reid says that there is none: the Respondents want to verify whether that is indeed the case.

34. The material disclosed by Mr Reid in the present proceedings lays sufficient foundation for the Respondents to submit that he has adopted an inconsistent position regarding the value of Global *vis a vis* his position as to its valuation in the divorce proceedings without the need for a letter of request. (Of course, at this stage I make no finding as to the merits of any such submissions.) Thus, if (which is disputed) Mr Reid has cherry picked his disclosure for the purposes of the present proceedings, he has, as his counsel put it, picked the wrong cherries.

**Conclusion**

35. I am not satisfied that the witnesses from whom depositions are sought can give substantial and material evidence on a real question to be tried between the parties as opposed to evidence going merely to the parties' credibility. Moreover, there is a real risk that the issue of a letter of request at this late stage in the proceedings would delay the trial of the action. For these reasons the application for an order for the issue of a letter of request is dismissed.

36. I shall hear the parties as to costs.

DATED this 13th day of December, 2016

_____
Hellman J