# EXHIBIT 14

[2011] SC (Bda) 24 Com (21 April 2011)



# In The Supreme Court of Bermuda

### CIVIL JURISDICTION

### COMMERCIAL COURT

#### 2008: No. 217

IN THE MATTER OF LEHMAN RE, LTD

AND IN THE MATTER OF THE COMPANIES ACT 1981

AND IN THE MATTER OF THE INSURANCE ACT 1978

## REASONS FOR DECISION

Date of Decision: April 14, 2011
Date of Reasons: April 21, 2011

Mr. Delroy Duncan and Ms. Nicole Tovey, Trott & Duncan,
for the Joint Provisional Liquidators
Mr. Garrood, Mello Jones & Martin, for the Applicant,
Aetna Life Insurance Company
Mr. John Riihiluoma, Appleby, for Pulsar Re Ltd
Mr. Kevin Taylor, Marshall Diel & Myers, for Phoenix Life Ltd.[1]

---

[1] Only those counsel who addressed the Court are listed here.

**Introductory**

1. The present application arose in relation to a dispute which the Joint Provisional Liquidators ("the JPLs") have referred to this Court to resolve between the interests of the general and long-term business creditors of the Company in relation to the Congress Life asset. The JPLs adopted a neutral position although Mr. Duncan assisted the Court to clarify the form of order required to be drawn up at the conclusion of the hearing.

2. On April 14, 2011, I ordered (on the application of the Applicant, a long-term business creditor) pursuant to Order 39 of the Rules that three witnesses resident in the United States should have their evidence taken for the purposes of the trial of the Congress Life matter in this liquidation before an examiner in the US. The application initially contemplated the evidence being taken before a US Judge, but the Applicant's counsel conceded that Mr. Riihiluoma's suggestion that a private examiner was more appropriate had merit. This Order was made (as regards one witness) subject to my reviewing further documentary evidence referred to in argument but not formally filed prior to the hearing of the Order 39 application.

3. I also directed that two witnesses (Mr. McBeth and Ms. Liu) should be treated as the Joint Provisional Liquidators' witnesses, and the third (Ms. Ziff) as the witness of Aetna and the other life creditors.

4. I indicated I would give short reasons because I reserved the costs of the application generally, including the costs of the examinations, because it was contended in opposition that the application might ultimately prove to be unnecessary. In addition, Mr. Riihiluoma raised two points of legal principle which I resolved against his client, Pulsar. The way these matters were dealt with could have some bearing on costs at the end of the day.

**The jurisdiction to order an overseas examination: relevant factors for the exercise of the Court's discretion**

5. The first legal question was whether on the facts the grounds for ordering that Mr. McBeth's evidence should be taken overseas had been made out in circumstances where (a) prior to the initial 2010 trial date he had indicated his willingness to attend Bermuda to give oral evidence on a voluntary basis; (b) the Applicant was unable to indicate any subsequent change of position on the witness' part; and (c) the witness was not under the control of any of the parties the present proceedings.

6. Mr. Garrood took the robust and essentially practical approach that it was unsatisfactory in terms of case management to proceed to trial in reliance on the witness' promise to attend in circumstances where the Court had no power to compel his attendance. As other witnesses had to be deposed in New York in any event, the additional costs attributable to Mr. McBeth would be entirely proportionate. Mr. Riihiluoma, however, pointed out that the formal legal basis for such applications was more clearly defined and the recognised grounds for the relief sought had not been made out. He referred the Court to the following passage in the 1999 White Book at paragraph 39/3/2:

> *"EFFECT OF RULE (rr.2&3) – These rules provide the machinery for the examination of a person out of the jurisdiction. The exercise of the power under these rules is a matter of discretion, especially as the cost of taking evidence abroad is high and sometimes prohibitive. The Court is apt to look most favourably upon the application of a defendant resident abroad - who has not chosen an English forum (see, per Chitty J. in Ross v Woodford [1894] 1 Ch. 42; New v burns (1894) 64 L.J.Q.B. 104, CA) – and least favourably upon the application of a plaintiff for his evidence to be taken abroad, for he has usually chosen his tribunal (Ross v Woodford; Coch v Allcock (1888) 21 Q.B.D. 178, CA; Emanual v Sollykoff (1892) 8 T.L.R. 331). As regards other witnesses, a party cannot compel a witness in a foreign country to attend the trial, and therefore if the Court is satisfied that (1) he is unwilling or unable to be present (2) the application is made bona fide (Re Boyse (1882) 20 CH D. 760 and with such promptness as not to cause unreasonable delay (see Langen v. Tate(1883) 24 CH. D. 522, CA) and (3) the witness can give substantial evidence material to the issue (Ehrmann –v- Ehrmann [1896 2 CH. 611) an order is often made. But many other considerations may be relevant in all these cases. Reasonable attempts should first be made, in a proper case, to obtain the evidence in other ways – through a witness here (Armour v. Walker (1883) 2 CH.D. 673, CA; Lawson v. Vacuum Brake Co. (1884) 27 CH.D. 137, CA; Lewis v Kingsbury (1888) 4T.L.R. 629 at 639) by documents, by admissions or an order that the evidence may be given on affidavit; and in these days the cost of a journey by air is commonly less than that of an examination abroad."*

7. The White Book commentary on English Rules from which our own procedural code has been derived will ordinarily be highly persuasive as to the terms and effect of such rules. However, the starting point for any analysis must be the terms of the relevant rule(s). The Court's jurisdiction under Order 39 is in fact completely unfettered:

3

> "***39/1   Power to order depositions to be taken***
> 1    (1)    The Court may in any cause or matter where it appears necessary for the purposes of justice, make an order (in Form No. 32 in Appendix A) for the examination on oath before a judge, an officer or examiner of the Court or some other person, at any place, of any person.
> (2)    <u>**An order under paragraph (1) may be made on such terms (including, in particular, terms as to the giving of discovery before the examination takes place) as the Court thinks fit.**</u>
>
> ***39/2   Where person to be examined is out of the jurisdiction***
> 2    (1)    Where the person in relation to whom an order under rule 1 is required is out of the jurisdiction, an application may be made—
>
>> (a)    for an order (in Form No. 34 in Appendix A) under that rule for the issue of a letter of request to the judicial authorities of the country in which that person is to take, or cause to be taken, the evidence of that person, or
>>
>> (b)    if the government of that country allows a person in that country to be examined before a person appointed by the Court, for an order (in Form No. 37 in Appendix A) under that rule appointing a special examiner to take the evidence of that person in that country.
>
> (2)    An application may be made for the appointment as special examiner of a British consul in the country in which the evidence is to be taken or his deputy—
>
>> (a)    if there subsists with respect to that country a Civil Procedure Convention providing for the taking of the evidence of any person in that country for the assistance of proceedings in the Court, or
>>
>> (b)    with the consent of the Deputy Governor." [emphasis added]

8. The statutory requirement is that the Applicant demonstrate that this is a case "*where it appears necessary for the purposes of justice*" to order an examination overseas. As Mr. Garrood conceded in reply, it will ordinarily be necessary to demonstrate that the witness is "*unable or unwilling to be present*". However, I found that in the context of the present case, it was necessary to take into account (a) the comparatively large sums in issue, (b) the ease of travel between Bermuda and New York, (c) the importance of the witness' evidence, (d) the fact that the witness was not an employee of any parties to the dispute or otherwise under their control, and (e) the desire of all parties to preserve the July 2011 second trial fixture.

9. In these circumstances, sensible case management demanded that the Court adopt a precautionary approach even though the Applicant had failed to adduce any positive evidence that Mr. McBeth was unwilling or unable to attend the trial. The risk that the witness might not attend was in my judgment sufficient where (a) the other traditional factors contended for by Mr. Riihiluoma as preconditions for engaging Order 39 had been made out, and (b) the usual assumption that a party could be relied upon to call a witness whose absence might hurt their case did not arise. Mr. McBeth was not under the control of any party before this Court. Principles governing the exercise of the discretion to allow evidence to be taken abroad which were developed in the late nineteenth century may still have a role to play today. However, the exercise of the Court's discretion must be informed primarily by the terms of the applicable Rules and the peculiar facts of each particular case.

**The prohibition on "fishing"**

10. The second legal submission made by Mr. Riihiluoma was that the application as it related to Ms. Ziff was impermissibly speculative and constituted fishing, as the same approach should be adopted to "incoming" and "outgoing" applications: *Charman-v-Charman* [2005] EWCA Civ 1606 (at paragraphs 28-37); *Netbank-v- Commercial Money Centre* [2004] Bda LR 46 (at page 18). This submission, based on the material before the Court, seemed to me to be sound.

11. However Mr. Taylor in reply read out from his Blackberry an email not before the Court which clearly demonstrated that, from an objective standpoint, Ms. Ziff (her own subjective protestations to the contrary notwithstanding) was likely to have material evidence to give[2]. It was on the basis of this fresh material alone that Mr. Riihiluoma's case for excluding the application to depose this witness overseas on relevancy grounds was rejected.

**Conclusion**

12. These are the Reasons for my April 14, 2011 decision.

Dated this 21st day of April 2011, _____
KAWALEY J

---

[2] The chain of emails was forwarded to the Court in hard copy form on April 15, 2011.

5